IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION - BOSTON)

| | |
|---|---|
| KIRA WAHLSTROM,<br><br>                              Plaintiff,<br><br>-against-<br><br>DAVID J. HOEY, LAW OFFICES OF<br>DAVID J. HOEY, P.C., DON C. KEENAN,<br>AND D.C. KEENAN & ASSOCIATES, P.C.<br>D/B/A THE KEENAN LAW FIRM, P.C.<br><br>                              Defendants | Civil Case No.<br><br>**PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS FOR VIOLATIONS OF M.G.L. c. 93A, BREACH OF FIDUCIARY DUTY, FRAUD AND CONVERSION**<br><br>**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE** |

**COMPLAINT**

Plaintiff Kira Wahlstrom alleges as follows for her claims against Defendants:

**INTRODUCTION**

1.      In May 2009, Ms. Wahlstrom was brutally raped inside a hotel parking garage in downtown Boston, where the same rapist had attacked and raped another woman just 12 days earlier in the same garage. She sued the owners and management of the garage for negligence. For more than a decade, Defendants here represented Ms. Wahlstrom and during that representation, went to great lengths to earn her trust. Ms. Wahlstrom, in turn, entrusted Defendants to prosecute her claims against the responsible parties and, as particularly relevant here, to charge her fair fees and expenses. Throughout the representation, Defendants knew that her mental state was fragile; that she had severe difficulties trusting others, including her long-time partner and others who had been close to her; and that she was not sophisticated in legal or financial matters.

2.     Defendants tried and won her case in 2015, achieving one of the largest awards given to a sexual assault victim in Massachusetts at the time. However, their achievement is now sullied by Ms. Wahlstrom's recent discovery that these same attorneys deceived and betrayed her, taking advantage of her trust and known vulnerabilities to take from her approximately one million dollars in unearned and improper fees and unreasonable expense charges. Their wrongful conduct also resulted in Ms. Wahlstrom being sued by another attorney who claims these same attorneys deceptively and improperly altered their representation agreements with Ms. Wahlstrom for their own benefit, i.e., to increase their own fees and reduce his referral fee percentage. Defendants' fraudulent and unethical conduct and rejection of Ms. Wahlstrom's request for reimbursement of the unlawful fees taken from her recovery have compelled this suit. Plaintiff Wahlstrom herein sues for fraud, breach of fiduciary duty, and conversion of trust monies that belonged to her and invokes M.G.L. c. 93A because the Defendants' conduct was unfair and deceptive in violation of that law.

## THE PARTIES

3.     Plaintiff Kira Wahlstrom is an individual domiciled in the State of California.

4.     Defendant David J. Hoey is an individual and attorney domiciled and practicing law in the Commonwealth of Massachusetts. At all relevant times, Hoey acted on behalf of himself as well as on behalf of Defendant Law Offices of David J. Hoey P.C.

5.     Defendant Law Offices of David J. Hoey P.C. is a professional corporation, wholly owned by Defendant David Hoey, organized in Massachusetts and with its principal place of business at 352 Park Street, Suite 105, North Reading, MA 01864.

6.      Defendant Don C. Keenan is an individual and attorney domiciled and practicing law in the State of Georgia. At all relevant times, Keenan acted on behalf of himself as well as on behalf of Defendant D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C.

7.      Defendant D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. is a professional corporation believed to be wholly owned by Defendant Don Keenan, organized in Florida, and with its principal place of business at 148 Nassau St. N.W., Atlanta, GA 30303.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity of citizenship) because Plaintiff Wahlstrom is domiciled in California; Defendant Hoey is domiciled in Massachusetts; Defendant Law Offices of David J. Hoey P.C. is incorporated and has its principal place of business in Massachusetts; Defendant Don Keenan is domiciled in Georgia; and Defendant D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. is incorporated in Florida with its principal place of business in Georgia. Further, the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred within this District as pleaded more specifically below.

## FACTS

### The Underlying Premises Liability Case and Fee Agreements for that Case

10.     On May 1, 2009, Plaintiff Kira Wahlstrom was brutally raped by Jose Rivera III in a parking garage attached to the Radisson hotel, located in downtown Boston. Rivera had just raped another woman twelve days earlier in the same garage before he returned to the garage and raped Ms. Wahlstrom.

11.     The garage was owned by JPA IV Management Company, Inc. and managed/operated by JPA I Management Company, Inc. (collectively "JPA"). After the attack and rape of the first victim by Rivera, JPA failed to take measures to warn and failed to put in place increased security measures to protect other garage customers, like Ms. Wahlstrom, from the risk of a future rape.

12.     Ms. Wahlstrom had been working at a nearby nightclub and was returning to her car parked in the JPA garage after finishing work in the early morning hours of May 1, 2009, with no knowledge or warning of the recent attack. She boarded the elevator and Rivera then entered after her. When she exited the elevator on the floor on which her car was parked, Rivera followed and attacked Ms. Wahlstrom. He grabbed her by the hair and throat and dragged her screaming and fighting over a hundred feet to the nearby stairwell where he beat and raped her twice. Despite her screams, no security or garage attendants came to her aid.

13.     Just hours after Ms. Wahlstrom was attacked and brutalized, the Boston police finally arrested Rivera at nearby Tufts Medical Center when he came to the facility at the same time Ms. Wahlstrom was there in the emergency room for treatment for her injuries.

14.     When Ms. Wahlstrom was subpoenaed to testify against Rivera before the grand jury, she contacted one of the few attorneys she knew, her then-friend, Austin O'Toole.  Because he was not qualified to handle this complex case, O'Toole referred her to an attorney who specialized in trying premises liability cases, Defendant David Hoey.

15.     On or about February 2, 2010, Ms. Wahlstrom entered a Contingent Fee Agreement with Defendant Law Offices of David J. Hoey, P.C. to pursue claims for JPA's negligence because of its failure to warn its customers after the first attack and rape in the garage. She agreed with Defendant Hoey to a contingent fee arrangement whereby he would

4

receive payment from fees recovered. That 2010 Contingency Fee Agreement is attached as

**Exhibit A** and referenced and incorporated as stated herein.

16.     The 2010 Contingency Fee Agreement states in its opening paragraph that Ms.

Wahlstrom:

> …retains as "Attorney" the Law Offices of David Hoey, P.C. with an address of
> 352 Park St., Suite 105, North Reading, MA 01864 and Austin S. O'Toole,
> Esquire with an address of 18 Tremont Street, Suite 1010, Boston, MA 02108 to
> perform the legal services referred to in Paragraph (1) below.

Exhibit A, p. 3.

17.     The 2010 Contingency Fee Agreement further provides:

(1) The claim, controversy, and other matters with reference to which the services are to
be performed are: *premises liability and injuries received on or about May 1, 2009 in the
Radisson parking garage*

(2) The fee is to be paid upon recovery.

(3) The Client is not to be liable to pay compensation otherwise than from amounts
collected for (him) / (her) by the Attorney except as follows: none.

(4) Reasonable compensation on the foregoing contingency is to be paid by the Client to
the Attorney, but such compensation including that of any associate counsel shall be the
following percentage of the gross amount collected for the client.

        33.3% of the gross amount recovered;

(5) The Client is to be liable to the attorney for his reasonable expenses and
disbursements only if there is a favorable disposition of the legal matter. In the event of a
favorable disposition, expenses and disbursements will be deducted after the contingent
fee is calculated. The Client acknowledges and agrees that the attorney may borrow funds
from time to time to pay certain of the costs associated with pursuing and litigating the
case and agree that, in addition to reimbursing the attorney for the amount of such costs,
the client also will reimburse the attorney for any interest charges and related expenses
the attorney incurs in connection with such borrowings.

The client acknowledges the following with respect to (his) (her) legal representation by
the Attorney:

a)   It is understood and agreed by the Client that the Client has been referred to and that
any fee to be paid pursuant to a matter referred to in Paragraph (1), above, is to be

divided in part with AUSTIN S. O'TOOLE, ESQUIRE, pursuant to the applicable provisions of the Code of Professional Responsibility as the same is in force in Massachusetts as Rule 3:08 of the Supreme Judicial Court.

b) AUSTIN S. O'TOOLE, ESQUIRE will receive periodic reports from the Attorney concerning the progress and disposition of the matter referred to in Paragraph (1) above. However, representation of the Client is to be undertaken by the Attorney and not the firm of AUSTIN S. O'TOOLE, ESQUIRE, personally. All questions, comments, inquiries and correspondence and the like concerning the legal matter which is the subject of this Agreement is to be directed to the Attorney and not to AUSTIN S. O'TOOLE, ESQUIRE, personally.

\* \* \*

(7) This fee agreement applies to all services rendered in pursuing the above referenced claim, but not to matters ancillary to the above claims, such as probate court proceedings, guardianships and trusts or estate services, resolutions of Medicare liens and Medicaid claims.

18.     After Plaintiff Wahlstrom and David Hoey, on behalf of the Law Offices of David Hoey, P.C. (herein, "Hoey Law"), executed the 2010 Contingency Fee Agreement, Hoey sent the agreement to referring attorney O'Toole with a referral agreement that stated: "This will confirm that in connection with the above referenced matter [Kira Wahlstrom v. Jose Ruben Rivera, et al] you will receive the following referral fee should there be a recovery in this case: 33% of my fee from the sum recovered." O'Toole accepted Hoey's offer and executed the referral agreement. Ms. Wahlstrom also signed the referral agreement indicating her consent as required by the Massachusetts Rules of Professional Conduct. A copy of that referral agreement is annexed hereto as **Exhibit B** and adopted herein by reference.

19.     On March 12, 2010, Hoey filed suit on behalf of Ms. Wahlstrom against the owner and operator of the hotel garage, JPA, and others, for negligence in Suffolk Superior Court titled *Wahlstrom v. JPA IV Management Company, Inc. et al*. No. 1084CV01022.

20.     Prior to trial, Defendant Don Keenan of Defendant D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. (herein, "Keenan Law") joined Hoey as counsel on the

case. Hoey and Keenan had worked together previously in other cases. As he was not a

Massachusetts attorney, Keenan sought *pro hac vice* admission to appear in the Wahlstrom case

on March 13, 2015, which was allowed.

21.     On June 11, 2015, Hoey contacted Ms. Wahlstrom stating that he needed her to

sign a new fee agreement with Don Keenan. When Ms. Wahlstrom responded in an email asking,

"What is the new fee agreement?", Hoey replied: "I mentioned it to you one of the last couple of

visits. It's the same fee agreement as before but with Don's [Keenan] name since he is also

trying the case with me on July 13th. It doesn't change your percentage or cost you more money.

I'll show it to you next time I see you."  Attached as **Exhibit C** is a copy of the email chain

between Ms. Wahlstrom and Hoey adopted and incorporated herein.

22.     It was known to Hoey at this time that not only was Ms. Wahlstrom inexperienced

in litigation and retainer agreements but that she was dyslexic and had trouble with math. Indeed,

she said so explicitly in the same email chain where Hoey directed her to sign an agreement with

Keenan. *See*, Exhibit C, Email on June 11, 2015, Ms. Wahlstrom stating "I didn't go back to

Bridgewater because I failed math, and school was very hard for me I am dislexic." [sic].

23.     Moreover, through their close working relationship over the prior five years

during which Ms. Wahlstrom was coping with the trauma and difficulties in recovery from the

attack and rape, she had come to particularly rely on Hoey for support and placed substantial

trust in him in his role as her advocate and protector during this time of her vulnerability.

24.     On or around June 16, 2015, Hoey and Keenan had Ms. Wahlstrom sign another

Contingent Fee Agreement that provides that Ms. Wahlstrom retains as "Attorney" Don C.

Keenan and The Keenan Law Firm P.C. to perform legal services for her "Premises liability

claims and injuries received as a result of assault on or about May 1, 2009 in the Radisson Hotel

Boston parking lot." Attached as **Exhibit D** is a copy of the 2015 Contingent Fee Agreement referred to and incorporated as stated herein.

      25.     The 2015 Contingent Fee Agreement (Exhibit D) provided for compensation as follows at paragraphs 4 and 5:

      (4) Reasonable compensation (including that of any referring and/or associated counsel) on the foregoing contingency is to be paid by the Client to the Attorney [Don C. Keenan and The Keenan Law Firm PC], but such compensation including that of any associated counsel shall be the following percentage of the gross amount collected for the client:

      33 and 1/3 (thirty-three and one-third percent) of gross amount recovered

      The above stated percentage shall be increased by an additional Two Percent (2%) of gross recovery if the matter is concluded/settled after an appellate brief is filed in an applicable appellate court or body by the Attorney [Don C. Keenan and The Keenan Law Firm PC] on behalf of the Client, and an additional 5% of gross recovery Five Percent (5%) of gross recovery if matter is retried/concluded/settled following an appellate decision.

      The percentage shall be applied to the amount of the recovery not including an attorney's fees awarded by a court or included in a settlement. The lawyer's compensation shall be such attorney's fees or the amount determined by the percentage calculation described above, whichever is greater. The compensation determined is separate and independent from costs and expenses of litigation, detailed in paragraph 5.

      <u>Referring/Associated Counsel:</u>

      The Client understands that a portion of the compensation payable to the Attorney pursuant to the paragraph above shall be paid to: the Law Offices of David J. Hoey, P.C. and consents to this division of fees. Client understands that the Client will not be charged any additional legal fees.

      (5) The Client is to be liable to the attorney for his reasonable expenses and disbursements if there is a favorable disposition of the legal matter. In the event of a favorable disposition, expenses and disbursements will be deducted after the contingent fee is deducted. The Client acknowledges and agrees that the attorney may borrow funds from time to time to pay certain costs associated with pursuing and litigating the case and agrees that, in addition to reimbursing the attorney for the amount of such costs, the client also will reimburse the attorney for any interest charges and related expenses the attorney incurs in connection with such borrowings.

      The Attorney agrees to advance, on behalf of Client, all reasonably necessary out-of-pocket costs and expenses of litigation at the discretion of the Attorney. However, this

agreement in no way obligates the Attorney to advance/lend any funds on this case. The Attorney may choose to do so, and may choose to cease doing so for any reason, whatsoever, with notice to the Client.

26.    The 2015 Contingency Fee did not state the fee arrangement between Keenan and Hoey nor did Defendants otherwise disclose the arrangement to Ms. Wahlstrom. Unlike the 2010 Contingency Fee Agreement, the new agreement included an appeal contingency.

27.    David Hoey, with his law associate Krzysztof Sobczak, and Don Keenan, with his associate Andrew Gould, tried the case that began with jury selection on July 14, 2015 and ended with a verdict on August 11, 2015.

28.    Defendants obtained a jury verdict of $4 million against the garage owners and operators JPA that, with prejudgment interest and costs, resulted in a total judgment of $6,650,829.58 in 2015.

**Defendants' Trial Misconduct Resulting in a New Trial Motion and Appeal both Substantially Delaying Payment to Plaintiff Wahlstrom**

29.    After the verdict was rendered, JPA (the garage managers/owners) filed a motion for new trial based on attorney misconduct by Ms. Wahlstrom's trial attorneys. The trial judge (Associate Justice Paul D. Wilson) agreed that two of her attorneys (Hoey and his associate) engaged in misconduct that adversely affected JPA's substantial rights, misconduct such as repeatedly defying court orders and arguing after court rulings, often in the presence of the jury. As a result, the trial court allowed JPA's motion, vacated the verdict, and ordered a new trial. *See, Wahlstrom v. LAZ Parking Ltd., LLC*, No. SUCV20101022, 2016 WL 3919503 (Mass. Super. May 19, 2016).

30.    Ms. Wahlstrom filed a petition for interlocutory review with a Single Justice of the Appeals Court, who allowed an immediate interlocutory appeal. All appellate matters were successfully handled by appellate counsel, Patricia DeJuneas, aided by Attorneys Robert J.

9

Cordy and Ashley P. Allen. Attorney DeJuneas and her team charged a separate fee for their successful work on the appeal.

31.     In an appeal in the Massachusetts appellate courts, the attorney of record in the lower court is automatically designated as the counsel of record for the appeal. In this manner, Hoey's name appeared on the docket for Ms. Wahlstrom's appeal. Hoey did not file an appearance in the Appeals Court, his name is not on Ms. Wahlstrom's briefs, and he did not sit at counsel table for the appellate oral argument.

32.     DeJuneas provided regular updates on the appeal to Hoey and Keenan. Keenan had a financial interest in the outcome of the appeal, as did Hoey. Hoey also was concerned about his reputation as well as the Board of Bar Overseers.

33.     Neither Hoey nor Keenan drafted or filed the interlocutory appeal application or the appellate briefs, nor did their names or signatures appear on any of the briefs.

34.     Keenan did not file an appearance in the Appeals Court nor did he seek permission to do so via a motion for *pro hac vice* admission. At one point, Keenan himself stated to attorney DeJuneas, Hoey, and others that he is not an appellate lawyer, nor does he pretend to be.

35.     The Appeals Court first issued the *Wahlstrom I* opinion, on June 10, 2019, holding that the trial judge applied the wrong legal standard in allowing a new trial and observed in its ruling that "the purpose of an order granting a new trial motion is not to punish attorney misconduct" and that "egregiousness of misconduct absent an effect upon the jury is not a basis for finding the type of miscarriage of justice that warrants nullifying the jury's verdict." *Wahlstrom v. JPA IV Mgmt. Co., Inc*., 95 Mass. App. Ct. 445, 449–50, 453, 127 N.E.3d 274, 279, 282 (2019) As of the time of this opinion, appellate counsel DeJuneas had investigated and

filed a motion to disqualify the trial judge based on public statements the judge had made about the case and these attorneys who appeared before him at the trial. The motion was still pending in the trial court and, consequently, the Appeals Court stayed the appeal pending a decision on the motion for disqualification.

36.     On August 8, 2019, the Appeals Court received report from appellate counsel that the trial judge had recused himself from the case. The Appeals Court lifted the stay and on November 6, 2019, issued the *Wahlstrom II* decision. *Wahlstrom II* holds that, even though Hoey and his associate engaged in misconduct during trial, a review of the record as a whole showed "that the cumulative effect of the attorneys' misconduct does not meet the "relatively high" burden necessary to warrant a new trial." *See, Wahlstrom v. JPA IV Mgt. Co., Inc*., 96 Mass.App.Ct. 1108, 138 N.E.3d 1045 (Mass. App. 2019)

37.     Thus, for over the four years that the new trial order was pending due to the misconduct of Hoey and Hoey Law that angered the trial judge, Ms. Wahlstrom was delayed in recovering her judgment and lost use of those funds. During this time she also suffered emotionally with the prospect of a second trial and the accompanying time and costs that would be involved and the prospect of publicly reliving her trauma and enduring cross-examination by defense counsel yet again.

**Attorney's Lien Dispute**

38.     During the pendency of the appeal, a dispute arose between Hoey and his associate Krzysztof Sobczak over Sobczak's payment for his work on the Wahlstrom case.

39.     Sobczak first filed suit against Hoey and Hoey Law in Middlesex County Superior Court.  Then, on June 13, 2019, Sobczak filed a notice of lien for attorney's fees pursuant to Mass. G. L. ch. 221, § 50 in Ms. Wahlstrom's premises liability case.

40.     Sobczak had no fee agreement with Ms. Wahlstrom but pursued this lien because of his dispute with Hoey over payment he claimed was owed to him by Hoey for his work on the Wahlstrom trial. The dispute arose over promises that Sobczak was made by Hoey over the former's compensation that had nothing to do with Plaintiff Wahlstrom and were unknown to her.

41.     On or around June 18, 2019, Hoey – not Ms. Wahlstrom – engaged attorney Amy Goganian of Goganian & Associates PC. The engagement agreement identifies only David Hoey and Hoey Law as the "Client" for representation in responding to the attorney's lien filed by Sobczak, that Goganian was to be paid an hourly rate for her representation, and that monthly invoices would be issued to Hoey Law. Kira Wahlstrom is not mentioned in the engagement agreement other than in reference to the title of the underlying case. A copy of this engagement agreement is annexed as **Exhibit E** hereto and adopted herein by reference.

42.     Amy Goganian of Goganian & Associates PC never sought or obtained a representation agreement with Ms. Wahlstrom, nor did Ms. Wahlstrom authorize Amy Goganian to file an appearance on her behalf.  Ms. Wahlstrom did not even meet or speak to attorney Goganian who handled these matters until over a year later in or around October 2020.

43.     Ultimately the lien filed by Sobczak was dismissed, but not before unnecessary, hostile and extended motion practice involving impoundment, sanctions, and reconsideration motions and the resulting legal fees generated thereby.

44.     It was Hoey and Hoey Law, not Ms. Wahlstrom, who directed and controlled all litigation related to the attorney lien, including the filing of an unsuccessful motion for sanctions and an unsuccessful motion for reconsideration of sanctions against Sobczak.

**Improper Fees Charged to Ms. Wahlstrom and Taken By Defendants From Monies Held in Trust for Her**

45.     After the Appeals Court decision was issued reversing the order granting a new trial in the underlying Wahlstrom case, the insurance companies for JPA ultimately did not pursue a further appeal.

46.     On November 18, 2019, One Beacon (the primary insurer for JPA) wired $1,670,336.42 to Don Keenan's account. On November 19, 2019, Zurich American Insurance Company (the excess insurer) wired $8,317,347.38 to Keenan's account. Judgment was thereby paid in full with interest totaling $9,987.683.80.

47.     Prior to receipt of these funds, Hoey represented to the excess insurer that Defendants assumed responsibility for the Sobczak attorney's lien that had been filed.

48.     On or around December 17, 2019, Hoey arranged a wire of $4,850,000.00 from Keenan's account to Ms. Wahlstrom from the above-referenced judgment funds received, a sum that was less than half of the recovery. In his email of December 17, 2019, to Ms. Wahlstrom's financial representative, an email on which Ms. Wahlstrom was copied, Hoey stated: "I just authorized a wire in the amount of $4.85 million. (More to come later)."  But no additional funds were sent to Ms. Wahlstrom despite Hoey's promise to her that they would be sent.

49.     Thereafter, from the remaining funds sent by the insurance companies, Hoey and Keenan, rather than the 33.33% agreed to in the fee agreement as their fee, as clearly provided for in Exhibit D, improperly charged the following fees and improper expenses to Ms. Wahlstrom and they took these amounts from her money that they were holding in trust from the payments of the judgment made by the insurance carriers:

(a)  Defendants improperly took $4,025,036.50 of the $9,987.683.80 recovery as an attorney fee, or 40.33 % of the total recovery when they were only entitled to 33.33%

(or $3,329,227.93), adding an additional $695,808.57 or 7% to their fee for the successful appeal. Defendants were not entitled to any additional fee much less to the $695,808.57 that they took. Neither Hoey or Keenan participated at all on the appeal and neither Hoey nor Keenan filed the appellate brief; neither handled any aspect of the appeal at all, as detailed above in paragraphs 30 to 34 of this Complaint. Moreover, the appeal was only required because of the trial judge's problems with the conduct of their trial team (Hoey and Hoey Law) and while Ms. Wahlstrom's appellate lawyers persuaded the Appeals Court to reverse the order for a new trial, it was unreasonable for Defendants to claim an additional recovery for the appeal in this circumstance where they caused it and where no agreement had been made with Plaintiff Wahlstrom to pay this additional fee. Thus, Defendants improperly overcharged Ms. Wahlstrom $695,808.57 for their fee.

(b) Hoey and Keenan also charged Ms. Wahlstrom the fees for appellate counsel, Patricia DeJuneas ($197,091.52) and Robert Cordy ($16,000), for a total of $213,091.52, in effect charging her twice for appellate work. The fee of DeJuneas and Cordy was earned and paid under their engagement agreement with Ms. Wahlstrom while Hoey and Keenan improperly charged an additional 7% of the recovery for appellate work when they had done no such work.

(c) Defendants improperly charged to Ms. Wahlstrom $20,824.00 for attorney Richard Goran to appear on October 20, 2015 for Keenan's non-party foundation, The Keenan's Kids Foundation, Inc.[1]  Goran's participation in the case was strictly limited

---

[1]     The Keenan's Kids Foundation is a Georgia non-profit formed in 1998 of which Don Keenan is listed as the sole officer. Their stated mission is charity work, community awareness, and child advocacy all focused on child safety and at-risk children. See: https://www.keenanskidsfoundation.com/

to defending Keenan's copyright for his litigation strategy manual. [2] Ms. Wahlstrom was not involved whatsoever in this matter, nor did she have an interest in Keenan's ability to protect his intellectual property. This motion benefited only Keenan and not Ms. Wahlstrom. Goran never conferred with Ms. Wahlstrom about the taking of this fee nor did he have a fee agreement with her.

(d) Defendants improperly charged to Ms. Wahlstrom $8,432.39 for fees for Hoey's long-time personal attorney, James Bolan, in connection with defending Hoey against the Sobczak attorney lien caused by Hoey's dispute with Sobczak over payment for Sobczak's work as described above. Bolan never conferred with Ms. Wahlstrom much less obtained her agreement for this charge nor was he retained by her.

(e) Defendants improperly charged to Ms. Wahlstrom at least $41,231.72 for attorney Amy Goganian's fees to defend against the Sobczak lien where the fee agreement was between Goganian and Hoey / Hoey Law as the client obligated to pay Goganian's fees. It now appears, from Hoey's own more recent expense itemization

---

[2]    As described in Justice Wilson's order granting a new trial, the JPA defendants complained "that Plaintiff's counsel followed the "Reptile" playbook at trial. As defense counsel informed me in a pretrial Bench Memorandum, Plaintiff's counsel Mr. Keenan travels the country teaching seminars to plaintiffs' personal injury lawyers based on his book entitled "Reptile, The 2009 Manual of the Plaintiff's Revolution."" *Wahlstrom v. LAZ Parking Ltd., LLC, No. SUCV20101022*, 2016 WL 3919503, at *4 (Mass. Super. May 19, 2016). The JPA defendants attached a copy of the entire book to their new trial motion which attorney Goran, for Keenan's Kids Foundation, sought to impound or expunge.

Justice Wilson denied the motion finding that "the Reptile Manuel is available for purchase at Amazon with only a standard copyright notice and a boilerplate probilution [sic] in the book itself or unauthorized reproduction. In light of the easy availability of the books at issue I conclude that the moving non-party has not adequately protected these publications from purchase by anyone willing to pay the price change of the moving non-party or by Amazon. Therefore I cannot make the "good cause" finding required for impoundment." [sic] Endorsement on Motion, 11/16/2015 in *Wahlstrom v. LAZ Parking Ltd., LLC,* No. SUCV20101022.

summaries, that he took additional money from Ms. Wahlstrom, without her knowledge, to pay attorney Goganian another $31,490.10 for his dispute with Sobczak thereby defrauding her of that additional money.

(f) Defendants also improperly charged to Ms. Wahlstrom $2,655.00 for "constitutional law attorney" John Vail, even though her case did not involve any constitutional issues. Defendant Hoey now falsely claims Vail provided necessary consultation on the appeal while Keenan falsely claims that Ms. Wahlstrom approved and agreed to engage Vail to research and review the jury charge and other matters in the case when Wahlstrom did not. Vail never conferred with Ms. Wahlstrom, nor did he seek or obtain a representation agreement with her.

(g) Defendants also improperly charged to Ms. Wahlstrom $1,316.00 for attorney Catherine Giordano for "research and writing" when this should have been paid out of the agreed upon attorney fee. Defendants have falsely claimed that Ms. Wahlstrom approved and agreed to engage Giordano to research and review the jury charge and other matters in the case when she did not. Giordano never conferred with Ms. Wahlstrom.

(h) Defendants also improperly charged to Ms. Wahlstrom $561.24 for the firm Lewis Brisbois Bisgaard & Smith LLP, a firm understood to be involved with the Sobczak lien dispute and other matters concerning Hoey and Hoey Law. These attorneys never conferred with Ms. Wahlstrom and never sought or obtained a representation agreement with her.

**Improper Expenses Charged to Ms. Wahlstrom and Taken by Defendants from the Monies Held in Trust for Her**

50.     The unjustified expenses improperly charged to Ms. Wahlstrom included a loan from Advocate Capital to fund case costs during litigation. While Ms. Wahlstrom knew and approved a loan to cover litigation expenses, Hoey did not tell her that the company charges exorbitant fees and finance charges: on a principal loan of $415,761.58, Advocate Capital charged fees totaling $238,839.29, over 50% of the principal. Additionally, Defendants' expense accounting does not show what the $415,761.58 covered during the litigation. The use of this money should be subject to the accounting prayed for herein because Ms. Wahlstrom was required to directly and separately pay all expenses, such as approved experts. Thus the need for this large loan is suspect because Hoey informed Ms. Wahlstrom that Advocate Capital was "the lender for the majority, but not all, of the litigation expenses" and then he separately billed to Ms. Wahlstrom over $800,000 more for expenses, including his internal firm costs such as office supplies ($1,992.87), copying ($9,964.60) and postage ($3,030.36) as well as billed Ms. Wahlstrom for media interview assistance and plaques commemorating the trial victory neither of which she received. None of these expenses were authorized or proper.

51.     Defendants also improperly charged Ms. Wahlstrom $51,000 to pay Win Interactive, a litigation support firm, to develop an animation video of the attack in the garage that Defendants planned to offer into evidence at the premises liability trial which was deemed inadmissible. Defendants have claimed that this was an effort to prevent Ms. Wahlstrom from having to testify about the attack at trial. Yet, admissibility of this video was clearly impossible as a matter of evidence law, as well as completely detrimental to Plaintiff's case were she not to be seen by the jury describing the horrible events and details of the assault, and it is doubtful that Defendants truly believed they could win this case without Ms. Wahlstrom testifying about the

attack and her damages. Ms. Wahlstrom was always prepared and ready to testify as she understood she would need to do so if the case went to trial. Further, this significant expense was undertaken for a demonstrative exhibit that had no chance to be admitted and was incurred before establishing its admissibility.

52.     Ms. Wahlstrom made demand for a full accounting and documentation of the above expenses and other expenses and about the disposition of all the monies held in trust for her by Defendants and Defendants have not yet provided a complete accounting or all backup documentation. Ms. Wahlstrom will seek reimbursement for any additional improperly charged expenses uncovered by such accounting when it is provided by Defendants.

53.     On March 27, 2020, months after receipt of payment of the judgment (in November 2019), and after the transfer of funds to Ms. Wahlstrom (in December 2019) based on Defendants' assessment of fees and expenses, Hoey provided and had Ms. Wahlstrom sign an itemization of the above fees and expenses. He then sent another copy of the spreadsheet itemization via email, on March 29, 2020, with additional explanations for some of the charges, stating he was seeking her approval of the expenses, and yet Hoey and Keenan were disbursing funds from the recovery monies held in trust prior to that time in violation of the trust accounting rules of the Commonwealth of Massachusetts applicable to attorney trust accounts. And neither version of the Defendants' itemization sheet stated that the "attorney fee" total calculated included an extra 7% for the appeal paid to Keenan and Hoey.

54.     While Ms. Wahlstrom signed off on the expenses and distributions in March 2020, she did so trusting her attorneys Hoey and Keenan (in whom she had long placed her trust and confidence) that these were all reasonable and appropriate charges under their fee agreements, discovering and understanding only later that certain fees and expenses charged

18

were improper because the fees were contrary to the limitations in the fee agreement and the expenses were unreasonable.

**The O'Toole Lawsuit**

55.    As cited above, when Hoey was first retained by Ms. Wahlstrom in 2010, he entered a referral agreement with attorney O'Toole (Exhibit B) under which O'Toole would receive 33% of the fee recovered by Hoey.

56.    On or around May 20, 2020, Hoey sent O'Toole a check for $250,000 as O'Toole's referral fee.

57.    On March 30, 2021, Attorney O'Toole filed suit against Hoey, Hoey Law and against Ms. Wahlstrom claiming that they all failed to pay O'Toole his proper referral fee. Under the original 2010 Contingency Fee Agreement where Hoey was to receive the 33.3% of any recovery, O'Toole would have received a payment of over $1,000,000 from Hoey rather than receiving $250,000. That case, entitled *O'Toole v. Hoey, et al*., Civil Action No. 2021-0741, is pending in the Superior Court of Suffolk County.

58.    O'Toole amended his complaint on February 23, 2022, keeping Ms. Wahlstrom and Hoey as defendants while also adding Don Keenan and Keenan Law as defendants, alleging in part:

> The Keenan/Hoey/ Wahlstrom fee agreement (Ex. B) [the 2015 Contingency Fee Agreement] was, according to one percipient witness, created while Keenan was on one of his periodic visits to Massachusetts, and Keenan's and Hoey's expressed purpose in creating it was to significantly reduce Mr. O'Toole's fee by rearranging the waterfall of any fee distribution. Indeed, there was and is no other conceivable purpose for rearranging the funds flows so that Keenan was the lead attorney and doing so less than month before trial, when Keenan had *already* agreed to represent Ms. Wahlstrom and had *already* appeared for her months previously. By way of illustration and not limitation, under the original fee agreement (Ex. A), a $4,000,000 fee paid to Hoey would go 33.3% to O'Toole, resulting in a $1,332,000 fee to him. By contrast, under the 'superseding' fee agreement (Ex. B), a $4,000,000 fee paid to Keenan, 50% of which was then paid

to Hoey, would result in a fee of only $660,000 to O'Toole (assuming, contrary to law and fact, that Keenan's and Hoey's unlawful scheme were given effect).

59.     The "percipient witness" is Hoey's former associate and key member of the *Wahlstrom v. JPA* trial team, Krzysztof Sobczak. He provided a sworn affidavit dated February 6, 2022 that stated, to his knowledge, there was no discussion of any other purpose of the Keenan 2015 Contingency Fee Agreement other than reducing the referral fee recovery of O'Toole and that at the time the new agreement was presented to Ms. Wahlstrom to sign, there was no explanation of why and how it would affect how any of the attorneys would be paid. Sobczak also states to his knowledge that Ms. Wahlstrom was not aware of the arrangement between Hoey and Keenan as it would not affect the total attorneys' fees she was obligated to pay under the terms of the new fee agreement she executed (attached as **Exhibit F**).

60.     Ms. Wahlstrom did not know the specific fee arrangement between Hoey and Keenan nor was she aware of or involved in any plan to reduce O'Toole's referral fee from that promised him.

61.     As stated above, Hoey and Keenan collectively paid themselves more than 40% of Ms. Wahlstrom's judgment. Although Hoey initiated Ms. Wahlstrom's premises liability case and acted as lead counsel over five years of contentious litigation through trial, Hoey claims that his fee totaled only $750,000. He has explained that his fee was derived not from the actual recovery amount but from 33% of the last settlement offer ($2,250,000) made by the JPA defendants prior to the verdict in the premises liability case.

62.     In the O'Toole case, Ms. Wahlstrom was at first represented by attorney Amy Goganian, the same attorney that had represented Hoey in litigating the Sobczak attorney lien.

63.     Hoey paid the first three Goganian invoices for her time billed in the O'Toole case from March 2021 through May 31, 2021 (totaling over $21,000) though it is uncertain the

source of funds used for these payments and this is a matter to be determined by the accounting Wahlstrom has sought by this Complaint.

64.     On August 30, 2021, attorney Goganian, on behalf of Ms. Wahlstrom, made a written request that Hoey and Hoey Law pay all legal fees and expenses associated with Ms. Wahlstrom's defense in the O'Toole case stating "regardless of the merits of Attorney O'Toole's allegations … I think we can all agree that Ms. Wahlstrom should never had been put in a position that exposed her to any claim for fees above and beyond what she has paid to date." Attorney Bolan initially responded to attorney Goganian that it was his understanding that Hoey had been reimbursing Ms. Wahlstrom for attorney fees in the O'Toole case but Ms. Wahlstrom was neither reimbursed nor were any further invoices of Goganian paid by Hoey.

65.     On February 16, 2022, counsel for Hoey and Hoey Law, Christine Knipper, appeared in Suffolk Superior Court on the O'Toole case and stated: "we do agree on behalf of my clients that Kira Wahlstrom does not belong in the case."

66.     Hoey and Hoey Law have not paid these fees and the Goganian bills, since accumulated, remain outstanding.  Goganian has now made demand on Ms. Wahlstrom to pay the outstanding bills totaling over $40,000 with interest of 18% per annum.

67.     As of the time of the filing of this complaint, Ms. Wahlstrom's motion to dismiss the O'Toole claims against her remains pending.

**Defendants' Willful and Knowing Misconduct**

68.     Defendants observed first-hand Ms. Wahlstrom's vulnerability and the distress, anxiety, and turmoil she endured throughout litigation in the underlying case because of the

conduct, and often times, to use Hoey's word, "heartless" antics of insurance carriers and their defense counsel.[3]

69.     However, Defendants' conduct has unnecessarily and unreasonably further prolonged Ms. Wahlstrom's severe emotional distress and mired her in additional litigation through no fault of her own. She has now realized that the very attorneys in whom she placed her trust and confidence for the last twelve years, the attorneys on whom she relied on to protect her and pursue just compensation for the trauma she has suffered (and continues to suffer) also took advantage of and betrayed her.

70.     This is not a situation of mere negligence or accounting errors. Defendants knowingly and willfully deceived Ms. Wahlstrom into paying excessive attorneys' fees and costs doing so without her prior knowledge and invoking her trust that these charges were proper when they were clearly not under the contracts these attorneys signed, their representations to Ms. Wahlstrom, and the ethics rules.  Defendants knew that not only did Ms. Wahlstrom totally trust them, but that she was not at all knowledgeable about litigation and challenged by dyslexia and difficulty with math, as Hoey well knew because she explained these conditions to him.

71.     Upon receiving the judgment, and having control over the funds, Defendants kept more than the 33.33% owed for their fee, literally stealing this extra money amounting to $695,808.57, and thereafter using Ms. Wahlstrom's funds to pay attorneys that represented the interests of Hoey and Keenan rather than Ms. Wahlstrom among the other improper fees and expenses itemized above.

---

[3]     Ms. Wahlstrom has claims for bad faith settlement practices pending against the insurance carriers of the JPA defendants based on their conduct during the underlying litigation. (*Wahlstrom v. Zurich, et al.* Case No. 1:19-cv-12208-LTS (D. Mass) and *Wahlstrom v. Zurich, et al.* Case No. 1:22-cv-10037-LTS (D. Mass))

72.     Defendants drafted and directed Ms. Wahlstrom to sign the 2015 Contingency Fee Agreement with Hoey specifically representing to Ms. Wahlstrom that the agreement was the same as the 2010 agreement but with Keenan's name on it and that it did not change the percentage she owed and would not cost her more money. The original 2010 Contingency Fee Agreement provided for an attorney's fee of 33.3% of the recovery and yet under the 2015 Contingency Fee Agreements, Defendants kept 40.33%, charging for an appeal they did prosecute as required by the terms of the agreement for them to be entitled to this extra money.

73.     Wahlstrom relied on her attorneys and trusted their advice and representations in signing the fee agreement and paying the fees and expenses they itemized. As a result, Defendants have taken funds from Ms. Wahlstrom to which they were not entitled, and their conduct also resulted in her being named a defendant in the O'Toole case in relation to which she has been charged more legal fees.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF M.G.L. CHAPTER 93A, SECTION 9

74.     Ms. Wahlstrom realleges each and every allegation stated in each of the paragraphs above as if separately repleaded in full herein.

75.     Defendants Hoey, Hoey Law, Keenan, and Keenan Law, acting together in a coordinated effort, engaged in unfair and deceptive acts, unlawful under Section 2 of Chapter 93A, Massachusetts General Laws, through overcharging and deceiving Ms. Wahlstrom into paying improper, unearned and excessive fees and unreasonable expenses for their representation of her in the underlying case before the Superior Court of Suffolk County.

76.     Defendants took advantage of Ms. Wahlstrom's trust in them, as her attorneys, to deceive her into overpaying them and paying other fees and expenses she was not obligated to pay.

77.     As described in detail above:

a.   After Ms. Wahlstrom had agreed to and executed the 2010 Contingency Fee Agreement with Hoey to initiate and pursue her premises liability case, Defendants advised and instructed Ms. Wahlstrom to sign a second 2015 Contingency Fee Agreement with Keenan, which Hoey specifically represented would not change the percentage Ms. Wahlstrom would owe for attorney's fees and would not cost her more money but was just to put Keenan's name on the agreement since he would be trying the case with Hoey.

b.   Defendants then took an extra 7% for their fee under the 2015 Contingency Fee Agreement that was unearned as they did not prosecute the appeal for which they claimed this fee and the appeal itself was required because of the trial judge's problems with Defendants' trial team conduct during trial – e.g., raising subjects in opening statements in direct violation of a pretrial order and asking improper questions of witnesses including questions that violated court rulings.

c.   Defendants charged Ms. Wahlstrom for additional attorneys they engaged for their own purposes including charging Ms. Wahlstrom the fees for counsel that represented Hoey and Hoey Law on the fee dispute with Sobczak and charging Ms. Wahlstrom for counsel that appeared for Keenan's non-profit foundation to seek protection of intellectual property rights of Keenan.

d.  Defendants charged Ms. Wahlstrom unreasonable expenses including but not limited to excessive loan finance charges, an inadmissible and unnecessary animation video, media consulting and a plaque both of which Ms. Wahlstrom never received.

78.    Defendants' deceptive and unfair billing for improper fees and expenses put their own financial interest above their client and thereby violated their duties and professional responsibility.

79.    Defendants' conduct by which they took unearned and improper fees and expenses from Ms. Wahlstrom directly harmed Ms. Wahlstrom in an amount to be proved at trial of at least $900,000 of overcharged fees and expenses and loss of use of this money.

80.    All of the above were unfair and deceptive practices in violation of M.G.L c. 93A and Ms. Wahlstrom is entitled to damages doubled or trebled under the statute because of the extent of the violations and because Defendants violated their fiduciary duty to their client and did so knowingly and willfully.

81.    Ms. Wahlstrom served Defendants each with a demand letter pursuant to M.G.L. c. 93A over thirty days before filing this suit and Defendants have refused to return these monies taken through unfair and deceptive practices.

## COUNT II

## BREACH OF FIDUCIARY DUTY

82.    Ms. Wahlstrom realleges each and every allegation stated in each of the paragraphs above as if separately repleaded in full herein.

83.    As her attorneys, Defendants Hoey, Hoey Law, Keenan, and Keenan Law had a fiduciary duty to Ms. Wahlstrom including a duty of loyalty and a duty of fidelity.

84.     Defendants breached their duty to Ms. Wahlstrom by putting their own financial interests ahead of hers and using her trust in them to deceive her into paying unearned fees and fees of other attorneys for which she was not obligated to pay as well as unreasonable expenses as detailed above, knowing that all these fees and expenses were unjustified.

85.     Ms. Wahlstrom was damaged by the loss of at least $900,000 which was in part taken by Defendants as a fee for appellate work that was not earned as well as to pay other attorneys for work done on behalf of Defendants and other fees and unreasonable expenses which Ms. Wahlstrom was not obligated to pay as specified above.

86.     Defendants' breach of their duty to Ms. Wahlstrom directly caused her losses by deceitfully and wrongfully using their position as her trusted counsel to take these monies from her and she has been damaged in the amount to be proven at trial amounting to at least $900,000.00.

## COUNT III

## FRAUD

87.     Ms. Wahlstrom realleges each and every allegation stated in each of the paragraphs above as if separately repleaded in full herein.

88.     Defendants knowingly made false representations to Ms. Wahlstrom to induce her to pay more money as follows and as detailed above.

89.     In an email dated June 11, 2015, Defendants Hoey and Hoey Law specifically deceived Ms. Wahlstrom into executing a new fee agreement, the 2015 Contingency Fee Agreement, by falsely stating that the 2015 fee agreement was "the same fee agreement as before but with Don's [Keenan] name since he is also trying the case with me on July 13th. It doesn't

change your percentage or cost you more money. I'll show it to you next time I see you." Hoey induced Ms. Wahlstrom to sign the fee agreement relying on this representation.

90.     On June 19, 2015, Ms. Wahlstrom came in person to Hoey Law offices and Hoey had Ms. Wahlstrom sign the new 2015 Contingency Fee Agreement without any further explanation.

91.     Yet while the original 2010 Contingency Fee Agreement provided that the 33.3% attorney fee paid to Hoey as compensation would include "any associated counsel" and did not name or limit such associated counsel, the later 2015 Contingency Fee Agreement, that Defendants had Ms. Wahlstrom sign, limited associated counsel to Hoey under the section. Hoey did not alert or explain to Ms. Wahlstrom that this change would be used to charge her for other attorneys associated and working with their team on the case (the same way Keenan and Hoey associated themselves though from different firms to work on this case) though he knew he would charge her for the services of these other attorneys and thereafter, after obtaining the recovery from the defendant insurers in the underlying case, Defendants charged to Ms. Wahlstrom and took payment for additional attorneys.

92.     Additionally, while the original fee agreement reflected the same percentage – 33.33% – that would be owed for attorney's fees if there was a recovery, the new agreement provided that the attorney's fee would be paid to Keenan rather than Hoey and that Hoey would receive a portion of the compensation paid to Keenan. Hoey did not disclose to Ms. Wahlstrom that this agreement would be used by Defendants to reduce the recovery of the referring attorney, Austin O'Toole. Defendants' change in the fee agreement and the reduced payment to O'Toole resulted in O'Toole filing a lawsuit claiming his fee was wrongfully reduced and suing Ms.

Wahlstrom as one of the defendants, requiring representation, attorneys' fees and costs for which Ms. Wahlstrom has been billed over $40,000.

93.     On March 27 and March 29, 2020, Hoey and Hoey Law, with the approval and agreement of Keenan and Keenan Law, falsely represented that Ms. Wahlstrom must pay an extra 7% of the recovery, totaling $695,808.57, in the underlying case as attorneys' fees under the 2015 Contingent Fee Agreement with Keenan, in addition to paying her appellate team, by claiming that the total attorney fee owed was $4,025,036.50, when Defendants well knew they were not entitled to the fee and had no good faith basis to believe they were entitled to or had earned that total fee.

94.     On or around March 27 and 29, 2020, Hoey and Hoey Law, with the approval and agreement of Keenan and Keenan Law, falsely represented to Ms. Wahlstrom in their itemization presented to her in person (March 27) and then by email (March 29) that Ms. Wahlstrom must pay fees for additional attorneys when they well knew that Ms. Wahlstrom was not obligated to pay these attorneys because they had performed work on behalf of Hoey and on behalf of Keenan and not Ms. Wahlstrom. Specifically, Defendants falsely represented that Ms. Wahlstrom was obligated to pay the fees for attorney Goren (counsel for Keenan's foundation), attorney Bolan (counsel for Hoey), attorney Goganian (counsel for Hoey) which totaled over $70,000. Defendants also falsely represented that Ms. Wahlstrom was obligated to pay the fees for attorney Vail, attorney Giordano, and the firm Lewis Brisbois Bisgaard & Smith LLP for consulting on the Sobczak/Hoey lien dispute and for "research and writing" which totaled over $4,500 that should have been paid out of the attorney fee.

95.     Ms. Wahlstrom relied to her detriment on the representations and fee itemizations of Defendants, her attorneys, who used her trust in them against her and to their own benefit to induce her to pay for these legal fees she should not have been made to pay.

96.     As a result of Defendants' fraud, Ms. Wahlstrom was damaged in an amount to be proved at trial of at least $900,000.

## COUNT IV

## CONVERSION

97.     Ms. Wahlstrom realleges each and every allegation stated in each of the paragraphs above as if separately repleaded in full herein.

98.     As shown above, Defendants intentionally and wrongfully exercised ownership, control and dominion over Ms. Wahlstrom's funds by presenting a misleading and inaccurate itemization of fees and expenses owed for the underlying case in order to keep unearned funds for themselves and to pay other fees and expenses that should have been paid out of Defendants own fee recovery.

99.     Defendants knew or lacked a good faith belief that they had earned or were entitled to keep these monies from Ms. Wahlstrom.

100.     Using their trusted role as attorneys for Ms. Wahlstrom, Defendants converted funds from her in an amount to be proved at trial totaling at least $900,000.

## COUNT V

## DEMAND FOR ACCOUNTING

101.     Ms. Wahlstrom realleges each and every allegation stated in each of the paragraphs above as if separately repleaded in full herein.

102.    Despite demand, Defendants have failed to fully account to Plaintiff for the disposition of all the monies they received and held in trust for her from the recovery in the of premises liability case. The itemizations, explanations, and supporting documentation provided as of the date hereof are incomplete and inaccurate for the reasons described above.

103.    Ms. Wahlstrom demands and is entitled to a full accounting from Defendants including for the Advocate Capital loan they claim was used for litigation expenses in Ms. Wahlstrom's case.

104.    Defendants should have maintained and retained complete records of the receipt, maintenance, and disposition of their client's funds and been able to render a full written accounting upon demand in compliance with Massachusetts Rules of Professional Conduct Rule 1.15.

105.    Defendants have failed to do so.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kira Wahlstrom respectfully demands relief as follows:

1. Enter judgment in favor of Plaintiff and against Defendants on each of the counts in this Complaint;

2. Award compensatory damages in favor of Plaintiff and against Defendants on Count I (93A violations) in at least the amount of $900,000 and for these damages to be doubled or trebled in this Court's discretion;

3. Award compensatory damages in favor of Plaintiff and against Defendants on Counts II (breach of fiduciary duty), III (fraud), and IV (conversion) in at least the amounts stated above;

4. Order Defendants to produce a full accounting under Count V;

5. Order that Defendants pay over to Plaintiff any monies now being held by Defendants that belongs to her as shown by the accounting prayed for herein;

6. Order disgorgement of ill-gotten profits and restitution of same;

7. Award reasonable attorneys' fees as permitted or authorized by law;

8. Award costs of suit herein incurred as permitted by applicable law; and

9. Order such other and further relief at law or in equity to which the Plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: May 23, 2022                     Respectfully submitted,

*/s/ Bridget A. Zerner*
Bridget A. Zerner (BBO No. 669468)
*/s/ John J.E. Markham, II*
John J.E. Markham, II (BBO No. 638579)
MARKHAM READ ZERNER LLC
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax:(617)742-8604
bzerner@markhamreadzerner.com
jmarkham@markhamreadzerner.com
*Attorneys for the Plaintiff*