IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION - BOSTON)

| | |
|---|---|
| KIRA WAHLSTROM,<br><br>                                   Plaintiff,<br><br>          -against-<br><br>DAVID J. HOEY, LAW OFFICES OF DAVID J. HOEY, P.C., DON C. KEENAN, D.C. KEENAN & ASSOCIATES, P.C. D/B/A THE KEENAN LAW FIRM, P.C., AND KEENAN'S KIDS FOUNDATION, INC.<br><br><br>                                   Defendants | Civil Case No. 1:22-cv-10792-RGS |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS ON THE COUNTERCLAIMS OF DEFENDANTS DON C. KEENAN and D.C. KEENAN & ASSOCIATES, P.C. D/B/A THE KEENAN LAW FIRM P.C.**

Plaintiff Kira Wahlstrom, through undersigned counsel, respectfully submits this Memorandum in support of her motion for judgment on the pleadings on the counterclaims of Defendants Don C. Keenan ("Keenan") and of D.C. Keenan & Associates, P.C. D/B/A The Keenan Law Firm, P.C. ("Keenan Law Firm").

**This Motion**

Plaintiff brings this motion for judgment on the pleadings on the counterclaims filed against her in this court because a state court judge roundly dismissed these claims when they were brought against her previously in the state court. Moreover, even had that dismissal not occurred, the contracts these lawyers drew up and had Ms. Wahlstrom sign plainly show that Keenan's counterclaims against her should be dismissed. The facts, all taken from the pleadings or from other sources this Court may consider on this Rule 12(c) motion, are summarized below.

1

**Relevant Facts**

**The Rape**

On May 1, 2009, Ms. Wahlstrom was brutally raped by Jose Rivera III in a parking garage attached to the Radisson hotel, located in downtown Boston. First Amended Complaint ("FAC") ¶11; *see also* Dkt. 24, Answer of Don Keenan and Keenan Law Firm ("Keenan Answer"), ₱11. Rivera had raped another woman twelve days earlier in the same garage before he returned to the garage and raped Ms. Wahlstrom. *Id*. The garage was owned and managed by JPA IV Management Company, Inc., and JPA I Management Company, Inc. (collectively "JPA"). FAC, ¶12; Keenan Answer, ¶12. After Rivera's rape of the first victim, JPA failed to take measures to warn and failed to put in place increased security measures to protect other garage customers, like Ms. Wahlstrom, from the risk of a future rape. *Id*. Thus, as she walked through the garage early in the morning, she was unreasonably exposed to a risk that could have been easily avoided, and that risk included grievous harm.

**The Victim's Arrangement with Lawyers to Sue the Garage**

Ms. Wahlstrom contacted one of the few attorneys she knew, her then-friend, Austin O'Toole, for assistance in pursuing her claims against the garage and, because he indicated that he was not qualified to handle this type of case, O'Toole referred her to Defendant David Hoey, an attorney who specialized in trying premises liability cases. FAC, ¶15; Dkt. 16, Answer of Hoey and the Law Offices of David Hoey ("Hoey Answer"), ¶15; *see also* Keenan Answer, ¶15.

On or about February 2, 2010, Ms. Wahlstrom entered a contingent fee agreement with Hoey to pursue claims for JPA's negligence. FAC, ¶16; Dkt. 16, Hoey Answer, ¶16. Ms. Wahlstrom agreed with Defendant Hoey to a contingent fee arrangement whereby he, as the attorney handling the case, would receive payment from any recovery. *Id.* That 2010

Contingency Fee Agreement is attached as Exhibit A to the First Amended Complaint (hereinafter, "2010 CFA"). *Id.*; Dkt. 11-1, Ex. A to FAC, 2010 CFA.

Paragraph 5 of the 2010 CFA included these paragraphs:

The client acknowledges the following with respect to (his) (her) legal representation by the Attorney:

a)  It is understood and agreed by the Client that the Client has been referred to and that any fee to be paid pursuant to a matter referred to in Paragraph (1), above, is to be divided in part with AUSTIN S. O'TOOLE, ESQUIRE, pursuant to the applicable provisions of the Code of Professional Responsibility as the same is in force in Massachusetts as Rule 3:08 of the Supreme Judicial Court.

b)  AUSTIN S. O'TOOLE, ESQUIRE will receive periodic reports from the Attorney concerning the progress and disposition of the matter referred to in Paragraph (1) above. However, representation of the Client is to be undertaken by the Attorney and not the firm of AUSTIN S. O'TOOLE, ESQUIRE, personally. All questions, comments, inquiries and correspondence and the like concerning the legal matter which is the subject of this Agreement is to be directed to the Attorney and not to AUSTIN S. O'TOOLE, ESQUIRE, personally.

Dkt. 11-1, 2010 CFA, pp. 1–2. After Ms. Wahlstrom and Attorney Hoey executed the 2010 CFA, Hoey sent the agreement to referring attorney O'Toole with a Referral Agreement that stated:

This will confirm that in connection with the above referenced matter [*Kira Wahlstrom v. Jose Ruben Rivera, et al*] you will receive the following referral fee should there be a recovery in this case: 33% of my fee from the sum recovered.

FAC, ¶19; Hoey Answer, ¶19; Dkt. 11-2 (a copy of the Referral Agreement filed as Exhibit B to the FAC). O'Toole accepted Hoey's offer and executed the Referral Agreement. *Id.* Ms. Wahlstrom also signed the Referral Agreement indicating her consent as required by the Massachusetts Rules of Professional Conduct. *Id.*

On March 12, 2010, Hoey filed suit on behalf of Ms. Wahlstrom against the owner and operator of the hotel garage, JPA, and others, for negligence in Suffolk Superior Court in a case entitled *Wahlstrom v. JPA IV Management Company, Inc. et al*. No. 1084CV01022. FAC, ¶20;

Keenan Answer, ¶20. Prior to trial, Defendant Don Keenan joined Hoey as counsel on the case. Hoey and Keenan had worked together previously in other cases. FAC, ¶21; Keenan Answer, ¶21. On March 13, 2015, Keenan, from Georgia, sought *pro hac vice* admission to appear in the Wahlstrom case on March 13, 2015, which was allowed. *Id.*

On June 11, 2015, Hoey contacted Ms. Wahlstrom stating that he needed her to sign a new fee agreement with Keenan. FAC, ¶22; Hoey Answer, ¶22; Keenan Answer, ¶22. When Ms. Wahlstrom responded in an email asking, "What is the new fee agreement?", Hoey replied: "I mentioned it to you one of the last couple of visits. It's the same fee agreement as before but with Don's [Keenan] name since he is also trying the case with me on July 13th. *It doesn't change your percentage or cost you more money.* I'll show it to you next time I see you." *Id.* (emphasis added); Dkt. 11-3, Exhibit C to FAC (a copy of the emails between Ms. Wahlstrom and Hoey). Ms. Wahlstrom stated to Hoey in the same email chain that she was dyslexic and had trouble with math. *Id.*

On June 16, 2015, Hoey and Keenan had Ms. Wahlstrom sign another contingent fee agreement that provides that Ms. Wahlstrom retains as "Attorney" Don Keenan and The Keenan Law Firm to perform legal services in relation to her "Premises liability claims and injuries received as a result of assault on or about May 1, 2009 in the Radisson Hotel Boston parking lot." FAC, ¶25; Dkt. 11-4, Exhibit D to the FAC, 2015 Contingent Fee Agreement; Hoey Answer, ¶25; Dkt. 24, Keenan Counterclaim, ¶3. The 2015 Contingency Fee Agreement (hereinafter, "2015 CFA") did not state the fee arrangement between Keenan and Hoey, nor did Defendants otherwise disclose the arrangement to Ms. Wahlstrom but instead provided:

Referring/Associated Counsel:

The Client understands that a portion of the compensation payable to the Attorney pursuant to the paragraph above shall be paid to: the Law Offices of David J. Hoey,

P.C. and consents to this division of fees. *Client understands that the Client will not be charged any additional legal fees.*

FAC, ¶¶26-27 (emphasis added); Dkt. 11-4, 2015 CFA; Keenan Counterclaim, ¶4. The 2015 CFA also included the paragraph:

> (10) The Client is responsible for payment of all of the Client's former/prior counsel's reasonable attorney's fees and reasonable costs and expenses and the cost of resolving any dispute between the Client and any other prior counsel over fees or expenses relating to the claim identified in paragraph (1), except if the former/prior counsel is identified as the referring or associated counsel in paragraph (4),

Dkt. 11-4, 2015 CFA, p. 4; Keenan Counterclaim, ¶5.

**The Trial and Appeal of Wahlstrom's Negligence Case Against the Garage Owners**

David Hoey, with his law associate Krzysztof Sobczak, and Don Keenan, with his own associate, tried the case that began with jury selection on July 14, 2015, and ended with a verdict on August 11, 2015. FAC, ¶28; Keenan Answer, ¶28. Ms. Wahlstrom was awarded a verdict of $4 million against the garage owners JPA that, with prejudgment interest and costs, resulted in a total judgment of $6,650,829.58 in 2015. FAC, ¶29; Keenan Answer, ¶29.

After the verdict was rendered, JPA filed a motion for new trial based on attorney misconduct by Ms. Wahlstrom's trial attorneys. FAC, ¶30, Keenan Answer, ¶30. The trial judge (Associate Justice Paul D. Wilson) found, on this new trial motion, that two of her attorneys (Hoey and his associate) engaged in misconduct that adversely affected JPA's substantial rights, misconduct such as repeatedly defying court orders and arguing facts that the judge had ordered not to be mentioned to the jury, often in the presence of the jury. *Id*. As a result, the trial court allowed JPA's motion and ordered a new trial. *Id*. Ms. Wahlstrom appealed and eventually the new trial order was reversed by the Appeals Court. FAC, ¶37; Keenan Answer, ¶37. After this

reversal of the new trial order, the insurance companies for JPA ultimately did not pursue a further appeal. FAC, ¶46; Hoey Answer, ⊮46.

### The Handling of The Funds Due Wahlstrom

On November 18, 2019, the judgment, by then totaling $9,987.683.80 with interest, was paid in full with the amount due wired to the trust account of Keenan.[1] *Id*. On or around December 17, 2019, Hoey arranged a wire of $4,850,000.00 from Keenan's account to Ms. Wahlstrom from these judgment funds, a sum that was less than half of the recovery. FAC, ¶49; Hoey Answer, ⊮49. In his email of December 17, 2019, to Ms. Wahlstrom's financial representative, with Ms. Wahlstrom copied, Hoey stated: "I just authorized a wire in the amount of $4.85 million. (*More to come later*)." *Id*. (emphasis added) However, no additional funds were sent to Ms. Wahlstrom despite Hoey's promise that there was "More to come later." *Id*.

Pursuant to the 2010 Referral Agreement between Hoey and referring attorney Austin O'Toole, on or around May 20, 2020, Hoey sent O'Toole a check for $250,000 as O'Toole's referral fee. FAC, 57; Dkt. 11-2, Referral Agreement; Hoey Answer, ⊮57.

### Wahlstrom's Lawyers Drag Her into their Fee Dispute

On March 30, 2021, Attorney O'Toole filed suit against Hoey, Hoey Law, and against Ms. Wahlstrom claiming that they all failed to pay O'Toole his proper referral fee. FAC, ¶58; Hoey Answer, ⊮58. That case, entitled *O'Toole v. Hoey, et al*., Civil Action No. 2021-0741, is pending in the Superior Court of Suffolk County. *Id*. O'Toole amended his complaint on February 23, 2022, keeping Ms. Wahlstrom and Hoey as defendants while also adding Don Keenan and Keenan Law as defendants. FAC, ¶59; Keenan Counterclaim, ¶6; **Exhibit 1**,

---

[1]     One Beacon (the primary insurer for JPA) wired $1,670,336.42 to Don Keenan's account. FAC, ¶47. On November 19, 2019, Zurich American Insurance Company (the excess insurer) wired $8,317,347.38 to Keenan's account. *Id*.

O'Toole's Amended Complaint.[2] O'Toole asserted a breach of contract claim against Ms. Wahlstrom based on both the 2010 CFA and the 2015 CFA. Ex. 1-7, O'Toole FAC, ¶¶25-29.

Ms. Wahlstrom filed a motion to dismiss all of O'Toole's claims against her. **Exhibit 2**, Wahlstrom's Memorandum in support of her Motion to Dismiss. O'Toole opposed the motion arguing that both under the 2010 CFA (between Ms. Wahlstrom and Hoey) and under the 2015 CFA (between Ms. Wahlstrom and Keenan), O'Toole could hold Ms. Wahlstrom liable for underpayment of his referral fee. **Exhibit 3**, O'Toole's Opposition to Ms. Wahlstrom's Motion to Dismiss. Keenan also filed a motion to dismiss all of O'Toole's claims against him and cited to paragraph 10 of the 2015 CFA in his defense. **Exhibit 4**, Keenan's Memorandum in Support of his Motion to Dismiss.

At the first hearing on these motions to dismiss in the O'Toole case, on May 24, 2022, the following exchange occurred between the Honorable Justice Peter B. Krupp of the Superior Court and counsel:

> THE COURT: Okay. And your client is suing his client who is a victim of rape for money that arguably is due from Mr. Hoey?
>
> [O'Toole's Counsel] MR. FOYE: Yes, Your Honor, because it's --
>
> THE COURT: It's unbelievable to me that you would do that against the person who was his client and who is being re-traumatized by being in this case.
>
> MR. FOYE: Your Honor, I have said that to virtually every Judge in this case almost in so many words. I am suing her because it is a contract case and I have to sue her. Here's what paragraph --
>
> THE COURT: You don't have to sue her, you can sue Hoey.

---

[2]     On Rule 12(c) motion for judgment on the pleadings, the court accepts the truth of all well-pleaded facts and "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). Documents susceptible to judicial notice include state court filings. *See United States v. Mercado*, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries); *Smith v. Grondolsky*, 299 F. Supp. 3d 287, 290 (D. Mass. 2018), aff'd, No. 18-1316, 2019 WL 10378245 (1st Cir. Sept. 4, 2019).

MR. FOYE: Your Honor, Mr. Hoey, every single nickel he has is in a trust somewhere, number one. Number – apparently is in a family trust.

THE COURT: So you'll attach every -- so you'll attach every dime that he gets in the next ten cases.

MR. FOYE: Number two, Your Honor, more importantly, Mr. Hoey and Mr. Keenan are pointing the finger at Ms. Wahlstrom because the 2015 fee agreement says that Ms. Wahlstrom is responsible for paying the fees of all prior counsel except for David J. Hoey. Mr. Keenan in his papers argues that this means that Ms. Wahlstrom is responsible for paying the fee.

Now do I think that's really going to be way this case shakes out? I do not. And I think that Ms. Wahlstrom has a very powerful malpractice claim against her attorneys for gulling her into signing this 2015 fee agreement. And I have more than once offered to take an assignment of rights on that in the context -- other context.

THE COURT: Ms. Knipper? Where's Ms. Knipper?

[Hoey's Counsel] MS. KNIPPER: Yes, Your Honor.

THE COURT: Your client won't indemnify Ms. Wahlstrom so that Ms. Wahlstrom can be out of this case given the continuing issues that this -- being in this case is almost surely to have?

MS. KNIPPER: We have expressed openly in Court that we agree that Ms. Wahlstrom should be dismissed from the case and that she does not belong in the case. Ms. Wahlstrom has asserted a claim against Attorney Hoey. And -- which we anticipate –

THE COURT: Why can't this be worked out with respect to Ms. Wahlstrom? I don't understand.

MR. FOYE: I've been trying, Your Honor. I've been trying. I don't understand either. I'll tell you this. I can tell you this, it's not --

THE COURT: All right. Hold on. Hold on. Hold on.

MR. FOYE: I'm sorry.

THE COURT: I'm raising it because I think it can be resolved and I'm going to see you in a week to see if it has been resolved.

* * * * *

THE COURT: All right. I'm going to take -- I'm going to take the motions to dismiss under advisement. I'm going to see you in a week to find out why Ms. Wahlstrom is still in this case. And the parties are going to work together to figure out some

arrangement where she is out of the case, because there is -- it's inexcusable that counsel have not prioritized that as the highest number one thing to do in this case, is to make sure that she is not going to part with a dime given that -- given the circumstances. Okay. You do not have to name her. And Mr. Hoey should be in a position of protecting her from any claim by you, by the plaintiff, okay, as against Ms. Wahlstrom.

**Exhibit 5**, Transcript of Motion Hearing in O'Toole Case, 5/24/2022, pp. 11–13, 19.

At the second state court hearing on June 8, 2022, during a sidebar discussion when Judge Krupp asked the status of releasing Ms. Wahlstrom from the case, defense counsel reported that they would agree to dismiss Ms. Wahlstrom from the case, without prejudice, and with a tolling agreement to protect O'Toole on the off chance he had a claim against Ms. Wahlstrom. O'Toole's counsel rejected this proposal citing to paragraph 10 of the 2015 CFA:

> THE COURT: But if the Court agrees that she can be dismissed, and you can continue to go forward with your declaratory judgment action, why doesn't that solve your problem?
>
> [O'Toole's Counsel] MR. FOYE: Because, Your Honor, under the Massachusetts Rules of Professional Conduct, that 2015 fee agreement allocates responsibility for the payment of Mr. O'Toole's referral fee to Mr. Keenan, or Ms. Wahlstrom (inaudible at 3:53:59, low audio at sidebar) possibility. If we try the case and only Mr. Keenan is present, particularly where the contract itself says that the client shall have responsibility -- I'm sorry, Your Honor, the client shall have responsibility for paying this fee, I've got a problem. She's liable under the contract. She should bring a claim over against her attorneys for putting her in this position, she has a great malpractice claim. They should be indemnifying her. But the answer is not just –
>
> THE COURT: Is Mr. Hoey or Mr. Keenan advancing the argument that any claim that can be brought by Mr. O'Toole must be brought against the client?
>
> [Hoey's Counsel] MS. KNIPPER: So Mr. Hoey is not advancing that – that argument, he's not part of the 2015 agreement, he's not a signatory to it, and so he's not advancing that agreement.
>
> THE COURT: Mr. Keenan's -- is Mr. Keenan?
>
> [Keenan's Counsel] MR. PINTA: We have not even thought about it, Your Honor. There's been no cross claims asserted against my client. We're not at that point yet. I think it depends on the interpretation of what the model rules provide.

THE COURT: All right.

MR. PINTA: But I have no -- if Mr. Foye's concern is this empty chair defense, we'll stipulate to not pointing the finger at the empty chair --

THE COURT: This can all be worked out with a written agreement.

MR. FOYE: But, Your Honor, if -- if -- if that contract says what it says, and it clearly does, if Mr. Keenan takes the position I am not liable under that contract --

THE COURT: He says he is not -- he's not going to take the position that it's the -- it's the client that's responsible.

MR. FOYE: But my point, Your Honor, is a -- is a bit subtler than that.

THE COURT: Okay.

MR. FOYE: If he takes the position I am not liable under that contract, then he is inevitably taking the position that she is, because those are the only two possibilities under the Rules of Professional Conduct. He's responsible – under Malonis v. Harrington, that contract must allocate responsibility for the payment of prior legal fees to either the lawyer or the client. No third possibility. And if he takes the position that he's not liable, then -- now if he's willing to stipulate that he's liable under the 2015 agreement and she's not, now my problems are solved.

[Wahlstrom's Counsel] MS. ZERNER: Your Honor, I just think that's wrong. I think the way he's reading the contract, we put this in our papers, that paragraph he's relying on applies to when an attorney is terminated and we need to deal with that attorney and the value of their services. We need to address whether the new attorney or the client has to pay that attorney, counsel. That is not the position that Mr. O'Toole is in.

THE COURT: Right.

MS. ZERNER: And it also specifically says in the 2015 agreement, that Mr. Hoey will be paid something. And so since Hoey -- Mr. Hoey is to be paid, and Mr. O'Toole is still going to get paid from whatever recovery (inaudible at 3:56:49, low audio at sidebar) and I just -- I think it's been shown, he's just using this, Ms. Wahlstrom, to leverage his position with the others. He's not letting her out because he's trying to use that to get money out of them or some concession or stipulation-

**Exhibit 6**, Transcript of Motion Hearing in O'Toole Case, 6/8/2022, pp. 6–9.

THE COURT: Counsel, parties to this case who are present in the courtroom, I find it inexcusable that Ms. Wahlstrom is named in this case, and that the parties can't resolve this. There are suitable ways to resolve this case that preserve everybody's

rights and that do not put Ms. Wahlstrom through further traumatic litigation in this Court. There are ways. The parties have articulated them to me at the sidebar. And I -- I continue to believe that the parties can agree to a resolution that does not continue to claim against Ms. Wahlstrom in this matter, at least it doesn't put her through the difficulties of litigation that will further re-traumatize her.

Counsel are officers of the Court, they should understand the consequences of their decisions for somebody who has been through a serious trauma and who was their clients -- who was their client. And I do think that's the obligation on all counsel in this case to try to work something out that does not continue to drag Ms. Wahlstrom in.

*Id.*, p. 14. Judge Krupp then directed the attorneys to continue to confer outside the courtroom on how to release Ms. Wahlstrom from the case while the court handled another matter. *Id.*, pp. 15–16. However, the parties did not reach a resolution. *Id.*

On July 14, 2022, the Superior Court granted Ms. Wahlstrom's Motion to Dismiss O'Toole's Complaint while denying Keenan's Motion to Dismiss O'Toole's claims against him and his firm. FAC, ¶68; Keenan Counterclaim, ¶9; **Exhibit 7**, Memorandum and Order on Motions to Dismiss (Krupp, J.), Suffolk Superior Court, 7/14/2022.[3] Judge Krupp rejected O'Toole's arguments that Ms. Wahlstrom could be liable for his referral fee, specifically rejecting the argument that paragraph 10 of the 2015 CFA made Ms. Wahlstrom liable by the terms of the contract to pay O'Toole's referral fee:

O'Toole's breach of contract claim against Wahlstrom fares no better under the 2015 Contingent Fee Agreement. That agreement makes clear that, other than paying Keenan one third of the gross amount recovered, which will be shared with Hoey, "Client understands that the <u>Client will not be charged any additional legal fees</u>." CFA-2015 ¶4 (emphasis added). In this context, paragraph 10 can only be read as an indemnification clause. It provides:

The Client is responsible for payment of all of the Client's former/prior counsel's reasonable attorney's fees and reasonable

---

[3]   On a motion under Rule 12(c), the court "may supplement the facts contained in the pleadings by considering documents fairly incorporated therein…the authenticity of which are not disputed, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint…[and such] documents need not be formally appended to the pleadings to enable a court to consider them." *Forest City Assumed Loans I Holdings LLC v. EC Hous. Invs.*, No. CV 20-10779-RGS, 2020 WL 5849454, at *2 (D. Mass. Oct. 1, 2020) citing *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

costs and expenses and the cost of resolving any dispute between the Client and any other prior counsel over fees or expenses relating to the claim identified in paragraph (1), except if the former/prior counsel is identified as the referring or associated counsel in paragraph (4) [i.e. Hoey].

*Id.,* 10. O'Toole is not mentioned. This is for obvious reasons. As discussed above, under the 2010 Contingent Fee Agreement and Referral Fee Agreement, it was Hoey's responsibility to pay the referral fee to O'Toole. The parties specifically understood at the time – and in the Referral Fee Agreement Wahlstrom acknowledged the understanding – that Hoey would pay the referral fee and Wahlstrom "'will not be charged any additional legal fees for this referral."

O'Toole has not adequately pled any basis for his enforcement of the 2015 Contingent Fee Agreement as a third-party beneficiary of any promise by Wahlstrom. See <u>Rae v. Air-Speed. Inc</u>., 386 Mass. 187, 195 (1982) ("when one person ... engages with another ... to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for breach of such engagement.") (internal quotation and citation omitted). Massachusetts has adopted the rule of the Restatement (Second) of Contracts § 302, which only allows nonparty contract enforcement by intended beneficiaries; other nonparties, such as incidental beneficiaries, cannot enforce contracts. <u>Miller v. Mooney</u>, 431 Mass. 57,62 (2000). To determine whether a third party is an intended beneficiary, "[i]t must appear from 'the language and circumstances of the contract' that the parties to the contract 'clearly and definitely' intended the beneficiaries to benefit from the promised performance." *Id*., quoting <u>Anderson v. Fox Hill Village Homeowners Corp.</u>, 424 Mass. 365, 366-367 (1997). See also <u>Machado v. System4, LLC</u>, 471 Mass. 204, 210 n.l3 (20 15) ("a court must look to the intentions of the parties at the time the contract was executed and examine whether the contract displays a clear intent to make a nonsignatory a third-party beneficiary") (internal quotations omitted).

Here, the contract does not clearly intend to benefit O'Toole. Not only is O'Toole not mentioned in the 2015 Contingent Fee Agreement, but, as discussed above, such a reading of the 2015 agreement would be flatly inconsistent with the 2010 Contingent Fee Agreement and the Referral Fee Agreement. As between Keenan and Wahlstrom, Wahlstrom agreed effectively to hold Keenan harmless from a claim that prior counsel still had to be paid. Because the 2015 Contingent Fee Agreement does not expressly or clearly imply a benefit to O'Toole, he cannot enforce the agreement as a third-party beneficiary. See <u>Anderson</u>, 424 Mass. at 367 ("[i]n these circumstances the plaintiff is no more than an incidental beneficiary and cannot recover under the [contract]"). Without a basis for a breach of contract claim, I must dismiss Count I against Wahlstrom.

Exhibit 7, Order, pp. 9–11. The Order further held that "only Hoey had the obligation to pay a referral fee to O'Toole" and "[b]y agreeing to the Referral Fee Agreement, O'Toole hitched his wagon to Hoey and any fee he might recover, not to the merits of Wahlstrom's claims." *Id.,* p. 11, fn. 8.  In the same order, Judge Krupp denied Keenan's motion to dismiss O'Toole's claims against him and his firm. *Id*., pp. 13-17.

**The Claims Brought in this Court**

In this Court, Ms. Wahlstrom has brought suit against Hoey and Keenan for taking advantage of her trust and known vulnerabilities to take from her approximately one million dollars in unearned and improper fees and unreasonable expense charges. FAC, ¶¶1–2. Ms. Wahlstrom asserts claims for fraud, breach of fiduciary duty, money had and received, and conversion of trust monies that belonged to her; she invokes M.G.L. c. 93A (the Massachusetts consumer protection statute), because Hoey and Keenan's conduct was unfair and deceptive in violation of that law. FAC, ¶¶75–111 (Counts I–VI). Ms. Wahlstrom's claims against Keenan in this case, among many others, include allegations that Hoey and Keenan's wrongful conduct resulted in Ms. Wahlstrom being sued by O'Toole and caused her to incur legal fees to defend against O'Toole's claims. FAC, ¶¶ 2, 74, 93; Keenan Counterclaim, ¶8. Those claims by O'Toole were tossed out by the Superior Court, and strongly criticized by Judge Krupp, as described above.

On July 25, 2022 (while Ms. Wahlstrom was trying to serve Keenan in this case), Keenan filed his Answer to the O'Toole Amended Complaint in the Superior Court. **Exhibit 8**, Keenan's Answer and Affirmative Defenses to O'Toole Amended Complaint. [4] Despite Keenan's view that Judge Krupp "confirmed as a matter of fact and law that Wahlstrom must defend, indemnify, and

---

[4]     *See*, Ms. Wahlstrom's Motion for Alternative Service on Keenan and his law firm on August 2, 2022 re efforts to serve Keenan in May through July 2022. Dkt. Nos. 12, 13, 14.

hold Keenan harmless against all claims, suits, and damages sought by O'Toole" (Dkt. 24, Counterclaim, ¶9), Keenan did not assert any indemnification (or any other) claim against Ms. Wahlstrom or comparable affirmative defense in the O'Toole case. *See* Exhibit 8.

Instead, on September 16, 2022, Keenan filed his Answer in this case with a Counterclaim asserting against Ms. Wahlstrom claims for breach of contract and indemnification under the 2015 CFA. Dkt. 24, Keenan Counterclaims, ¶¶10–21. Keenan claims that by Ms. Wahlstrom bringing this suit and seeking damages related to the O'Toole case, Ms. Wahlstrom has breached the 2015 CFA and her promise to defend, indemnify, and hold Keenan harmless under its paragraph 10. *Id*. Keenan claims that Ms. Wahlstrom is obligated to indemnify Keenan as against all claims and damages asserted by O'Toole and all claims asserted in the instant action that are derivative of O'Toole's claims, including paying all defense costs incurred by Keenan and paying any judgment entered in favor of O'Toole. *Id*. In his counterclaim, Keenan relies specifically on paragraph 10 of the 2015 CFA as well as the decision of Superior Court. Keenan Counterclaim, ¶¶5, 9.

## ARGUMENT

### I.    Motion for Judgment on the Pleadings Standard

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion unlike a Rule 12(b)(6) motion implicates the pleadings as a whole." *Aponte-Torres v. Univ. of P.R*., 445 F.3d 50, 54 (1st Cir. 2006). As a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). Accordingly, the court must "accept all of the non-movant's well-pleaded factual averments as true." *Rivera-Gomez v. De Castro,* 843 F.2d 631, 635 (1st Cir. 1988). To survive, "a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Perez-Acevedo*, 520 F.3d at 29. Such a motion should be denied if a plaintiff has shown "a plausible entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This means that the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). A claim is facially plausible if the counterclaimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 683, 129 S.Ct. 1937. "Where a complaint pleads facts that are merely consistent with a [counter-]defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678, 129 S.Ct. 1937 (internal quotations omitted). The plausibility standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

‼    While the court takes all factual allegations as true and draws all reasonable inferences in favor of the counterclaimant, the court must disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Citigroup, Inc.,* 535 F.3d 45, 52 (1st Cir. 2008). The court "neither weighs the evidence nor rules on the merits because the issue is not whether

plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Day v. Fallon Cmty. Health Plan, Inc.*, 917 F. Supp. 72, 75 (D. Mass. 1996).

At this stage, "the district court may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation omitted). However, the court may also consider other documents such as documents the authenticity of which are not disputed by the parties; official public records; documents central to the claim; and/or documents sufficiently referred to in the complaint. *See Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) When such documents contradict an allegation in the complaint, the document "trumps the allegation." *See Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (quotations omitted).

Additionally, "[u]nder federal law, a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which that judgment was entered." *McDonough v. City of Quincy*, 452 F.3d 8, 16 (1st Cir. 2006) In Massachusetts, claim preclusion "prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies." *Id*. Issue preclusion typically acts to bar re-litigation of any issue, but it may also bar an entire claim where the issue precluded is an essential element of that claim. *Maroney as Tr. of Premiere Realty Tr. v. Fiorentini*, 405 F. Supp. 3d 282, 290 (D. Mass. 2019) (Cabell, MJ) A party asserting issue preclusion/collateral estoppel must show that (1) there was a final judgment on the merits in a prior adjudication; (2) the plaintiff was a party (or in privity) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior litigation was essential to the earlier judgment. *Id*.

## II.    Ms. Wahlstrom is Entitled to Judgment on Both of Keenan's Counterclaims

In relying on the decision of the Superior Court to assert his counterclaims before this Court, Keenan omits the most critical part—namely that the state court rejected the assertion that Ms. Wahlstrom could be responsible for any fees owed to O'Toole under paragraph 10 of the 2015 CFA. In his counterclaim, Keenan cites only that the Superior Court "ruled in pertinent part as follows":

> [P]aragraph 10 can only be read as an indemnification clause.
> *****
> As between Keenan and Wahlstrom, Wahlstrom agreed effectively to hold Keenan harmless from a claim that prior counsel still had to be paid.

Keenan Counterclaim, ¶9. Then, in the same paragraph, Keenan jumps to the conclusion:

> The Court thus confirmed as a matter of fact and law that Wahlstrom must defend, indemnify, and hold Keenan harmless against all claims, suits, and damages sought by O'Toole or claims/suits derivative of those brought by O'Toole, such as the instant claims asserted by Wahlstrom.

*Id*. The Superior Court Judge clearly made no such ruling. Rather, it held that paragraph 10 (that refers to Ms. Wahlstrom paying any fees of "former/prior counsel"), does not even mention O'Toole, much less provide him any rights against Wahlstrom, and:

> This is for obvious reasons. As discussed above, under the 2010 Contingent Fee Agreement and Referral Fee Agreement, it was Hoey's responsibility to pay the referral fee to O'Toole. The parties specifically understood at the time – and in the Referral Fee Agreement Wahlstrom acknowledged the understanding – that Hoey would pay the referral fee and Wahlstrom "'will not be charged any additional legal fees for this referral."
> *     *     *
> . . . Not only is O'Toole not mentioned in the 2015 Contingent Fee Agreement, but, as discussed above, such a reading of the 2015 agreement would be flatly inconsistent with the 2010 Contingent Fee Agreement and the Referral Fee Agreement. As between Keenan and Wahlstrom, Wahlstrom agreed effectively to hold Keenan harmless from a claim that prior counsel still had to be paid. Because the 2015 Contingent Fee Agreement does not expressly or clearly imply a benefit to O'Toole, he cannot enforce the agreement as a third-party beneficiary. …

Exhibit 7, Memorandum Decision, pp. 10–11. Just as O'Toole could not use paragraph 10 of the 2015 CFA to hold Ms. Wahlstrom liable for his fee claim, neither can Keenan.

Paragraph 10 of the 2015 CFA does not apply to O'Toole's referral fee or his dispute with Hoey and Keenan that he was underpaid. O'Toole only claims that he is owed more as a referring attorney.[5] He was the referring attorney in 2010 and he remained the referring attorney at the time of the 2015 CFA and through today. O'Toole did not represent Wahlstrom and he was not replaced by Keenan to become "former/prior counsel" and he has made no argument that he should be paid fair compensation for services provided under the doctrine *quantum meruit*.[6] O'Toole is only owed and only claims to be owed a referral fee.

In contrast, paragraph 10 of the 2015 CFA tracks one of the options provided in Form B of Rule 1.5 of Massachusetts Rules of Professional Conduct which applies only when "the lawyer is the successor to a lawyer whose representation has terminated before the conclusion of the case" so it is clear to the client whether she "or the successor lawyer is to be responsible for payment of former counsel's attorney's fees and expenses, if any such payment is due." *See* Rule 1.5(c)(8). It is not applicable to O'Toole's referral fee as the Superior Court ruled that "would be flatly inconsistent with the 2010 CFA and the Referral Fee Agreement" and the clear language that Hoey would owe any payment to O'Toole and Ms. Wahlstrom would not be charged any additional fees. The parties' same understanding is further shown by Hoey making a referral fee payment to O'Toole after the recovery came in.

---

[5]   *See Saggese v. Kelley*, 445 Mass. 434, 837 N.E.2d 699, 702 (2005) (Massachusetts Supreme Judicial Court describing a referral fee to be the same scenario that occurred here with O'Toole).

[6]   *See Malonis v. Harrington*, 442 Mass. 692, 700–01, 816 N.E.2d 115, 122–23 (2004), holding:

> When a client, for whatever reason, loses faith in his or her attorney, the client has the unqualified right to change lawyers. *** "But the right of a client so to do has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well." *** The general rule in Massachusetts is that, on discharge, an attorney has no right to recover on the contingent fee contract, but thereafter, the attorney may recover the reasonable value of his services on a theory of quantum meruit.

Notably, in attempting to have O'Toole's claims against himself and his firm dismissed,

Keenan also argued that paragraph 10 protected him. In his motion to dismiss in state court,

Keenan cited to paragraph 10 in seeking to dismiss O'Toole's tortious interference claim

(Exhibit 4, pp. 10–11) and his unjust enrichment/constructive trust claim, arguing:

> Plaintiffs allege that if the Second Fee Agreement "is valid, Mr. Keenan assumed responsibility for ensuring that the proceeds of the Wahlstrom action were distributed in accordance with all lawful existing fee agreements, including the terms of the O'Toole/Hoey/Wahlstrom fee agreement (Ex. A)." FAC, ¶53.
>
> First, Plaintiffs' claim disregards the plain terms of the Second Fee Agreement, specifically Paragraph 10 which provides that "[t]he Client is responsible for payment of all of the Client's former/prior counsel's reasonable attorney's fees and reasonable costs and expenses and the cost of resolving any dispute between the Client and any other prior counsel over fees or expenses relating to the claim identified in paragraph (1)…."

*Id.*, p. 15. In his reply brief filed in state court, Keenan again argued that O'Toole was "prior

counsel" covered by paragraph 10 (*see* Exhibit 4, Reply Brief, p. 4, fn. 4):

> In fact, Keenan ensured that all prior counsel, including Plaintiffs, receive compensation to which they were entitled. *See* Second Fee Agreement, ¶10 (Wahlstrom "is responsible for payment of all of [her] former/prior counsel's reasonable attorney's fees and reasonable costs").

The Superior Court denied Keenan's motion and made no finding that paragraph 10 in any way

applies to provide a defense to O'Toole's claims against Keenan such that Ms. Wahlstrom could

be liable for O'Toole's claims and Keenan's defense fees. Exhibit 7, Memorandum Decision, pp.

13–17. Keenan's decision not to assert his breach and indemnification claims in the O'Toole

case reenforces that he understood the same.

The Superior Court held that paragraph 10 of the 2015 CFA does not apply to O'Toole's

breach of contract claim in granting Ms. Wahlstrom's motion to dismiss for failure to state a

claim. Thus, Keenan cannot assert a breach of contract claim on the same grounds as this "issue

has already been decided in state court, whose rulings are entitled to full faith and credit" and

Keenan, a party to the O'Toole case with a full opportunity to litigate this matter on the motions to dismiss, "cannot now relitigate the matter in federal court." *See Bishay v. Citizens Bank of Massachusetts*, 213 Fed. App'x 8, 9 (1st Cir. 2007); *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 60 n.6 (1st Cir. 2007) (a dismissal for failure to state a claim, under Mass. R. Civ. P. 12(b)(6), operates as a dismissal on the merits).

Even were the issues not already decided in state court, the contract language and facts are undisputed that Keenan does not have a plausible claim for breach nor for indemnification against Ms. Wahlstrom for the O'Toole dispute and this Court should so rule. *See Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013) ("interpretation of a contract is a matter of law for the court"); *Schwanbeck v. Federal–Mogul Corp.*, 412 Mass. 703, 706, 592 N.E.2d 1289 (1992) ("an unambiguous contract will be enforced according to its terms"); *Brooks v. AIG SunAmerica Life Assur. Co*., 480 F.3d 579, 586 (1st Cir. 2007) (plaintiff "must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with substantial certainty, the specific contractual promise the defendant failed to keep."); *Ford v. Lehman Cap.*, No. CIV.A. 10-40092-FDS, 2012 WL 1343977, at *5 (D. Mass. Apr. 17, 2012) (Saylor, J.) (failure to state a claim for breach of contract as "one cannot breach a contract simply by seeking to enforce it"); *Quiros v. Munoz*, 670 F. Supp. 2d 130, 132 (D.P.R. 2009)("breach of contract claim is devoid of factual allegations that demonstrate that they have a plausible claim for relief") Keenan has no claim that Ms. Wahlstrom has breached the 2015 CFA "[b]y demanding relief and payment from Keenan, and by bringing this suit against Keenan seeking damages allegedly due to the O'Toole claim and suit" as asserted in the counterclaims.

**CONCLUSION**

Judgment should enter in favor of Ms. Wahlstrom on both of Keenan's counterclaims.

Dated: November 18, 2022                    Respectfully submitted,

                                            */s/ Bridget A. Zerner*
                                            Bridget A. Zerner (BBO No. 669468)
                                            John J.E. Markham, II (BBO No. 638579)
                                            MARKHAM READ ZERNER LLC
                                            One Commercial Wharf West
                                            Boston, Massachusetts 02110
                                            Tel: (617) 523-6329
                                            Fax:(617)742-8604
                                            bzerner@markhamreadzerner.com
                                            jmarkham@markhamreadzerner.com
                                            *Attorneys for the Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022 this document was served by electronic delivery through the CM/ECF system on the registered participants as identified on the Notice of Electronic Filing, which will forward copies to Counsel of Record.


                                            */s/ Bridget A. Zerner*
                                            Bridget A. Zerner