# Exhibit 5 - 1

Volume I
Pages: 1-24
Exhibits: 0

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPERIOR COURT DEPARTMENT
                                     OF THE TRIAL COURT

*******************************
AUSTIN O'TOOLE, ET AL          *
     Plaintiff                 *
v.                             *     DOCKET NUMBER 2184CV00741
                               *
DAVID HOEY, ET AL              *
     Defendant                 *
*******************************
                    HEARING
                    BEFORE THE HONORABLE PETER B. KRUPP

APPEARANCES:
For the Plaintiff:
Arrowood LLP
10 Post Office Square
7th Floor South
Boston, Massachusetts  02109
By:  Edward F. Foye, Esq.


For the Defendant, Hoey:
Brecher, Wynter, Simons, Fox and Bolan, P.C.
189 Wells Avenue
Newton Center, Massachusetts  02459
By:  Christine A. Knipper, Esq.


(Appearances Continued)


                         Boston, Massachusetts
                         Courtroom 20
                         May 24, 2022


Recording produced by digital audio recording system. Transcript
produced by Approved Court Transcriber, Donna Holmes Dominguez

**Exhibit 5 - 2**

```
Appearances Continued:

For the Defendant, Wahlstrom:
Markham Read Zerner LLC
One Commercial Wharf West
Boston, Massachusetts  02110
By:  Bridget A. Zerner, Esq.


For the Defendant, Keenan:
Todd and Weld LLP
One Federal Street, 27th floor
Boston, Massachusetts  02110
By:  Ian J. Pinta, Esq.
```

**Exhibit 5 - 3**

**I N D E X**

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|

None - Hearing

**Exhibit 5 - 4**

1                  **P R O C E E D I N G S**

2   (Court called to order 3:06:09 p.m.)

3      THE CLERK:  Calling Docket Number 2184CV741, Austin

4  O'Toole, et al v. David Hoey, et al.

5      This matter is before the Court for a Rule 12 Hearing.

6      THE COURT:  Two of them I think.  One by each set of the

7  defendants.

8      Plaintiff's counsel?

9      MR. FOYE:  Good afternoon, Your Honor.  Edward Foye for

10  Austin O'Toole.

11      THE COURT:  All right.  Bear with me one second.

12      Okay.

13      MS. ZERNER:  Good afternoon, Your Honor.  Bridget Zerner

14  for defendant, Kira Wahlstrom.

15      THE COURT:  Okay.

16      And with you?

17      MS. KNIPPER:  Christine Knipper, Your Honor, for

18  defendant, Attorney Hoey and the Law Offices of David Hoey.

19      THE COURT:  I'm sorry, you represent Mr. Hoey?

20      MS. KNIPPER:  I represent Attorney Hoey and his law firm.

21      THE COURT:  Okay.

22      MR. PINTA:  Good afternoon, Your Honor.  Ian Pinta on

23  behalf of Don Keenan and his law firm.

24      THE COURT:  Okay.  Thank you for your papers, they are

25  quite thorough.  I'll hear from either Ms. Zerner or Mr. Pinta

**Exhibit 5 - 5**

1    with respect to the motions to dismiss.

2         MS. ZERNER:  Good afternoon, again, Your Honor.  As you

3    saw in our papers, excuse me, and as you've seen in all of the

4    filings here, this is a -- an attorney fee dispute.

5         THE COURT:  Yes, it is.

6         MS. ZERNER:  And if you're familiar, I can go over the

7    background facts, or do you want me to get to the -- the

8    arguments?

9         THE COURT:  I think the argument is where I'd like you to

10   go.

11        MS. ZERNER:  Okay.  Great.

12        As we put in our papers, Mr. O'Toole asserts three claims

13   against Ms. Wahlstrom based on the alternative theories of

14   liability on the two fee agreements at issue here.  And under

15   either one, on its breach of contract claim, he fails to state

16   a claim against Ms. Wahlstrom.

17        First, it -- on this motion, the Court does not need to

18   decide this dispute that Mr. O'Toole raises about whether or

19   not the 2015 agreement is legal and binding or supersedes

20   since he's arguing alternative liability, that doesn't need to

21   be decided.  It also doesn't matter as Mr. O'Toole argues

22   whether the 2010 contingency fee agreement between Mr. Hoey

23   and my client, Ms. Wahlstrom, and the referral agreement

24   between Mr. Hoey and Mr. O'Toole is read as one contract or

25   not.  Either way, even if that's credited, the claim fails.

**Exhibit 5 - 6**

1   Ms. Wahlstrom has not breached either contract when it comes

2   to Mr. O'Toole or anyone.

3       Under the 2010 fee agreement, she was obligated to pay

4   33.3 percent as her attorney's fee, and it is undisputed and

5   alleged in Mr. O'Toole's Complaint that she paid more than

6   that.  And I note that this is -- this amended Complaint comes

7   later in the case after discovery has occurred and Mr. O'Toole

8   and his counsel have obtained additional information that --

9   that we contend should have led them to drop all claims

10   against Ms. Wahlstrom.

11       Under the 2015 agreement, the same applies.  Ms.

12   Wahlstrom complied and paid over the 33.3 percent owed as the

13   attorney fee, and Mr. O'Toole's fee by the clear terms of his

14   referral agreement was only to receive 33.3 percent from what

15   Attorney Hoey received.  There's no breach by Ms. Wahlstrom,

16   including that the other allegation that's out there, although

17   it didn't seem to come up in the opposition papers, is this

18   allegation that she breached by not updating Mr. O'Toole on

19   the case and these new -- the new referral -- excuse me, the

20   new fee agreement.

21       The 2010 fee agreement is explicitly clear that that

22   obligation was solely the attorney's, i.e. Attorney Hoey to

23   give periodic reports.  That is clear in the contract and

24   there was no obligation for Ms. Wahlstrom to provide any

25   reports.

**Exhibit 5 - 7**

1       The only other hook -- argument by Mr. O'Toole under the

2   2015 agreement is that she may be liable under paragraph 10 of

3   the 2015 contingency fee agreement.  But that so clearly does

4   not apply to Mr. O'Toole.  That is a paragraph included under

5   the Rules of Professional Conduct Rule 1.5 that Mr. O'Toole

6   cites, that only applies to a situation with successor counsel

7   coming in to replace former counsel, and the requirement to

8   address how prior counsel who has now been terminated is going

9   to get paid.  As the Court is familiar and is clear in the

10   case law, once -- if an attorney is operating under a

11   contingency fee agreement and he is terminated, he no longer

12   has a claim to the contingency, but he does have a claim for

13   the reasonable value of his services under quantum meruit.

14   That is what paragraph 10 applies to, and Mr. O'Toole makes no

15   allegation or claim for quantum meruit, he's provided no

16   billings and given no time.  While he points out that he did

17   some work while representing Ms. Wahlstrom in early -- in 2009

18   before the 2010 fee agreement, he doesn't offer his time on

19   that, and I don't think he wants to because I don't think that

20   would even get him the 250,000 that he's received as a

21   referral agreement.

22       So again, there is no breach by Ms. Wahlstrom under

23   either contract, and there is no potential liability for Ms.

24   Wahlstrom under either contract as to Mr. O'Toole.

25       THE COURT:  Okay.  Mr. Foye, I'll hear you with respect

**Exhibit 5 - 8**

1    to Ms. Wahlstrom.

2         MR. FOYE:  Thank you, Your Honor.  With respect to Ms.

3    Wahlstrom, there are actually three claims at issue.  There is

4    the -- in addition to the breach of contract issues, there's

5    also the issue of a declaratory judgment on the scope of the

6    2010 fee agreement.  In essence, as Your Honor knows from

7    reading the papers, the 2015 fee agreement was confected by

8    Mr. Hoey and Mr. Keenan for the sole purpose of reducing Mr.

9    O'Toole's fee.

10        At the time the 2015 agreement was created, Mr. Keenan

11   had, and this seems to be talking about Keenan, I'm actually

12   talking about Wahlstrom.  Mr. Keenan had already signed on to

13   the trial team.  Mr. Keenan already had a fee agreement in

14   place with Mr. Hoey.  Ms. Wahlstrom apparently took Mr.

15   Keenan's and Mr. Hoey's suggestion that she sign this new fee

16   agreement.  What they said to her, we don't know.  Ms. Zerner

17   has told you that we've had some discovery, we haven't had any

18   depositions, I haven't gotten very many documents form either

19   one of the defendants.  Motions to compel are probably

20   overdue, but I wanted to understandably get through the

21   motions to dismiss because the first argument somebody makes

22   on a Motion to Compel well it's going to be dismissed anyway.

23        THE COURT:  All right.  Bear with me a second.  Your

24   claims against Wahlstrom are what?  You've got a breach of

25   contract claim that she had some contract that required her to

**Exhibit 5 - 9**

1    pay --

2         MR. FOYE:  Yes.

3         THE COURT:  -- your client?

4         MR. FOYE:  That's correct, Your Honor.

5         THE COURT:  And how much --

6         MR. FOYE:  Both contracts.

7         THE COURT: -- how much was she required to pay your

8    client

9         MR. FOYE:  Both contracts said that, Your Honor.  The

10   2015 agreement said that in paragraph --

11        THE COURT:  How much was she required to pay your client?

12        MR. FOYE:  One-third of the fee.

13        THE COURT:  Of what fee?

14        MR. FOYE:  That she paid to Mr. Hoey.

15        THE COURT:  She's required to pay or Mr. Hoey is required

16   to pay?

17        MR. FOYE:  They both are required to pay, Your Honor.

18        THE COURT:  Okay.  And how much was Mr. Hoey paid?

19        MR. FOYE:  Mr. Hoey -- well that's another.  He says he

20   was paid $750,000 out of the 4 million.

21        THE COURT:  All right.  All right.  So bear with me a

22   second.  So she's required to pay you say one-third of the fee

23   to Mr. --

24        MR. FOYE:  Yes.

25        THE COURT: -- of the fee that went to Mr. Hoey.  And

**Exhibit 5 - 10**

1   that's the breach of contract claim.

2       And then what other claims are you bringing?  Declaratory

3   judgment?

4       MR. FOYE:  Declaratory judgment regarding --

5       THE COURT:  Which is essentially the same --

6       MR. FOYE: -- the scope of the --

7       THE COURT: -- same question.  Yes, she is in fact

8   entitled to, she's required to pay.

9       MR. FOYE:  Well there's also, Your Honor, subsequent

10  cases.  There's a case pending now in the Federal Court which

11  it's a bad faith insurance -- bad faith claim, bad faith

12  settlement claim against the insurance companies that

13  eventually paid the Wahlstrom judgment.  Mr. Hoey and Ms.

14  Wahlstrom litigated that case under the 2010 fee agreement.

15  That's the signed fee agreement that was in place under which

16  that case is being litigated, and our contention is the way

17  that agreement, since Mr. O'Toole is a party to it, A, and B,

18  given the way that agreement is -- is phrased, Mr. O'Toole is

19  entitled to one-third of the fee Mr. Hoey receives on that as

20  well.

21      THE COURT:  All right.  That hasn't been received yet.

22      MR. FOYE:  Since it derived from the -- right.

23      THE COURT:  That hasn't been received yet.

24      MR. FOYE:  It has not been received.

25      THE COURT:  Okay.  All right.  So you -- all right.

**Exhibit 5 - 11**

1          MR. FOYE:  Motions for summary judgment.

2          THE COURT:  What other claim --

3          MR. FOYE:  I believe are pending.

4          THE COURT:  And what other claim do you have against Ms.

5     Wahlstrom?

6          MR. FOYE:  That is it, Your Honor.

7          THE COURT:  That's it.  So breach of contract and a

8     declaratory judgment?

9          MR. FOYE:  Yes, Your Honor.

10          THE COURT:  Okay.  And your client is suing his client

11    who is a victim of rape for money that arguably is due from

12    Mr. Hoey?

13          MR. FOYE:  Yes, Your Honor, because it's --

14          THE COURT:  It's unbelievable to me that you would do

15    that against the person who was his client and who is being

16    re-traumatized by being in this case.

17          MR. FOYE:  Your Honor, I have said that to virtually

18    every Judge in this case almost in so many words.  I am suing

19    her because it is a contract case and I have to sue her.

20    Here's what paragraph --

21          THE COURT:  You don't have to sue her, you can sue Hoey.

22          MR. FOYE:  Your Honor, Mr. Hoey, every single nickel he

23    has is in a trust somewhere, number one.  Number -- apparently

24    is in a family trust.

25          THE COURT:  So you'll attach every -- so you'll attach

**Exhibit 5 - 12**

1   every dime that he gets in the next ten cases.

2       MR. FOYE:  Number two, Your Honor, more importantly, Mr.

3   Hoey and Mr. Keenan are pointing the finger at Ms. Wahlstrom

4   because the 2015 fee agreement says that Ms. Wahlstrom is

5   responsible for paying the fees of all prior counsel except

6   for David J. Hoey.

7       Mr. Keenan in his papers argues that this means that Ms.

8   Wahlstrom is responsible for paying the fee.

9       Now do I think that's really going to be way this case

10  shakes out?  I do not.  And I think that Ms. Wahlstrom has a

11  very powerful malpractice claim against her attorneys for

12  gulling her into signing this 2015 fee agreement.  And I have

13  more than once offered to take an assignment of rights on that

14  in the context -- other context.

15      THE COURT:  Ms. Knipper?  Where's Ms. Knipper?

16      MS. KNIPPER:  Yes, Your Honor.

17      THE COURT:  Your client won't indemnify Ms. Wahlstrom so

18  that Ms. Wahlstrom can be out of this case given the

19  continuing issues that this -- being in this case is almost

20  surely to have?

21      MS. KNIPPER:  We have expressed openly in Court that we

22  agree that Ms. Wahlstrom should be dismissed from the case and

23  that she does not belong in the case.  Ms. Wahlstrom has

24  asserted a claim against Attorney Hoey.  And -- which we

25  anticipate --

**Exhibit 5 - 13**

1        THE COURT:  Why can't this be worked out with respect to

2    Ms. Wahlstrom?  I don't understand.

3        MR. FOYE:  I've been trying, Your Honor.  I've been

4    trying.  I don't understand either.  I'll tell you this.  I

5    can tell you this, it's not --

6        THE COURT:  All right.  Hold on.  Hold on.  Hold on.

7        MR. FOYE:  I'm sorry.

8        THE COURT:  I'm raising it because I think it can be

9    resolved and I'm going to see you in a week to see if it has

10    been resolved.

11        Mr. Pinta, I'll hear from you.

12        MR. PINTA:  Thank you, Your Honor.  The primary claim

13    against my client, Don Keenan, who was successor counsel is a

14    tortious interference of contractual relations.

15        Now what this case is really about, Your Honor, is Mr.

16    O'Toole's attempt to rewrite his fee agreement with Mr. Hoey.

17    That fee agreement, a referral fee agreement, said that Mr.

18    O'Toole gets thirty-three percent of whatever Mr. Hoey

19    recovered.

20        My client is an expert in premises liability cases.  He

21    was retained to try this case, and he did successfully.  He

22    didn't do it on a pro bono basis.  Just because he took a fee

23    which then reduced Mr. Hoey's fee, which in turn reduced Mr.

24    O'Toole's fee, does not mean that my client tortiously

25    interfered with any kind of contracts.  In fact, it's well

**Exhibit 5 - 14**

1   settled law that a tortious interference claim -- a tortious

2   interference with a contractual relations claim cannot lie

3   against successor counsel when it's based on a contingent fee

4   agreement.  And the seminal case is the Cavicchi case, Your

5   Honor, it's a 2006 Mass. Appeals Court case and it's directly

6   on point.

7        In that case, the plaintiff who was prior counsel,

8   represented an individual, a client in --

9        THE COURT:  It's a case that you cite at some length in

10  your papers?

11       MR. PINTA:  Correct, Your Honor.

12       THE COURT:  Okay.

13       MR. PINTA:  As did my brother.  And in that case, there

14  was the plaintiff, he represented the underlying client in

15  vacating a criminal conviction, a murder conviction.  He

16  earned a fee of approximately $100,000.  Thereafter, he filed

17  and took on a contingency fee case, a civil case against the

18  state for wrongful incarceration.

19       Thereafter, the defendant, Koski, another attorney, he

20  disparaged, uttered material misrepresentations and told the

21  client to not pay the plaintiff on the criminal fee matter and

22  to discharge him on the civil contingent fee matter.  And the

23  prior counsel brought a claim for tortious interference with

24  contractual relations just like done here based on those two

25  agreements.  And the Court dealt with those agreements

**Exhibit 5 - 15**

1   differently.

2        With regards to the contingent fee case, which was still

3   then pending, the Court said claim cannot lie, cannot lie

4   under any set of facts.  And the reason being, is it's rooted

5   in the Rules of Professional Conduct -- Professional Conduct

6   and Public Policy.  Basically a client has the absolute right

7   to retain counsel of his or her own choosing.  But that's only

8   good if an attorney is going to do that, and agree to come on

9   board, and no attorney is going to do that if that attorney

10  could be susceptible or liable for a tortious interference

11  claim.

12       So based on Cavicchi, the Court held that with regards to

13  the then pending contingent fee agreement, a tortious

14  interference claim cannot lie as a matter of law and public

15  policy.

16       With regards to the tortious interference with the

17  criminal fee agreement, that was different.  The Court said a

18  tortious interference claim could lie there because that fee

19  agreement, that matter had concluded.  There was no public

20  policy implications there because there was no need to get a

21  new attorney for that case because the case was over.  There

22  was a fee certain.  That is not what we have here.  Cavicchi

23  is directly on point.  And based on that, it doesn't matter

24  what allegations are made, and in that case, the plaintiff

25  alleged that there was defamation, material

**Exhibit 5 - 16**

1    misrepresentations, that the defendant purposely told the

2    client, the underlying client, to fire the -- the former

3    counsel so that the defendant could get more money.  Even

4    under those set of allegations, the Court still dismissed it

5    on a motion to dismiss, Your Honor, exact same, you know, Rule

6    12(b)(6) motion, and the Court affirmed the dismissal of that

7    tortious interference with contractual relations claim.

8    That's the beginning and end of this case as applies to my

9    client.

10    THE COURT:  All right.  I'll hear then from Mr. Foye.

11    MR. FOYE:  The tortious interference in the Koski case

12    that was deemed sufficient to go forward, Your Honor, was

13    telling the client not to pay the bill.  Telling the client

14    not to pay the predecessor's bill.  Mr. Keenan not only told

15    Ms. Wahlstrom not to pay the predecessor's bill, he assisted

16    Mr. Hoey in creating this fee agreement that was from the

17    beginning a sham intended to do nothing except reduce Mr.

18    O'Toole's fee.  What had happened was that --

19    THE COURT:  Where will I find the allegation in your

20    complaint that --

21    MR. FOYE:  That is in the first amended --

22    THE COURT:  -- that Mr. Keenan told the client not to pay

23    the bill?

24    MR. FOYE:  You will not, Your Honor.

25    THE COURT:  Do I have that?

**Exhibit 5 - 17**

1        MR. FOYE:  You will not.

2        THE COURT:  Okay.  So --

3        MR. FOYE:  You will find allegations that are much worse

4    than that, that what Mr. Keenan did was not tell the client

5    not to pay the bill, but rather assist Mr. Hoey in creating a

6    contractual arrangement that the client was not fully informed

7    about, apparently, may never have been told about what the

8    purpose of it was, never understood what -- why she was

9    signing, what she was signing.  But nevertheless, was signing

10   a paper that was designed to basically take Austin O'Toole's

11   referral fee and reallocate it to Hoey and Keenan for their

12   benefit exclusively.

13        At the time they did this, Mr. Keenan had already signed

14   a contract with Mr. Hoey in 2013 to assist with the case with

15   Mr. Keenan getting forty percent of the take, and Mr. Hoey

16   getting sixty percent.

17        In 2015, he filed a notice of appearance pro hac vice in

18   the Superior Court.  Later in 2015, they signed this fee

19   agreement.

20        Krzysztof Sobczak the attorney, the third attorney who

21   tried the case with Mr. Hoey and Mr. Keenan has come forward,

22   there's an affidavit on the record from him, saying this is

23   what they did.  There was one purpose and one purpose only to

24   this fee agreement, and that was to reduce Mr. O'Toole's take

25   from it and to reallocate it to Hoey and Keenan.  Period.  No

**Exhibit 5 - 18**

1    other reason for it.  And there could not have been another

2    reason for it at that point.  Keenan had already signed on.

3    Hoey had spent almost a million dollars in costs up to that

4    point.

5         So what you have here, Your Honor, is an act of tortious

6    interference and civil conspiracy that is much -- that meets

7    and exceeds anything you'll find in Koski or anywhere else.

8         THE COURT:  Okay.

9         MR. FOYE:  And by the way, that's the real distinguishing

10   feature in all these cases.  All of these cases that Mr. Pinta

11   cites presume good faith and commercial regulatory.  They

12   presume that the lawyer, the second lawyer, is chosen by the

13   client freely and the client voluntarily leaves.  And that the

14   two lawyers are not colluding with each other.

15        Mr. Pinta cites a case called Donovan v. Maloney --

16   Mahoney I think actually, and Donovan sends -- signs a fee

17   agreement, a referral fee agreement with Mahoney, sends

18   Mahoney a case, Mahoney sends it on to someone else.  Donovan

19   says I didn't give you permission to do that.  The Appellate

20   Division said you don't need permission.  Well fair enough.

21   Now there was no duty of good faith in that case, there were

22   other distinguishing factors.  But the real key there is,

23   Mahoney didn't send it to somebody else in his office.  He

24   didn't share in the fee under the table.  That's the other

25   aspect of this case that I would not have Your Honor miss out

**Exhibit 5 - 19**

1   on, which is that eve under the 2015 agreement, that sham fee

2   agreement, Mr. O'Toole never got anything remotely close to

3   what he was entitled to.  Mr. Hoey took a $750,000 fee out of

4   a 4 million dollar overall fee.  He says after spending almost

5   a million dollars in costs, five years, having a contract that

6   entitles him to sixty percent of the fee, over 2 million

7   dollars on gross, Mr. Hoey says, oh, I only got $750,000 as a

8   fee.  Well, I'm asking to see the tax returns and I'm

9   wondering --

10        THE COURT:  All right.  All right.

11        MR. FOYE:  -- if there aren't -- Mr. Hoey and Mr. Keenan

12   have an ongoing referral relationship.

13        THE COURT:  All right.  I'm going to take -- I'm going to

14   take the motions to dismiss under advisement.

15        I'm going to see you in a week to find out why Ms.

16   Wahlstrom is still in this case.  And the parties are going to

17   work together to figure out some arrangement where she is out

18   of the case, because there is -- it's inexcusable that counsel

19   have not prioritized that as the highest number one thing to

20   do in this case, is to make sure that she is not going to part

21   with a dime given that -- given the circumstances.  Okay.  You

22   do not have to name her.   And Mr. Hoey should be in a

23   position of protecting her from any claim by you, by the

24   plaintiff, okay, as against Ms. Wahlstrom.

25        That can be worked out.  So we need a date when I can see

**Exhibit 5 - 20**

```
1    everybody back here.  One of the days that we have allocated

2    for a 2 o'clock list.  I know they're full, but --

3         THE CLERK:  For next week?

4         THE COURT:  Well we can't do it next week because I don't

5    think we have an afternoon.

6         THE CLERK:  So June 8th or 14th.

7         THE COURT:  June 8th?

8         THE CLERK:  Uh-huh.

9         THE COURT:  Can I see how full June 8 is.

10        Thank you.

11        THE CLERK:  And I think we've added a couple of Rule 3

12   16s since then.

13        THE COURT:  Okay.

14        THE CLERK:  But it's -- it's not bad.

15        THE COURT:  No.  Okay.

16        MR. FOYE:  I have a mediation in another case scheduled

17   on June 8th, Your Honor, but it looks like it's going to fall

18   apart.

19        THE COURT:  June 8th at 3:30.

20        MR. FOYE:  Yes.  I can do the mediation in the morning if

21   I have to.  June 8th at 3:30 will work for me.

22        MS. ZERNER:  Yes, Your Honor.

23        MR. PINTA:  Yes, Your Honor.

24        THE COURT:  There are all kinds of ways to do this, but

25   there's no reason, Mr. Foye, you agree?
```

**Exhibit 5 - 21**

1          MR. FOYE:  Absolutely.  Absolutely, Your Honor.

2          THE COURT:  All right.  All right.

3          MR. FOYE:  They were friends.  I mean she came to see us

4     in --

5          THE COURT:  Ms. -- Ms. Knipper, do you agree?

6          MS. KNIPPER:  June 8th works, Your Honor.

7          THE COURT:  Besides that, do you agree that there is a

8     way to make sure that Ms. Wahlstrom is out of this case?

9          MS. KNIPPER:  Well we certainly believe, and -- and we've

10    expressed this.  I mean the issue -- and I take issue with --

11         THE COURT:  I'm not talking -- I'm not talking about a

12    unilateral dismissal by the plaintiff.  I'm talking about

13    making sure that the plaintiff knows that any judgment that he

14    might be able to recover against Ms. Wahlstrom will not come

15    from Ms. Wahlstrom, it will come from your client, or -- or

16    Mr. Keenan if he's still in the case.

17         MS. KNIPPER:  I guess the only thing I would say to that,

18    Your Honor, is that that presumes that there's a valid claim.

19    And what we fundamentally disagree with --

20         THE COURT:  No.  You do not have to presume that.  You do

21    not have to presume that.  You can presume that this is

22    baloney, okay, but you are agreeing that there will be no

23    obligation by Ms. Wahlstrom to pay a dime, and that she'll be

24    out of this case.  I want the parties here on the 8th at 3:30.

25    Every lawyer involved in this case I want them here.  Ms.

**Exhibit 5 - 22**

1   Wahlstrom does not have to be here.

2        MR. PINTA:  Your Honor, my client is out-of-state.

3        THE COURT:  Fine, he can be here.

4        Mr. Hoey will be here.  Okay.  Mr. O'Toole will be here.

5        MR. FOYE:  He's here today, Your Honor.

6        MR. PINTA:  Your Honor, may my client appear remotely via

7   Zoom?

8        THE COURT:  Where is he?

9        MR. PINTA:  He's either in Atlanta or Florida, Your

10  Honor, and I don't know his availability either.

11       THE COURT:  He has to be -- he has to be available for

12  consultation, and he has to be present at the hearing.  Okay.

13  He doesn't have to be here, I'll allow him to be on Zoom

14  because he's out-of-state.  Mr. Hoey has to be here.

15       MS. KNIPPER:  I -- I will obviously --

16       THE COURT:  Three --

17       MS. KNIPPER:  I understand your order -- Your Honor is

18  ordering it, I do not know if Mr. Hoey has a Court appearance

19  in another case, and I don't know if he could appear if he's

20  not here, but I presume -- I will instruct him.  But I can't

21  speak to his schedule.

22       THE COURT:  If he's not going to be able to be here,

23  you'll file a motion giving me three dates when he can be

24  here, and all parties can be here.

25       All right.  I'll take this under advisement.  Thank you.

**Exhibit 5 - 23**

```
1        MS. KNIPPER:  Thank you, Your Honor.

2        MR. FOYE:  Thank you, Your Honor.  Thank you very much.

3        MS. ZERNER:  Thank you, Your Honor.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                        (Adjourned)
```



**Exhibit 5 - 24**

**The Commonwealth of Massachusetts**
**OFFICE OF COURT MANAGEMENT, Transcription Services**

## AUDIO ASSESSMENT FORM

***For court transcribers:*** *Complete this assessment form for each volume of transcript produced, and include it at the back of every original and copy transcript with the certificate page, word index, and CD PDF transcript.*

**TODAY'S DATE:** September 26, 2022          **TRANSCRIBER NAME:** Donna H Dominguez

**CASE NAME:** O'Toole et al v Hoey et al          **CASE NUMBER:** 2184CV00741

**RECORDING DATE** May 24 2022     **TRANSCRIPT VOLUME:** 1 **OF** 1

---

*(circle one)* **TYPE:  CD  TAPE       QUALITY:  EXCELLENT   <mark>GOOD</mark>   FAIR   POOR**

*(circle all that apply)* **ISSUES** *(include time stamp):*

**background noise**                   **time stamp:**_____

**low audio**                                   _____

**low audio at sidebar**              _____

**simultaneous speech**             _____

**speaking away of microphone**  _____

**other:**_____     **time stamp:**_____

_____     _____

_____     _____

_____     _____

**COMMENTS:**_____
_____
_____
_____
_____

**Exhibit 5 - 25**

## <u>Certificate of Accuracy</u>

I, Donna Holmes Dominguez, an Approved Court Transcriber, do hereby certify that the foregoing is a true and accurate transcript of the audio recording provided to me by the Suffolk County Superior Court regarding proceedings in the above-entitled matter.

I, Donna Holmes Dominguez, further certify that the foregoing is in compliance with the Administrative Office of the Trial Court Directive on Transcript Format.

I, Donna Holmes Dominguez, further certify that I neither am counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

"/s/ Donna Holmes Dominguez"
Donna Holmes Dominguez, ACT, CET
Notary Public, Commission Expires 5-17-24

 September 26, 2022
Date

 (781) 820-5032

donna@dhreporting.com

# Keyword Index

**Exhibit 5 - 26**

## $

**$100,000** [1] 14:16
**$750,000** [3] 9:20 19:3,7

## 1

**1.5** [1] 7:5
**10** [2] 7:2,14
**12** [1] 4:5
**12(b)(6** [1] 16:6
**14** [1] 20:6
**16s** [1] 20:12

## 2

**2** [2] 19:6 20:2
**2006** [1] 14:5
**2009** [1] 7:17
**2010** [6] 5:22 6:3,21 7:18 8: 6 10:14
**2013** [1] 17:14
**2015** [12] 5:19 6:11 7:2,3 8: 7,10 9:10 12:4,12 17:17,18 19:1
**2184cv741** [1] 4:3
**250,000** [1] 7:20

## 3

**3** [1] 20:11
**3:06:09** [1] 4:2
**3:30** [3] 20:19,21 21:24
**33.3** [3] 6:4,12,14

## 4

**4** [2] 9:20 19:4

## 8

**8** [8] 20:6,7,9,17,19,21 21:6, 24

## A

**able** [2] 21:14 22:22
**absolute** [1] 15:6
**absolutely** [2] 21:1,1
**act** [1] 18:5
**actually** [3] 8:3,11 18:16
**added** [1] 20:11
**addition** [1] 8:4
**additional** [1] 6:8
**address** [1] 7:8

**adjourned** [1] 23:25
**advisement** [2] 19:14 22: 25
**affidavit** [1] 17:22
**affirmed** [1] 16:6
**afternoon** [5] 4:9,13,22 5: 2 20:5
**agree** [5] 12:22 15:8 20:25 21:5,7
**agreeing** [1] 21:22
**agreement** [39] 5:19,22, 23 6:3,11,14,20,21 7:2,3, 11,18,21 8:6,7,10,13,16 9: 10 10:14,15,17,18 12:4,12 13:16,17,17 14:4 15:13,17, 19 16:16 17:19,24 18:17, 17 19:1,2
**agreements** [3] 5:14 14: 25,25
**al** [2] 4:4,4
**allegation** [4] 6:16,18 7: 15 16:19
**allegations** [3] 15:24 16:4 17:3
**alleged** [2] 6:5 15:25
**allocated** [1] 20:1
**allow** [1] 22:13
**almost** [4] 11:18 12:19 18: 3 19:4
**already** [4] 8:12,13 17:13 18:2
**alternative** [2] 5:13,20
**although** [1] 6:16
**amended** [2] 6:6 16:21
**another** [5] 9:19 14:19 18: 1 20:16 22:19
**anticipate** [1] 12:25
**anyway** [1] 8:22
**apart** [1] 20:18
**apparently** [3] 8:14 11:23 17:7
**appeals** [1] 14:5
**appear** [2] 22:6,19
**appearance** [2] 17:17 22: 18
**appellate** [1] 18:19
**applies** [4] 6:11 7:6,14 16: 8

**apply** [1] 7:4
**approximately** [1] 14:16
**aren't** [1] 19:11
**arguably** [1] 11:11
**argues** [2] 5:21 12:7
**arguing** [1] 5:20
**argument** [3] 5:9 7:1 8:21
**arguments** [1] 5:8
**arrangement** [2] 17:6 19: 17
**aspect** [1] 18:25
**asserted** [1] 12:24
**asserts** [1] 5:12
**assignment** [1] 12:13
**assist** [2] 17:5,14
**assisted** [1] 16:15
**atlanta** [1] 22:9
**attach** [2] 11:25,25
**attempt** [1] 13:16
**attorney** [15] 4:18,20 5:4 6: 13,15,22 7:10 12:24 14:19 15:8,9,9,21 17:20,20
**attorney's** [2] 6:4,22
**attorneys** [1] 12:11
**austin** [3] 4:3,10 17:10
**availability** [1] 22:10
**available** [1] 22:11

## B

**back** [1] 20:1
**background** [1] 5:7
**bad** [4] 10:11,11,11 20:14
**baloney** [1] 21:22
**based** [5] 5:13 14:3,24 15: 12,23
**basically** [2] 15:6 17:10
**basis** [1] 13:22
**bear** [3] 4:11 8:23 9:21
**beginning** [2] 16:8,17
**behalf** [1] 4:23
**believe** [2] 11:3 21:9
**belong** [1] 12:23
**benefit** [1] 17:12
**besides** [1] 21:7
**between** [2] 5:22,24
**bill** [5] 16:13,14,15,23 17:5
**billings** [1] 7:16
**binding** [1] 5:19

**board** [1] 13:9
**bono** [1] 13:22
**both** [3] 9:6,9,17
**breach** [7] 5:15 6:15 7:22 8:4,24 10:1 11:7
**breached** [2] 6:1,18
**bridget** [1] 4:13
**bringing** [1] 10:2
**brother** [1] 14:13
**brought** [1] 14:23

## C

**called** [2] 4:2 18:15
**calling** [1] 4:3
**came** [1] 21:3
**cannot** [4] 14:2 15:3,3,14
**case** [45] 6:7,19 7:10 10:10, 14,16 11:16,18,19 12:9,18, 19,22,23 13:15,21 14:4,4,5, 7,9,13,17,17 15:2,21,21,24 16:8,11,17 14:21 18:15,18, 21,25 19:16,18,20 20:16 21:8,16,24,25 22:19
**cases** [5] 10:10 12:1 13:20 18:10,10
**cavicchi** [3] 14:4 15:12,22
**certain** [1] 15:22
**certainly** [1] 21:9
**choosing** [1] 15:7
**chosen** [1] 18:12
**christine** [1] 4:17
**circumstances** [1] 19:21
**cite** [1] 14:9
**cites** [3] 7:6 18:11,15
**civil** [3] 14:17,22 18:6
**claim** [25] 5:15,16,25 7:12, 12,15 8:25 10:1,11,12 11:2, 4 12:11,24 13:12 14:1,2,23 15:3,11,14,18 16:7 19:23 21:18
**claims** [5] 5:12 6:9 8:3,24 10:2
**clear** [4] 6:13,21,23 7:9
**clearly** [1] 7:3
**clerk** [6] 4:3 20:3,6,8,11,14
**client** [28] 5:23 9:3,8,11 11: 10,10,15 12:17 13:13,20, 24 14:8,14,21 15:6 16:2,2,

# Keyword Index

9,13,13,22 **17**:4,6 **18**:13,13 **21**:15 **22**:2,6
**close** [1] **19**:2
**colluding** [1] **18**:14
**come** [5] **6**:17 **15**:8 **17**:21 **21**:14,15
**comes** [2] **6**:1,6
**coming** [1] **7**:7
**commercial** [1] **18**:11
**companies** [1] **10**:12
**compel** [2] **8**:19,22
**complaint** [3] **6**:5,6 **16**:20
**complied** [1] **6**:12
**concluded** [1] **15**:19
**conduct** [3] **7**:5 **15**:5,5
**confected** [1] **8**:7
**conspiracy** [1] **18**:6
**consultation** [1] **22**:12
**contend** [1] **6**:9
**contention** [1] **10**:16
**context** [2] **12**:14,14
**contingency** [5] **5**:22 **7**:3, 11,12 **14**:17
**contingent** [4] **14**:3,22 **15**: 2,13
**continuing** [1] **12**:19
**contract** [14] **5**:15,24 **6**:1, 23 **7**:23,24 **8**:4,25,25 **10**:1 **11**:7,19 **17**:14 **19**:5
**contracts** [3] **9**:6,9 **13**:25
**contractual** [3] **13**:14 **14**: 2,24 **16**:7 **17**:6
**conviction** [2] **14**:15,15
**correct** [2] **9**:4 **14**:11
**costs** [2] **18**:3 **19**:5
**counsel** [13] **4**:8 **6**:8 **7**:6,7, 8 **12**:5 **13**:13 **14**:3,7,23 **15**: 7 **16**:3 **19**:18
**couple** [1] **20**:11
**court** [78] **4**:2,5,6,11,15,19, 21,24 **5**:5,9,17 **7**:9,25 **8**:23 **9**:3,5,7,11,13,15,18,21,25 **10**:5,7,10,21,23,25 **11**:2,4, 7,10,14,21,25 **12**:15,17,21 **13**:1,6,8 **14**:5,9,12,25 **15**:3, 12,17 **16**:4,6,10,19,22,25 **17**:2,18 **18**:8 **19**:10,13 **20**:4, 7,9,13,15,19,24 **21**:2,5,7,11,

20 **22**:3,8,11,16,18,22
**created** [1] **8**:10
**creating** [2] **16**:16 **17**:5
**credited** [1] **5**:25
**criminal** [3] **14**:15,21 **15**: 17

## D

**date** [1] **19**:25
**dates** [1] **22**:23
**david** [3] **4**:4,18 **12**:6
**days** [1] **20**:1
**dealt** [1] **14**:25
**decide** [1] **5**:18
**decided** [1] **5**:21
**declaratory** [4] **8**:5 **10**:2,4 **11**:8
**deemed** [1] **16**:12
**defamation** [1] **15**:25
**defendant** [5] **4**:14,18 **14**: 19 **16**:1,3
**defendants** [2] **4**:7 **8**:19
**depositions** [1] **8**:18
**derived** [1] **10**:22
**designed** [1] **17**:10
**didn't** [1] **6**:17
**different** [1] **15**:17
**differently** [1] **15**:1
**dime** [3] **12**:1 **19**:21 **21**:23
**directly** [1] **14**:5 **15**:23
**disagree** [1] **21**:19
**discharge** [1] **14**:22
**discovery** [2] **6**:7 **8**:17
**dismiss** [4] **5**:1 **8**:21 **16**:5 **19**:14
**dismissal** [2] **16**:6 **21**:12
**dismissed** [3] **8**:22 **12**:22 **16**:4
**disparaged** [1] **14**:20
**dispute** [2] **5**:4,18
**distinguishing** [2] **18**:9, 22
**division** [1] **18**:20
**docket** [1] **4**:3
**documents** [1] **8**:18
**doesn't** [5] **5**:20,21 **7**:18 **15**:23 **22**:13
**dollar** [1] **19**:4

**dollars** [3] **18**:3 **19**:5,7
**don** [2] **4**:23 **13**:13
**don't** [3] **8**:16 **11**:21 **18**:20
**done** [1] **14**:24
**donovan** [3] **18**:15,16,18
**drop** [1] **6**:9
**due** [1] **11**:11
**duty** [1] **18**:21

## E

**each** [2] **4**:6 **18**:14
**early** [1] **7**:17
**earned** [1] **14**:16
**edward** [1] **4**:9
**either** [10] **4**:25 **5**:15,25 **6**:1 **7**:23,24 **8**:18 **13**:4 **22**:9,10
**end** [1] **16**:8
**enough** [1] **18**:20
**entitled** [3] **10**:8,19 **19**:3
**entitles** [1] **19**:6
**essence** [1] **8**:6
**essentially** [1] **10**:5
**et** [2] **4**:4,4
**eve** [1] **19**:1
**even** [5] **5**:25 **7**:20 **16**:3
**eventually** [1] **10**:13
**everybody** [1] **20**:1
**exact** [1] **16**:5
**exceeds** [1] **18**:7
**except** [2] **12**:5 **16**:17
**exclusively** [1] **17**:12
**excuse** [2] **5**:3 **6**:19
**expert** [1] **13**:20
**explicitly** [1] **6**:21
**expressed** [2] **12**:21 **21**: 10

## F

**fact** [2] **10**:7 **13**:25
**factors** [1] **18**:22
**facts** [2] **5**:7 **15**:4
**fails** [1] **5**:15,25
**fair** [1] **18**:20
**faith** [5] **10**:11,11,11 **18**:11, 21
**familiar** [2] **5**:6 **7**:9
**family** [1] **11**:24
**feature** [1] **18**:10

**federal** [1] **10**:10
**fee** [56] **5**:4,14,22 **6**:3,4,13, 13,20,21 **7**:3,11,18 **8**:6,7,9, 13,15 **9**:12,13,22,25 **10**:14, 15,19 **12**:4,8,12 **13**:16,17, 17,22,23,24 **14**:3,16,17,21, 22 **15**:2,13,17,18,22 **16**:16, 18 **17**:11,18,24 **18**:16,17, 24 **19**:1,3,4,6,8
**fees** [1] **12**:5
**figure** [1] **19**:17
**file** [1] **22**:23
**filed** [2] **14**:16 **17**:17
**filings** [1] **5**:4
**find** [4] **16**:19 **17**:3 **18**:7 **19**: 15
**fine** [1] **22**:3
**finger** [1] **12**:3
**fire** [1] **16**:2
**firm** [2] **4**:20,23
**first** [3] **5**:17 **8**:21 **16**:21
**five** [1] **19**:5
**florida** [1] **22**:9
**form** [1] **8**:18
**former** [2] **7**:7 **16**:2
**forty** [1] **17**:15
**forward** [2] **16**:12 **17**:21
**foye** [43] **4**:9,9 **7**:25 **8**:2 **9**:2, 4,6,9,12,14,17,19,24 **10**:4,6, 9,22,24 **11**:1,3,6,9,13,17,22 **12**:2 **13**:3,7 **16**:10,11,21,24 **17**:1,3 **18**:9 **19**:11 **20**:16,20, 25 **21**:1,3 **22**:5 **23**:2
**freely** [1] **18**:13
**friends** [1] **21**:3
**full** [2] **20**:2,9
**fully** [1] **17**:6
**fundamentally** [1] **21**:19

## G

**gets** [2] **12**:1 **13**:18
**getting** [2] **17**:15,16
**give** [2] **6**:23 **18**:19
**given** [5] **7**:16 **10**:18 **12**:18 **19**:21,21
**giving** [1] **22**:23
**got** [3] **8**:24 **19**:2,7
**gotten** [1] **8**:18

Exhibit 5 - 27

# *Keyword Index*

**Exhibit 5 - 28**

**great** [1] 5:11
**gross** [1] 19:7
**guess** [1] 21:17
**gulling** [1] 12:12

**H**

**hac** [1] 17:17
**happened** [1] 16:18
**hasn't** [2] 10:21,23
**haven't** [2] 8:17,18
**he's** [9] 5:20 7:15,20 21:16 22:5,9,14,19,22
**hear** [4] 4:25 7:25 13:11 16:10
**hearing** [2] 4:5 22:12
**held** [1] 15:12
**here's** [1] 11:20
**highest** [1] 19:19
**hoey** [41] 4:4,18,18,19,20 5:22,24 6:15,22 8:8,14 9:14,15,18,19,25 10:13,19 11:12,21,22 12:3,6,24 13:16,18 16:16 17:5,11,14,15,21,25 18:3 19:3,7,11,22 22:4,14,18
**hoey's** [2] 8:15 13:23
**hold** [3] 13:6,6,6
**honor** [41] 4:9,13,17,22 5:2 8:2,6 9:4,9,17 10:9 11:6,9,13,17,22 12:2,16 13:3,12,15 14:5,11 16:5,12,24 18:5,25 20:22,23 21:1,6,18 22:2,5,6,10,17 23:1,2,3
**hook** [1] 7:1

**I**

**i.e** [1] 6:22
**i'll** [7] 4:25 7:25 13:4,11 16:10 22:13,25
**ian** [1] 4:22
**implications** [1] 15:20
**importantly** [1] 12:2
**incarceration** [1] 14:18
**included** [1] 7:4
**including** [1] 6:16
**indemnify** [1] 12:17
**individual** [1] 14:8
**inexcusable** [1] 19:18

**information** [1] 6:8
**informed** [1] 17:6
**instruct** [1] 22:20
**insurance** [2] 10:11,12
**intended** [1] 16:17
**interfered** [1] 13:25
**interference** [11] 13:14 14:1,2,23 15:10,14,16,18 16:7,11 18:6
**involved** [1] 21:25
**issue** [5] 5:14 8:3,5 21:10,10
**issues** [2] 8:4 12:19
**it's** [14] 8:22 10:11 11:13,14 13:5,25 14:3,5,5,9 15:4 19:18 20:14,14

**J**

**judge** [1] 11:18
**judgment** [7] 8:5 10:3,4,13 11:1,8 21:13
**june** [7] 20:6,7,9,17,19,21 21:6

**K**

**keenan** [20] 4:23 8:8,10,11,12,13 12:3,7 13:13 16:14,22 17:4,11,13,15,21,25 18:2 19:11 21:16
**keenan's** [1] 8:15
**key** [1] 18:22
**kind** [1] 13:25
**kinds** [1] 20:24
**kira** [1] 4:14
**knipper** [14] 4:17,17,20 12:15,15,16,21 21:5,6,9,17 22:15,17 23:1
**knows** [2] 8:6 21:13
**koski** [3] 14:19 16:11 18:7
**krzysztof** [1] 17:20

**L**

**later** [2] 6:7 17:18
**law** [6] 4:18,20,23 7:10 14:1 15:14
**lawyer** [3] 18:12,12 21:25
**lawyers** [1] 18:14
**leaves** [1] 18:13

**led** [1] 6:9
**legal** [1] 5:19
**length** [1] 14:9
**liability** [4] 5:14,20 7:23 13:20
**liable** [1] 7:2 15:10
**lie** [5] 14:2 15:3,3,14,18
**list** [1] 20:2
**litigated** [2] 10:14,16
**longer** [1] 7:11

**M**

**made** [1] 15:24
**mahoney** [5] 18:16,17,18,18,23
**maloney** [1] 18:15
**malpractice** [1] 12:11
**many** [2] 8:18 11:18
**mass** [1] 14:5
**material** [2] 14:20 15:25
**matter** [7] 4:5 5:21 14:21,22 15:14,19,23
**mean** [3] 13:24 21:3,10
**means** [1] 12:7
**mediation** [2] 20:16,20
**meets** [1] 18:6
**meruit** [2] 7:13,15
**might** [1] 21:14
**million** [5] 9:20 18:3 19:4,5,6
**misrepresentations** [2] 14:20 16:1
**miss** [1] 18:25
**money** [2] 11:11 16:3
**morning** [1] 20:20
**motion** [5] 5:17 8:22 16:5,6 22:23
**motions** [5] 5:1 8:19,21 11:1 19:14
**ms** [55] 4:13,17,20,25 5:2,6,11,13,16,23 6:1,10,11,15,24 7:17,22,23 8:1,2,14,16 10:13 11:4 12:3,4,7,10,15,15,16,17,18,21,22,23 13:2 16:15 19:15,24 20:22 21:5,5,6,8,9,14,15,17,23,25 22:15,17 23:1,3
**much** [7] 9:5,7,11,18 17:3

[1] 6:9,25,2
**murder** [1] 14:15

**N**

**name** [1] 19:22
**need** [5] 5:17,20 15:20 18:20 19:25
**never** [3] 17:7,8 19:2
**nevertheless** [1] 17:9
**new** [5] 6:19,19,20 8:15 15:21
**next** [3] 12:1 20:3,4
**nickel** [1] 11:22
**note** [1] 6:6
**nothing** [1] 16:17
**notice** [1] 17:17
**number** [4] 4:3 11:23,23 12:2 19:19

**O**

**o'toole** [2] 4:4,10
**o'toole's** [1] 17:10
**obligated** [1] 6:3
**obligation** [3] 6:22,24 21:23
**obtained** [1] 6:8
**obviously** [1] 22:15
**occurred** [1] 6:7
**o'clock** [1] 20:2
**offer** [1] 7:18
**offered** [1] 12:13
**office** [1] 18:23
**offices** [1] 4:18
**okay** [19] 4:12,15,21,24 5:11 7:25 9:18 10:25 11:10 14:12 17:2 18:8 19:21,24 20:13,15 21:22 22:4,12
**once** [2] 7:10 12:13
**one** [10] 4:6,11 5:15,24 8:19 11:23 17:23,23 19:19 20:1
**one-third** [3] 9:12,22 10:19
**ongoing** [1] 19:12
**only** [8] 6:14 7:1,6 15:7 16:14 17:23 19:7 21:17
**openly** [1] 12:21
**operating** [1] 7:10

# *Keyword Index*

Exhibit 5 - 29

**opposition** [1] 6:17
**order** [2] 4:2 22:17
**ordering** [1] 22:18
**other** [10] 6:16 7:1 10:2 11: 2,4 12:14 18:1,14,22,24
**o'toole** [17] 5:12,18,21,24 6:2,7,18 7:1,4,5,14,24 10: 17,18 13:18 19:2 22:4
**o'toole's** [7] 6:5,13 8:9 13: 16,24 16:18 17:24
**out** [14] 6:16 7:16 9:20 12: 10,18 13:1 18:25 19:3,15, 17,17,25 21:8,24
**out-of-state** [2] 22:2,14
**over** [4] 5:6 6:12 15:21 19: 6
**overall** [1] 19:4
**overdue** [1] 8:20
**owed** [1] 6:12
**own** [1] 15:7

## P

**p.m** [1] 4:2
**paid** [7] 6:5,12 7:9 9:14,18, 20 10:13
**paper** [1] 17:10
**papers** [7] 4:24 5:3,12 6: 17 8:7 12:7 14:10
**paragraph** [5] 7:2,4,14 9: 10 11:20
**part** [1] 19:20
**parties** [3] 19:16 21:24 22: 24
**party** [1] 10:17
**pay** [16] 6:3 9:1,7,11,15,16, 17,22 10:8 14:21 16:13,14, 15,22 17:5 21:23
**paying** [2] 12:5,8
**pending** [4] 10:10 11:3 15: 3,13
**percent** [7] 6:4,12,14 13: 18 17:15,16 19:6
**period** [1] 17:25
**periodic** [1] 6:23
**permission** [2] 18:19,20
**person** [1] 11:15
**phrased** [1] 10:18
**pinta** [13] 4:22,22,25 13:11,

12 14:11,13 18:10,15 20: 23 22:2,6,9
**place** [2] 8:14 10:15
**plaintiff** [7] 14:7,14,21 15: 24 19:24 21:12,13
**plaintiff's** [1] 4:8
**point** [4] 14:6 15:23 18:2,4
**pointing** [1] 12:3
**points** [1] 7:16
**policy** [3] 15:6,15,20
**position** [1] 19:23
**potential** [1] 7:23
**powerful** [1] 12:11
**predecessor's** [2] 16:14, 15
**premises** [1] 13:20
**present** [1] 13:20
**presume** [6] 18:11,12 21: 20,21,21 22:20
**presumes** [1] 21:18
**primary** [1] 13:12
**prior** [4] 7:8 12:5 14:7,23
**prioritized** [1] 19:19
**pro** [2] 13:22 17:17
**probably** [1] 8:19
**professional** [3] 7:5 15:5, 5
**protecting** [1] 19:23
**provide** [1] 6:24
**provided** [1] 7:15
**public** [3] 15:6,14,19
**purpose** [4] 8:8 17:8,23, 23
**purposely** [1] 16:1
**put** [1] 5:12

## Q

**quantum** [2] 7:13,15
**question** [1] 10:7
**quite** [1] 4:25

## R

**raises** [1] 5:18
**raising** [1] 13:8
**rape** [1] 11:11
**rather** [1] 17:5
**read** [1] 5:24
**reading** [1] 8:7

**real** [2] 18:9,22
**reallocate** [2] 17:11,25
**really** [2] 12:9 13:15
**reason** [4] 15:4 18:1,2 20: 25
**reasonable** [1] 7:13
**receive** [1] 6:14
**received** [5] 6:15 7:20 10: 21,23,24
**receives** [1] 10:19
**record** [1] 17:22
**recover** [1] 21:14
**recovered** [1] 13:19
**reduce** [2] 16:17 17:24
**reduced** [2] 13:23,23
**reducing** [1] 8:8
**referral** [8] 5:23 6:14,19 7: 21 13:17 17:11 18:17 19: 12
**regarding** [1] 10:4
**regards** [3] 15:2,12,16
**regulatory** [1] 18:11
**relations** [4] 13:14 14:2, 24 16:7
**relationship** [1] 19:12
**remotely** [2] 19:2 22:6
**replace** [1] 7:7
**reports** [2] 6:23,25
**represent** [2] 4:19,20
**represented** [2] 14:8,14
**representing** [1] 7:17
**required** [8] 8:25 9:7,11, 15,15,17,22 10:8
**requirement** [1] 7:7
**resolved** [2] 13:9,10
**respect** [4] 5:1 7:25 8:2 13: 1
**responsible** [2] 12:5,8
**retain** [1] 15:7
**retained** [1] 13:21
**re-traumatized** [1] 11:16
**returns** [1] 19:8
**rewrite** [1] 13:16
**rights** [1] 12:13
**rooted** [1] 15:4
**rule** [4] 4:5 7:5 16:5 20:11
**rules** [2] 7:5 15:5

**same** [4] 6:11 10:5,7 16:5
**saw** [1] 5:3
**saying** [1] 17:22
**says** [5] 9:19 12:4 18:19 19:4,7
**schedule** [1] 22:21
**scheduled** [1] 20:16
**scope** [2] 8:5 10:6
**second** [4] 4:11 8:23 9:22 18:12
**see** [7] 13:9,9 19:8,15,25 20:9 21:3
**seem** [1] 6:17
**seems** [1] 8:11
**seen** [1] 5:3
**seminal** [1] 14:4
**send** [1] 18:23
**sends** [3] 18:16,17,18
**services** [1] 7:13
**set** [3] 4:6 15:4 16:4
**settled** [1] 14:1
**settlement** [1] 10:12
**shakes** [1] 12:10
**sham** [2] 16:17 19:1
**share** [1] 18:24
**she'll** [1] 21:23
**she's** [3] 9:15,22 10:8
**sign** [1] 8:15
**signed** [5] 8:12 10:15 17: 13,18 18:2
**signing** [4] 12:12 17:9,9,9
**signs** [1] 18:16
**since** [4] 5:20 10:17,22 20: 12
**single** [1] 11:22
**situation** [1] 7:6
**sixty** [2] 17:16 19:6
**sobczak** [1] 17:20
**sole** [1] 8:8
**solely** [1] 6:22
**somebody** [2] 8:21 18:23
**someone** [1] 18:18
**somewhere** [1] 11:23
**sorry** [2] 4:19 13:7
**spending** [1] 19:4
**spent** [1] 18:3

www.protext.com

# *Keyword Index*

**Exhibit 5 - 30**

**state** [2] **5**:15 **14**:18
**still** [4] **15**:2 **16**:4 **19**:16 **21**:16
**subsequent** [1] **10**:9
**successfully** [1] **13**:21
**successor** [3] **7**:6 **13**:13 **14**:3
**sue** [3] **11**:19,21,21
**sufficient** [1] **16**:12
**suggestion** [1] **8**:15
**suing** [2] **11**:10,18
**summary** [1] **11**:1
**superior** [1] **17**:18
**supersedes** [1] **5**:19
**surely** [1] **12**:20
**susceptible** [1] **15**:10

## T

**table** [1] **18**:24
**tax** [1] **19**:8
**team** [1] **8**:13
**ten** [1] **12**:1
**terminated** [2] **7**:8,11
**terms** [1] **6**:13
**that's** [11] **5**:25 **6**:16 **9**:19 **10**:1,15 **11**:7 **12**:9 **15**:7 **16**:8 **18**:9,24
**theories** [1] **5**:13
**there's** [7] **6**:15 **8**:4 **10**:9, 10 **17**:22 **20**:25 **21**:18
**thereafter** [2] **14**:16,19
**third** [1] **17**:20
**thirty-three** [1] **13**:18
**thorough** [1] **4**:25
**three** [4] **5**:12 **8**:3 **22**:16,23
**today** [1] **22**:5
**together** [1] **19**:17
**took** [4] **8**:14 **13**:22 **14**:17 **19**:3
**tortious** [11] **13**:14 **14**:1,1, 23 **15**:10,13,16,18 **16**:7,11 **18**:5
**tortiously** [1] **13**:24
**trial** [1] **8**:13
**tried** [1] **17**:21
**trust** [2] **11**:23,24
**try** [1] **13**:21
**trying** [2] **13**:3,4

**turn** [1] **13**:23
**two** [5] **4**:6 **5**:14 **12**:2 **14**:24 **18**:14

## U

**unbelievable** [1] **11**:14
**under** [18] **5**:14 **6**:3,11 **7**:1, 2,4,10,13,22,24 **10**:14,15 **15**:4 **16**:4 **18**:24 **19**:1,14 **22**:25
**underlying** [2] **14**:14 **16**:2
**understand** [3] **13**:2,4 **22**:17
**understandably** [1] **8**:20
**understood** [1] **17**:8
**undisputed** [1] **6**:4
**unilateral** [1] **21**:12
**up** [2] **6**:17 **18**:3
**updating** [1] **6**:18
**uttered** [1] **14**:20

## V

**vacating** [1] **14**:15
**valid** [1] **21**:18
**value** [1] **7**:13
**via** [1] **22**:6
**vice** [1] **17**:17
**victim** [1] **11**:11
**virtually** [1] **11**:17
**voluntarily** [1] **18**:13

## W

**wahlstrom** [37] **4**:14 **5**:13, 16,23 **6**:1,10,12,15,24 **7**:17, 22,24 **8**:1,3,12,14,24 **10**:13, 14 **11**:5 **12**:3,4,8,10,17,18, 22,23 **13**:2 **16**:15 **19**:16,24 **21**:8,14,15,23 **22**:1
**wanted** [1] **8**:20
**wants** [1] **7**:19
**way** [6] **5**:25 **10**:16,18 **12**:9 **18**:9 **21**:8
**ways** [1] **20**:24
**we've** [3] **8**:17 **20**:11 **21**:9
**week** [4] **13**:9 **19**:15 **20**:3,4
**whatever** [1] **13**:18
**where's** [1] **12**:15
**whether** [2] **5**:18,22

**will** [12] **16**:19,24 **17**:1,3 **20**:21 **21**:14,15,22 **22**:4,4,15, 20
**wondering** [1] **19**:9
**words** [1] **11**:18
**work** [3] **7**:17 **19**:17 **20**:21
**worked** [2] **13**:1 **19**:25
**works** [1] **21**:6
**worse** [1] **17**:3
**wrongful** [1] **14**:18

## Y

**years** [1] **19**:5
**you'll** [4] **11**:25,25 **18**:7 **22**:23
**you've** [2] **5**:3 **8**:24

## Z

**zerner** [9] **4**:13,13,25 **5**:2,6, 11 **8**:16 **20**:22 **23**:3
**zoom** [2] **22**:7,13

www.protext.com