COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                           SUPERIOR COURT DEPARTMENT
                                             CIVIL ACTION NO. 2184-CV-00741**F**

AUSTIN O'TOOLE, and THE LAW OFFICES OF )
AUSTIN SCOTT O'TOOLE, P.C., )
           Plaintiff, )             4/12/2022 e-filed KG

      v. )

DAVID HOEY AND THE LAW OFFICES OF )
DAVID HOEY, P.C., KIRA WAHLSTROM, DON )
KEENAN, AND THE KEENAN LAW FIRM, P.C., )
           Defendants. )

*Notice sent 7/18/22*

*7/14/22 After hearing. ALLOWED See Memorandum and Order of same date.*

## DEFENDANT KIRA WAHLSTROM'S MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT

Pursuant to Rule 12(b)(6), Defendant Kira Wahlstrom moves to dismiss the claims asserted against her in Plaintiffs' First Amended Complaint for failure to state a claim: Count I for Breach of Contract, Count II for Breach of the Covenant of Good Faith and Fair Dealing, and Count IV for Declaratory Judgment. Plaintiffs Austin O'Toole, Esq. and the Law Office of Austin Scott O'Toole, P.C. (herein, "O'Toole"), assert these claims seeking to recover additional payment of a referral fee under a Referral Agreement between O'Toole and Defendant David J. Hoey and the Law Office of David J. Hoey, P.C.

As shown in the accompanying memorandum and exhibits, O'Toole fails to state a claim against Ms. Wahlstrom upon which relief can be granted. Furthermore, the contract terms and undisputed facts involved, long known to O'Toole and his counsel, so clearly establish that Ms. Wahlstrom should not be a party to this attorney dispute over fees that Rule 11 sanctions are appropriate.

1

NOTIFY                    Exhibit 7 - 2

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPARTMENT
                                                CIVIL ACTION NO. 21-0741

AUSTIN O'TOOLE and THE LAW           )
OFFICES OF AUSTIN O'TOOLE, P.C.,     )
                                     )
            Plaintiffs,              )
                                     )
v.                                   )
                                     )
DAVID HOEY, THE LAW OFFICES OF       )
DAVID HOEY, P.C., KIRA               )
WAHLSTROM, DON KEENAN, and           )
THE KEENAN LAW FIRM, P.C.,           )
                                     )
            Defendants.              )

### NEWLY ADDED DEFENDANTS DON KEENAN AND
### THE KEENAN LAW FIRM, P.C.'S MOTION TO DISMISS

The newly added defendants, attorney Don Keenan and The Keenan Law Firm, P.C. (together, "Keenan"), bring this motion to dismiss all claims asserted against them in this action. Each claim fails as a matter of law based upon the plain language of the contracts Plaintiffs' Amended Complaint places at issue and the Massachusetts Rules of Professional Conduct.

Keenan files herewith a Memorandum of Law in Support of this Motion to Dismiss, as well as an affidavit from undersigned counsel.

Accordingly, defendants Don Keenan and The Keenan Law Firm, P.C. respectfully request that the Court allow this motion and dismiss the claims against them with prejudice.

*7/14/22 After hearing, DENIED. See Memorandum and Order of same date. [signature]*

*Notice sent 7/18/22 GDS*

1

NOTIFY

Exhibit 7 - 3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                          SUPERIOR COURT
                                                                      Civil No. 21-741-BLS1

AUSTIN O'TOOLE, & another[1]
Plaintiffs

vs.

DAVID HOEY, & others[2]
Defendants

### MEMORANDUM AND ORDER
### ON MOTIONS TO DISMISS

Plaintiffs Austin O'Toole and his law firm (together, "O'Toole") seek damages and declaratory relief after defendant David Hoey and his law firm (together, "Hoey") allegedly underpaid a fee due to O'Toole for referring a personal injury client to Hoey in 2010. O'Toole has sued Hoey; the client Kira Wahlstrom ("Wahlstrom"); and Don Keenan and his law firm (together "Keenan"), who joined Hoey in 2015 to represent Wahlstrom. Wahlstrom and Keenan now move to dismiss. For the following reasons, Wahlstrom's motion is allowed and Keenan's motion is denied.

### BACKGROUND[3]

A.  **Factual Background**

In 2009, Wahlstrom approached O'Toole to represent her in a premises liability case after she "was raped in a parking garage . . . in which the very man who raped her had raped another

---

[1]   Law Offices of Austin Scott O'Toole, P.C.

[2]   Law Offices of David Hoey, P.C., Kira Wahlstrom, Don Keenan, and Keenan Law Firm, P.C.

[3]   The summary of the facts set out in this section are drawn from the allegations in plaintiffs' First Amended Complaint ("FAC"), the documents attached thereto or referenced therein, and the sources expressly cited.

woman less than two weeks earlier." Wahlstrom v. JPA IV Management Co., 96 Mass. App. Ct. 1108, 2019 WL 5788001 at *1 (Nov. 6, 2019) (Rule 1:28 decision). O'Toole and Wahlstrom agreed that Wahlstrom should hire an attorney with premises liability experience.

1.   **Wahlstrom Hires Hoey**

O'Toole brought in Hoey to represent Wahlstrom under a contingent fee agreement, and Hoey agreed to pay O'Toole a referral fee. To memorialize this arrangement, on or about February 2, 2010, the parties signed two documents: a Massachusetts Contingent Fee Agreement ("the 2010 Contingent Fee Agreement" or "CFA-2010"), and a letter agreement regarding the referral fee ("the Referral Fee Agreement").

Under the 2010 Contingent Fee Agreement, Wahlstrom retained "as 'Attorney' the Law Offices of David J. Hoey, P.C. . . . and Austin S. O'Toole, Esquire" to perform services in connection with "premises liability and injuries received on or about May 1, 2009 in the Radisson parking garage." CFA-2010 ¶ 1. She agreed to pay "to the Attorney . . . 33.3% of the gross amount recovered," id. ¶ 4, plus "reasonable expenses and disbursements." Id. ¶ 5, first para. Although the agreement seems to refer to both Hoey and O'Toole as the "Attorney," it is only signed by Wahlstrom and Hoey, strongly suggesting that O'Toole was not included within the definition of "Attorney" in the agreement. See, e.g., Mass. R. Prof. Cond. 1.5(c) ("a contingent fee agreement shall be in writing and signed in duplicate by both the lawyer and the client") (emphasis added).

Other provisions of the 2010 Contingent Fee Agreement reflect that O'Toole is not included in the definition of "Attorney" in the Agreement. For example, Wahlstrom agrees that the fee that "is to be paid by the Client to the Attorney" under paragraph 4 for the work specified in paragraph 1 "is to be divided in part with AUSTIN S. O'TOOLE, ESQUIRE." CFA-2010 ¶ 5(a). See Mass. R. Prof. Cond. 1.5(e). In addition, Hoey and Wahlstrom agreed:

2

> AUSTIN S. O'TOOLE, ESQUIRE will receive periodic reports from the Attorney concerning the progress and disposition of the matter referred to in Paragraph 1 above. However, representation of the Client is to be undertaken by the Attorney and not the firm of AUSTIN S. O'TOOLE, ESQUIRE, personally. All questions, comments, inquiries and correspondence and the like concerning the legal matter which is the subject of this Agreement is to be directed to the Attorney and not to AUSTIN S. O'TOOLE, ESQUIRE, personally.

CFA-2010 ¶ 5(b).

The Referral Fee Agreement takes the form of a short letter. In it, Hoey promises O'Toole that, if there is a recovery in Wahlstrom's case, which it refers to as Wahlstrom v. Rivera, et al., O'Toole will receive a referral fee equal to "33% of my [Hoey's] fee from the sum recovered." Although O'Toole did not sign the 2010 Contingent Fee Agreement, he signed the Referral Fee Agreement, accepting and agreeing to its terms. Walstrom also signed the Referral Fee Agreement, indicating her "consent to Attorney Austin O'Toole receiving a referral fee in this matter" and her understanding "that I [Wahlstrom] will not be charged any additional legal fees for this referral by Attorney Hoey to Attorney O'Toole."

On March 12, 2010, Hoey filed suit in Suffolk Superior Court in the case entitled Wahlstrom v. Rivera, et al., Civil No. 10-1022 ("Wahlstrom's Case"). The case was litigated vigorously into 2015 and was set for trial in the summer of 2015.[4]

At some point during pretrial proceedings, Hoey engaged Keenan to work on Wahlstrom's Case. Keenan, an attorney in Atlanta, had devised a "provocative theory that jurors will render large plaintiffs' verdicts if one appeals to their most basic instincts." FAC ¶ 8. See also Wahlstrom v. LAZ Parking Ltd., LLC, 2016 WL 3919503 at *4 (Mass. Super. May 19,

---

[4] I take judicial notice of the case filings and docket in the Suffolk Superior Court case. See Jarosz v. Palmer, 436 Mas. 526, 530 (2002) ("a judge may take judicial notice of the court's records in a related action").

3

2016) (Wilson, J.), rev'd on other grounds, Wahlstrom v. JPA IV Management Co., 96 Mass. App. Ct. 1108, 2019 WL 5788001 at *1 (Nov. 6, 2019) (Rule 1:28 decision). When Hoey engaged Keenan to work on Wahlstrom's Case, Hoey and Keenan had an ongoing referral arrangement pursuant to which Keenan would receive 30-50 percent of the legal fee on any case in which he was involved, depending on the extent of his involvement. Hoey did not disclose Keenan's involvement to O'Toole. Hoey and Keenan have collaborated on other cases before and after Wahlstrom's Case.

On March 13, 2015, plaintiff's counsel in Wahlstrom's Case filed a motion to admit Keenan *pro hac vice* to represent Wahlstrom. The motion was allowed on March 27, 2015. No one told O'Toole that Keenan had become co-counsel in the case.

### 2. A Second Contingent Fee Agreement

In June 2015, almost five and a half years after O'Toole referred Wahlstrom to Hoey and shortly before trial was to begin in Wahlstrom's Case, Wahlstrom and Keenan signed a Massachusetts Contingent Fee Agreement ("the 2015 Contingent Fee Agreement" or "CFA-2015"). In it, Wahlstrom retained "as 'Attorney' DON C. KEENAN and [his law firm]" to perform services in connection with "[p]remises liability claims and injuries received as a result of assault on or about May 1, 2009 in the Radisson Hotel Boston parking lot." CFA-2015 ¶ 1. Wahlstrom agreed to pay "to the Attorney . . . 33 and 1/3 % . . . of gross amount recovered," or a slightly higher percentage if a resolution was only achieved after filing an appellate brief or after an appellate decision, id. ¶ 4; plus "reasonable expenses and disbursements." Id. ¶ 5.

Under the label "Referring/Associated Counsel," the agreement states: "The Client understands that a portion of the compensation payable to the Attorney . . . shall be paid to: the Law Offices of David J. Hoey, P.C. and consents to this division of fees. Client understands that the Client will not be charged any additional legal fees." Id. (underlining in original). The 2015

4

agreement does not reflect what Hoey's fee would be, and no other writing identifies that fee.[5]

As is relevant here, the 2015 agreement with Keenan also states as follows:

> The Client is responsible for payment of all of the Client's former/prior counsel's reasonable attorney's fees and reasonable costs and expenses and the cost of resolving any dispute between the Client and any other prior counsel over fees or expenses relating to the claim identified in paragraph (1), except if the former/prior counsel is identified as the referring or associated counsel in paragraph (4) [, i.e. Hoey].

CFA-2015 ¶ 10. Based on information from a "percipient witness," O'Toole alleges "Keenan's and Hoey's expressed purpose in creating [the 2015 Contingent Fee Agreement] was to significantly reduce Mr. O'Toole's fee by rearranging the waterfall of any fee distribution." FAC ¶ 17. O'Toole did not know about or consent to the 2015 Contingent Fee Agreement.

### 3. Trial, Judgment and Payment

Wahlstrom's Case was tried in the Summer of 2015. The jury found in Wahlstrom's favor and awarded $4 million in damages. Although the trial judge ordered a new trial based on trial misconduct by Wahlstrom's attorneys, Wahlstrom v. LAZ Parking Ltd., LLC, 2016 WL 3919503 at *12 (Mass. Super. 2016), the Appeals Court found that the trial judge applied the wrong legal standard, Wahlstrom v. JPA IV Management Co., Inc., 95 Mass. App. Ct. 445, 450 (2019), and ultimately reversed the grant of a new trial. Wahlstrom v. JPA IV Management Co., Inc., 96 Mass. App. Ct. 1108, 2019 WL 5788001 at *4 (Nov. 6, 2019) (Rule 1:28 decision).

On November 18, 2019, one of the Wahlstrom's Case defendants' insurers paid Wahlstrom $9,987,683.80 in full satisfaction of the judgment, including accrued interest. On

---

[5] Plaintiff alleges "[u]pon information and belief, that Hoey and Keenan intended that the amount of the referral fee would be governed by the pre-existing and ongoing referral fee arrangement," to wit, that Hoey would receive 50-70% of the fee depending on the extent of Keenan's involvement. FAC ¶ 16. See, supra, at 4. Hoey testified that such a written referral agreement had existed, but has since been lost or destroyed.

5

May 20, 2020, Hoey sent O'Toole a check for $250,000, which Hoey "claimed . . . represented one-third of Hoey's 'net fee.'" FAC ¶ 21. Plaintiff alleges that in response to O'Toole's requests for information, Hoey stonewalled. Hoey did not disclose until late 2020 that a later agreement superseded the 2010 Contingent Fee Agreement.

According to plaintiff, under the 2010 Contingent Fee Agreement, one-third of the total paid to Wahlstrom, or $3,329,227.93, should have been paid to Hoey, and one-third of that, or $1,109,742.64, should have been his referral fee. Alternatively, O'Toole claims that, under Hoey and Keenan's standing referral agreement, the least Hoey would be entitled to was fifty percent of the one-third contingent fee payment, and that "O'Toole expects to prove that his fee should have been not less than $670,000."[6] FAC ¶ 23. See also Id. ¶ 29.

### B. Procedural History

O'Toole originally filed suit only against Wahlstrom and Hoey. In his First Amended Complaint, O'Toole added claims against Keenan and his law firm. The First Amended Complaint sets out claims for breach of contract and breach of the covenant of good faith and fair dealing against Hoey and Wahlstrom (Counts I and II); unfair and deceptive trade practices in violation of G.L. c. 93A, § 11 against Hoey (Count III) and Keenan (Count VIII); tortious interference with contractual relations (Count V) and unjust enrichment (Count VII) against Keenan; civil conspiracy against Hoey and Keenan (Count VI); and declaratory judgment against all of the defendants (Counts IV and IX).[7]

---

[6] It is not clear to the Court how O'Toole reaches this number. Fifty percent of the one-third fee of $3,329,227.93 is $1,664,628.96, and one-third of that is $554,876.32.

[7] Count IX is brought only against Hoey and Keenan and seeks a declaration of facts sufficient to render a judgment against them nondischargeable in bankruptcy.

6

Wahlstrom and Keenan now move to dismiss all the claims against them; specifically, Counts I, II and IV against Wahlstrom, and Counts IV, V, VI, VII, VIII, and IX against Keenan. The claims against Hoey are not before me on the instant motions.

## DISCUSSION

To survive a motion to dismiss under Mass. R. Civ. P. 12(b)(6), a complaint must set forth factual allegations that amount to "more than labels and conclusions." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The factual allegations must "'raise a right to relief above the speculative level, . . . plausibly suggesting (not merely consistent with)' an entitlement to relief." Iannacchino, 451 Mass. at 636, quoting Bell Atl., 550 U.S. at 555, 557. Moreover, I must draw all reasonable inferences from the well-pled factual allegations in the plaintiffs' favor. Dunn v. Genzyme Corp., 486 Mass. 713, 717 (2021). Applying this standard, I will address the claims against Wahlstrom first before turning to the claims against Keenan.

I. **Wahlstrom's Motion**

   A. **Breach of Contract (Count I)**

Plaintiffs allege that Wahlstrom breached the 2010 Contingent Fee Agreement in "multiple respects," including "(i) failure to provide O'Toole with periodic updates on the status and disposition of the case despite multiple requests and (ii) failure to pay O'Toole the amounts due under contract." FAC ¶ 27. Alternatively, they allege that even if the 2015 Contingent Fee Agreement "were given effect," "a breach of contract still occurred in so far as O'Toole was underpaid." Id. ¶ 29.

"[I]nterpretation of a contract is a question of law for the court." Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007). I take plaintiffs' breach of contract allegations in turn.

7

Plaintiffs' first breach of contract theory fails against Wahlstrom because Hoey – not Wahlstrom – was obliged to give O'Toole periodic updates about the status and disposition of Wahlstrom's Case. O'Toole cannot pursue a breach of contract claim against Wahlstrom for violation of a provision the plain language of which imposed no obligation on her.

Similarly, the 2010 Contingent Fee Agreement and the Referral Fee Agreement, which were drafted and executed together, and should be read together, see Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 251 (1992) (where documents executed together no error in treating them as "part of one transaction" and reading them together), make clear that it was Hoey's obligation to pay O'Toole out of his (Hoey's) fee. Other than her obligation to pay Hoey (from which funds O'Toole was to be paid), Wahlstrom shouldered no responsibility to pay the referral fee to O'Toole.

The only argument that Wahlstrom had any obligation to pay the referral fee arises from the provision in the 2010 Contingent Fee Agreement that requires Wahlstrom to pay the contingent fee "to the Attorney," CFA-2010 ¶ 4, and the initial language in that agreement seemingly defining the "Attorney" retained as Hoey *and* O'Toole. The other provisions of the 2010 Contingent Fee Agreement and the language of the Referral Fee Agreement make clear, however, that only Hoey is the "Attorney" under the 2010 Contingent Fee Agreement, not both Hoey and O'Toole. The agreement states that "representation of the Client is to be undertaken by the Attorney and not the firm of AUSTIN S. O'TOOLE, ESQUIRE, personally," CFA-2010 ¶ 5(b), that "the Attorney" will periodically update O'Toole, id., and that questions about the legal matters under the agreement are "to be directed to the Attorney and not to AUSTIN S. O'TOOLE, personally." Id. These provisions make clear that Hoey is the "Attorney," not O'Toole. Similarly, while the agreement specifies that Wahlstrom will pay the contingent fee payment to the "Attorney," it also makes clear that the fees paid to the "Attorney" will be shared

8

with O'Toole. Id. ¶ 5(a). If "Attorney" already included both Hoey and O'Toole, it would not have been necessary to describe splitting fees between Hoey and O'Toole. This interpretation of the 2010 Contingent Fee Agreement is also consistent with the fact that O'Toole did not sign the 2010 Contingent Fee Agreement as required under Mass. R. Prof. Cond. 1.5(c). See, e.g., Guenard v. Burke, 387 Mass. 802, 807 (1982) (contingent fee agreement invalid where one party did not sign it).

If viewing the 2010 Contingent Fee Agreement alone were insufficient to resolve any ambiguity, the Referral Fee Agreement puts those doubts to rest. Under that agreement, Hoey agreed to pay O'Toole's referral fee, which will be "33% of my fee from the sum recovered." (Emphasis added). Moreover, in signing the Referral Fee Agreement, Wahlstrom expressly consented "to [O'Toole] receiving a referral fee in this matter" and confirmed the understanding "that I [Wahlstrom] will not be charged any additional legal fees for this referral." Because Wahlstrom was not directly liable by the terms of the contract to pay O'Toole a referral fee, she cannot have breached the 2010 Contingent Fee Agreement with respect to O'Toole.

O'Toole's breach of contract claim against Wahlstrom fares no better under the 2015 Contingent Fee Agreement. That agreement makes clear that, other than paying Keenan one-third of the gross amount recovered, which will be shared with Hoey, "Client understands that the Client will not be charged any additional legal fees." CFA-2015 ¶ 4 (emphasis added). In this context, paragraph 10 can only be read as an indemnification clause. It provides:

> The Client is responsible for payment of all of the Client's former/prior counsel's reasonable attorney's fees and reasonable costs and expenses and the cost of resolving any dispute between the Client and any other prior counsel over fees or expenses relating to the claim identified in paragraph (1), except if the former/prior counsel is identified as the referring or associated counsel in paragraph (4) [i.e. Hoey].

9

Id. ¶ 10. O'Toole is not mentioned. This is for obvious reasons. As discussed above, under the 2010 Contingent Fee Agreement and Referral Fee Agreement, it was Hoey's responsibility to pay the referral fee to O'Toole. The parties specifically understood at the time – and in the Referral Fee Agreement Wahlstrom acknowledged the understanding – that Hoey would pay the referral fee and Wahlstrom "will not be charged any additional legal fees for this referral."

O'Toole has not adequately pled any basis for his enforcement of the 2015 Contingent Fee Agreement as a third-party beneficiary of any promise by Wahlstrom. See Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) ("when one person . . . engages with another . . . to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for breach of such engagement.") (internal quotation and citation omitted). Massachusetts has adopted the rule of the Restatement (Second) of Contracts § 302, which only allows nonparty contract enforcement by intended beneficiaries; other nonparties, such as incidental beneficiaries, cannot enforce contracts. Miller v. Mooney, 431 Mass. 57, 62 (2000). To determine whether a third party is an intended beneficiary, "[i]t must appear from 'the language and circumstances of the contract' that the parties to the contract 'clearly and definitely' intended the beneficiaries to benefit from the promised performance." Id., quoting Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366-367 (1997). See also Machado v. System4, LLC, 471 Mass. 204, 210 n.13 (2015) ("a court must look to the intentions of the parties at the time the contract was executed and examine whether the contract displays a clear intent to make a nonsignatory a third-party beneficiary") (internal quotations omitted).

Here, the contract does not clearly intend to benefit O'Toole. Not only is O'Toole not mentioned in the 2015 Contingent Fee Agreement, but, as discussed above, such a reading of the 2015 agreement would be flatly inconsistent with the 2010 Contingent Fee Agreement and the Referral Fee Agreement. As between Keenan and Wahlstrom, Wahlstrom agreed effectively to

10

hold Keenan harmless from a claim that prior counsel still had to be paid. Because the 2015 Contingent Fee Agreement does not expressly or clearly imply a benefit to O'Toole, he cannot enforce the agreement as a third-party beneficiary. See <u>Anderson</u>, 424 Mass. at 367 ("[i]n these circumstances the plaintiff is no more than an incidental beneficiary and cannot recover under the [contract]"). Without a basis for a breach of contract claim, I must dismiss Count I against Wahlstrom.

### B. <u>Breach of the Covenant of Good Faith and Fair Dealing (Count II)</u>

Plaintiffs next allege that Wahlstrom breached the covenant of good faith and fair dealing by "surreptitiously entering into" the 2015 Agreement. Every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing, <u>Anthony's Pier Four, Inc.</u> v. <u>HBC Assocs.</u>, 411 Mass. 451, 473 (1991), which "ensure[s] that neither party interferes with the ability of the other to enjoy the fruits of the contract." <u>Chokel</u> v. <u>Genzyme Corp.</u>, 449 Mass. 272, 276 (2007). The covenant does not "create new rights and duties not otherwise provided" by the original contract. <u>Id.</u>, quoting <u>Uno Restaurants, Inc.</u> v. <u>Boston Kenmore Realty Corp.</u>, 441 Mass. 376, 385 (2004).

The 2010 Contingent Fee Agreement imposed no contractual burdens on Wahlstrom with respect to O'Toole. To the contrary, only Hoey had the obligation to provide O'Toole with periodic updates, and only Hoey had the obligation to pay a referral fee to O'Toole.[8] Thus, while

---

[8] The Referral Fee Agreement sets the referral fee at one-third of Hoey's fee. It did not peg the referral fee to the "gross amount recovered" in Wahlstrom's Case (e.g. one-ninth of the gross amount recovered). The fact that the Referral Fee Agreement does not define the referral fee in reference to the gross amount recovered in Wahlstrom's Case allows for possible changes in the relationship between Wahlstrom and Hoey, and the possibility that Hoey's fee may be less than one-third of the amount recovered (e.g. if Hoey's services were terminated or other fee-sharing was necessary). By agreeing to the Referral Fee Agreement, O'Toole hitched his wagon to Hoey and any fee he might recover, not to the merits of Wahlstrom's claims. O'Toole could not be assured that there would be no changes in the Wahlstrom/Hoey relationship; the Massachusetts Rules of Professional Conduct envision the possibility of the

11

**Exhibit 7 - 14**

Hoey may have breached the covenant of good faith and fair dealing implied in the Referral Fee Agreement and/or the 2010 Contingent Fee Agreement by subverting O'Toole's reasonable expectations, Wahlstrom owed no duty to O'Toole, and no such duty could be placed on her through the implied covenant of good faith and fair dealing.

### C.  Declaratory Judgment (Count IV)

Declaratory relief is appropriate where "an actual controversy has arisen and is specifically set forth in the pleadings." G.L. c. 231A, § 1. Plaintiffs seek declaratory relief to resolve what they claim is an actual controversy about O'Toole's rights under the 2010 Contingent Fee Agreement in "a 176D action" that Hoey filed on behalf of Wahlstrom "against the insurer of the defendants, which is currently filed in the federal court in Boston," FAC ¶ 42, and "a loss of consortium action on behalf of [Wahlstrom's] minor children in which [Wahlstrom's] ex-husband is the nominal plaintiff," which Wahlstrom "authorized." FAC ¶ 43.

There are several problems with this count. First, it is not clear there is an actual controversy. At most, plaintiffs allege that "Hoey and Wahlstrom have refused to acknowledge Mr. O'Toole's rights to share in any fees which the pending 176D litigation or the loss of consortium litigation generate." FAC ¶ 44. Such an allegation is quite thin in defining a controversy.[9] Second, the alleged controversy is not ripe. On his best day, O'Toole's only right in the two pieces of pending litigation only matures once a resolution is reached in one or both of those cases. There is no allegation that either case has reached a resolution. There is no reason

---

termination or alteration of the relationship between attorney and client prior to an event triggering payment of the contingency fee. See Mass. R. Prof. Cond. 1.5(c), last para. & comment 3C.

[9]  The Referral Fee Agreement defines O'Toole's referral fee as 33% of Hoey's fee in connection with the case of "Kira Wahlstrom v. Jose Ruben Rivera, et al." O'Toole does not allege any basis for contending that the referral fee should extend to the 176D or the loss of consortium claims.

12

for the Court to resolve such an issue before the issue is ripe. Third, and most importantly, the alleged controversy is only a dispute between Hoey and O'Toole; it does not involve Wahlstrom. The controversy, such as it is framed, is whether O'Toole is entitled to recover a referral fee based on any fee Hoey receives on the 176D and the loss of consortium litigation. But, as described above, the obligation to pay the referral fee belongs to Hoey alone, not Wahlstrom. See, supra, at 8-10. Therefore, there is no basis for a declaratory judgment action to proceed as against Wahlstrom.

## II. Keenan's Motion

### A. Interference with Contractual Relations (Count V)

To plead a claim for intentional interference with contractual relations, a complaint must allege that: "(1) [plaintiff] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994). "[E]vidence of retaliation or ill will toward the plaintiff" can provide the basis for improper motive, Cavicchi v. Kolski, 67 Mass. App. Ct. 654, 658 (2006), while generally, personal or financial gain alone cannot. King v. Driscoll, 418 Mass. 576, 587 (1994). "Improper means include violation of a statute or common law precept, e.g., by means of threats, misrepresentation, or defamation." Cavicchi v. Koski, 67 Mass. App. Ct. at 658. Violating the attorney disciplinary rules generally does not suffice. Bartle v. Berry, 80 Mass. App. Ct. 372, 382 (2011).[10]

---

[10] Regarding tortious interference claims between lawyers, Massachusetts recognizes a strong public policy in safeguarding a client's right to seek counsel: "when an attorney-client relationship is at stake, an attorney's claim against another attorney . . . requires proof that the interference was accomplished by improper means; improper motive, alone, is not actionable." Bartle v. Berry, 80 Mass. App. Ct. at 380-381. Since no attorney-client relationship

13

The complaint pleads facts sufficient to raise the right to relief above speculation. Only element three requires further discussion, as the complaint sufficiently pleads the other elements of intentional interference. Ill will or a retaliatory mindset is not difficult to infer from the intentional action of reproportioning fees soon before trial and after actual representation had begun in order to minimize the amount of money that would have to be shared with O'Toole. Based on information from a "percipient witness," plaintiffs have specifically pled that the express intent of the 2015 Contingent Fee Agreement was to deprive O'Toole of his referral fee. In addition, plaintiffs have alleged improper means, namely the "sham" arrangement of work between Hoey and Keenan – Hoey's large investment of time and money in the case, while letting Keenan take the lion's share of the fee – all for the purpose of minimizing the fee to be paid to O'Toole. Such a sham transaction may rise to the level of mail or wire fraud and clearly amounts to actionable conduct. At this pleadings stage, plaintiffs' allegations demonstrate a plausible basis to believe plaintiffs will be able to show improper motive and means. Plaintiffs have alleged facts, not merely labels and conclusions. Count V survives Keenan's motion to dismiss.

**B.     Civil Conspiracy (Count VI)**

Plaintiffs allege that "Keenan and Hoey acted in a common design or agreement to do the wrongful act of depriving O'Toole of the benefits of his contract." To state a claim for civil conspiracy, a complaint must allege "[1] an underlying tortious act in which [2] two or more persons acted in concert and [3] in furtherance of a common design or agreement." Bartle v. Berry, 80 Mass. App. Ct. at 383-384. "Key to this cause of action is a defendant's substantial

---

is here at stake – Wahlstrom has benefitted from the various attorney-client relationships – public policy does not demand dismissal of Count V on the pleadings alone.

14

assistance, with the knowledge that such assistance is contributing to a common tortious plan." Kurker v. Hill, 44 Mass. App. Ct. 184, 189 (1998).

The complaint alleges facts sufficient to survive the motion to dismiss. Plaintiffs allege that Keenan "join[ed] with [Hoey] to confect a subsequent fee agreement whose primary purpose was to ensure that O'Toole's bargained for compensation would not be paid." FAC ¶ 50. The complaint also alleges "creation of documentation which falsely described Hoey's burned [sic] compensation on the case as only $750,000 when he in fact had a right to payment that was 2-3 times that amount." Id. It also alleges an underlying tort – tortious interference with contractual relations – designed to deprive O'Toole of monies owed as a referral fee.

C.  **Unjust Enrichment (Count VII)**

Plaintiffs allege that, even if the 2015 Agreement were valid, Keenan has been unjustly enriched by retaining monies that should have been paid to Hoey and, in turn, to O'Toole. Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005), quoting Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982). To state a claim for unjust enrichment, a plaintiff must allege that "the defendant received a benefit" and that the "benefit was unjust" based on "the reasonable expectations of the parties." Bonina v. Sheppard, 91 Mass. App. Ct. 622, 625 (2017), quoting Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013).

The complaint sufficiently pleads these elements. The complaint alleges that Keenan received a considerable – indeed, most – of the contingent fee payment, and that he did so after conspiring with Hoey to structure the payments in such a way as to minimize the amount of money that would have otherwise been due to O'Toole. Count VII survives the motion to dismiss.

15

D. **Violation of G.L. c. 93A, § 11 (Count VIII)**

In pertinent part, G.L. c. 93A, § 11, provides that someone engaged in trade or commerce may bring an action against another commercial actor if they have suffered loss of money or property due to the actor's use of unfair methods of competition or an unfair or deceptive act or practice. For § 11 to apply, the defendant must have caused injury to the plaintiff through "an unfair or deceptive act or practice" "in the conduct of any trade or commerce" arising from "a commercial transaction between the parties." Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161-162 & n.7 (2018). "[C]onduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. at 474 (internal quotations omitted).

Whether conduct is unfair or deceptive is a mixed question of law and fact. Vita v. Berman, DeValerio & DePease, LLP, 81 Mass. App. Ct. 748, 755 (2012). To determine whether acts occurred in a commercial transaction, courts assess "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 564 (2008), quoting Begelfer v. Najarian, 381 Mass. 177, 190-191 (1980). Conversely, intra-enterprise engagements that resemble purely private disputes are not commercial transactions for c. 93A purposes. Milliken, 451 Mass. at 563. See Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 194 (2021).

Plaintiffs' complaint fairly alleges that O'Toole and Keenan were both engaged in trade or commerce, and that Keenan committed unfair and deceptive acts. Specifically, plaintiffs cite the 2015 Contingent Fee Agreement's purpose of divesting O'Toole of his expected referral fee; failing to distribute funds properly; creating false documentation around Hoey's fee; and

16

violating Mass. R. Prof. Cond. 8.4(c), involving attorney dishonesty, fraud, deceit, or misrepresentation as predicate misconduct.[11] FAC ¶ 58.

### ORDER

Defendant Kira Wahlstrom's Motion to Dismiss Plaintiffs' First Amended Complaint (Docket #48) is **ALLOWED**. Defendants Don Keenan and the Keenan Law Firm, P.C.'s Motion to Dismiss (Docket #54) is **DENIED**.

Dated: July 14, 2022

_____
Peter B. Krupp
Justice of the Superior Court

---

[11] As plaintiffs have stated actual controversies involving Keenan, the claims for declaratory relief against Keenan will also survive.

17