UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIRA WAHLSTROM,

Plaintiff,

v.

DAVID J. HOEY, LAW OFFICES OF DAVID J. HOEY, P.C., DON C. KEENAN, D.C. KEENAN & ASSOCIATES, P.C. d/b/a THE KEENAN LAW FIRM, P.C., AND KEENAN'S KIDS FOUNDATION, INC.,

Defendants.

C.A. NO. 1:22-cv-10792-RGS

**OPPOSITION OF DEFENDANTS DON C. KEENAN AND D.C. KEENAN & ASSOCIATES, P.C. D/B/A THE KEENAN LAW FIRM, P.C. TO PLAINTIFF'S MOTION FOR JUDGMENT OF DISMISSAL ON THEIR COUNTERCLAIM**

INTRODUCTION

The Defendants Attorney Don C. Keenan and his firm D.C. Keenan & Associates, P.C. d/b/a The Keenan Law Firm, P.C. (collectively "Keenan") asserted breach of contract and indemnification claims back against the Plaintiff Kira Wahlstrom in response to her instant amended complaint. The Plaintiff answered the counterclaim, but now seeks a judgment of dismissal on the pleadings pursuant to Rule 12. The Plaintiff's essential argument is that an interlocutory order by the Superior Court in a suit brought by a different plaintiff and asserting different claims, and in which the Superior Court ruled that the Plaintiff is obligated to indemnify Keenan, nonetheless establishes that the Plaintiff need not indemnify Keenan. The Plaintiff is wrong; Keenan has stated valid claims, and the Superior Court's decision is not to the contrary.

## ALLEGATIONS AND UNDISPUTED BACKGROUND

### I. Overview

After suffering a horrific criminal assault, the Plaintiff sought legal representation from three different attorneys and their firms. Her first counsel was Attorney Austin O'Toole. He was succeeded by Attorney David Hoey. Then Keenan appeared as the Plaintiff's co-counsel with Hoey in 2015. Following a trial and cross-appeals, Hoey and Keenan achieved an outstanding result for the Plaintiff: a fully insured judgment that, with interest, totaled over $9,000,000.

After disbursement of the settlement proceeds, O'Toole filed suit against the Plaintiff, Hoey, and Keenan, alleging breach of contract and derivative claims premised on the contention that O'Toole had a contractual right to a larger share of the recovery. In response, the Plaintiff moved to dismiss, arguing that, under the 2010 and 2015 contingent-fee agreements she signed with Hoey and Keenan respectively, she owed O'Toole and her co-defendants nothing. The Plaintiff also issued a Chapter 93A demand to Keenan, and she filed the instant suit, alleging that Hoey and Keenan did not properly account for the recovered proceeds, that they caused her to be sued by O'Toole, and that they owed her a larger share of the recovery and the costs and expenses incurred in connection with the O'Toole claims. See Plaintiff's memo. at 13.[1]

### II. Keenan's Counterclaim Allegations/The Superior Court's Dismissal Order

Keenan asserted a counterclaim back against Wahlstrom based on an indemnification clause in their 2015 contingent-fee agreement. In it, Keenan addressed the Superior Court's disposition of the Plaintiff's motion to dismiss. The counterclaim alleges in paragraphs 3-21 as follows:

[1] The Plaintiff has also sued the liability insurer involved in the underlying case for alleged Chapter 176D/93A violations. See Wahlstrom v. Zurich Am. Ins. Co., et al., 1:22-cv-10037-LTS.

3. In June, 2015, Wahlstrom and Keenan signed a Massachusetts Contingent Fee Agreement ("CFA") in which Wahlstrom engaged Keenan to represent her in the subject premises liability/personal injury matter.

4. Paragraph 4 of the CFA identifies as "Referring/Associated Counsel" the Law Offices of David J. Hoey, P.C. ("Hoey").

5. Paragraph 10 of the CFA provides in pertinent part as follows:

> The Client [Wahlstrom] is responsible for payment of all of the Client's former/prior counsel's reasonable attorney's fees and reasonable costs and expenses and the cost of resolving any dispute between the Client and any other prior counsel over fees or expenses relating to the claim . . . , except if the former/prior counsel is [Hoey].

6. Wahlstrom's former/prior counsel Austin O'Toole has sued Wahlstrom, Keenan, and Hoey in the Superior Court in Suffolk County Civil Action 2184-cv-00741. Among other things, O'Toole alleges that he has not been paid in full and that the defendants there owe him fees and expenses in connection with his prior representation of Wahlstrom; and he seeks damages.

7. Keenan has incurred attorney's fees and expenses in defending and responding to the O'Toole suit; those fees and costs are ongoing.

8. In the instant suit, Wahlstrom alleges among other things that she has incurred damages due to the O'Toole suit. For example, Wahlstrom alleges in pertinent part as follows:

> [Keenan's] wrongful conduct also resulted in Ms. Wahlstrom being sued by [O'Toole,] who claims these same attorneys deceptively and improperly altered their representation agreements with Ms. Wahlstrom for their own benefit . . . . Defendants' fraudulent and unethical conduct and rejection of Ms. Wahlstrom's request for reimbursement . . . have compelled this suit.

(Amend. Comp. ¶ 2.)

Further:

> [Keenan has] taken funds from Ms. Wahlstrom to which [he was] not entitled, and [that] conduct also resulted in her being named a defendant in the O'Toole case in relation to which she has been charged more legal fees.

(Amend. Comp. ¶ 74.)

And:

> [Keenan's] change in the fee agreement and the reduced payment to O'Toole resulted in O'Toole filing a lawsuit claiming his fee was wrongfully reduced and suing Ms. Wahlstrom as one of the defendants, requiring representation, attorney's fees and costs for which Ms. Wahlstrom has been billed over $40,000.

(Amend. Comp. ¶ 93; see generally ¶¶ 56-68) Wahlstrom seeks to hold Keenan liable for these alleged damages from her dispute with her prior counsel O'Toole.

9. In the Suffolk County action brought by O'Toole, the Court (Krupp, J.) recently issued an order on defense motions to dismiss, and in the order the Court discussed the CFA and its paragraphs 4 and 10. The Court ruled in pertinent part as follows:

> [P]aragraph 10 can only be read as an indemnification clause.
>
> *****
>
> As between Keenan and Wahlstrom, Wahlstrom agreed effectively to hold Keenan harmless from a claim that prior counsel still had to be paid.

(March 25, 2022 Mem. and Order on Motions to Dismiss, pp. 9, 10-11.) The Court thus confirmed as a matter of fact and law that Wahlstrom must defend, indemnify, and hold Keenan harmless against all claims, suits, and damages sought by O'Toole or claims/suits derivative of those brought by O'Toole, such as the instant claims asserted by Wahlstrom.

COUNTERCLAIM
CAUSES OF ACTION

(COUNT I)
BREACH OF CONTRACT

10. Keenan repeats, realleges, and incorporates all of the above allegations.

11. Wahlstrom is bound by the CFA that she entered into with Keenan. She unambiguously agreed in the CFA to defend, indemnify, and hold Keenan harmless as against claims arising from fee disputes with her prior counsel O'Toole.

12. By demanding relief and payment from Keenan, and by bringing this suit against Keenan seeking damages allegedly due to the O'Toole claim and suit, Wahlstrom has breached the CFA and her promise to defend, indemnify, and hold Keenan harmless.

13. Wahlstrom's breach of contract has caused Keenan harm, damages, and the loss of the consideration he bargained for. Keenan's harm and damages include attorney's fees and costs incurred in defending the O'Toole suit and the instant suit, as well as any award or judgment obtained by O'Toole.

14. Wahlstrom is obligated to indemnify Keenan as against all claims and damages asserted by O'Toole and all claims asserted in the instant action that are derivative of O'Toole's claims. That obligation includes paying all defense costs incurred by Keenan and paying any judgment entered in favor of O'Toole.

15. Keenan's damages continue to grow as O'Toole and Wahlstrom press their suits. Wahlstrom is liable for breach of contract.

(COUNT II)
INDEMNIFICATION

16. Keenan repeats, realleges, and incorporates all of the above allegations.

17. Wahlstrom is bound by the CFA that she entered into with Keenan. She unambiguously agreed in the CFA to defend, indemnify, and hold Keenan harmless as against claims arising from a fee dispute with her prior counsel O'Toole.

18. By demanding relief and payment from Keenan, and by bringing this suit against Keenan seeking damages allegedly due to the O'Toole claim and suit, Wahlstrom has breached the CFA and her promise to defend, indemnify, and hold Keenan harmless against such claims and damages.

19. Wahlstrom's breach of her indemnification agreement has caused Keenan harm, damages, and the loss of the consideration he bargained for. Keenan's harm and damages include attorney's fees and costs incurred in defending the O'Toole suit and the instant suit, as well as any award or judgment obtained by O'Toole.

20. Wahlstrom is obligated to indemnify Keenan as against all claims and damages asserted by O'Toole and all claims asserted in the instant action that are derivative of O'Toole's claims. That obligation includes paying all defense costs incurred by Keenan and paying any judgment entered in favor of O'Toole.

21. Keenan's damages continue to grow as O'Toole and Wahlstrom press their suits. Wahlstrom is liable for breach of her indemnification agreement.

## ARGUMENT

The Plaintiff's motion to dismiss Keenan's counterclaim is meritless for the following reasons:

### I. THE COUNTERCLAIM STATES BREACH OF CONTRACT AND INDEMNIFICATION CLAIMS.

The Plaintiff in her motion makes no serious argument that Keenan has failed to state contract and indemnification claims. See Plaintiff's memo. at 20. Rather, the thrust of her argument is that the order of Superior Court Judge Krupp dismissing O'Toole's claims against

the Plaintiff somehow also precludes Keenan's counterclaim. Plaintiff's memo. at 14-20. The Plaintiff's choice of emphasis in her motion is not surprising, because Keenan undoubtedly has stated contract and indemnification claims. The claims are detailed, specific, and plainly allege: (1) an express contractual indemnification obligation (paragraph 10 of the 2015 CFA); (2) a breach by the Plaintiff of that obligation (the Plaintiff's demands for payment by Keenan of O'Toole's fees and of the costs of the O'Toole litigation, and her repeated declarations in Superior Court and this Court rejecting her express indemnification obligation); and (3) damages as a result of the breach (defense costs and attorney's fees arising from the O'Toole claims and any fees awarded to O'Toole). See counterclaim ¶¶ 3-21.

In addition, the counterclaim cites the Superior Court's order, which directly endorses one of Keenan's premises:

> [P]aragraph 10 can only be read as an indemnification clause.
>
> *****
>
> As between Keenan and Wahlstrom, Wahlstrom agreed effectively to hold Keenan harmless from a claim that prior counsel still had to be paid.

See counterclaim ¶ 9 and Superior Court Order at 9-11.

This endorsement by the Court is important on its face, but also because it is the correct (indeed, only) interpretation of the indemnification clause. The clause is unambiguous and provides in relevant part: "[T]he Client [Plaintiff] is responsible for payment of all of the . . . former/prior counsel's . . . fees and reasonable costs . . . and the cost of resolving any dispute between the [Plaintiff] and . . . prior counsel. . . ." Thus, as the Plaintiff tacitly admits, the counterclaim allegations satisfy rules 8 and 12 and meet the governing Iqbal/Twombly pleading standard for contract and indemnification claims. The Plaintiff's motion rises and falls on her preclusion argument, but that argument also fails.

## II. THE SUPERIOR COURT ORDER ENDORSES KEENAN'S COUNTERCLAIM, AND DOES NOT PRECLUDE IT.

### A. There is No Preclusion As a Matter of Law.

The Plaintiff's preclusion argument does not withstand even casual scrutiny. In the Superior Court suit, the Plaintiff and Keenan were co-defendants with no crossclaims against each other. As regards Keenan, the upshot of the Court's dismissal order was that the Plaintiff was not liable to O'Toole on his claims because O'Toole was not a third-party beneficiary of the Plaintiff's 2015 CFA with Keenan, but also that the Plaintiff had agreed to indemnify Keenan in the CFA as against claims by her "prior counsel" O'Toole. From this perspective, it would seem obvious that the Superior Court's decision in no way precludes Keenan from seeking to enforce that acknowledged indemnification obligation. If anything, the order not only does not preclude Keenan's position and counterclaim, it supports them.

The settled issue-preclusion jurisprudence is to the same effect and confirms there is no preclusion as a matter of law.[2] As the Plaintiff herself frames the law, issue preclusion requires, among other things: (1) a final judgment on the merits in a prior adjudication; and (2) that the issue in the prior adjudication is identical to the issue in the current adjudication. See Plaintiff's memo. at 16. These elements are not present here. First, there is no final judgment on the merits; the Superior Court order is merely an interlocutory order on a rule 12 motion that the Court can still revise and reverse. It is not subject to immediate appeal; it is not final. See Jarosz v. Palmer, 436 Mass. 526, 530-31 (2002) (interlocutory order is not final for preclusion purposes; finality requires an available avenue for appellate review, which does not include the ability to ask a single justice for discretionary and rare interlocutory review); Sena v. Commonwealth, 417 Mass. 250, 260 (1994)(no preclusion because non-final interlocutory ruling was not subject to

---

[2] State law controls this issue, as the Plaintiff acknowledges. E.g., McDonough v. City of Quincy, 452 F. 3d 8, 16 (1st Cir. 2006). See Plaintiff's memo. at 16.

appeal); Tausevich v. Bd. of Appeals of Stoughton, 402 Mass. 146, 149 (1988) ("finality" requires that "the earlier opinion was subject to review or was in fact reviewed"). Contrast In re Sonus Networks Inc. Share. Deriv. Lit., 499 F. 3d 47, 57-62 (1st Cir. 2007)(discussing whether admittedly final, appealable order dismissing entire suit was "on the merits"; acknowledging Massachusetts rule that interlocutory orders are not final).

Second, the purportedly preclusive issue in the Superior Court suit was whether O'Toole had sufficiently pled enforceable claims against the Plaintiff as a third-party beneficiary of the Plaintiff's 2015 CFA with Keenan, to which O'Toole was not a party. The Court held that he had not pled that status and was not a third-party beneficiary. See Super. Court Order at 9-11. The entirely different issue presented by Keenan's counterclaim is whether paragraph 10 of the 2015 CFA means what it says and requires the Plaintiff to indemnify Keenan as to the claims of her "prior counsel" O'Toole. On that distinct issue, paragraph 10 of the CFA is very clear, and so was the judge: "As between Keenan and Wahlstrom, Wahlstrom agreed effectively to hold Keenan harmless from a claim that prior counsel [O'Toole] still had to be paid." Super. Court Order at 10. As such, like the final-judgment requirement, the identical-issue requirement for preclusion is missing. See, e.g., Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998)(issues in prior adjudication must be identical to those in current adjudication); Quarterman v. City of Springfield, 91 Mass. App. Ct. 254, 264 (2017)(ruling that there was no issue preclusion because issues were not identical).

B. In Addition, the Plaintiff's Preclusion Argument Misconstrues the 2015 CFA.

The Plaintiff's preclusion argument also depends on a misinterpretation of two distinct provisions of the 2015 CFA. The Plaintiff cites language in paragraph 4 of the CFA that, as the Superior Court noted, says that the Plaintiff will not be charged "additional legal fees" beyond the agreed contingency fee. According to the Plaintiff, this provision was the basis of the

Court's dismissal of O'Toole's contract/third-party-beneficiary claims, and of the Court's rejection of O'Toole's argument that he could invoke the indemnification provision of paragraph 10 of the CFA. From this, the Plaintiff argues: "[j]ust as O'Toole could not use paragraph 10 of the 2015 CFA to hold [the Plaintiff] liable for his fee claim, neither can Keenan." Plaintiff's memo. at 17.

This argument is wrong and misconstrues the CFA. First, unlike O'Toole, Keenan is a party to the 2015 CFA, so he is of course entitled to enforce its express indemnification clause. O'Toole's claim as to the 2015 CFA failed not because its paragraph 10 does not apply or does not mean what it says, but only because O'Toole failed to plead and establish third-party-beneficiary status so as to invoke it. Super. Court Order at 9-11. As a party to the CFA, Keenan has no such problem.

Second, the Plaintiff's reliance on the language in paragraph 4 of the CFA that she will not be charged more than the agreed contingency fee is misplaced. The fee provision in paragraph 4 and the indemnification clause in paragraph 10 are an apple and an orange. The former provision confirms that the Plaintiff's lawyers will not charge her a contingency fee greater than specified in the CFA; the latter confirms that, if successor counsel (Keenan) becomes embroiled in litigation with the Plaintiff's prior counsel (O'Toole), the client (Plaintiff) will indemnify him. The former provision reassures the client that her contingency fee will not go up. The latter reassures successor counsel that he will not be forced to bear the costs of disputes by prior counsel (thereby promoting the important goal of encouraging successor counsel to undertake engagements).

The decisional law has long recognized the value and importance of provisions like this that enable claimants to obtain new counsel, and that encourage attorneys to take on matters in which there is prior counsel who holds a fee claim. See generally Malonis v. Harrington, 442

Mass. 692, 696-99 (2004) (encouraging written agreements clearly identifying responsibility for fees and costs); Dinter v. Sears, Roebuck & Co., 278 N.J. Super. 521, 535 (App. Div. 1995)(acknowledging importance of encouraging successor counsel to take over from prior counsel); Hoddick, Reinwald, O'Connor & Marrack v. Lotsof, 6 Haw. App. 296, 303 (1986)(noting importance of attorney "supply and demand," and need to incentivize successor counsel to appear). In this context, it is clear that the subject provisions in paragraph 4 of the CFA do not (as the Plaintiff implicitly contends) trump and cancel out the provisions of paragraph 10. Rather, the calsuses serve distinct, consistent purposes. The Plaintiff's erroneous interpretation of the CFA would render paragraph 10's indemnity clause illusory.[3]

The Plaintiff also argues that paragraph 10 of the CFA does not apply to the O'Toole dispute because, according to the Plaintiff, O'Toole was only a "referring attorney." Plaintiff's memo. at 18. This contention, supported by no pertinent authority, is another misinterpretation that promotes a distinction without a difference, that would undercut the intent of paragraph 10 and, in this additional way, also render it illusory. Note that the relevant facts/allegations here are all undisputed: O'Toole was the Plaintiff's counsel; O'Toole was the Plaintiff's counsel prior to the start of Keenan's appearance and work in 2015; the CFA was executed and Keenan appeared after the work by "prior counsel" O'Toole; and O'Toole and the Plaintiff later fell into a payment dispute "over fees or expenses relating to the [Plaintiff's] claim. . . .", all exactly as anticipated by and within the scope of CFA paragraph 10. On these facts and allegations, the unambiguous terms and the intent of paragraph 10 (to encourage successor counsel like Keenan to appear) control. Keenan's counterclaim is grounded in paragraph 10's terms and policy goal. Whether O'Toole is called referring counsel or co-counsel or initial counsel or former counsel or

[3] Significantly, the 2015 CFA mirrors the language recommended by the Rule of Professional Conduct, which provide an example of approved and recommended language on this point: "The client is responsible for payment of former counsel's reasonable attorney's fees and expenses and the cost of resolving any dispute between the client and prior counsel. . . ." Mass. R. Prof. C. 1.5(f), Cont. Fee Agree., Form B.

any other counsel is irrelevant. He was in any event Plaintiff's counsel "prior" to Keenan, so paragraph 10 governs. See Saggese v. Kelley, 445 Mass. 434, 439 (2005)(attorney who makes referral has an attorney/client relationship and a contract requiring payment for professional services). Any contrary conclusion will only encourage litigants like the Plaintiff to attempt to nullify and avoid their obligations based on semantic distinctions about the label to be given to prior counsel.

As the Superior Court ruled, the indemnity clause in the 2015 CFA means what it says and is enforceable by Keenan. Compare, e.g., Mager v. Bultena, 797 A. 2d 948, 954 & n.9 (Pa. 2002)(agreement between client and successor counsel that client would indemnify successor as to claims by predecessor counsel was enforceable).

### C. In Any Event, Keenan's Claim for Litigation-Related and Defense Costs Cannot Be Subject to Preclusion.

The Plaintiff's motion to dismiss is based on the contention that Keenan is precluded from recovering from her any fees that might be owed to O'Toole. See Plaintiff's memo. at 17 ("[T]he state court rejected the assertion that Ms. Wahlstrom could be responsible for any fees owed to O'Toole. . . ."; "Just as O'Toole could not . . . hold Ms. Wahlstrom liable for his fee claim, neither can Keenan."). But this argument addresses only a part of Keenan's counterclaim. The counterclaim seeks two categories of damages: (1) any fees/award owed to O'Toole; and (2) "attorney's fees and costs incurred in defending the O'Toole suit and the instant suit" and "all defense costs incurred by Keenan." See counterclaim ¶¶ 13-14, 19-20. As to this second category of damages, paragraph 10 of the 2015 CFA unambiguously requires the Plaintiff to indemnify Keenan:

> The Client [Plaintiff] is responsible for payment of all the Client's former/prior counsel's reasonable attorney's fees . . . and the cost of resolving any dispute between the Client [Plaintiff] and any other prior counsel over fees or expenses. . . .

2015 CFA, ¶ 10 (emphasis added). By its terms, this paragraph requires the Plaintiff to indemnify and hold Keenan harmless as to the O'Toole-related claims, including claims like Keenan's arising from "the cost of resolving [the] dispute between [the Plaintiff] and [her] prior counsel [O'Toole]. . . ." Id. The Plaintiff presents no contrary argument in her motion, conceding the point by her silence. As such, in any event, Keenan has stated a claim for recovery of all losses and defense costs related to the O'Toole claims.

CONCLUSION

For all of the foregoing reasons, the Plaintiff's motion to dismiss should be denied.

DON C. KEENAN, and D.C.
KEENAN & ASSOCIATES, P.C. d/b/a
THE KEENAN LAW FIRM, P.C.,
By their Attorneys,

John J. O'Connor
BBO # 555251
Susan M. Silva
BBO # 694176
PEABODY & ARNOLD, LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
Phone: (617) 951-2100
Fax: (617) 951-2125
joconnor@peabodyarnold.com
ssilva@peabodyarnold.com

December 2, 2022

**CERTIFICATE OF SERVICE**

I, John J. O'Connor, hereby certify that a copy of the foregoing document has been served via ECF on this 2nd day of December, 2022 to:

Bridget A. Zerner, Esq.
John J.E. Markham, II, Esq.
Markham Read Zerner LLC
Once Commercial Wharf West
Boston, MA 02110
bzerner@markhamreadzerner.com
jmarkham@markhamreadzerner.com

Christine Knipper, Esq.
Thomas A. Murphy, Esq.
Wilson, Elser, Moskowwitz & Dicker, LLP
260 Franklin Street, 14th Floor
Boston, MA 02110
christine.knipper@wilsonelser.com
thomas.murphy@wilsonelser.com

Danni Shanel, Esq.
Troutman Pepper Hamilton Sanders
125 High Street, 19th Floor
Boston, MA 02110
danni.shanel@troutman.com

John J. O'Connor

2403781
15133-208055