UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIRA WAHLSTROM,

                    Plaintiff,

v.

DAVID J. HOEY, LAW OFFICES OF
DAVID J. HOEY, P.C., DON C. KEENAN,
D.C. KEENAN & ASSOCIATES, P.C. d/b/a
THE KEENAN LAW FIRM, P.C., AND
KEENAN'S KIDS FOUNDATION, INC.,

                    Defendants.

C.A. NO.  1:22-cv-10792-RGS

**MEMORANDUM OF DEFENDANTS DON C. KEENAN AND D.C. KEENAN &
ASSOCIATES, P.C. d/b/a THE KEENAN LAW FIRM, P.C. IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

        The Defendants are attorneys who, acting pursuant to a standard-form contingent-fee

agreement, represented the Plaintiff Kira Wahlstrom in a challenging personal-injury suit that

she brought against a parking-facility operator after she was brutally raped on its premises.  The

Defendants (Attorney Don Keenan and his firm, and Attorney David Hoey and his firm)

represented the Plaintiff through a month-long, vigorously defended trial, and they obtained for

the Plaintiff a record-setting premises-liability verdict of $4 million.  Following post-trial

proceedings and an appeal in which the verdict was affirmed, the defendant paid the judgment in

full.  With 12% statutory interest, the payment totaled just shy of $10 million.

        As part of the process of disbursing the $10 million, Hoey and the Plaintiff over the

course of several months in late 2019 and into early 2020 exchanged multiple emails, and they

1

also met to go over all of the file expenses and disbursements that had accrued over the course of a ten-plus year process.  Hoey explained the expenses and answered the Plaintiff's questions about them.  Following their several exchanges, the Plaintiff approved <u>all</u> of the fees and case expenses.  She confirmed her approval by initialing settlement statements that itemized the expenses, and by writing on the itemizations in <u>two</u> places as follows:  "I am aware of the above fee distribution and approve," and "I approve of the above itemized expenses and distribution."  With that approval, and acting pursuant to the fee agreement, Keenan and Hoey issued payment on the file expenses and their fees.

Now, the Plaintiff has sued Attorneys Keenan and Hoey over the fees and expenses she approved. Counterintuitively, she alleges no breach of contract.  Rather, she alleges that they somehow defrauded her in connection with their contractual relations.  Years after expressly approving of her contractual fees and expenses, she now says that, instead, the fees/expenses she endorsed were fraudulent.  These allegations are contradicted by the Plaintiff's sworn testimony, voluminous undisputed evidence (including the contract), and common sense.  This case is not about fraud or deceit, it is about freedom of contract, and about the obligations that the Plaintiff voluntarily undertook and later ratified to <u>her great benefit</u>.  As a matter of law, Keenan engaged in no fraud; he engaged in no unfair/deceptive conduct within the meaning of Chapter 93A; he breached no fiduciary duties; and the Plaintiff's unambiguous contractual obligations and voluntary payments preclude her purported claims.

UNDISPUTED MATERIAL FACTS

I.    <u>Background; The 2010 Fee Agreement</u>

1.    On May 1, 2009, the Plaintiff Kira Wahlstrom was raped in a Boston hotel parking garage.  The garage was owned by JPA IV Management Company and

managed/operated by JPA I Management Company, Inc. (collectively "JPA").   First Amended Complaint, ¶¶ 1, 11, 12.[1]

2.      On February 2, 2010, the Plaintiff entered into a contingent fee agreement ("2010 CFA") with the Defendant Law Offices of David J. Hoey, P.C. ("Hoey Firm") to pursue claims for negligence against JPA.  First Amended Complaint, ¶ 16; Affidavit of John J. O'Connor, Exhibit A.

3.      The Plaintiff met with Mr. Hoey at his firm and reviewed the 2010 CFA. O'Connor Aff., Ex. D, Wahlstrom Depo. at 14-15.  She was given time to review and consider it, and she signed it at her home.  The Plaintiff read the 2010 CFA, understood it, and had the opportunity to ask questions about it.  O'Connor Aff. Ex. D, Wahlstrom Depo. at 13, 150, 165.

4.      At the time she signed it, the Plaintiff understood that she would be responsible for reasonable expenses, that her lawyers could borrow money to finance the case, and that she would be responsible for any related interest charges.  O'Connor Aff. Ex. D, Wahlstrom Depo. at 15.

5.      The 2010 CFA provided that the Hoey Firm would be paid 33.3% of the gross amount recovered, and that the Plaintiff would be responsible for reasonable expenses and disbursements, including costs related to financing.  First Amended Complaint, ¶ 18; O'Connor Aff., Ex. A, 2010 CFA.

---

[1] Citations are to the paragraphs in the First Amended Complaint and to the lettered exhibits attached to the accompanying Affidavit of John J. O'Connor.

II.     The Suit; The 2015 Fee Agreement

6.      On March 12, 2010, Mr. Hoey filed suit on the Plaintiff's behalf against JPA and

others for negligence in Suffolk Superior Court, C.A. No. 1084CV01022. First Amended

Complaint, ¶ 20.

7.      In February, 2013, Mr. Hoey contacted the Defendant Attorney Don Keenan of

D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. about working for Mr. Hoey

on the case.  Mr. Keenan is one of the foremost plaintiff's personal injury practitioners in the

country, with extensive experience handling premises-liability cases.  First Amended Complaint,

¶ 21; Mr. Hoey and Mr. Keenan executed a contract confirming their agreement.  O'Connor Aff.,

Ex. I, Contract for Representation.

8.      The Plaintiff met Mr. Keenan in February of 2015, and she decided that it would

be beneficial for her to engage him to represent her in the case.  O'Connor Aff., Ex. D,

Wahlstrom Depo. at 18, 19.

9.      The Plaintiff's designated expert Attorney Erin Higgins concedes that there is no

evidence and she has no opinion to the effect that the 2013 contract between Attorneys Hoey and

Keenan caused any harm to the Plaintiff.  O'Connor Aff., Ex. F, Higgins Depo. at 163-64.

10.     Mr. Keenan required (consistent with the Rules of Conduct) that the Plaintiff sign

a new contingent fee agreement with him.  Mr. Hoey emailed the draft agreement to the Plaintiff

and represented that the new fee agreement would not change her percentage owed of the

recovery or cost her more money.  He did not copy Mr. Keenan or anyone from his firm on the

email.  First Amended Complaint, ¶ 22.

11.     On or about June 16, 2015, after reviewing it with Hoey and/or his of-counsel

Attorney Kris Sobczak, the Plaintiff signed the contingent fee agreement with Mr. Keenan

("2015 CFA").  The 2015 CFA provided that Mr. Keenan would be paid 33.3% of gross amounts recovered, with an additional 2% of gross recovery if the matter concluded after an appellate brief was filed, and an additional 5% thereafter (for a total of 7%) if the matter concluded/settled following an appellate decision.  First Amended Complaint, ¶¶ 25-26.  In addition, the Plaintiff was responsible for reasonable expenses, including the cost of borrowing to cover case expenses.  The 2015 CFA also provided that a portion of Mr. Keenan's percentage would be paid to the Hoey Firm.  Id. at ¶ 26; O'Connor Aff., Ex. B, 2015 CFA.

12.     The experts agreed that contingent fee agreements providing for extra fees where judgments were appealed, and providing for contingency payments of 40%, are not uncommon in personal-injury practice.  O'Connor Aff., Exs. F-G.

13.     The Plaintiff read the 2015 CFA, understood it, and had the opportunity to ask questions about it before executing it.  O'Connor Aff., Ex. D, Wahlstrom Depo. Trans. p. 150.  The Plaintiff admits that she chose not to speak to or ask Mr. Keenan any questions regarding the 2015 CFA.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 211-212.

14.     The Plaintiff thought it was reasonable for the 2015 CFA to include an additional charge for Mr. Hoey and Mr. Keenan in the event of an appeal.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 214-215.

15.     When she executed the 2015 CFA, the Plaintiff understood that she would be responsible for expenses if there was a favorable decision, that the attorneys could finance the case through borrowed funds, and that she would be responsible for interest charges on the financing.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 16-17.  The Plaintiff also understood that, if she lost the case, Mr. Hoey, not the Plaintiff, would be responsible for all fees and costs.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 31.

16.     Despite knowing for years that Mr. Hoey was advancing case expenses on her behalf, she never at any point asked how much money the case was costing his firm.  O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 31.

17.     Before executing the 2015 CFA, the Plaintiff looked it over and read it. O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 22.  She met with Mr. Hoey prior to signing it and had the opportunity to ask him any questions about it. O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 23; and <u>Ex. E</u>, Hoey Depo. at 55.

18.     The Plaintiff reviewed and initialed the paragraphs of the 2015 CFA on the right-hand side of each page.  She initiated the provision providing that the percentages to be paid to the attorneys would increase if there was an appeal.  O'Connor Aff., <u>Ex. B.</u>, 2015 CFA.

19.     The Plaintiff did not testify that, had anyone explained the 2015 CFA to the her differently, or in more detail, she would not have agreed to sign it.  O'Connor Aff., <u>Ex. F</u>, Higgins Depo. at 153.

20.     The Plaintiff's designated expert conceded that she did not find or opine that Mr. Keenan made any misrepresentations, engaged in fraud, or engaged in conduct that violated G.L. c. 93A.  O'Connor Aff., <u>Ex. F</u>, Higgins Depo. at 149-150.

III.   <u>The Trial And Appeal</u>

21.     Mr. Hoey and Mr. Keenan (and associates) tried the case from July 14 to August 11, 2015.  First Amended Complaint, ¶ 28.

22.     The jury issued a verdict of $4M against JPA.  With interest and costs, this resulted in a judgment of $6,650,829.58 in 2015, which was over $3 million more than the JPA's previous high settlement offer of $2.25 million.

23.     After the verdict, the Court ordered a new trial, and the Plaintiff's appellate counsel, Patricia DeJuneas, obtained leave to prosecute an interlocutory appeal.   First Amended Complaint, ¶¶ 30-31.

24.     Mr. Hoey and Mr. Keenan both participated in the preparation of and strategy for the appeal.  For example, on February 22, 2017, Mr. Hoey met with the Plaintiff and Ms. DeJuneas to discuss the appeal and strategy.  O'Connor Aff., Ex. D, Wahlstrom Depo. Ex. 12. Mr. Keenan communicated regularly with Mr. Hoey regarding appeal strategy and filings, and Hoey in turn communicated with DeJuneas.  They exchanged hundreds of emails and had multiple strategy calls.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 73, 74.  Mr. Hoey also reviewed the appeals brief and made comments on it before it was submitted.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 79, 98.

25.     On June 10, 2019, the Appeals Court held that the trial judge applied the wrong legal standard in ordering a new trial.  First Amended Complaint, ¶ 36.

26.     The Plaintiff's designated expert Attorney Erin Higgins concedes that there is no evidence (and she does not opine) that any alleged breaches of duty by Mr. Keenan made any difference in the outcome of the Plaintiff's trial or appeal.  O'Connor Aff., Ex. F, Higgins Depo. at 151.

27.     As it turned out, bringing Mr. Keenan on as counsel was hugely beneficial to the Plaintiff.  Prior to his appearance, no offer of settlement above $450,000 had been made. Wahlstrom Depo. at 27-28.  During the trial no offer above $2.25 million was made. Yet the jury returned a record verdict of $4 million.  O'Connor Aff., Ex. E, Hoey Depo. at 68.

IV.     Post Appeal/Billing

28.     On November 18 and 19, JPA's insurers paid $9,987,683.80 -- the full judgment with interest.  First Amended Complaint, ¶ 48.  This total figure exceeded by more than $7 million the most that the JPA had previously offered to settle.

29.     The Plaintiff and Mr. Hoey met in December of 2019 to begin discussing the attorneys' fees and the case expenses.  The Plaintiff had questions, which he answered. O'Connor Aff., Ex. E, Hoey at 105.  During this meeting she was shown expenses and the litigation-financing loan information.  Id. at p. 105-106.

30.     On March 27, 2020, Mr. Hoey provided the Plaintiff an updated itemization of the fees and expenses.  The Plaintiff met with Mr. Hoey and again went over the expenses and attorneys' fees in the spreadsheet. O'Connor Aff., Ex. D, Wahlstrom Depo. at 41, 45.  On March 29, 2020 he sent a spreadsheet with additional details regarding the charges.  First Amended Complaint, ¶ 54; O'Connor Aff., Ex. J, Hoey email and attachments.

31.     On March 30, 2020, the Plaintiff responded to the March 29, 2020 email/spreadsheet indicating she did not have any more questions about it and would stop by Mr. Hoey's office to execute it. O'Connor Aff., Ex. K, Wahlstrom email to Hoey.

32.     Mr. Hoey specifically told the Plaintiff that, if she had any questions or disputes regarding any of the expenses listed, she should let him know.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 43; and Ex. J, March 29, 2020 email.  The Plaintiff raised no concerns. O'Connor Aff., Ex. D, Wahlstrom Depo. at 44, 201.

33.     Specifically, the Plaintiff did not raise any concerns regarding the litigation funding expenses (Depo. at 56); the fees paid to Attorney Amy Goganian (58); the fees and work of Attorney Edward Goren (58); Mr. Bolan's work or fees (60); the cost of the WIN Interactive

8

video (60); or who John Vail was and what work he did on her case (61-62). O'Connor Aff., Ex. D, Wahlstrom Depo.

34.    In general, the lawyers refrained from apprising the Plaintiff of day-to-day case developments, because it upset her. O'Connor Aff., Ex. E, Hoey Depo. at 73. But the Plaintiff was still kept regularly informed, and she never objected to the lawyers' strategy decisions or expenses in real time. O'Connor Aff., Ex. E, Hoey Depo. at 47, 110, 112-113.

35.    After the Plaintiff reviewed and understood all of the itemized case charges, she initialed the settlement statements and also wrote/signed two notes of approval: (1) one dated March 27, 2020 and stating "Kira Wahlstrom I am aware of the above fee distribution and approve"; and (2) a second dated March 27 and stating "Kira Wahlstrom, I approve of the above itemized expenses". First Amended Complaint, ¶ 55; O'Connor Aff., Ex. C.

36.    The Plaintiff agrees that she read the settlement statements explaining the fees and expenses, understood them, and had the opportunity to ask questions before executing them. O'Connor Aff., Ex. D, Wahlstrom Depo. at 150, 201, and Exs. J-K, Plaintiff/Hoey emails.

37.    At all times relevant to the process of reviewing the fees/expenses, the Plaintiff was represented by and had access to other counsel in addition to Attorneys Hoey and Keenan. Attorney DeJuneas, who had appeared and worked with and for the Plaintiff starting in 2015, was still representing the Plaintiff and available to answer any questions. O'Connor Aff., Ex. D, Wahlstrom Depo. at 207, 208. But the Plaintiff did not feel any concern or any need to ask her to review the fees and expenses. O'Connor Aff., Ex. D, Wahlstrom Depo. at 226.

38.    From the time that the Plaintiff signed off on the expenses and fees in March of 2020, though March of 2022, she never raised any issues or concerns with Attorneys Hoey or

Keenan, and never in any way disputed or questioned their attorneys' fees and/or expenses. O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 128-129.

ARGUMENT

I.     <u>AS A MATTER OF LAW, KEENAN ENGAGED IN NO FRAUD.</u>

As a matter of law, for the following reasons, the Plaintiff's fraud claim against Keenan (Count III) fails.

    A.     <u>The Plaintiff Has Failed To Plead Fraud By Keenan With Particularity.</u>

Federal Rule of Civil Procedure 9(b) imposes a heightened, demanding pleading standard. Fraud and misrepresentation claims must be pleaded with particularity. Specifically, plaintiffs alleging fraud must provide the times, dates, places, and other details of the allegedly false representation. <u>See</u> Fed. R. Civ. P. 9(b); <u>See also</u>, <u>e.g.</u>, <u>North Amer. Catholic Educ. Programming Found., Inc. v. Cardinale</u>, 567 F. 3d 8, 13 (1st Cir. 2009) ("Rule 9(b)'s heightened pleading standard applies to . . . fraud claims asserted in federal court."); <u>Rodi v. Southern New Eng. School of Law</u>, 389 F. 3d 5, 15 (1st Cir. 2004)(who, what, where, and when details must all be pleaded); <u>New England Data Serv. v. Belcher</u>, 829 F. 2d 286, 288 (1st Cir. 1987)("[I]n general, this circuit has strictly applied Rule 9(b)."); <u>Khelfaoui v. Lowell School Comm.</u>, No. 18-cv-11861, 2020 WL 6162945 at *3 (D. Mass. Oct. 21, 2020)(misrepresentation claim must state all details with particularity).

The allegations in Count III fall far short of this standard. To begin with, <u>nowhere</u> in the Complaint or in Count III does the Plaintiff allege some affirmative misrepresentation or unfair/deceptive act by Keenan that was made with the intent to induce the Plaintiff to act, and that she reasonably relied on. <u>See</u> <u>Rodi</u>, 389 F. 3d at 13 (citing cases and fraud elements). Rather, the ten paragraphs in Count III refer only to alleged misrepresentations by <u>Hoey</u>

10

regarding the 2015 CFA and the fees/costs due under that CFA in 2020. (Am. Comp. ¶¶ 90, 95) There are <u>no</u> such allegations as to Keenan, because it is undisputed that he made no misrepresentations.  (Statement of Undisputed Material Facts ["UMF"] ¶¶ 10, 20)

The most that the Plaintiff can muster in her fraud claim as to Keenan is the passive allegation that Hoey acted with "approval and agreement" from Keenan.  (Am. Comp. ¶¶ 94-95) But the date, form, terms, source, and scope of this alleged "approval" are not provided.  Nor is any specific evidence of this alleged approval cited.  Moreover, separate from the issue of approval generally, there is (and can be) no allegation that Keenan directed or approved the use of alleged <u>misrepresentations</u> by Hoey.  The Complaint is silent on this notion.  There are <u>zero</u> allegations that Keenan knew of and approved Hoey's alleged misrepresentation, and zero allegations of who, what, when, where details as to Keenan.  These are significant omissions.  It is undisputed that Hoey was not Keenan's employee.  Indeed, it was previously agreed that Mr. Keenan would be considered <u>Hoey's</u> employee.  (UMF ¶ 7)  As such, the Plaintiff cannot make out a fraud claim against Mr. Keenan simply on evidence of a communication that Keenan did not participate in or know about.

Moreover, in any event, there are no allegations that <u>Mr. Keenan</u> acted with intent to induce action by the Plaintiff.  Indeed, and particularly as to Keenan, Count III depends entirely on shortcuts: bland, non-specific allegations of "approval," and undifferentiated references to actions of the "defendants" collectively. (Am. Comp. ¶¶ 93-94, 96-97)  Beyond the shortcuts, however, on the specific and critical element of intent/scienter, Count III is silent; it does not allege any act by Keenan that he intended to cause action and reliance by the Plaintiff. Paragraphs 96 and 97 perhaps represents the Plaintiff's best effort in this regard.  They say only that the Plaintiff "relied to her detriment on the representations and fee itemizations of

Defendants, her attorneys. . . ." and "As a result of Defendants' fraud, [the Plaintiff] was damaged. . . ."  Manifestly, there is no allegation here of intended fraud/misrepresentation <u>by Keenan</u> causing the Plaintiff damage.  (UMF ¶¶ 9, 20)  As noted above, the <u>only</u> even allegedly fraudulent actions here were those of Hoey.  But he acted independently, and there is no allegation that Keenan knew of/approved his allegedly problematic actions, as Rule 9(b) requires.

      B.     <u>Keenan Engaged in No Fraud as a Matter of Law.</u>

Apart from the deficiencies in the pleading of the purported fraud claim, there is no jury question here and no basis for a fraud finding as a matter of law.  <u>First</u>, for the reasons given above, the Plaintiff has not pleaded and cannot prove that Keenan even made a misrepresentation with the intent to induce reliance by the Plaintiff.  <u>Second</u>, in addition to these failed elements, neither can the Plaintiff carry her burden of showing reasonable and detrimental reliance on anything said to her in connection with the 2015 CFA or the litigation expenses.  <u>Rodi</u>, 389 F. 3d at 13.

Focusing first on the 2015 CFA, the disputed Hoey email about that form preceded the Plaintiff's discussions with Hoey, Sobczak, and her review and execution of it.  She swore at her deposition that, after her emails with Hoey, she reviewed, understood, and executed the 2015 CFA.  (UMF ¶¶ 7-18)  The document itself shows that she initialed all of its subsections, including those relating to attorneys' fees and litigation expenses. <u>See</u> <u>Campbell v. Gen. Dynamics Gov't Sys. Corp.</u>, 321 F. Supp. 2d 142, 149 n.6 (D. Mass. 2004), <u>aff'd</u>, 407 F.3d 546 (1st Cir. 2005) ("It is a traditional rule of contract law that a party to a contract is assumed to have read and understood the terms of a contract she signs."); <u>BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.</u>, 846 F. Supp. 2d 307, 313 (D. Me. 2012) ("As a matter of general

contract law, parties to a contract are deemed to have read the contract and are bound by its terms," citing  Restatement (Second) of Contracts § 211 cmt. b).

Further, after she reviewed the agreement, as she admits, she knew its terms, and she thus knew that it differed from the 2010 agreement.  (UMF ¶¶ 7-18)  As a matter of law and fact, the Plaintiff agreed to the terms of the 2015 CFA.  Moreover, paragraph 13 of the agreement is an integration clause.  It means what it says, and it confirms the enforceability of the 2015 CFA as executed.  (UMF ¶ 11)  Guldseth v. Fam. Med. Assocs. LLC, 45 F.4th 526, 539 (1st Cir. 2022) ("Any reliance on an understanding inconsistent with the written terms of the agreement is unreasonable as a matter of law."); Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC, 86 Mass. App. Ct. 242, 247–48  (2014) (Generally, contracting parties are understood to have included an integration clause in their written agreement with the intent "to preclude the subsequent introduction of evidence of preliminary negotiations or side agreements," citing Chambers v. Gold Medal Bakery, Inc., 83 Mass. App. Ct. 234, 244 (2013)).  In these undisputed circumstances, as a matter of law, the Plaintiff did not reasonably rely on the disputed 2015 Hoey email about the CFA.

Apart from the 2015 events and the CFA, the same essential analysis governs any purported fraud claim based on the Plaintiff's post-trial/appeal discussions with Hoey regarding the fees and case expenses.  All were charged pursuant to the 2015 CFA that the Plaintiff had read and accepted.  And the Plaintiff reviewed, discussed, and expressly approved the fees and expenses, just as she had with the contract.  (UMF ¶¶ 29-36)  By so expressing her independent understanding and approval of the charges in writing, the Plaintiff confirmed that she was simply abiding by the agreed contract terms and her own review of the charges.  Note also that she was represented by other counsel at the time, but saw no need to consult with her.  (UMF ¶¶ 36-37)

Whatever misrepresentations were allegedly made at the time of the file disbursements in 2020 (the Complaint is entirely vague on the issue), the Plaintiff as a matter of law <u>was not relying on them</u>.  Rather, she was relying on the contract terms and her review of the expenses.  And because the contract is an integration, the Plaintiff cannot be heard now to contradict its terms.

This suit is not truly about fraud.  Rather, it is about freedom of contract.  The Plaintiff entered open-eyed and knowingly into the 2015 CFA.  She knew what it said and what it meant, and she accepted it, because she knew that she would then be represented by one of the top plaintiff's attorneys in the country.  (UMF ¶¶ 7-19)  She then reaped tremendous benefit from the agreement (which doubtless informed her voluntary payment of the expenses owed under it).  Now, years later, she has apparently decided that she would like to revise some terms of her voluntary deal and payment, and she says that, after all, she was defrauded.  As a matter of law, she is not entitled to do this.  Her contractual undertaking is binding.

II.      <u>AS A MATTER OF LAW, KEENAN IS NOT LIABLE UNDER CHAPTER 93A.</u>

For the following reasons the purported Chapter 93A claim is groundless as a matter of law.

A.      <u>The 93A Claim Falls Along With the Fraud Claim.</u>

To begin with, the purported 93A claim in Count I and the fraud claim in Count III are based on the same essential theory:  that the Plaintiff was misled and overcharged.  That theory of fraud/deceit has not been properly pled and also is meritless for the reasons described in detail above.  And because there is no fraud claim as a matter of law, the cognate 93A claim based on the same theory must fail too.  <u>E.g.</u>, <u>Vaiarella v. Hanover Insur. Co.</u>, 409 Mass. 523, 530 (1991)(parasitic 93A claim fails with underlying claim); <u>Downey v. Chutehall Const. Co.</u>, 86 Mass. App. Ct. 660, 669 (2014)(93A claim "rises or falls" on outcome of related underlying

claim); Murphy v. National Grange Mut. Ins. Co., 2014 WL 5307671 at *6 (D. Mass. Oct. 16, 2014)(summary judgment on underlying claim forecloses derivative 93A claim); Pimental v. Wachovia Mort. Corp., 411 F. Supp. 2d 33, 40 (D. Mass. 2006)(same).

> B.   Keenan Engaged in No Unfair/Deceptive Conduct or Breach of Fiduciary Duty as a Matter of Law.

Beyond this problem, the 93A claim fails on its merits in any event.  Whether alleged conduct rises to the level of violation of section 9 is a question of law for the Court.  E.g., Federal Inc. Co. v. HPSC, Inc., 480 F. 3d 26, 34 (1st Cir. 2007); Ahern v. Scholz, 85 F. 3d 774, 797 (1st Cir. 1996); Casavant v. Norwegian Cruise Line LTD, 460 Mass. 500, 503 (2011); Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 414.  Here, Keenan's conduct as a matter of law was neither unfair, nor deceptive, nor a breach of fiduciary duty.

To make out a section 9 claim, the Plaintiff must show that Keenan committed an unfair or deceptive act or practice; that it occurred in trade or commerce; that she suffered an injury; and that the unfair/deceptive act caused that injury.  Rafferty v. Merck & Co., Inc., 479 Mass. 141, 160 (2018); See also Hershenow v. Enterprise Rent-A-Car Co., Inc., 445 Mass. 790, 791 (2006)(proof of causal connection between unfair/deceptive conduct and loss is required); Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 317 (2004)(93A plaintiff must establish unfair/deceptive act and causation).  A disputed act or practice is unfair or deceptive only if it is shown to be: (1) within some common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) the cause of substantial injury to consumers or other people.  Ciardi v. F. Hoffman-LaRoche, Ltd., 436 Mass. 53, 57-58 (2002); Heller Fin. v. Insurance Co. of North Amer., 410 Mass. 400, 408 (1991).

The Plaintiff cannot carry this burden here, because Keenan on the undisputed facts engaged in no unfair or deceptive conduct and caused no injury to the Plaintiff.  Note that the

only specifically alleged misrepresentation here is an email from David Hoey to the Plaintiff (which did not copy Keenan) regarding the 2015 CFA. Hoey said in the email that Keenan's 2015 contingent-fee agreement was "the same fee agreement as before [in 2010] but with [Keenan's] name since he is also trying the case with me. . . . it doesn't change your percentage or cost you more money. I'll show it to you next time I see you." (Am. Comp. ¶ 90) This email is no evidence of unfair/deceptive conduct on the part of Keenan, for numerous reasons.

- First, the email came from Hoey, not Keenan. Keenan was not copied on the email, and there is no allegation or evidence that he even knew about it, much less authorized it. Keenan made no such representations to the Plaintiff regarding the compensation terms of the 2015 agreement. And Hoey was not Keenan's employee. See Section I above.

- Second, consistent with the foregoing point, even the Plaintiff's opinion expert Attorney Erin Higgins conceded that she knew of no evidence of misrepresentation by Keenan, and that she had no opinion on that topic. (UMF ¶ 20) In her report and deposition testimony, she accused Hoey of misrepresentation in the form of his 2015 email regarding the 2015 CFA, but she specifically refrained from accusing Keenan of misrepresentation. The gravamen of her opinion as to Keenan was that he somehow breached a fiduciary duty to the Plaintiff, not that he engaged in fraud, or unfair/deceptive conduct. This concession by Higgins is important, because it is settled that mere negligence/breach of duty does not give rise to 93A liability. E.g., American Tel. & Tel. Co. v. IMR Capital Corp., 888 F. Supp. 221, 256 (D. Mass. 1995); Darviris v. Petros, 442 Mass. 274, 278 (2004); VMark Software, Inc. v. EMC Corp., 37 Mass, App. Ct. 610, 624 (1994).

- Third, it is undisputed that Hoey gave the 2015 agreement to the Plaintiff to review. She testified that she read it and understood it. She then initialed every paragraph separately (including the fee/expenses paragraphs), and she signed it. (UMF ¶¶ 7-18) By so doing, she mooted any and all potential complaints about the Hoey email that pre-dated her approval. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59, 809 N.E.2d 1017, 1031 (2004) ("A plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law."); Armstrong v. White Winston Select Asset Funds, LLC, No. CV 16-10666-JGD, 2022 WL 17981392, at *8 (D. Mass. Dec. 27, 2022) (reliance on any purported representations to the contrary [of the plain language of the written contract] are unreasonable as a matter of law."). By reviewing and then accepting the agreement, she confirmed her acceptance of the actual terms of the agreement independent of anything said to her previously. Hoey's 2015 email is thus irrelevant and not violative.

- <u>Fourth</u>, for all the same reasons, there can be no causation and damages here as a matter of law.  As she admitted at her deposition, the Plaintiff reviewed, understood, and expressly <u>accepted</u> the terms of Keenan's 2015 CFA.  Therefore, as a matter of law, implementation of the agreement's express and integrated terms cannot be unfair or deceptive.

- <u>Fifth</u>, it is undisputed that the Plaintiff reviewed the detailed spreadsheets itemizing the fees and expenses she was to pay, and that she <u>recorded in writing</u> in multiple places her approval of them.  (UMF ¶¶ 29-36)  She was represented by other counsel at the time, Patricia DeJuneas, but she did not see any reason to consult her.  (UMF ¶ 37)  Just as the Plaintiff understood and accepted the 2015 CFA, she understood and accepted the fees and expenses charged by her attorneys in 2020.  For this additional reason, Hoey's 2015 email is irrelevant and not violative.  In sum, the Plaintiff received precisely what she agreed to, and the <u>full</u> benefit of her bargain.  Keenan made no misrepresentation, engaged in no unfair/deceptive conduct, and caused the Plaintiff no harm.

There is no 93A liability here as a matter of law.  Nor is there any breach of fiduciary duty (Count II), for all the same reasons.

III.     THE VOLUNTARY PAYMENT DOCTRINE BARS ALL OF THE NON-FRAUD/93A CLAIMS.

Keenan has no fraud, Chapter 93A, or fiduciary-duty liability for the reasons given above.  In addition to those points, Count II (breach of fiduciary duty), Count IV (conversion), Count V (accounting), and Count VI (money had and received), are all barred by the voluntary payment doctrine.  The doctrine is well settled and has been reaffirmed recently.  It holds that, absent fraud, mistake of fact, or duress, a claimant may not recapture money that she has voluntarily paid under a claim of right.  <u>E.g.</u>, <u>Carey v. Fitzpatrick</u>, 301 Mass. 525, 527 (1938)("money voluntarily paid . . . with full knowledge of the facts [by] the one making the payment, cannot ne recovered back."); <u>Hinkley v. Town of Barnstable</u>, 311 Mass. 600, 605 (1942)(enforcing doctrine as a matter of law on reported record; error of law does not preclude operation of the rule); <u>Selectmen of Hull v. County Comm. of Plymouth</u>, 12 Mass. App. Ct. 900, 900 (1981)(reaffirming the doctrine); <u>Mantia v. Bactes Imaging Solutions, Inc.</u>, 29 Mass. L.

Rptr.  21; 2011 WL 5555860 at *4-5 (Mass. Super. Oct. 24, 2011)(granting summary judgment

on voluntary payment grounds); Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 333 (D. Mass.

2012)(voluntary payment doctrine barred claim; granting motion to dismiss), aff'd., 527 Fed.

App'x. 20 (1st Cir. 2012).

 The doctrine governs here and requires summary judgment for Keenan on all the listed

counts.  The Plaintiff without any mistakes, fraud, or duress entered into the 2015 CFA,

approved the fees and expenses charged under it, and paid the attorneys' fees and litigation

expenses that she incurred and owed under it.  See Sections I and II above.  The Plaintiff paid

voluntarily and pursuant to a contract claim.  The undisputed evidence shows that she did so

knowingly and willingly because she understood and agreed that she was responsible for the

charges, and because she wanted Keenan and Hoey to represent her.

 Note that, neither her original nor amended complaints allege any breach of contract.  She

understands her contractual liability and still acknowledges a contractual obligation.  She may

now regret the terms of the deal that she made and later ratified, but that is not a basis for a claim

for repayment of charges that she owed and voluntarily paid.

IV. THE EQUITABLE/QUASI-CONTRACT CLAIMS ARE BARRED.

 In addition to the reasons given above, the Plaintiffs equitable and "quasi-contractual"

claims (Conversion/Count IV, Accounting/Count V, and Money Had and Received/Count IV)

must all be summarily dismissed for the reasons given by Judge Gorton in his thoughtful

decision in the Reed v. Zipcar case.  See 883 F. Supp. 2d at 329.  In a case similar in its

essentials to this one (the plaintiff sought repayment of charges that it agreed to pay and then

paid), the Court granted judgment of dismissal as to all claims.  Discussing what it called the

Plaintiff's quasi-contractual claims for money had and received and unjust enrichment, the Court

reasoned as follows:

> First, Massachusetts law does not allow litigants to override
> an express contract by arguing unjust enrichment. . . .
> Because the . . . Agreement plainly governs the relationship
> of the parties, [the Plaintiff] is barred from bringing
> equitable claims sounding in quasi-contract.  Second, the
> existence of [the Plaintiff's] statutory claims for unfair and
> deceptive acts and practices precludes her from bringing . . .
> claims for unjust enrichment and money had and received,
> remedies available only when a party lacks and adequate
> remedy at law. . . . The viability of her . . . 93A claim . . . is
> beside the point; its mere availability bars her claims.

Id. at 334 (citations omitted.)  On this analysis, the Court dismissed the money had and received

and unjust enrichment claims.  The same analysis applies here on our undisputed facts and bars

the Plaintiff from "overriding her express contract" based on equitable/quasi-contract theories.

Judgment of dismissal on the Plaintiff's Counts IV-VI is thus required.

And beyond these points, the conversion claim is meritless for additional reasons.  Such a

claim is available only where the defendant wrongfully exercises dominion over the plaintiff's

property.  Hornibrook v. Richard, 488 Mass. 74, 83 (2021).  Further, where the property at issue

is money, the plaintiff must have a right to "specific funds themselves."  A mere claim for

repayment is insufficient.  Weiler v. Portfolio Scope, 469 Mass. 75, 87-88 (2014). For the

reasons detailed above, Keenan never converted any property of the Plaintiff's.  She entered into

and ratified a contract and paid only what she owed.  Keenan never wrongfully retained control

over her property; he simply exercised his contractual rights (which the plaintiff tacitly agrees he

has not breached).  Nor has the Plaintiff established a right to any "specific funds."  On the

contrary, she wants a refund of money that she agreed to pay.  There is no conversion here.

V.      THE KEENAN DEFENDANTS INCORPORATE ALL ARGUMENTS BY THE HOEY
        DEFENDANTS.

        Attorney Keenan and his firm adopt, incorporate, and rely on here all arguments,

authorities, and points presented by Attorney Hoey and his firm.  See Fed. R. Civ. P. 10(c).

CONCLUSION

        For all of the foregoing reasons, this Motion should be granted and an order dismissing

all Counts as against the Keenan Defendants should issue.

                                        DON C. KEENAN AND
                                        D.C. KEENAN & ASSOCIATES, P.C.
                                        d/b/a THE KEENAN LAW FIRM, P.C.,
                                        By their Attorneys,


                                        _____
                                        John J. O'Connor
                                        BBO # 555251
                                        Kristyn K. St. George
                                        BBO #693787
                                        PEABODY & ARNOLD, LLP
                                        Federal Reserve Plaza
                                        600 Atlantic Avenue
                                        Boston, MA  02210-2261
                                        Phone: (617) 951-2100
                                        Fax: (617) 951-2125
                                        joconnor@peabodyarnold.com
                                        kstgeorge@peabodyarnold.com

## **CERTIFICATE OF SERVICE**

I, John J. O'Connor, hereby certify that a copy of the foregoing document has been served via ECF on this 14th day of August, 2023 to:

Bridget A. Zerner, Esq.
John J.E. Markham, II, Esq.
Markham Read Zerner LLC
Once Commercial Wharf West
Boston, MA  02110
bzerner@markhamreadzerner.com
jmarkham@markhamreadzerner.com

Christine Knipper, Esq.
Wilson, Elser, Moskowitz & Dicker, LLP
260 Franklin Street, 14th Floor
Boston, MA  02110
christine.knipper@wilsonelser.com

John Bowler, Esq.
William M. Taylor, Esq.
Danni Shanel, Esq.
Troutman Pepper Hamilton Sanders
125 High Street, 19th Floor
Boston, MA  02110
william.taylor@troutman.com
danni.shanel@troutman.com

_____
John J. O'Connor

2536687
15133-208055

21