UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIRA WAHLSTROM,

        Plaintiff,

v.

DAVID J. HOEY, LAW OFFICES OF
DAVID J. HOEY, P.C., DON C. KEENAN,
D.C. KEENAN & ASSOCIATES, P.C. d/b/a
THE KEENAN LAW FIRM, P.C., AND
KEENAN'S KIDS FOUNDATION, INC.,

        Defendants.

C.A. NO.  1:22-cv-10792-RGS

**STATEMENT OF DEFENDANTS DON C. KEENAN
AND D.C. KEENAN & ASSOCIATES, P.C. d/b/a THE KEENAN LAW
FIRM, P.C. OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, the Defendants Attorney Don C. Keenan and D.C. Keenan & Associates, P.C. d/b/a The Keenan Law Firm, P.C. submit this statement of undisputed material facts.

I.    <u>Background; The 2010 Fee Agreement</u>

1. On May 1, 2009, the Plaintiff Kira Wahlstrom was raped in a Boston hotel parking garage.  The garage was owned by JPA IV Management Company and managed/operated by JPA I Management Company, Inc. (collectively "JPA").  First Amended Complaint, ¶¶ 1, 11, 12.[1]

2. On February 2, 2010, the Plaintiff entered into a contingent fee agreement ("2010 CFA") with the Defendant Law Offices of David J. Hoey, P.C. ("Hoey Firm") to pursue claims

---

[1] Citations are to the paragraphs in the First Amended Complaint and to the lettered exhibits attached to the accompanying Affidavit of John J. O'Connor.

1

for negligence against JPA. First Amended Complaint, ¶ 16; Affidavit of John J. O'Connor, Exhibit A.

3.      The Plaintiff met with Mr. Hoey at his firm and reviewed the 2010 CFA. O'Connor Aff., Ex. D, Wahlstrom Depo. at 14-15. She was given time to review and consider it, and she signed it at her home. The Plaintiff read the 2010 CFA, understood it, and had the opportunity to ask questions about it. O'Connor Aff. Ex. D, Wahlstrom Depo. at 13, 150, 165.

4.      At the time she signed it, the Plaintiff understood that she would be responsible for reasonable expenses, that her lawyers could borrow money to finance the case, and that she would be responsible for any related interest charges. O'Connor Aff. Ex. D, Wahlstrom Depo. at 15.

5.      The 2010 CFA provided that the Hoey Firm would be paid 33.3% of the gross amount recovered, and that the Plaintiff would be responsible for reasonable expenses and disbursements, including costs related to financing. First Amended Complaint, ¶ 18; O'Connor Aff., Ex. A, 2010 CFA.

II.     The Suit; The 2015 Fee Agreement

6.      On March 12, 2010, Mr. Hoey filed suit on the Plaintiff's behalf against JPA and others for negligence in Suffolk Superior Court, C.A. No. 1084CV01022. First Amended Complaint, ¶ 20.

7.      In February, 2013, Mr. Hoey contacted the Defendant Attorney Don Keenan of D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. about working for Mr. Hoey on the case. Mr. Keenan is one of the foremost plaintiff's personal injury practitioners in the country, with extensive experience handling premises-liability cases. First Amended Complaint,

¶ 21; Mr. Hoey and Mr. Keenan executed a contract confirming their agreement.  O'Connor Aff., Ex. I, Contract for Representation.

8. The Plaintiff met Mr. Keenan in February of 2015, and she decided that it would be beneficial for her to engage him to represent her in the case.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 18, 19.

9. The Plaintiff's designated expert Attorney Erin Higgins concedes that there is no evidence and she has no opinion to the effect that the 2013 contract between Attorneys Hoey and Keenan caused any harm to the Plaintiff.  O'Connor Aff., Ex. F, Higgins Depo. at 163-64.

10. Mr. Keenan required (consistent with the Rules of Conduct) that the Plaintiff sign a new contingent fee agreement with him.  Mr. Hoey emailed the draft agreement to the Plaintiff and represented that the new fee agreement would not change her percentage owed of the recovery or cost her more money.  He did not copy Mr. Keenan or anyone from his firm on the email.  First Amended Complaint, ¶ 22.

11. On or about June 16, 2015, after reviewing it with Hoey and/or his of-counsel Attorney Kris Sobczak, the Plaintiff signed the contingent fee agreement with Mr. Keenan ("2015 CFA").  The 2015 CFA provided that Mr. Keenan would be paid 33.3% of gross amounts recovered, with an additional 2% of gross recovery if the matter concluded after an appellate brief was filed, and an additional 5% thereafter (for a total of 7%) if the matter concluded/settled following an appellate decision.  First Amended Complaint, ¶¶ 25-26.  In addition, the Plaintiff was responsible for reasonable expenses, including the cost of borrowing to cover case expenses.  The 2015 CFA also provided that a portion of Mr. Keenan's percentage would be paid to the Hoey Firm.  Id. at ¶ 26; O'Connor Aff., Ex. B, 2015 CFA.

12. The experts agreed that contingent fee agreements providing for extra fees where judgments were appealed, and providing for contingency payments of 40%, are not uncommon in personal-injury practice. O'Connor Aff., Exs. F-G.

13. The Plaintiff read the 2015 CFA, understood it, and had the opportunity to ask questions about it before executing it. O'Connor Aff., Ex. D, Wahlstrom Depo. Trans. p. 150. The Plaintiff admits that she chose not to speak to or ask Mr. Keenan any questions regarding the 2015 CFA. O'Connor Aff., Ex. D, Wahlstrom Depo. at 211-212.

14. The Plaintiff thought it was reasonable for the 2015 CFA to include an additional charge for Mr. Hoey and Mr. Keenan in the event of an appeal. O'Connor Aff., Ex. D, Wahlstrom Depo. at 214-215.

15. When she executed the 2015 CFA, the Plaintiff understood that she would be responsible for expenses if there was a favorable decision, that the attorneys could finance the case through borrowed funds, and that she would be responsible for interest charges on the financing. O'Connor Aff., Ex. D, Wahlstrom Depo. at 16-17. The Plaintiff also understood that, if she lost the case, Mr. Hoey, not the Plaintiff, would be responsible for all fees and costs. O'Connor Aff., Ex. D, Wahlstrom Depo. at 31.

16. Despite knowing for years that Mr. Hoey was advancing case expenses on her behalf, she never at any point asked how much money the case was costing his firm. O'Connor Aff., Ex. D, Wahlstrom Depo. at 31.

17. Before executing the 2015 CFA, the Plaintiff looked it over and read it. O'Connor Aff., Ex. D, Wahlstrom Depo. at 22. She met with Mr. Hoey prior to signing it and had the opportunity to ask him any questions about it. O'Connor Aff., Ex. D, Wahlstrom Depo. at 23; and Ex. E, Hoey Depo. at 55.

18.     The Plaintiff reviewed and initialed the paragraphs of the 2015 CFA on the right-hand side of each page. She initiated the provision providing that the percentages to be paid to the attorneys would increase if there was an appeal. O'Connor Aff., Ex. B., 2015 CFA.

19.     The Plaintiff did not testify that, had anyone explained the 2015 CFA to the her differently, or in more detail, she would not have agreed to sign it. O'Connor Aff., Ex. F, Higgins Depo. at 153.

20.     The Plaintiff's designated expert conceded that she did not find or opine that Mr. Keenan made any misrepresentations, engaged in fraud, or engaged in conduct that violated G.L. c. 93A. O'Connor Aff., Ex. F, Higgins Depo. at 149-150.

III.    The Trial And Appeal

21.     Mr. Hoey and Mr. Keenan (and associates) tried the case from July 14 to August 11, 2015. First Amended Complaint, ¶ 28.

22.     The jury issued a verdict of $4M against JPA. With interest and costs, this resulted in a judgment of $6,650,829.58 in 2015, which was over $3 million more than the JPA's previous high settlement offer of $2.25 million.

23.     After the verdict, the Court ordered a new trial, and the Plaintiff's appellate counsel, Patricia DeJuneas, obtained leave to prosecute an interlocutory appeal. First Amended Complaint, ¶¶ 30-31.

24.     Mr. Hoey and Mr. Keenan both participated in the preparation of and strategy for the appeal. For example, on February 22, 2017, Mr. Hoey met with the Plaintiff and Ms. DeJuneas to discuss the appeal and strategy. O'Connor Aff., Ex. D, Wahlstrom Depo. Ex. 12. Mr. Keenan communicated regularly with Mr. Hoey regarding appeal strategy and filings, and Hoey in turn communicated with DeJuneas. They exchanged hundreds of emails and had

multiple strategy calls. O'Connor Aff., Ex. D, Wahlstrom Depo. at 73, 74. Mr. Hoey also reviewed the appeals brief and made comments on it before it was submitted. O'Connor Aff., Ex. D, Wahlstrom Depo. at 79, 98.

25. On June 10, 2019, the Appeals Court held that the trial judge applied the wrong legal standard in ordering a new trial. First Amended Complaint, ¶ 36.

26. The Plaintiff's designated expert Attorney Erin Higgins concedes that there is no evidence (and she does not opine) that any alleged breaches of duty by Mr. Keenan made any difference in the outcome of the Plaintiff's trial or appeal. O'Connor Aff., Ex. F, Higgins Depo. at 151.

27. As it turned out, bringing Mr. Keenan on as counsel was hugely beneficial to the Plaintiff. Prior to his appearance, no offer of settlement above $450,000 had been made. Wahlstrom Depo. at 27-28. During the trial no offer above $2.25 million was made. Yet the jury returned a record verdict of $4 million. O'Connor Aff., Ex. E, Hoey Depo. at 68.

IV.   Post Appeal/Billing

28. On November 18 and 19, JPA's insurers paid $9,987,683.80 -- the full judgment with interest. First Amended Complaint, ¶ 48. This total figure exceeded by more than $7 million the most that the JPA had previously offered to settle.

29. The Plaintiff and Mr. Hoey met in December of 2019 to begin discussing the attorneys' fees and the case expenses. The Plaintiff had questions, which he answered. O'Connor Aff., Ex. E, Hoey at 105. During this meeting she was shown expenses and the litigation-financing loan information. Id. at p. 105-106.

30. On March 27, 2020, Mr. Hoey provided the Plaintiff an updated itemization of the fees and expenses. The Plaintiff met with Mr. Hoey and again went over the expenses and

6

attorneys' fees in the spreadsheet. O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 41, 45.  On March 29, 2020 he sent a spreadsheet with additional details regarding the charges.  First Amended Complaint, ¶ 54; O'Connor Aff., <u>Ex. J</u>, Hoey email and attachments.

31.    On March 30, 2020, the Plaintiff responded to the March 29, 2020 email/spreadsheet indicating she did not have any more questions about it and would stop by Mr. Hoey's office to execute it. O'Connor Aff., <u>Ex. K</u>, Wahlstrom email to Hoey.

32.    Mr. Hoey specifically told the Plaintiff that, if she had any questions or disputes regarding any of the expenses listed, she should let him know.  O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 43; and <u>Ex. J</u>, March 29, 2020 email.  The Plaintiff raised no concerns. O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 44, 201.

33.    Specifically, the Plaintiff did not raise any concerns regarding the litigation funding expenses (Depo. at 56); the fees paid to Attorney Amy Goganian (58); the fees and work of Attorney Edward Goren (58); Mr. Bolan's work or fees (60); the cost of the WIN Interactive video (60); or who John Vail was and what work he did on her case (61-62). O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo.

34.    In general, the lawyers refrained from apprising the Plaintiff of day-to-day case developments, because it upset her.  O'Connor Aff., <u>Ex. E</u>, Hoey Depo. at 73.  But the Plaintiff was still kept regularly informed, and she never objected to the lawyers' strategy decisions or expenses in real time.  O'Connor Aff., <u>Ex. E</u>, Hoey Depo. at 47, 110, 112-113.

35.    After the Plaintiff reviewed and understood all of the itemized case charges, she initialed the settlement statements and also wrote/signed two notes of approval: (1) one dated March 27, 2020 and stating "Kira Wahlstrom I am aware of the above fee distribution and

approve"; and (2) a second dated March 27 and stating "Kira Wahlstrom, I approve of the above itemized expenses".  First Amended Complaint, ¶ 55; O'Connor Aff., Ex. C.

36. The Plaintiff agrees that she read the settlement statements explaining the fees and expenses, understood them, and had the opportunity to ask questions before executing them. O'Connor Aff., Ex. D, Wahlstrom Depo. at 150, 201, and Exs. J-K, Plaintiff/Hoey emails.

37. At all times relevant to the process of reviewing the fees/expenses, the Plaintiff was represented by and had access to other counsel in addition to Attorneys Hoey and Keenan. Attorney DeJuneas, who had appeared and worked with and for the Plaintiff starting in 2015, was still representing the Plaintiff and available to answer any questions.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 207, 208.  But the Plaintiff did not feel any concern or any need to ask her to review the fees and expenses.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 226.

38. From the time that the Plaintiff signed off on the expenses and fees in March of 2020, though March of 2022, she never raised any issues or concerns with Attorneys Hoey or Keenan, and never in any way disputed or questioned their attorneys' fees and/or expenses. O'Connor Aff., Ex. D, Wahlstrom Depo. at 128-129.

DON C. KEENAN AND
D.C. KEENAN & ASSOCIATES, P.C.
d/b/a THE KEENAN LAW FIRM, P.C.,
By their Attorneys,

*/s/ John J. O'Connor*

John J. O'Connor
BBO # 555251
Kristyn K. St. George
BBO #693787
PEABODY & ARNOLD, LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210-2261
Phone: (617) 951-2100
Fax: (617) 951-2125
joconnor@peabodyarnold.com
kstgeorge@peabodyarnold.com

## CERTIFICATE OF SERVICE

I, John J. O'Connor, hereby certify that a copy of the foregoing document has been served via ECF on this 14th day of August, 2023 to:

Bridget A. Zerner, Esq.
John J.E. Markham, II, Esq.
Markham Read Zerner LLC
Once Commercial Wharf West
Boston, MA 02110
bzerner@markhamreadzerner.com
jmarkham@markhamreadzerner.com

John Bowler, Esq.
William M. Taylor, Esq.
Danni Shanel, Esq.
Troutman Pepper Hamilton Sanders
125 High Street, 19th Floor
Boston, MA 02110
william.taylor@troutman.com
danni.shanel@troutman.com

Christine Knipper, Esq.
Wilson, Elser, Moskowitz & Dicker, LLP 260
Franklin Street, 14th Floor
Boston, MA 02110
christine.knipper@wilsonelser.com

John J. O'Connor

2553302
15133-208055