UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIRA WAHLSTROM,

                 Plaintiff,

    v.

DAVID J. HOEY, LAW OFFICES OF
DAVID J. HOEY, P.C., DON C. KEENAN,
D.C. KEENAN & ASSOCIATES, P.C. d/b/a
THE KEENAN LAW FIRM, P.C., AND
KEENAN'S KIDS FOUNDATION, INC.,

                 Defendants.

C.A. NO.  1:22-cv-10792-RGS

**OPPOSITION OF DEFENDANTS DON C. KEENAN AND D.C. KEENAN &
ASSOCIATES, P.C. D/B/A THE KEENAN LAW FIRM, P.C. TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

INTRODUCTION

      The Plaintiff Kira Wahlstrom has moved for partial summary judgment as to her claims

alleging unfair/deceptive acts under Chapter 93A §9, breach of fiduciary duty, and conversion.

The Plaintiff even goes so far as to request summary judgment on her contention that the subject

conduct was, as a matter of law, knowing and willful so as to require multiple damages.  The

Defendants Don C. Keenan  and D.C. Keenan & Associates, P.C. d/b/a The Keenan Law Firm,

P.C. (collectively "Keenan") oppose this motion.  Not only is the Plaintiff not entitled to the

relief she seeks, all of her claims should be ordered dismissed for the reasons given in Keenan's

cross motion.  And even if the Court disagrees with that view, issues of fact bar summary

judgment for the Plaintiff, and require review by a jury.  Either way, the Plaintiff's Motion

should be denied.

<u>PERTINENT UNDISPUTED MATERIAL FACTS</u>

I.      <u>Background; The 2009 and 2010 Fee Agreements</u>

1.      On May 1, 2009, the Plaintiff Kira Wahlstrom was raped in a Boston hotel parking garage.  The garage was owned by JPA IV Management Company and managed/operated by JPA I Management Company, Inc. (collectively "JPA").   First Amended Complaint, ¶¶ 1, 11, 12.

2.      In May 2009, the Plaintiff executed a contingent-fee agreement with Attorney Austin O'Toole.  The agreement provided for a fee of 33.3% following a settlement or judgment, and 40% following an appeal.  Second Affidavit of John O'Connor, <u>Exhibit A</u>.  Then, on February 2, 2010, pursuant to O'Toole's referral, the Plaintiff entered into a fee agreement with the Defendant Law Offices of David J. Hoey, P.C. ("Hoey Firm") to pursue claims against JPA ("2010 CFA").  First Amended Complaint, ¶ 16; Affidavit of John J. O'Connor, <u>Exhibit A</u>.

3.      The Plaintiff met with Mr. Hoey at his firm and reviewed the 2010 CFA.  O'Connor Aff., <u>Ex. D</u>, Wahlstrom Depo. at 14-15.  She was given time to review and consider it, and she signed it at her home.  The Plaintiff read the 2010 CFA, understood it, and had the opportunity to ask questions about it. O'Connor Aff. <u>Ex. D</u>, Wahlstrom Depo. at 13, 150, 165.

4.      At the time she signed it, the Plaintiff understood that she would be responsible for reasonable expenses, that her lawyers could borrow money to finance the case, and that she would be responsible for any related interest charges.  O'Connor Aff. <u>Ex. D</u>, Wahlstrom Depo. at 15.

5.      The 2010 CFA provided that the Hoey Firm would be paid 33.3% of the gross amount recovered, and that the Plaintiff would be responsible for reasonable expenses and disbursements, including costs related to financing.  First Amended Complaint, ¶ 18; O'Connor Aff., <u>Ex. A</u>, 2010 CFA.

II.      <u>The Suit; The 2013 Hoey/Keenan Agreement; The 2015 Contingent-Fee Agreement</u>

6.      On March 12, 2010, Mr. Hoey filed suit on the Plaintiff's behalf against JPA and others for negligence in Suffolk Superior Court, C.A. No. 1084CV01022. First Amended Complaint, ¶ 20.

7.      In February, 2013, Mr. Hoey contacted the Defendant Attorney Don Keenan of D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. about working for Mr. Hoey on the case.

Mr. Keenan is one of the foremost plaintiff's personal injury practitioners in the country, with extensive experience handling premises-liability cases.  First Amended Complaint, ¶ 21; Mr. Hoey and Mr. Keenan executed a contract confirming their agreement.  O'Connor Aff., Ex. I, Contract for Representation.

8.      The Plaintiff met Mr. Keenan in February of 2015, and she decided that it would be beneficial for her to engage him to represent her in the case.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 18, 19.

9.      The Plaintiff's designated expert Attorney Erin Higgins concedes that there is no evidence and she has no opinion to the effect that the 2013 contract between Attorneys Hoey and Keenan caused any harm to the Plaintiff.  O'Connor Aff., Ex. F, Higgins Depo. at 163-64.

10.      Mr. Keenan required that the Plaintiff sign a new contingent-fee agreement with him.  On February 12, 2015, Mr. Keenan met in person with the Plaintiff to discuss his representation of her.  He told her he would need his own fee agreement.  Mr. Hoey later emailed the draft fee agreement to the Plaintiff and represented that the new agreement would not change her percentage owed of the recovery or cost her more money.  He did not copy Mr. Keenan or anyone from his firm on the email.  First Amended Complaint, ¶ 22.

11.      On or about June 16, 2015, after reviewing it with Hoey and/or his of-counsel colleague Attorney Kris Sobczak, the Plaintiff signed the contingent-fee agreement with Mr. Keenan ("2015 CFA").  The 2015 CFA provided that Mr. Keenan would be paid 33.3% of gross amounts recovered, and (like the 2009 O'Toole agreement) that an additional 2% of gross recovery was due if the matter concluded after an appellate brief was filed, and an additional 5% was due thereafter (for a total of 7%) if the matter concluded/settled following an appellate decision.  First Amended Complaint, ¶¶ 25-26; Second O'Connor Aff. Ex. A.  In addition, the Plaintiff was responsible for reasonable expenses, including the cost of litigation financing.  The 2015 CFA also provided that a portion of Mr. Keenan's percentage would be paid to the Hoey Firm.  Id. at ¶ 26; O'Connor Aff., Ex. B, 2015 CFA.

12.     The experts agreed that contingent-fee agreements providing for extra fees where judgments were appealed, and providing for contingency payments of 40% (like the O'Toole and Keenan agreements) are not uncommon in personal-injury practice.  O'Connor Aff., Exs. F-G.

13.     The Plaintiff read the 2015 CFA, understood it, and had the opportunity to ask questions about it before executing it.  O'Connor Aff., Ex. D, Wahlstrom Depo. Trans. p. 150.  The Plaintiff admits that she chose not to speak to or ask Mr. Keenan any questions regarding the 2015 CFA.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 211-212.

14.     The Plaintiff thought it was reasonable for the 2015 CFA to include an additional charge for Mr. Hoey and Mr. Keenan in the event of an appeal.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 214-215.

15.     When she executed the 2015 CFA, the Plaintiff understood that she would be responsible for expenses if there was a favorable decision, that the attorneys could finance the case through borrowed funds, and that she would be responsible for interest charges on the financing.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 16-17.  The Plaintiff also understood that, if she lost the case, Mr. Hoey, not the Plaintiff, would be responsible for all fees and costs.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 31.

16.     Despite knowing for years that Mr. Hoey was advancing case expenses on her behalf, she never at any point asked how much money the case was costing his firm.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 31.

17.     Before executing the 2015 CFA, the Plaintiff looked it over and read it.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 22.  She met with Mr. Hoey prior to signing it and had the opportunity to ask him any questions about it. O'Connor Aff., Ex. D, Wahlstrom Depo. at 23; and Ex. E, Hoey Depo. at 55.

18.     The Plaintiff reviewed and initialed the paragraphs of the 2015 CFA on the right-hand side of each page.  She initiated the provision providing that the percentages to be paid to the attorneys would increase if there was an appeal.  O'Connor Aff., Ex. B., 2015 CFA.

19.     The Plaintiff did not testify that, had anyone explained the 2015 CFA to the her differently, or in more detail, she would not have agreed to sign it.  O'Connor Aff., Ex. F, Higgins Depo. at 153.

20.     The Plaintiff's designated expert conceded that she did not find or opine that Mr. Keenan made any misrepresentations, engaged in fraud, or engaged in conduct that violated G.L. c. 93A. O'Connor Aff., Ex. F, Higgins Depo. at 149-150.

III.     The Trial And Appeal

21.     Mr. Hoey and Mr. Keenan (and associates) tried the case from July 14 to August 11, 2015.  First Amended Complaint, ¶ 28.

22.     The jury issued a verdict of $4M against JPA.  With interest and costs, this resulted in a judgment of $6,650,829.58 in 2015, which was over $3 million more than the JPA's previous high settlement offer of $2.25 million.

23.     After the verdict, the Court ordered a new trial, and the Plaintiff's appellate counsel, Patricia DeJuneas, obtained leave to prosecute an interlocutory appeal.   First Amended Complaint, ¶¶ 30-31.

24.     Mr. Hoey and Mr. Keenan participated in the handling of the appeal.  It was Mr. Keenan's idea to engage Ms. DeJuneas to assist with the appeal.  On February 22, 2017, Mr. Hoey met with her and the Plaintiff to discuss appeal strategy.  O'Connor Aff., Ex. D, Wahlstrom Depo. Ex. 12. Mr. Keenan communicated regularly with Mr. Hoey regarding appeal strategy, and Hoey in turn communicated with DeJuneas.  They had multiple emails and calls.  While the appeal was pending, Mr. Keenan worked to try and settle the case, communicating with counsel and potential mediators.  (There was a settlement offer of $3.5 million, but the Plaintiff rejected it.)  O'Connor Aff., Ex. D, Wahlstrom Depo. at 73, 74.  Mr. Hoey also reviewed and commented on the appeals brief.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 79, 98.

25.     On June 10, 2019, the Appeals Court held that the trial judge applied the wrong legal standard in ordering a new trial.  First Amended Complaint, ¶ 36.

26.     The Plaintiff's designated expert Attorney Erin Higgins concedes that there is no evidence (and she does not opine) that any alleged breaches of duty by Mr. Keenan made any difference in the outcome of the Plaintiff's trial or appeal.  O'Connor Aff., Ex. F, Higgins Depo. at 151.

27.     As it turned out, bringing Mr. Keenan on as counsel was hugely beneficial to the Plaintiff.  Prior to his appearance, no offer of settlement above $450,000 had been made.  Wahlstrom Depo. at 27-28.  During the trial no offer above $2.25 million was made.  Yet the jury returned a record verdict of $4 million.  O'Connor Aff., Ex. E, Hoey Depo. at 68.

IV.     Post Appeal/Billing

28.     On November 18 and 19, JPA's insurers paid $9,987,683.80 -- the full judgment with interest.  First Amended Complaint, ¶ 48.  This total figure exceeded by more than $7 million the most that the JPA had previously offered to settle.

29.     The Plaintiff and Mr. Hoey met in December of 2019 to begin discussing the attorneys' fees and the case expenses.  The Plaintiff had questions, which he answered.  O'Connor Aff., Ex. E, Hoey at 105.  During this meeting she was shown expenses and the litigation-financing loan information.  Id. at p. 105-106.

30.     On March 27, 2020, Mr. Hoey provided the Plaintiff an updated itemization of the fees and expenses.  The Plaintiff met with Mr. Hoey and again went over the expenses and attorneys' fees in the spreadsheet. O'Connor Aff., Ex. D, Wahlstrom Depo. at 41, 45.  On March 29, 2020 he sent a spreadsheet with additional details regarding the charges.  First Amended Complaint, ¶ 54; O'Connor Aff., Ex. J, Hoey email and attachments.

31.     On March 30, 2020, the Plaintiff responded to the March 29, 2020 email/spreadsheet indicating she did not have any more questions about it and would stop by Mr. Hoey's office to execute it.  O'Connor Aff., Ex. K, Wahlstrom email to Hoey.

32.     Mr. Hoey specifically told the Plaintiff that, if she had any questions or disputes regarding any of the expenses listed, she should let him know.  O'Connor Aff., Ex. D, Wahlstrom Depo.

at 43; and Ex. J, March 29, 2020 email.  The Plaintiff raised no concerns.  O'Connor Aff., Ex. D,

Wahlstrom Depo. at 44, 201.

33.    Specifically, the Plaintiff did not raise any concerns regarding the litigation funding

expenses (Depo. at 56); the fees paid to Attorney Amy Goganian (58); the fees and work of Attorney

Edward Goren (58); Mr. Bolan's work or fees (60); the cost of the WIN Interactive video (60); or who

John Vail was and what work he did on her case (61-62). O'Connor Aff., Ex. D, Wahlstrom Depo.

34.    In general, the lawyers refrained from apprising the Plaintiff of day-to-day case

developments, because it upset her.  O'Connor Aff., Ex. E, Hoey Depo. at 73.  But the Plaintiff was still

kept regularly informed, and she never objected to the lawyers' strategy decisions or expenses in real

time.  O'Connor Aff., Ex. E, Hoey Depo. at 47, 110, 112-113.

35.    After the Plaintiff reviewed and understood all of the itemized case charges, she initialed

the settlement statements and also wrote/signed two notes of approval: (1) one dated March 27, 2020 and

stating "Kira Wahlstrom I am aware of the above fee distribution and approve"; and (2) a second dated

March 27 and stating "Kira Wahlstrom, I approve of the above itemized expenses".  First Amended

Complaint, ¶ 55; O'Connor Aff., Ex. C.

36.    The Plaintiff agrees that she read the settlement statements explaining the fees and

expenses, understood them, and had the opportunity to ask questions before executing them.  O'Connor

Aff., Ex. D, Wahlstrom Depo. at 150, 201, and Exs. J-K, Plaintiff/Hoey emails.

37.    At all times relevant to the process of reviewing the fees/expenses, the Plaintiff was

represented by and had access to other counsel in addition to Attorneys Hoey and Keenan.  Attorney

DeJuneas, who had appeared and worked with and for the Plaintiff starting in 2015, was still representing

the Plaintiff and available to answer any questions.  O'Connor Aff., Ex. D, Wahlstrom Depo. at 207, 208.

But the Plaintiff did not feel any concern or any need to ask her to review the fees and expenses.

O'Connor Aff., Ex. D, Wahlstrom Depo. at 226.

38.    From the time that the Plaintiff signed off on the expenses and fees in March of 2020,

though March of 2022, she never raised any issues or concerns with Attorneys Hoey or Keenan, and

never in any way disputed or questioned their attorneys' fees and/or expenses.  O'Connor Aff., Ex. D,

Wahlstrom Depo. at 128-129.

V.      Pertinent Expert Opinions

39.     As noted above, the Plaintiff's expert did not find and does not opine that Mr. Keenan

made any misrepresentations, engaged in fraud, or engaged in 93A-type conduct.  See supra ¶ 20

("O'Connor Aff., Ex. F).

40.     The Defendants' designated experts both testified at depositions.  Attorney Robert

Michael, an experienced personal-injury practitioner, testified in pertinent part that the Plaintiff's expert,

who admitted that she was a defense attorney and had no experience representing personal-injury

plaintiffs, was wrong about the applicable standard of care and the duties owed by Attorneys Keenan and

Hoey.  He also said that he saw no misrepresentations in connection with the handing of the 2015 CFA,

that the terms of the 2015 CFA were appropriate, that the Plaintiff was properly advised as to the 2015

CFA, that the Plaintiff approved the 2015 CFA and case expenses, and that the fees and expenses were

proper and reasonable.  Second O'Connor Aff., Ex. A.

41.     Attorney Charles Kazarian, an experienced plaintiff-side legal malpractice practitioner,

also testified in pertinent part that the Plaintiff's expert was wrong about the governing standard of care,

and that the defendants had met it.  He testified that Attorneys Keenan and Hoey were not required to

disclose particular expenses to the Plaintiff as the case progressed, that they had no conflict of interest

with the Plaintiff as to the issues raised on appeal, that there was no 93A violation by the defendants, that

Mr. Hoey properly explained the 2015 CFA to the Plaintiff, and that the Plaintiff's decision to engage Mr.

Keenan and bring him into the case added "tremendous" value to the case because of his experience and

skills.  Second O'Connor Aff., Ex. B.

ARGUMENT

I.   THE PLAINTIFF'S MOTION SHOULD BE DENIED FOR THE REASONS GIVEN IN
     KEENAN'S CROSS MOTION.

Keenan has moved for summary judgment of dismissal as to all counts of the Amended

Complaint.  As explained in detail in that Motion, all facts  material to Keenan's arguments are

undisputed, and all claims should be resolved in Keenan's favor as a matter of law.  For all the same

reasons, the Plaintiff's arguments in her Motion are meritless, and she is not entitled to judgment in her

favor.  And the Plaintiff's motion should be denied for the following additional reasons.

II.  IN ANY EVENT, SUMMARY JUDGMENT FOR THE PLAINTIFF IS INAPPROPRIATE
     FOR MULTIPLE ADDITIONAL REASONS.

     A.   The Plaintiff Cannot Rely on an Unpled Breach-of-Contract Theory at This Stage.

The Plaintiff appears to be trying to sandbag the Defendants at the summary judgment stage with

a new claim: breach of contract.  See Plaintiff's Memo. at 20, 27 (alleging breach of the 2015 CFA).  But

the operative (amended) complaint alleges no breach of contract, and the Plaintiff's designated expert

offers no opinion on a breach of contract theory.  There is no such theory in the case.  Indeed, as the case

has been pled and prosecuted so far, the Plaintiff effectively reaffirms the 2015 CFA, and her only real

complaint is that, in retrospect (after two years), it was a bad deal for her.

The Plaintiff must be held to the claims she has pled.  She cannot amend them now through

argument in a summary judgment brief.  E.g., Katz v. Belveron Real Estate Partners, LLC, 28 F. 4th 300,

308-310 (1st Cir. 2022); Miranda-Rivera v. Toleda-Davila, 813 F. 3d 64, 76 (1st Cir. 2016); Montany v.

Univ. of New England, 858 F. 3d 34, 42 (1st Cir. 2017). See also Brooks v. AIG SunAmerica Life Insur.

Co., 480 F. 3d 579, 590 (1st Cir. 2007)(defendant "should not be made to shoot at a continuously moving

target.").  The Plaintiff has chosen in her operative (and already amended) pleading to assert no contract

claims.  Rather, she chose to focus on purported fraud and 93A claims.  Having made that choice, she

must now abide by it.  Her Amended Complaint tacitly acknowledges the validity of the 2015 CFA, and

under the governing authorities she cannot now be heard to argue otherwise.  The Court should disregard

all points and authorities based on some breach-of-contract theory.

9

B.      The Plaintiff Has Not Shown Conduct by Keenan that was Unfair/Deceptive as a Matter
of Law.

The Plaintiff has failed to establish unfair and deceptive conduct by Keenan as a matter of law.

The Plaintiff's argument here is that the defendants allegedly overcharged her, and this is a violation of

fiduciary duty that is unfair/deceptive as a matter of law.  (Plaintiff's Memo. at 15-16)  In this regard, the

Plaintiff cites several decisions involving alleged overcharges by counsel.  See Sears, Roebuck & Co. v.

Goldstone & Sudhalter, 128 F. 3d 10, 15-20 (1st Cir. 1997); Doucette v. Kwiat, 392 Mass. 915, 917

(1984); and Guerard v. Burke, 387 Mass. 802 (1982).  But these decisions are inapposite.

The "overcharging" cases the Plaintiff cites are alike in that they turn on facts that are not present

here, and do not include important facts that are undisputed here.  In the Sears Roebuck case, the

defendant purchased the practice of a deceased collection attorney.  The defendant found in the office

basement a large number of closed collection files on old matters that his predecessor had handled for

Sears.  The defendant over an extended period of time then billed Sears on the closed matters, even

though he performed no work on them, he knew they were closed, and his fee agreement did not authorize

the charges.  128 F. 3d at 10.  In Doucette, the defendant settled a tort case on a contingency basis, but

when the settlement payment came in, he charged not only the contractually agreed contingency fee, but

also an extra-contractual, previously unauthorized additional charge for negotiating lien settlements.  392

Mass. at 915.  And in Guerard v. Burke, the defendant attorney charged his client a contingency fee in a

divorce case, which the rules of professional conduct expressly prohibit.  387 Mass. at 802.  In all of these

cases, the defendants imposed charges that plainly had no contractual or legal basis; in all of the cases the

defendants provided no advance accounting for or explanation of the charges; and in all of the cases there

was no evidence that the client received an itemization of the fees/expenses in advance and approved

them in writing before funds were disbursed.

As such, the Plaintiff's overcharging authorities are distinct, and off point.  The critical

distinction here is the undisputed fact that the Plaintiff reviewed and approved the fees and expenses that

the Defendants charged. (Opposition Undisputed Material Facts ¶¶ 29-38)  That fact takes this case out of

the realm of the <u>Sears Roebuck</u> line of decisions.  And this undisputed fact is significant to both of the defense experts.  They swore that there was no 93A violation and Attorneys Keenan and Hoey complied with the standard of care by documenting all expenses and fees, explaining them, and obtaining approval from the Plaintiff.  (OUMF ¶¶ 40-41)

The truth is that, although she does not want to acknowledge this or frame her case this way, the Plaintiff's basic argument is that, although the 2015 CFA authorized all of the disputed charges, and although she approved all of them at the time, in hindsight (two years later), she considers the fees/charges unreasonable, and she wants to turn her change of heart into a fraud case.  This argument must fail.  <u>First</u>, her argument at most seeks to allege some breach of contract or negligence, but the amended complaint asserts neither claim. Nor is there any basis for such claims.  The terms of the 2015 CFA were standard, reasonable, and largely mirrored the terms of the 2009 (O'Toole) and 2010 (Hoey) agreements that the Plaintiff had previously accepted.  It is undisputed that Keenan and Hoey performed fully and well and obtained an outstanding result.  The Plaintiff then approved and ratified all of their charges after a full review of them.

<u>Second</u>, it is settled that a negligent/unreasonable overcharge is not the stuff of 93A liability.  It is not and cannot be the law of Massachusetts that an attorney who has provided a written accounting of case fees/expenses to his client, discusses them with her, and then is given her express written approval has engaged in 93A-type unfair/deceptive conduct for purposes of a rule 56 motion.  <u>E.g.</u>, <u>Poly v. Moylan</u>, 423 Mass. 141, 151 (1996)(negligent legal malpractice does not violate Chapter 93A); <u>Whitinsville Plaza, Inc. v. Kotseas</u>, 378 Mass. 85, 100-101 (1979)(not every alleged breach of contract violates Chapter 93A); <u>Robinson v. Bodoff</u>, 355 F. Supp. 2d 578, 584 (D. Mass. 2005)(citing cases; legal malpractice is not per se actionable under 93A).

The Plaintiff's 93A claim is radical.  It would create strict 93A liability for any attorney whose client decides months or (as happened here) years after a suit is over that she has been overcharged.  Neither law nor common sense support this rule.

C.    <u>The Plaintiff Has Not Established Knowing and Willful Conduct Under 93A.</u>

The Plaintiff's argument (Pl. Memo. at 25-29) that she is entitled to a judgment as a matter of law that Mr. Keenan engaged in knowing and willful conduct so as to justify multiple damages is frivolous, for a number of reasons.  <u>First</u>, the Plaintiff <u>acknowledges</u> that her fraud claim presents fact ("state of mind") issues and is not susceptible to summary disposition (Pl. SJ Motion at 2, n. 1), but she then argues that her 93A claim, which is based <u>on the same evidence, the same theory of liability, and the same alleged "state of mind"</u>, can be decided summarily.  Even acknowledging that Chapter 93A is a new remedy separate from common law fraud, the Plaintiff's position is self-contradictory and makes no sense.  The 93A claim depends on the <u>same</u> evidence, arguments, intent, and alleged knowing/willful, unfair/deceptive acts as underlie the fraud claim.  As such, if there are fact issues as to the fraud claim, as the Plaintiff acknowledges, there necessarily are fact issues with the parasitic 93A claim.

<u>Second</u>, there is no precedent for the extraordinary relief that the Plaintiff seeks.  A diligent search by defense counsel has uncovered <u>no</u> decision by any Massachusetts court of record granting summary judgment holding that a defendant engaged in knowing and willful 93A actions <u>as a matter of law</u>.  This is not surprising.  After all (as the Plaintiff concedes), claims that turn on a party's intent and subjective knowledge, including 93A claims alleging knowing/willful actions, necessarily raise questions for the factfinder.  Courts repeatedly have held that such questions should not be resolved summarily. <u>E.g.</u>, <u>Petitti v. New Eng. Tel. & Tel. Co.</u>, 909 F. 2d 28, 31 (1st Cir. 1990)(issues of intent "are most suited for jury determinations"); <u>Elliston v. Wing Enterprises, Inc.</u>, 2016 WL 7045704 at *2 (D. Mass. Dec. 2, 2016)(whether defendant acted knowingly and willfully is a question of fact; summary judgment is inappropriate); <u>Davis v. Diversified Consultants, Inc.</u>, 36 F. Supp. 3d 217, 227 (D. Mass. 2014)(intent is an issue of fact rarely decided at the summary judgment stage); <u>Whitney v. Continental Ins. Co.</u>, 595 F. Supp. 939, 947 (D. Mass. 1984)(whether acts were knowing and willful was for the jury); <u>Flesner v. Tech. Comm. Corp.</u>, 410 Mass. 805, 809 (1991)(summary judgment as to issues of motive, intent, and state of mind is disfavored); <u>Squeri v. McCarnick</u>, 32 Mass. App. Ct. 203, 208 (1992)(whether defendant's acts were willful/knowing so as to warrant multiple damages is a question of fact); <u>Ortins v.</u>

Lincoln Prop. Co., 2019 WL 4480648 at *9 (Mass. Super. Aug. 9, 2019)(issues of defendant's knowledge and intent precluded summary judgment on 93A claim).

Nor are the decisions cited by the Plaintiff to the contrary.  In In re Porcaro, 545 B.R. 384 (B.A.P. 1st Cir. 2016), the knowing/willful issue was not decided summarily.  Rather, it was resolved on preclusion grounds, and the 93A findings were made following a full trial in which the Court decided as a matter of fact that there was knowing/willful conduct.  In Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760 (1986), there was no summary judgment.  Instead, the Court agreed there were fact issues and referred the case to a Master, who made 93A findings after a fifty-day trial.  In Karasavas v. Gargano, 2014 WL 861029 (Ma. Super. Feb. 7, 2014), aff'd, 87 Mass. App. Ct. 1125 (2015), the 93A issues were resolved following evidentiary proceedings, not on rule 56 motions.  All of the cases the Plaintiff relies on here are off point. (Pl. Memo. at 25-27)  None of them granted the summary relief that the Plaintiff seeks.

Third, in any event, the Plaintiff's Motion as to Mr. Keenan is groundless.  The gravamen of the fraud/93A arguments is that David Hoey's 2015 email prior to her execution of the 2015 CFA was misleading, and that Attorney Hoey did not fully explain the 2015 CFA to her. (Pl. Memo. at 3-4, 19-20)  There is no allegation of a misrepresentation by Keenan; even the Plaintiff's expert admitted that she knew of no such evidence, and she did not opine that Keenan had made a misrepresentation.  (OUMF ¶ 26)  This point of distinction between the two Defendants is significant, because the 93A liability of co-defendants must be assessed separately based on their respective actions.  Even if one co-defendant has engaged in knowing/willful actions and is liable, it does not follow that both defendants have done so and both are liable.  E.g., Kansallis Financial, Ltd. v. Fern, 421 Mass. 659, 672-675 (1996)(citing multiple cases; imposition of multiple damages under 93A against generally uninvolved co-defendant required separate showing of culpability or involvement as to each defendant); International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 858 (1983)(upholding different 93A awards as against different defendants; multiple damages awards are meant to "[vary] with the culpability of the defendant.").  See also Kraft Power Corp. v. Merrill, 464 Mass. 145, 157-158 (2013)(multiple damages depend on defendants'

respective conduct and goal of deterrence); <u>Stark v. Patalano Ford Sales, Inc.</u>, 30 Mass. App. Ct. 194, 204 (1991)(same).  This is significant, because on the record facts and the Plaintiff's theory, it cannot reasonably be disputed that, as a matter of law, Keenan (who is not alleged to have made any misrepresentations to the Plaintiff) engaged in no actionable conduct that was knowing and willful. Summary judgment for the Plaintiff on the knowing/willful claim as against Keenan is inappropriate.

<u>Fourth</u>, moreover, for the reasons detailed in Mr. Keenan's summary judgment motion and provided by the defense experts there is no basis for a finding of knowing and willful misconduct here.  It is undisputed that, <u>after</u> receiving Hoey's email about the 2015 CFA, the Plaintiff discussed the CFA (which as noted was substantially identical to the O'Toole and Hoey agreements she had already endorsed) with Hoey and reviewed it herself; she read it and signed it; she knew what it said.  When the settlement payment came in, the Plaintiff received a detailed accounting of fees and expenses from Hoey; she asked questions; Hoey explained it; she then approved it <u>in writing</u>; she knew what she was approving. (OUMF ¶¶ 6-41)  There is no place for any multiple damages in these circumstances as to either Defendant.

      D.    The Plaintiff is Not Entitled to Summary Judgment on Her Purported Statutory Penalty Claim.

Citing G.L. c. 221 § 51, the Plaintiff says she is entitled to a statutory interest penalty as a matter of law. (Pl. Memo. at 29) The Plaintiff is wrong.  For the reasons given by Keenan in his motion, this claim should be summarily dismissed.  But if not, then the claim is for the jury.  <u>E.g.</u>, <u>Guenard v. Burke</u>, 387 Mass. 802, 810-811 (1982)("This claim [G.L. c. 251 § 51] is one for a jury and not for a judge alone, assuming that there is [even] evidence that the attorney acted unreasonably.  An attorney who acted in good faith . . . [is] not . . . liable under § 51.")  This holding governs here.  The Plaintiff reviewed, questioned, considered, and then in writing <u>approved</u> all of the fees and expenses that she now disputes. These facts are undisputed, and support summary judgment in Keenan's favor.  At most, the Plaintiff has presented a jury question on this issue.  She certainly is not entitled to summary judgment in her favor. <u>See id</u>.  <u>See also</u> <u>Zuckernick v. Jordan Marsh Co.</u>, 290 Mass. 151, 156 (1935)(refusing to impose 221 § 51

penalty where there was an "honest controversy" between the parties regarding attorney's compensation); Field v. Marino, 1992 Mass. App. Div. 180; 1992 WL 247394 at *5 (1992)(no 93A/221 § 51 liability where attorney reasonably disbursed funds after notice to client and client made no timely objection or demand; citing cases).

III.     THE KEENAN DEFENDANTS INCORPORATE ALL ARGUMENTS BY THE OTHER DEFENDANTS.

Attorney Keenan and his firm adopt, incorporate, and rely on here all arguments, authorities, and points presented by Attorney Hoey and his firm and by the Keenan Kid's Foundation, Inc.  See Fed. R. Civ. P. 10(c).

CONCLUSION

For all of the foregoing reasons and the reasons given by Keenan in his summary judgment motion, the Plaintiffs Motion should be denied, and summary judgment dismissing all claims by the Plaintiff as against Keenan should be granted.

DON C. KEENAN AND
D.C. KEENAN & ASSOCIATES, P.C.
d/b/a THE KEENAN LAW FIRM, P.C.,
By their Attorneys,

John J. O'Connor
BBO # 555251
Susan M. Silva
BBO # 694176
Kristyn K. St. George
BBO #693787
PEABODY & ARNOLD, LLP
600 Atlantic Avenue
Boston, MA  02210-2261
Phone: (617) 951-2100
Fax: (617) 951-2125
joconnor@peabodyarnold.com
kstgeorge@peabodyarnold.com

Dated: September 22, 2023

## CERTIFICATE OF SERVICE

I, John J. O'Connor, hereby certify that a copy of the foregoing document has been served via ECF on this 22nd day of September, 2023 to:

Bridget A. Zerner, Esq.
John J.E. Markham, II, Esq.
Markham Read Zerner LLC
Once Commercial Wharf West
Boston, MA  02110
bzerner@markhamreadzerner.com
jmarkham@markhamreadzerner.com

Christine Knipper, Esq.
Wilson, Elser, Moskowitz & Dicker, LLP 260
Franklin Street, 14th Floor
Boston, MA 02110
christine.knipper@wilsonelser.com

John Bowler, Esq.
William M. Taylor, Esq.
Danni Shanel, Esq.
Troutman Pepper Hamilton Sanders
125 High Street, 19th Floor
Boston, MA 02110
william.taylor@troutman.com
danni.shanel@troutman.com

John J. O'Connor

2563325
15133-208055

16