IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION - BOSTON)

| | |
|---|---|
| KIRA WAHLSTROM,<br><br>                                  Plaintiff,<br><br>-against-<br><br>DAVID J. HOEY, LAW OFFICES OF DAVID J. HOEY, P.C., DON C. KEENAN, D.C. KEENAN & ASSOCIATES, P.C. D/B/A THE KEENAN LAW FIRM, P.C., AND KEENAN'S KIDS FOUNDATION, INC.<br><br>                                  Defendants | Civil Case No. 1:22-cv-10792-RGS |

**PLAINTIFF KIRA WAHLSTROM'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (DKT. 84) FILED BY DEFENDANTS DON C. KEENAN AND D.C. KEENAN& ASSOCIATES, P.C. d/b/a THE KEENAN LAW FIRM, P.C.**

Plaintiff Kira Wahlstrom herein opposes the Motion for Summary Judgment filed by Defendants Don C. Keenan and D.C. Keenan & Associates, P.C. d/b/a The Keenan Law Firm, P.C., (collectively, "Keenan") (Dkt. 84). Keenan's Memorandum in Support (Dkt. 85), is cited herein as "Keenan Memo." In support of her opposition, Kira Wahlstrom relies on and cites herein to the evidence filed in support of her own motion for summary judgment (Dkt. 92-96), as well as additional declarations and exhibits filed with this opposition cited herein (and filed in opposition to the motion for summary judgment by Defendant David Hoey and his firm).

This is not a case about "freedom of contract" but about two attorneys – Keenan and Hoey – unfairly and deceitfully manipulating and stealing from a vulnerable client who long trusted them. They are now trying to point to their success at trial in the underlying case as a shield to being held accountable for their behavior as though securing a major trial victory allows for unethical conduct including fraud and theft. Keenan took some of the fruits of their unethical

1

behavior and he is neither protected by the terms of the 2015 contingency fee agreement that he and Hoey induced Kira to sign nor by pointing the finger at Hoey to take the fall alone.

## I. Keenan's Motion for Summary Judgment as to the Fraud Claim Should be Denied

### A. Kira Has Sufficiently Plead a Fraud Claim Against Keenan

To begin with, Keenan did not file a motion to dismiss at the pleading stage nor argue that he required any further particularity to respond to the complaint.[1]

Kira met the requirements of Rule 9(b) on her fraud claim against Keenan by pleading the following: Keenan joined Hoey as counsel to handle the Wahlstrom case together (Dkt. 11, First Amended Complaint ("FAC"), ¶21); Keenan (with and through Hoey) had Kira sign the 2015 Contingency Fee Agreement ("CFA") (FAC, ¶¶ 25, 73) in June 2015 which changed Kira's original fee agreement to the benefit of the attorneys including by adding an appeal contingency (FAC, ¶¶ 26, 27, 73); Hoey misrepresented the 2015 CFA with Keenan to Kira as "the same agreement as before but with Don's name" when inducing her to sign it on Keenan's behalf, using Hoey's position of trust to do so (FAC, ¶¶ 22, 73, 74, 90); they also induced her to sign the new fee agreement in order to reduce the fee owed to the referral attorney but did not disclose this material fact to her which later resulted in her being sued (FAC, ¶93), and after the recovery money came in, "Hoey and Hoey Law, with the approval and agreement of Keenan and Keenan Law, falsely represented that Ms. Wahlstrom must pay" the extra percentage for the appeal and "falsely represented to Ms. Wahlstrom in their itemization presented to her in person (March 27) and then by email (March 29) that Ms. Wahlstrom must pay fees for additional attorneys when

---

[1] Certainly, Keenan has ample notice of the fraud particulars now that discovery is complete. *See, e.g., House of Flavors, Inc. v. TFG Michigan, L.P.*, 643 F.3d 35, 41 (1st Cir. 2011)("pleadings may be constructively amended to conform to the evidence" and party had "fair warning" of direction the case was likely to take citing Fed.R.Civ.P. 15(b) and *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995) ("a complaint may be constructively amended as a case proceeds")

they well knew that Ms. Wahlstrom was not obligated to pay these attorneys because they had performed work on behalf of Hoey and on behalf of Keenan and not Ms. Wahlstrom" (FAC, ¶¶94-96); and Kira relied, to her detriment, on the false representations and the fee itemizations of Hoey and Keenan which damaged her in an amount of at least $900,000 (FAC, ¶¶ 96-97).

Kira also alleged the elements of fraud against Keenan including his intent to defraud[2] and stated with sufficient particularly "the who, what, where, and when" of the misleading representations. *See*, *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016); see also; *Grundy v. HSBC Bank USA, N.A. as Tr. for Registered Noteholders of Renaissance Home Equity Loan Tr. 2006-3*, No. CV 17-11449-PBS, 2020 WL 1326269, at *35 (D. Mass. Feb. 10, 2020) (Bowler, MJ.) (Rule 9(b) argument fails to warrant summary judgment regarding fraud claim where complaint sets out the time, place and content of fraudulent charges on monthly statements at issue). "The core purposes of Rule 9(b) are 'to place the defendants on notice and enable them to prepare meaningful responses,' 'to preclude the use of a groundless fraud claim as pretext for discovering a wrong,' and 'to safeguard defendants from frivolous charges that might damage their reputation.'" *Dumont v. Reily Foods Co.*, 934 F.3d 35, 39 (1st Cir. 2019). Kira's pleading has more than sufficiently satisfied those purposes. Indeed, a fair inference is that Keenan and his counsel thought so too, otherwise they would have made a 12(b)(6) motion on the pleading involved. They did not.

Moreover, Kira is not required to allege a specific affirmative misrepresentation made to her by Keenan because Keenan can be liable for the false statements of Hoey that induced Kira

---

[2] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23, 325, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)("The inquiry ... is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard" and "personal financial gain may weigh heavily in favor of a scienter inference")

3

to sign the Keenan 2015 CFA and sign off on the fee and expense distribution wrongfully charged to her about which Keenan well knew was being imposed on her in advance and which benefitted Keenan as well as Hoey. As recently stated by the Supreme Court, "the common law of fraud—has long maintained that fraud liability is *not* limited to the wrongdoer" and not only have courts "traditionally held principals liable for the frauds of their agents" but "have also held individuals liable for the frauds committed by their partners within the scope of the partnership." *Bartenwerfer v. Buckley*, 598 U.S. 69, 76, 143 S. Ct. 665, 672–73, 214 L. Ed. 2d 434 (2023) (emphasis added). This joint liability principle recently cited in *Bartenwerfer* is long settled. *See, e.g., Nichols v. Kimball*, 272 Mass. 325, 328, 172 N.E. 204, 204 (1930), where the plaintiffs alleged that the two defendants defrauded them in business dealings for the purchase and sale of real estate. The court held that it need not decide if defendants were partners in a "strict sense" but held defendants jointly liable because:

> They were engaged in a joint undertaking with the plaintiffs: they were required to act in good faith; Fitts acted for Kimball; for the misrepresentations made and the fraud committed the defendants are liable. *** It could also be inferred from all the facts shown that Kimball had knowledge of what Fitts was doing; that the money paid him was unjustly obtained from the plaintiffs. Fitts was the agent and, even if the principal had no knowledge of the fraudulent representations, if they were made within the scope of the authority the principal was bound by them.

[citations omitted] *See also, Kilgore v. Bruce*, 166 Mass. 136, 140, 44 N.E. 108, 110 (1896) (In action on note for shares of stock, where defense asserted that one of the plaintiffs made false representations to induce sale: "Finally it is urged that, even if the defendant established his [fraud] claim as against Kilgore, it could not be made the basis of a recoupment in this action, which is brought by Kilgore & Wilson. But, in suing upon the note, both plaintiffs must bear the responsibility for Kilgore's fraud. This consequence follows from their joint interest as partners."); *White v. Sawyer*, 82 Mass. 586, 589–90 (1860) (two owners of a vessel jointly liable

in an action of deceit for fraudulent representations made by one of them, acting for both, in a sale of the vessel). Keenan is liable for the fees and expenses charged to Kira based on Hoey's false statements because they were acting jointly as partners in charging these fees and expenses and inducing her to pay them. There are certainly sufficient material facts in dispute on the issue of Keenan's liability for the false statement made by Hoey to induce Kira to sign Keenan's fee agreement for the claim to go to trial.

**B. There Are Other Material Issues of Fact on the Fraud Claim Against Keenan**

The record in this case establishes a fraud claim to be tried before a jury. Hoey's email that falsely stated to Kira that the new 2015 CFA with Keenan was "the same agreement as before but with Don's name" and "doesn't cost you more money" disarmed Kira of any concern that the new agreement was significantly changing the deal she agreed to five years earlier. *See*, Dkt. 95, Wahlstrom Dec., ¶3, 6-12. Combining this fact with Hoey and Keenan's failure to specifically review and explain the terms of the agreement to be sure Kira understood the changes and their failure to advise her that she could seek independent counsel to advise her, in violation of the Rules of Professional Conduct, raises a material dispute as to whether Kira was reasonable in trusting and relying on Hoey's false statement when she was presented with and signed the 2015 CFA at Hoey's office and did not have the 2010 CFA to compare or understand the significant differences between the two. *Id*., *see also*, Exhibit 65, Expert Report of Erin Higgins, ¶¶ 97-102, 107-109 (Keenan did not meet the standard of care in connection with his negotiation of the 2015 CFA with Ms. Wahlstrom).

Under the law of Massachusetts, "*in the absence of fraud*, one who signs a written agreement is bound by its terms whether he reads and understands it or not," but where the facts present a substantial issue of fraud, summary judgment should be denied. *See, Schell v. Ford*

*Motor Co.*, 270 F.2d 384, 386 (1st Cir. 1959) (emphasis added) (finding a genuine issue as to a material fact, as to whether decedent's waiver of liability was procured by fraudulent misstatement of manufacturer guard as to nature of instrument he directed painting contractor to sign where guard's description of the card was only partially true, even though the contractor would have discovered that he was signing a waiver as well as a pass had he completely read the documents he signed); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928–29 (1st Cir. 1983) (in cases where "the state of mind of one of the parties is crucial to the outcome of the case, resort to summary judgment is vested with more than the usual difficulty"); *Mulford v. Marago,* 35 Mass.App.Ct. 805, 809 (1994) (in cases where motive, intent or other state of mind questions are at issue, as in fraud, summary judgment is generally disfavored); *In re Discipline of an Att'y*, 451 Mass. 131, 141, 884 N.E.2d 450, 459 (2008) (in assessing client understanding, "[r]eading the agreement does not necessarily equate with understanding all its provisions"); *Redlich v. Lanell*, No. SUCV200203213C, 2006 WL 1000353, at *22 (Mass. Super. Mar. 3, 2006) ("fee agreement contracts between attorneys and clients are not enforced on the same basis as ordinary commercial contracts because of the fiduciary relationship between attorney and client"). In this regard, Keenan's argument that the written contract, as he interprets it, fully disposes of the issues here forgets the following legal principles, stated in *Beatty v. NP Corp.,* 31 Mass. App. Ct. 606, 612 (1991), which held that:

> As a general proposition, the meaning of a written document, if placed in doubt, is construed against the party that wrote it, *Merrimack Valley Natl. Bank v. Baird*, 372 Mass. 721, 724, 363 N.E.2d 688 (1977), and the principle surely counts double when the drafter is a lawyer writing on his or her own account to a client. In setting fees, lawyers "are fiduciaries who owe their clients greater duties than are owed under the general law of contracts." Restatement (Third) of the Law Governing Lawyers § 46, comment b (Tent.Draft No. 4, 1991).

None of the cases cited by Keenan on contract understanding (Keenan Memo, p. 12) involve the special attorney client relationship or address an attorney's obligations when reviewing a new fee agreement after five years of litigation and in the midst of preparing for trial just one month away. *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 321 F. Supp. 2d 142, 146 (D. Mass. 2004), aff'd, 407 F.3d 546 (1st Cir. 2005) addressed whether, under general principles of state contract law and under the language of the Americans with Disabilities Act, an email notice received by the employee on a new mandatory arbitration policy was sufficient to be an agreement that the employee's discrimination claim must be arbitrated. While the email had been opened, the employee denied reading its contents and the employer had no evidence the employee was aware of its contents. Thus, the email was insufficient notice to bind the employee and the employer's motion to arbitrate was denied. This analysis relies on *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999) where the First Circuit dealt with a situation where an incoming employee had signed a form agreeing to arbitrate "any dispute, claim or controversy that may arise ... that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations indicated in Item 10." The documents described in Item 10 articulated that the specific claims at issue in her case were covered by the arbitration agreement, but Merrill Lynch failed to give her those documents. While the employee had admittedly signed the form, and the form undisputedly referenced mandatory arbitration, the Court held it could not be enforced because Merrill Lynch had the opportunity to make the contract sufficiently specific to put the employee on notice, but it failed to do so, and even failed to provide the documents and information it was required to provide under the employment agreement at issue.[3]

---

[3] The rest of the cases are distinguishable as well. *BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.*, 846 F. Supp. 2d 307, 313 (D. Me. 2012), applying Maine law, notes the

While Kira signed and initialed the 2015 CFA, there is a dispute over her understanding of the terms. Neither Keenan nor Hoey explained the terms to her. Dkt. 96-5, Ex. 5, Keenan Response in Lieu of Deposition, No. 4; Dkt. 96-4, Ex. 4, Hoey Dep., p. 56, line 10 to p. 61, line 20; Wahlstrom Declaration, ¶ 12 to 13. Keenan did not review the terms of the new agreement with Kira or explain the differences between the 2010 agreement and the new one or why all those changes were needed which benefitted the attorneys over the client as he was obligated to do as her attorney under the Rules of Professional Conduct. Dkt. 95, Wahlstrom Dec., ¶¶ 6-13. Nor did Keenan advise Kira to seek independent counsel before signing the agreement. *Id*., ¶9. Both failed to explain how they planned to charge her if there was an appeal in her case, whether or not they themselves handled the appeal. *Id*.; Dkt. 96-4, Ex. 4, Hoey Dep., p. 152, line 16 to p. 154, line 4. Kira was told the 2015 CFA was the same and that she needed to sign it so that Keenan could help try the case as Hoey strongly recommended. Dkt. 95, Wahlstrom Dec., ¶¶6. Keenan had a fiduciary duty to Kira to fully explain the changes made from the 2010 agreement and advise her she should seek independent advice, which he should have done as an attorney and thus unlike corporate transactions or employment negotiations in the cases he relies on. Moreover, at the time of presenting the 2015 CFA to her, Kira was preparing to have to testify in front of a full courtroom about the most painful and traumatic day of her life when she was raped

---

exception applicable here - a person is deemed to know the contents of a contract that he or she signs "absent fraud" – and Kira alleges and has established material facts to put in dispute for trial whether she was fraudulently induced to sign off on the itemization. In *Guldseth v. Fam. Med. Assocs. LLC*, 45 F.4th 526, 539 (1st Cir. 2022), a doctor could not pursue his fraud claim over an employment agreement where the doctor signed off on its clear terms that contradicted the promises he claimed were made to him prior to signing because "a knowledgeable buyer should not sign a contract that conflicts with his or her understanding of the agreement." *Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC*, 86 Mass. App. Ct. 242, 247–48, 18 N.E.3d 350, 355 (2014) involved "sophisticated businesspeople, represented by counsel" that had "negotiated and executed a complex written document touching on all significant aspects of their transaction." None of these apply to the circumstances of Kira and the conduct and representations of her trusted counsel and the fiduciary duty they owed to her at the time.

and believed she was going to die at the hands of her rapist. Kira did not enter this 2015 CFA "open-eyed and knowingly" as Keenan puts it. Keenan Memo, p. 14. All of this raises a material dispute as to whether she was fraudulently induced to sign the 2015 CFA.

Keenan required the 2015 CFA, and his office and Hoey's office drafted it together changing the original 2010 terms to their benefit including by adding an appeal contingency without explanation. Dkt. 96-11, Ex. 11, 2015 CFA; Dkt. 96-1, Ex. 1, 2010 CFA. Keenan had Hoey provide the new CFA to Kira for signature and Keenan is jointly liable for Hoey's false representation that the agreement was "the same" so that Kira just signed it without thinking she should carefully compare the two or need to seek independent advice. Dkt. 95, Wahlstrom Dec., ¶¶ 6-13. *See, In re Discipline of an Att'y*, 451 Mass. 131, 141, 884 N.E.2d 450, 459 (2008) (in assessing client understanding, "[r]eading the agreement does not necessarily equate with understanding all its provisions"); *Redlich v. Lanell*, No. SUCV200203213C, 2006 WL 1000353, at *22 (Mass. Super. Mar. 3, 2006) ("fee agreement contracts between attorneys and clients are not enforced on the same basis as ordinary commercial contracts because of the fiduciary relationship between attorney and client"); *Redlich v. Lanell*, No. SUCV200203213C, 2006 WL 1000353, at *23 (Mass. Super. Mar. 3, 2006)("A change in the terms of the attorney-client relationship after representation has begun should be viewed with special scrutiny because: 1) the client has become dependent on the attorney's integrity and fairness; 2) a change in representation could impose a financial and emotional burden on the client; 3) the client may fear the lawyer's resentment if he refuses the change; and 4) the client's belief that the changes promote his position.")

As shown above, Keenan is liable for the false statements of Hoey that induced Kira to sign and enter the 2015 CFA with Keenan and thereafter the false statements that induced her to

overpay Keenan and Hoey through their partnership as co-counsel. *See*, Dkt. 96-8, Ex. 8 (Hoey and Keenan entered a "Co-Counsel Contingent Fee Agreement" on 2/24/13); Dkt. 96-4, Ex. 4, Hoey Dep., pp. 16-19 (Hoey became the Dean of Students of Keenan's trial college in 2013 during the pendency of Wahlstrom case); Dkt. 96-9, Ex. 9, Keenan's Response to Questions in Lieu of Deposition, No. 4 ("I would discuss retention of additional counsel and expenses pre-trial, during trial, and post-trial with Hoey Law and they would discuss with Ms. Wahlstrom."); Dkt. 96-63, Ex. 63, Keenan's 93A Response Letter, pp. 3, 8 ("For the entirety of the case, … LODJH handled all costs, expenses and disbursements concerning Ms. Wahlstrom's action" and [in response to request for accountings] "we respectfully refer you to Mr. Hoey for that information because his office was in charge of tracking and documenting these costs, expenses and disbursements.")

The record is also clear how Keenan and Hoey were working together specifically on the fee and expense itemization before it was presented to Kira after the recovery money was received on November 19, 2019. *See*, Dkt. 96-44, Ex. 44 (11/22/2019 emails between Hoey and Keenan conferring on disbursements and Keenan wiring $973,000 from client trust monies to Hoey); Dkt. 96-46, Ex. 46 (12/23/2019 email where Hoey provided fee and expense breakdown to Keenan and stated "take your expenses" along with other directions on money); Dkt. 96-47 (1/24/2020 email from Kira to Hoey stating "we still need to go over the bill and the rest of the money" and Hoey response: "I'm with Don in FL…"); Dkt. 96-50, Ex. 50 (3/2/2020 emails of Hoey and Keenan on releasing fee and remaining expense payments to themselves); Dkt. 96-51, Ex. 51 (3/7/2020, Hoey emailing fee and expense breakdown to Keenan).[4]

---

[4] And Keenan and Hoey's collaboration continued as shortly after the Wahlstrom case funds were settled, Hoey formerly became a partner at Keenan's law firm and received an advance of $1 million from Keenan. Dkt. 96-4, Ex. 4, Hoey Dep., p. 21, line 7 to p. 22, line 2; Dkt. 96-5, Ex. 5, Keenan Response to Questions in Lieu of Deposition, No. 9.

Not only did neither Keenan nor Hoey fully explain the new 2015 CFA to Kira when they had her sign it but neither of them explained to Kira that they planned to charge to her the appeal contingency in addition to charging her for separate appellate counsel when appellate counsel was hired. Dkt. 96-4, Ex. 4, Hoey Dep., p. 152, line 16 to p. 154, line 4. Both Keenan and Hoey also clearly planned to charge Kira the extra 7% before appellate counsel succeeded in overturning the new trial order. Dkt. 96-31, Ex. 31, Emails between Hoey and Keenan, 5/9-5/10/2018. And yet after the success on appeal and the recovery money was received, when they gave Kira the fee and expense itemization, they did not break out the fee charge to show the 33% charged for trial and the extra 7% charged for the appeal despite the other fee breakout numbers they listed for themselves and the referral attorney. Dkt. 96-54, Ex. 54, March 2020 Final Fee and Expense Itemization. A reasonable inference is Keenan and Hoey intentionally failed to show how the total attorney fee was calculated so that Kira would not notice the huge upcharge and would not do the math herself (as Hoey knew she had trouble with math and completely trusted him) so they could defraud her.

In addition to the appeal fee charged, Keenan well knew before Hoey presented the final breakdown to Kira to sign that the expense breakdown included charges for additional attorneys, which Keenan and Hoey used for their own interests rather than Kira's, and Keenan along with Hoey intended to induce Kira to sign off on and pay these extra attorneys' fees as "expenses." Dkt. 96-44, Ex. 44 (11/22/2019 emails); Dkt. 96-46, Ex. 46 (12/23/2019 email); Dkt. 96-50, Ex. 50 (3/2/2020 emails); Dkt. 96-51, Ex. 51 (3/7/2020 email). Keenan had already transferred the total expense amount from the client trust account to Hoey's account months before Kira signed off. Dkt. 96-44, Ex. 44 (Keenan and Hoey emails regarding wire: Hoey and Keenan Email 11/22/2019, Hoey Email on 11/22/2019, and Hoey Business Account Statement for November

11

2019; Dkt. 96-54, Ex. 54 (March 2020 Final Fee and Expense Itemization signed by Kira Wahlstrom)

Keenan is liable for the false representations, made on his behalf by Hoey, that Kira owed the appeal contingency and had to pay for additional attorneys that provided benefits to Keenan and Hoey rather than Kira. Keenan well knew he was not appellate counsel, and he well knew that attorneys (like Attorney Richard Goren who handled the Keenan's Kids Foundation motion to impound their own book materials) did not act for the benefit of Kira and yet their fees were charged to her. There is at least a material dispute to be tried on the fraud claim against Keenan.

The fact that Kira looked over the 2015 CFA and initialed and signed it and believed she understood it at the time does not protect Keenan because the appellate fee charged was not automatically allowed by the terms of the agreement, as he now argues, but rather also required that he file the appellate brief, *ie.*, that he handle the appeal himself which he did not do. Dkt. 95, Wahlstrom Dec., ¶¶13, 16; Exhibit 65, Expert Report of Erin Higgins, ¶¶ 37(b), 52-53, 1069. Hoey himself conceded that the provision reads that Keenan would have to file the appellate brief:

> Q. And to be more specific here, it [2015 CFA] says, "after an appellate brief is filed in an applicable appellate court or body by the [A]ttorney."[5] What's your understanding of that?

---

[5] The 2015 CFA provision referenced in this question is:

(4) Reasonable compensation (including that of any referring and/or associated counsel) on the forgoing contingency is to paid by the Client to the Attorney [Don C. Keenan and The Keenan Law Firm PC], but such compensation including that of any associated counsel shall be the following percentage of the gross amount collected for the client:

    33 and 1/3 (thirty-three and one-third percent) of gross amount recovered

*The above stated percentage shall be increased by an additional Two Percent (2%) of gross recovery if the matter is concluded/settled after an appellate brief is filed in an applicable appellate court or body by the Attorney [Don C. Keenan*

> A. Well, the way it reads is that he [Keenan] would have to file the brief is the way it reads, but that's not how it happened.

Dkt. 96-4, Ex. 4, Hoey Dep., p. 173.[6]

The 2015 CFA nowhere indicates that Keenan or Hoey can hire additional attorneys on their own, with no notice to Kira, and then make Kira pay for them at the end.[7] And the challenged attorney charges are not "reasonable expenses" which Kira agreed to paying through the 2015 CFA considering their work was to benefit Keenan and Hoey. In addition to being unreasonable, the CFA provision on expenses nowhere indicates that such expenses could include additional attorneys. The fee agreement specifically indicates the contrary, stating that other than paying the contingency to Keenan which would be divided with Hoey, "Client understands that the Client will not be charged any additional legal fees." Dkt. 96-11, Ex. 11, 2015 CFA, p. 2 at para. 4.

Nor is it an undisputed fact that Kira truly understood the March 2020 itemization when Hoey had her sign off on it because she was not fully informed of the appeal charge or the additional attorney charges when she signed. Dkt. 95, Wahlstrom Dec., ¶¶21-22; Exhibit 83,

---

> *and The Keenan Law Firm P.C.] on behalf of the Client*, and an additional Five Percent (5%) of gross recovery if matter is retired/concluded/settled following an appellate decision.

Dkt. 96-11, p. 2 (emphasis added).

[6] Keenan and Hoey now claim they were involved as appellate counsel to be entitled to the fee, but the record can fairly be read to show otherwise – another material fact in dispute (if not resolved in Kira's favor on her own summary judgment motion). *See* Dkt. 95, Wahlstrom Dec., ¶¶ 6-13, 16, 23-24; Exhibit 83, Second Declaration of Kira Wahlstrom, ¶¶ 3; Exhibit 69, Declaration of Patricia DeJuneas, ¶¶2-11.

[7] And there is certainly a question of fact as to whether such failure to communicate these significant developments to Kira during her case violated the Rules of Professional Conduct and fell below the standard of care Hoey and Keenan owed to Kira. *See* Exhibit 65, Expert Higgins Report, ¶¶ 15, 87, 90-91.

13

Second Wahlstrom Declaration, ¶7-8. Rather, Kira has shown in her own motion that not only did she not understand but she could not have understood these expenses charged to her because she was not fully informed on all the details of each expense charged when they had her sign off on them.

Keenan's motion for summary judgment on the fraud claim should be denied.

## II. Keenan's Motion for Summary Judgment at the 93A Claim Should be Denied

"Analogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims." *Kattar v. Demoulas*, 433 Mass. 1, 12-13 (2000):

> …a c. 93A claim for false and deceptive trade practices is independent of any related claim for common law fraud. In particular, reasonable reliance is not a necessary element of a c. 93A claim in all circumstances. Thus, for example, an act of deception that deprives a vulnerable individual or entity of something of value, or a deceptive act or scheme that takes advantage of someone who of something of value a vulnerable individual or entity, or one that is unlikely to discover it because, for example, of a particularly trusting nature or a lack of resources of which the perpetrator is or should be aware, could give rise to a cause of action under c. 93A even if all the elements of common law fraud or any other cause of action have not been demonstrated.

*New Faith Missionary Baptist Church v. Pizziferri*, 81 Mass. App. Ct. 1116, 962 N.E.2d 244 (2012). Kira's 93A claim based on Keenan and Hoey's unfair and deceitful scheme stands apart from the fraud claim and her 93A claim is not limited to allegations of fraud nor limited to Hoey's false email statement about the 2015 CFA, contrary to Keenan's argument (at Keenan Memo., pp. 14-15). *Compare,* Dkt. 11, FAC, ¶¶76-82 (93A Count) to ¶¶88-97 (Fraud Count).

Kira has shown she is entitled to summary judgment against Keenan on her 93A claim. *See,* Wahlstrom Motion for Partial Summary Judgment at Dkt. 92 to 96. If this Court finds that she is not so entitled, she has certainly established a material factual dispute for trial. The

arguments made by Keenan (at Keenan Memo, pp. 16-17) do not show otherwise. First, Keenan is liable for Hoey's false statements as his partner and co-counsel in this effort as shown by the case law cited above. Second, the fact that Kira's expert did not give an opinion on whether Keenan engaged in fraud or violated 93A is of no moment because the 93A claim does not require proof of fraud and an expert opinion is not required to prove the elements of a 93A claim. Third, Keenan ignores that the circumstances under which Keenan and Hoey had Kira sign off on the 2015 CFA violated the Rules of Professional Conduct which is evidence in support of her 93A claim as set out in her summary judgment motion papers.[8] Keenan particularly disregards the attorney-client relationship and an attorney's fiduciary duties to his client. Instead he frames the issues (and cites to case law) as though this was a business transaction with parties on equal footing when it clearly was not.[9] Fourth, Keenan's conduct did cause Kira damage not only by inducing her to sign a new fee agreement to her detriment but because he then charged her an

---

[8] "Besides examining the fee itself, the court examines whether the client's decision to agree to such a fee structure was an informed one. The Massachusetts Rules of Professional Conduct include the duty to advise a client to the extent reasonably necessary to permit the client to make informed decisions about the representation." *Redlich v. Lanell*, No. SUCV200203213C, 2006 WL 1000353, at *26 (Mass. Super. Mar. 3, 2006) citing *Malonis v. Harrington*, 442 Mass. 692, 700, 816 N.E.2d 115, 122 (2004) and Mass.R.Prof.C. 1.4(b) "Matters impacting a client's best interest require 'express discussion'" and "a transaction between a client and attorney is called into question, the burden is on the attorney to prove that any influence over the client, which might be presumed to have arisen out of the relationship, was neutralized by independent advice or by some other means so that there was no overreaching of the client and no abuse of confidence." *Id*.

[9] To support his argument that Kira cannot complain about Hoey's false email statement because she had the opportunity to review the 2015 CFA herself and should have realized Hoey lied when he said it was the same agreement as before, Keenan cites to a securities fraud case, which states, "*in some circumstances* a plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law" (*Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59, 809 N.E.2d 1017, 1031 (2004))(emphasis added). That same case went on to hold that the plaintiff-investor could pursue a negligent misrepresentation claim and a 93A claim based on pre-investment materially misleading oral statements despite the investor signing a subscription agreement with an integration clause thereafter. *Id*.

appeal fee he was not entitled to because he did not handle the appeal (and did not "file" an "appellate brief" as required for an additional fee under the 2015 CFA) and because he also charged her for additional attorneys that provided services to the benefit of Hoey and Keenan rather than Kira which are not "reasonable expenses" which is all she was required to pay under the 2015 CFA terms. Finally, Kira was not fully informed of the expenses that Hoey had her sign off on in March 2020 to be able to ratify or truly approve of these expenses, which she was told she was required to pay by her attorney (Hoey). Not only had she relied on Hoey for the prior 10 years, but he continued to be her attorney and represent her on ongoing matters at the time he induced her "approval." Keenan cannot push his own duties to his client back on his client or another attorney, as he attempts when he argues that Kira "was represented by other counsel at the time, Patricia DeJuneas, but she did not see any reason to consult her." (Keenan Memo, p. 17). Keenan had the obligation to fully explain the charges to Kira, the obligation was not on Kira to ask questions. And DeJuneas was not Kira's attorney for the underlying case for which these expenses were charged. Moreover, Keenan and Hoey well knew about DeJuneas, and they never suggested to Kira that she ask DeJuneas for counsel on this matter.

Keenan's motion for summary judgment on the 93A claim should be denied.

**III. The Voluntary Payment Doctrine Does Not Apply**

None of the cases cited by Keenan (Keenan Memo, pp. 17-18) on this argument involve attorneys inducing their client to pay unreasonable expenses and a higher fee than that to which the attorneys were entitled. The cases cited do not involve attorneys and clients at all. And in order for this antiquated doctrine[10] to apply, it requires "full knowledge of the facts on the part of

---

[10] *See, Blay v. Zipcar*, 716 F. Supp. 2d 115, 124 (D. Mass. 2010), Judge Gorton describing the voluntary payment doctrine as an "antiquated" doctrine which has "received no recent validation of Massachusetts courts."

the one making the payment." *Carey v. Fitzpatrick*, 301 Mass. 525, 527, 17 N.E.2d 882, 883–84 (1938) As shown in Kira's motion for summary judgment on the issue of ratification, Kira was not fully informed at the time Keenan and Hoey had her "approve" of the fees and expenses; she was not informed that the attorney's fee calculated included an extra 7% (and she did not think she needed to check the math herself) for an appeal that Keenan did not handle and she was not informed of the details of the work the additional attorneys charged to her did to benefit Keenan and Hoey rather than her. Indeed, not only was she not fully informed, but some of the specific representations actually made to her with respect to these attorneys were misleading, such as identifying attorney John Vail as the "constitutional law" attorney rather than disclosing he was Hoey's ghostwriter for Hoey's unhelpful comments on DeJuneas' appellate brief drafts.

### IV. Kira's Conversion Claim

Kira relies on the evidence submitted in support of her conversion claim on her own motion for summary judgment. *See,* Dkt. 93, Wahlstrom Memorandum in Support of Motion for Partial Summary Judgment (and evidence cited therein at pp. 18-19); *In re Goldstone*, 445 Mass. 551, 566, 839 N.E.2d 825, 837 (2005) (where attorney intentionally overbilled and collected from his client hundreds of thousands of dollars in fees and costs to which he was not entitled, on both closed and active cases and lacked a good faith belief that he has earned and is entitled to the monies, such conduct constitutes conversion). The extra money these lawyers took was from an attorney client trust account. It was her money not theirs and she did not knowingly authorize them to pay some of her money to themselves.

### V. Kira's Demand for an Accounting

"An accounting is an equitable remedy available where there is 'a fiduciary relation between the parties.'" *McQuilly v. Belfi*, 99 Mass. App. Ct. 1115, 165 N.E.3d 171 (2021); see

also, *Baghdady v. Baghdady*, No. 97-4732, 2007 WL 1537706, at *4 (Mass. Super. May 9, 2007) *citing Millbank v. J.C. Littlefield, Inc.,* 310 Mass. 55, 61 (1941) ("An accounting is an equitable remedy awarded if a plaintiff has succeeded on a claim for fraud or misrepresentation.") Kira's claims entitle her to this equitable remedy and Keenan has failed to show her claims and demand for accounting can be resolved in his favor on summary judgment.

### VI. Kira's Claim for Money Had and Received

Kira's claim for money had and received is against the Keenan's Kids Foundation, not Keenan and his law firm. Additionally, about a week before the summary judgment motion deadline, undersigned counsel informed all parties that Kira would be dropping the money had and received claim. There was no need for Keenan to argue this claim but apparently wants to go for a win where he can get one.

### Conclusion

Keenan's motion for summary judgment should be denied.

Dated: September 22, 2023          Respectfully submitted,

*/s/ Bridget A. Zerner*
Bridget A. Zerner (BBO No. 669468)
John J.E. Markham, II (BBO No. 638579)
MARKHAM READ ZERNER LLC
11A Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax:(617) 742-8604
bzerner@markhamreadzerner.com
jmarkham@markhamreadzerner.com
*Attorneys for the Plaintiff*

# CERTIFICATE OF SERVICE

      I hereby certify that on September 22, 2023 this document was served by electronic delivery through the CM/ECF system on the registered participants as identified on the Notice of Electronic Filing, which will forward copies to Counsel of Record.

                          */s/ Bridget A. Zerner*
                          Bridget A. Zerner