UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIRA WAHLSTROM,

    *Plaintiff*

v.

DAVID J. HOEY, LAW OFFICES OF
DAVID J. HOEY, P.C., DON C. KEENAN,
AND D.C. KEENAN & ASSOCIATES, P.C.
D/B/A THE KEENAN LAW FIRM, P.C.

    *Defendant*

1:22-cv-10792-RGS

## OPPOSITION OF DEFENDANTS DAVID J. HOEY AND THE LAW OFFICES OF DAVID J. HOEY, P.C. TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT

Seven years after her trial attorneys, Don Keenan and David Hoey, won a jury verdict and obtained a $6.6 million judgment, and two years after Keenan, Hoey and Appellant counsel secured nearly $10 million after post-trial battles and she received her proceeds, Plaintiff Kira Wahlstrom sued those same trial lawyers. Despite being well-informed and signing off on the distribution of the recovery years ago, Wahlstrom now alleges that the same trial lawyers received a greater fee and spent more on expenses than they should have. Defendant Hoey represented Wahlstrom on multiple fronts, sometimes at no charge, and stood by her for twelve years to great praise by Wahlstrom, until she recently suffered a sudden case of buyer's remorse.

Wahlstrom now moves for partial summary judgment.[1] She claims that there are no genuine issues of material fact and that somehow she is entitled to partial judgment as a matter of law. She

---

[1] Plaintiff does not move for summary judgment on her fraud count, conceding that fraud "involves a state of mind element typically not appropriate for summary judgment." Dk. 92, p. 2, fn. 1. The very same argument applies to her other claims, including her claim for multiple damages at this stage.

1

so claims, while submitting 158 paragraphs of alleged statements of facts, many of which are irrelevant and seek to raise improper inferences without basis, a new affidavit comprised of 50 paragraphs and 19 pages and exhibits totaling more than 1300 pages, in what has turned out to essentially be – at most – a breach of contract case and a he said/she said case in which reasonableness is at issue. Her papers establish on their face that she is not entitled to summary judgment, including for the reasons outlined in Defendants' summary judgment submissions. As a matter of law, the undisputed facts do not rise to the level of a Chapter 93A violation, much less a willful or knowing violation, breach of fiduciary duty or conversion. Plaintiff has not asserted a breach of contract claim, improperly raising claims in her summary judgment papers for the first time. Her allegations do not carry the day. All of her claims should be dismissed pursuant to David Hoey and Law Offices of David J. Hoey, P.C.'s ("Hoey Defendants") motion for summary judgment. At a minimum, Plaintiff's contradictions and multiple arguments wherein it is clear that she is asking this Court to weigh credibility and facts without a trial, warrant the denial of her motion. Issues of fact preclude allowance of Plaintiff's partial motion, and to the extent the Court disagrees that Hoey Defendants are entitled to summary judgment, the issues should be heard before a trier of fact.

**I.  Plaintiff is looking for this Court to weigh evidence and assess credibility, which is not permitted, warranting denial of her motion in its entirety:**

Plaintiff repeatedly uses words like "induce," "inducing," "knowingly induced," "improperly induced," "unreasonable," "willful," and otherwise outlines in great detail what she allegedly would not have agreed to if she had somehow been better informed. She asks the Court to make improper inferences based upon various documents. As Plaintiff's disjointed motion makes clear, for purposes of Plaintiff's arguments, Plaintiff's understanding or alleged lack of understanding is squarely at issue, along with – according to Plaintiff – the Defendants' conduct.

2

This Court is not permitted to weigh evidence, the impact of the evidence, or credibility of the witnesses at the summary judgment stage. *See Cadle Co. v. Hayes*, 116 F.3d 957, 959-60 (1st Cir. 1997); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Arguments focused on intent are matters ill-suited for summary judgment. *See Skinner, Inc. v. Lucheng Li*, No. 20-11402-MPK1, 2023 U.S. Dist. LEXIS 34712, at *38 (D. Mass. Mar. 2, 2023); *Penate v. Kaczmarek*, No. 3:17-cv-30119, 2022 U.S. Dist. LEXIS 23913, 2022 WL 407411, at *6 (D. Mass. Feb. 10, 2022). In cases involving state of mind, the First Circuit has cautioned that courts must be particularly cautious in granting summary judgment. *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 923 (1st Cir. 1983). Under such circumstances, jury judgments about credibility are typically thought to be of special importance. *Id.* A court "must disregard all evidence favorable to the moving party that the jury [are] not required to believe. See [9A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2529, at 299 (2d ed. 1995)]. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.' *Id.*" *Reeves*, 530 U.S. at 150-151.

Plaintiff's entire motion is premised upon the Defendants[2] allegedly "improperly induc[ing]" her to agree to various strategies, actions and ultimately expenses, and her allegedly

---

[2] Attorney Hoey has been admitted to Massachusetts, in good standing, for nearly 30 years. He has tried cases in multiple states, appeared in the US District Court Massachusetts and argued before the First Circuit and the SJC. He is inactive in Vermont and New Hampshire, and has never been sanctioned. He has presented for the Massachusetts Bar Association, Mass Academy of Trial Attorneys, Women's Bar Association, Fourth Middlesex Bar Association, Gay and Lesbian Bar Association, American Association of Justice, National Association of Elder Law Attorneys. He was on the boards of Mass Academy of Trial Attorney, National Coalition for Nursing Home Reform, Massachusetts

not being properly informed. She relies heavily on her purported state of mind and what she would not have allegedly done, as well as on witnesses who are not disinterested[3] – all evidence which a jury is not required to believe and which must be disregarded at this stage. Any ruling in favor of Plaintiff at this stage could only result with a finding that she is credible and that her version of the events takes precedence over that of the Defendants, which is not permitted on summary judgment.[4] As a matter of law, this Court must deny Plaintiff's partial summary judgment motion.

---

Coalition for Nursing Home Reform, National Trial Lawyers Association. He has presented (including to National College of Advocacy) and authored publications for Thomson West. He has been nominated Super Lawyers, Best Lawyers, 7 Figure Litigators, America's Top 10 Attorneys, Lawyers of Distinction, and more. For the past ten years, he has been the Dean of Students for the Keenan Trial Institute, the largest trial college of its kind teaching more than 2000 lawyers a better way to try plaintiffs' cases. He has taken part in multiple MCLEs. He's been married for more than 30 years and has two daughters. In 2021 he was inducted into his high school Hall of Honor receiving The Saint Andre Bessette Award honoring an alumnus who distinguished himself/herself in life after high school.

[3] For example, Plaintiff relies on testimony of Patricia DeJuneas who testified that she believed that Attorney Hoey was "interfering" and not helpful with the appeal. DeJuneas is one of Ms. Wahlstrom's lawyers (*see* Dk. 96.24, Ex. 24) who never told Plaintiff, or Hoey for that matter, that somehow Attorney Hoey was allegedly "interfering" at the time she allegedly believed it – in fact, there is evidence to the contrary. DeJuneas, despite having a fee agreement with Wahlstrom in 2017, submitted a number of invoices throughout the years to Hoey's firm for payment, and indeed accepted the advanced payments from Hoey's firm, but now supports Plaintiff's claims herein. *See* Dk. 96.25, Ex. 25, Patricia DeJuneas Dep., p. 33-34, 92. Irrespective, whether DeJuneas subjectively believes that Hoey's work was helpful or not to the appeal is not an issue appropriate for decision on summary judgment. Likewise, Plaintiff now heavily relies on testimony of Sobczak, who filed a lien against her. *See, e.g.,* Hoey MSJ submissions. At the time when Sobczak submitted an affidavit in support of the O'Toole litigation against Hoey and Keenan (used by Plaintiff in this lawsuit – *see* Dk. 11, Amended Complaint), Wahlstrom agreed to cooperate with Sobczak. *See* fn. 4 below.

[4] Plaintiff claims that somehow she did not understand because she was not fully informed. The fact that she submitted a 50 paragraph affidavit, fully drafted by her counsel (*see* Affidavit of Dennis Maher and Appendix ["Maher Aff."], Ex. A, September 12, 2023 Deposition of Kira Wahlstrom ["09/12/23 Dep. of KW"], p. 210) is telling. Plaintiff has contradicted herself more than once. For example, Plaintiff claims in her Declaration that "no one reviewed the 2015 CFA with me" (Dk. 95, ¶12-13), while at her deposition when asked if she met with David Hoey or Kris Sobczak when she signed the fee agreement, she answered: "I believe it was David." *See* Dk. 96.2, Ex. 2, Deposition of Kira Wahlstrom ["Dep. of Wahlstrom"], p. 19-20, 22-23. She claims in her Declaration that "I did not know that Keenan had been working on my case [] as of June 2012." Dk. 95, ¶5. She testified at deposition that she knew Keenan did some focus groups before he formally came on board and she knew that Hoey talked to Keenan quite often and assumed that he was consulting on her case. *See* Dk. 96.2, Ex. 2, Dep. of Wahlstrom, p. 89. Her Declaration states that "Late March 2020 was the first time [she] was provided the expense itemization from David Hoey []." Dk. 95, ¶21. She testified at deposition that she sat down with David in mid-December 2019 and went over the expenses. *See* Dk. 96.2, Ex. 2, Dep. of Wahlstrom, p. 40-41. Her declaration is itself internally inconsistent and her statements regarding what she understood needs to be disregarded where it involves weighing evidence and credibility. Dk. 95 (Compare ¶12 "I did not carefully review" the 2015 CFA, with ¶13 "[a]t the time I signed the agreement and at all times I read paragraph (4) to mean that I would owe Keenan more if I hired him to handle an appeal by drafting and filing the appellate briefs"; and ¶12 "no one else went over all the changes with me," with ¶13 "I was told to write my initials next to each paragraph," which implies that someone did go over the document with her). She submitted two affidavits in the case defeating Sobczak's lien, under the penalties of perjury, which she now takes issue with. Maher Aff., Exs. H, I, Aff. of KW (08/12/2019) and Aff. of KW (LDH 0015015); Dk. 95, ¶¶28 (fn. 1), 35; Maher Aff., Ex.

4

**II.    Pursuant to the law and the actual facts, Plaintiff is not entitled to judgment as a matter of law:**

As outlined in Defendants' motion,[5] Wahlstrom voluntarily entered into the 2015 CFA, took the benefit from the deal and years after she executed the 2015 CFA seeks to better her bargain by rewriting the contract she unreservedly agreed to and ratified. Wahlstrom reviewed and signed the 2010 Contingent Fee Agreement and the 2015 Contingent Fee Agreement. She understood the agreements, her current claims to the contrary notwithstanding. She unequivocally testified that she reviewed and approved of all of the expenses – discussing them with Hoey in December 2019, receiving a full breakdown in March 2020 and then meeting in person with Hoey in March 2020 to go over all of the expenses that she approved in her own words and her own handwriting: **"Kira Wahlstrom I am aware of the above fee distribution and approve of them"** and **"I approve of the above itemized expenses and distribution Kira Wahlstrom March 27, 2020"**. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 49:21-24; *see also* Ex. V, Executed Fee Breakdown. She cannot now claim that she should get the money back. Her conclusory statements and broad-brushed inferences and claims, without any legal support,[6] must be disregarded by the Court.

---

A, 09/12/23 Dep. of KW, p. 92-93, 185-186. Via DeJuneas, she gave Sobczak an affidavit and agreed to cooperate with him at a time when Sobczak provided an affidavit to O'Toole in support of O'Toole's case against Hoey and Keenan. *See* Maher Aff., Ex. J; *see* Dk. 96.2, Ex. 2, Dep. of Wahlstrom, p. 119-123, 189-190. At one of her recent depositions, Wahlstrom testified that she communicated extensively with Attorney Hoey in 2014 and dealt mostly with him up until the early stages before the trial. Maher Aff., Ex. A, 9/12/23 Dep. of KW, p. 174-177. Her affidavit given to Sobczak says otherwise – "[a]round 2014 I started to work mostly with" Sobczak. *See* Maher Aff., Ex. J, Affidavit of Kira Wahlstrom, ¶3 [attached to General Release].

[5] By way of factual background, the Defendants refer to their previously submitted Statement of Facts, accompanying exhibits, and the information provided in response to Plaintiff's Motion and Statement of Facts.

[6] For example, Plaintiff claims that she was not provided with the contract terms between Hoey and Advocate Capital, inferring that somehow there was an obligation to so provide her. Missing is any basis that would support her claim or inference that the Defendants had an obligation, as a matter of law, to provide her with that document or additional documents besides those provided.

Further, the experts retained by Defendants, Attorney Charles Kazarian for the Hoey Defendants and Attorney Robert Michael for the Keenan Defendants, both experienced *plaintiff's* lawyers, testified, in pertinent part, that Plaintiff's expert was incorrect about the governing standard. Attorney Kazarian testified, in part, that the Defendants were not required to disclose the particular expenses as the case progressed and that use of litigation funding was completely appropriate. *See* Maher Aff., Ex. C, Dep. of Charles Kazarian, p. 34-37. Attorney Michael testified in part that the fees and expenses were proper and reasonable, and handled appropriately. *See* Maher Aff., Ex. B, Dep. of Robert Michael, p. 93-94

For the reasons and facts outlined in their summary judgment papers, the Hoey Defendants are entitled to judgment as a matter of law, while Plaintiff's motion must be denied in its entirety.

## 1. Plaintiff cites to no case establishing that, on the record before this Court, she is entitled to summary judgment as a matter of law:

Plaintiff cites to no case which stands for the proposition that on the record before this Court, she is entitled to judgment as a matter of law on her claims. That is not surprising, as she is not. The cases cited by Plaintiff overwhelmingly involve adjudication on the merits following a trial (whether bench or jury), while *Sears, Roebuck & Co. v. Goldstone & Sudalter,* 128 F.3d 10 (1st Cir. 1997) and *Walsh v. Menton,* 2 Mass. L. Rep. 584 (1994) are markedly different and non-binding here. Further, *Guenard v. Burke* and *Doucette v. Kwiat* are distinguishable.[7]

---

[7] Plaintiff cites to multiple inapposite cases for various general legal propositions (*see, e.g.,* Dk. 93, Wahlstrom's Memorandum in Support of her MSJ ["KW MSJ"], p. 16-17), and also relies on a number of cases which are distinguishable. For example, Plaintiff cites to *Cambridge Plating Co. v. Napco. Inc.,* 85 F.3d 752 (1st Cir. 1996) in support of her argument that the Defendants' alleged conduct in "inducing" her to sign the 2015 CFA was a violation of c. 93A. *Cambridge Plating* is inapposite – it involved a business vs business dispute and review by the First Circuit following a full trial. Plaintiff cites to *20 Atl. Ave. Corp. v. Allied Waster Indus. Inc.,* No. 03-10987-JGD (D. Mass. 2009) (Dein, MJ) in support of her argument that the Defendants' alleged conduct was unfair or deceptive. Setting aside the fact that *20 Atl. Ave.* is a non-binding Magistrate Judge's decision on a motion by the law firm to determine and enforce the firm's lien, the Court actually held that the modified CFA was reasonable and enforced the attorney's lien. The Court held that the ultimate recovery was not unreasonable, holding further "if the lawyer and client agree, it is ethical for the lawyer to charge a different contingent fee at different stages of a matter ..." *Id.* at *17.

Thus, Plaintiff cites to *Sears, Roebuck & Co.* for the proposition that unlawful billing or unethical conduct by attorneys can constitute a violation of c. 93A. 128 F.3d 10 (1st Cir. 1997). The *Sears* case is glaringly distinguishable from the one before this Court. In *Sears, Roebuck & Co.*, the actions at issue of the attorney ("Goldstone") followed his taking over a debt collection practice from predecessor counsel ("Sudalter"), and involved billing $1.1Million for work in "closing" 15,000 files which had already been closed by Sudalter ("dead storage" files). *Id.* at 11, 13. In short, Goldstone billed Sears for past work that another attorney (Sudalter) had already done, and for which Sears had already paid. *Id.* at 15.

Goldstone did nothing to confirm whether or not these files had been paid for and had no personal knowledge concerning his predecessor's billing practices to support his erroneous interpretation that Sears had not previously paid for these cases. *Id.* at 11-12, 14. In fact, he had no personal knowledge of whether particular cases had been billed or were uncollectible, or had been formally closed. *Id.* at 12. Discovery had also revealed that the predecessor firm never intended to submit further bills to Sears for files in "dead storage" and that the markings on old files indicated that the matters were considered "closed." *Id.* at 18. In short, Goldstone significantly, knowingly billed for work he did not do, previously done and billed by another lawyer, where his fee agreement did not authorize the charges. Further, Goldstone only presented cryptic handwritten notations on several thousand old file folders in opposition to summary judgment, markedly different from the situation presented here. *Id.* at 17.

Likewise, neither *Guenard v. Burke*, 387 Mass. 802 (1982) nor *Doucette v. Kwiat*, 392 Mass. 915 (1984) involves facts similar to those here. Both cases involve findings after adjudication. In *Guenard*, the use of a contingency fee was specifically prohibited in the context

of a divorce case and is deemed illegal per the rules,[8] while in *Doucette*, the attorney charged a further fee for negotiating the lien, without the client approving. The matter before this court is a contingency case. Trial lawyers do not recover any fee or reimbursement of their expenses unless they are successful. They receive the money in their IOLTA account and fees and expenses are then approved by the client. All of that took place in this case.

Plaintiff also relies on a non-binding Massachusetts Superior Court decision *Walsh v. Menton*, 2 Mass. L. Rep. 584 (1994), which is distinguishable. There, the plaintiff ("Walsh") retained the defendant ("Menton") and transferred money for Menton *to invest*. Walsh did not receive any accountings after July of 1990, and in 1993 she allegedly demanded the return of her money and sent a 93A demand letter. *Id.* Menton neither responded to that letter nor returned Walsh's money; he suffered a stroke in early 1993 and died in June 1993. *Id.* The case did not involve fees or expenses. Plaintiff's reliance on *Walsh* is not only misguided, but misleading.

## 2. Plaintiff has not asserted a breach of contract claim and cannot now claim the 2015 CFA is void:

Plaintiff argues, for the first time at summary judgment, that the Defendants' conduct was a breach of the 2015 CFA, while also claiming that the 2015 CFA is void. *See, e.g.,* Dk. 93, KW MSJ, p. 20. Having not pled breach of contract in her Amended Complaint and having in essence conceded that the 2015 CFA is valid (*see* Dk. 11, Amended Complaint), she cannot now argue otherwise. *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 308-310 (1st Cir. 2022); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168 (1st Cir. 1995). Plaintiff's arguments must be disregarded.

---

[8] In fact, the *Guenard* Court held that denying the defendant a reasonable fee would be a windfall to the plaintiff and unreasonable, even though the fee agreement was illegal as a matter of law.

**3. Issues of material fact preclude entry of summary judgment in Plaintiff's favor**:

To the extent Plaintiff now claims – eight years after she read and signed the 2015 CFA and more than three years after she was fully explained and signed off on the fees and disbursements – that she did not read the 2015 CFA, did not understand or approve the expenses because she was not somehow fully informed, did not understand that Keenan recovered an additional 7% for the appeal, and somehow was improperly induced, issues of fact preclude the entry of summary judgment in Plaintiff's favor.

- **Plaintiff was not "induced" to enter into the 2015 CFA:**

Attorney Keenan, one of the most pre-eminent plaintiff's attorneys in the United States, was not willing to try the case without his own fee agreement.[9] *See* Liberty Aff., Ex. F, Keenan's Resp. to Plaintiff's Questions, No. 5. Plaintiff agreed to bring Keenan on board [*see* Liberty Aff., Ex. D., Dep. of Wahlstrom, 28-29] and freely signed the 2015 CFA. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 21-22. Wahlstrom had previously read and executed the 2010 CFA and understood the terms. *See* Liberty Aff., Ex. C, "Plaintiff Responses to Keenan's Interrogatories", No. 2; Ex. D, Dep. of Wahlstrom, 15:4-24. On June 19, 2015, she was presented with a copy of the 2015 CFA, and had an opportunity to review and ask questions before signing. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 19, 23, 150. Wahlstrom executed the 2015 CFA eight days after the alleged offending e-mail (on June 19, 2015), and the CFA clearly and unequivocally reflects an additional charge / percentage for any appeal work in Paragraph 4.[10] *See* Liberty Aff., Ex. J, 2015 CFA, ¶ 4. Wahlstrom initialed every paragraph. She testified that she read Paragraph 4 of the 2015 CFA,

---

[9] A written fee agreement would be required in any event.

[10] Reliance on any purported representations to the contrary of the plain language of a written contract (here, the June 2015 e-mail from Hoey) are unreasonable as a matter of law. *Armstrong v. White Winston Select Asset Funds, LLC*, No. CV 16-10666-JGD, 2022 WL 17981392, at *8 (D. Mass. Dec. 27, 2022).

outlining reasonable compensation, before she signed and initialed it. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 64-65. She admits in her new Declaration that she read Paragraph 4, but somehow tries to explain it away. Dk. 95, Dec. of Kira Wahlstrom, ¶¶7-13. Wahlstrom was well aware of the possible increase related to an appeal. In fact, she recently testified that in 2010, she signed a CFA with Mr. O'Toole that allowed for a 40+% recovery in the event of an appeal. *See* Maher Aff., Ex. A, 09/12/23 Dep. of KW, 116-117; Ex. G, O'Toole and Wahlstrom Fee Agreement. Her apparent claim today that she would not have agreed to the 2015 CFA is disputed and without basis. She had it in her possession for five (5) years with no questions or concerns.

The 2015 CFA supersedes any earlier representation or statement – it was a fully integrated agreement[11] and contains the following integration clause:

> (13) This Contingent Fee Agreement (6 pages, 14 paragraphs, and attachments) encompasses the entire agreement of the parties (the Client and the Attorney), and supersedes all previous understandings and agreements between the parties, whether oral or written. The parties hereby acknowledge and represent that said parties have not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this agreement, made by or on behalf of any other party or any other person or entity whatsoever, prior to the execution of this agreement. [].

In short, the 2015 CFA plainly explained the compensation structure, including the possibility of an increased fee in case of an appeal. *See* Liberty Aff., Ex. J, 2015 CFA, ¶ 4. Plaintiff testified that she read and understood the agreement before signing it and initialing each paragraph. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, p. 16-18, 21-22, 31-32, 64-65. Her claims to the contrary today warrant denial of her motion for summary judgment.

---

[11] Where parties reduce agreement to a writing "which in view of its completeness and specificity reasonably appears to be a complete agreement, it is . . . an integrated agreement unless" otherwise established as not a final expression. *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 106-07 (D. Mass. 1998) (quotation omitted). Further, "[i]f the document as a whole 'makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement." *Alantra LLC v. Apex Indus. Techs. LLC,* 636 F. Supp. 3d 223, 235 (D. Mass. 2022) (internal quotations and citations omitted).

- **Attorney Hoey did not take the 7% appeal fee, which Plaintiff was not "induced" to pay in any event:**

Attorney Hoey did not receive the 7% appeal fee, which was paid to Keenan. *See* Dk. 96.4, Ex. 4, Hoey Dep., p. 153:10-23. Irrespective, he reviewed the expenses and disbursements with Wahlstrom on more than one occasion as explained *infra.* Wahlstrom came voluntarily to approve and sign off on the disbursements, including the fee distribution. She was provided with the list months prior to signing the approval and it was during a time in which she was being represented by Attorney DeJuneas as well. She had opportunity to ask questions and voice concerns and she stated in an email communication that she had none. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 42-44; Ex. OO, March 30, 2020 Emails.

Thus, by Wahlstrom's own admission at her first deposition, she understood and accepted the charges when she signed off on them. *See id.* Hoey first reviewed the disbursements / expenses with Wahlstrom in mid-December 2019. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 40:20-41:6. Then, in March 2020, Hoey emailed Wahlstrom an Excel spreadsheet outlining the various disbursements, with detail. *See* Liberty Aff., Ex. NN, March 29, 2020 Email; Ex. V, Executed Fee Breakdown.[12] Wahlstrom testified that she read the spreadsheet and had no questions or concerns. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 42-44; Ex. OO, March 30, 2020 Emails. Hoey also met with Wahlstrom again in March 2020. *See* Liberty Aff., Ex. PP, Plaintiff's Response to the

---

[12] In fact, the spreadsheet specifically made note of what she now claims is improper. The spreadsheet (*see* Liberty Aff., Ex. NN, March 29, 2020 email) given and reviewed by Plaintiff specifically stated, in part, as follows:

| | | |
|---|---|---|
| Amy Goganian, Esq. | $41,231.72 | This is who we hired to fight the Sobczak lien. |
| Richard Goren, Esq. | $20,824.00 | This is who we hired to fight Intellectual Property, Patent, Trademark Infrignment [sic] and confidentiality. |
| James Bolan, Esq. | $8,432.39 | This was Ethics counsel who consulted regarding Wilson, Sobczak, the Appeal and other areas of concern. |
| Lewis Brisois Bisgaard Smitth | $561.24 | Related to Sobczak and complaint to the Board |
| John Vail, Esq. | $2,655.00 | Constitutional Law attorney |
| Catherine Giordano, Esq. | $1,316.00 | Research and writing attorney |

Hoey Defendants' Interrogatories, No. 9; Ex. D, Dep. of Wahlstrom, 49:21-24; 201:1-5. At that meeting, Hoey discussed the expenses and excel sheet with Ms. Wahlstrom. *See* Dk. 96.4, Ex. 4, Hoey Dep. p. 104:3-112:23; 116:24-117:2; 317. Page one specifically reflects the attorneys' fees, including the total fee to Keenan which includes the 7% – referencing the Fee Distribution total, the amounts to Keenan, Hoey and O'Toole and specifically making note of the 2015 KLF CFA. *See* Liberty Aff., Ex. V, Executed Fee Breakdown. Wahlstrom, at no point in time, raised any concerns, questions, or issues with Hoey. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 201:1-5.[13] Wahlstrom signed the first page as follows: "Kira Wahlstrom I am aware of the above fee distribution and approve of them." *See* Liberty Aff., Ex. V, Executed Fee Breakdown.[14] She similarly signed the third page approving of the itemized expenses and distribution. *Id.*

Plaintiff's argument that the Defendants "did not earn" the appeal fee is without merit. She claims that they did not file appearances and that DeJuneas viewed Hoey's work as "interfering."[15] However, the Defendants spent countless hours working on the appeal, exchanging over 1000 emails and numerous calls discussing strategy. *See* Liberty Aff., Ex. O, Dep. of DeJuneas, 45-47; *see also*, e.g., Ex. Y, Emails with DeJuneas. DeJuneas sent working drafts of her appellate brief to

---

[13] Plaintiff's argument that she did not ratify or voluntarily pay the fees and expenses when she signed off in March 2020 (KW MSJ p. 24-25) is without basis and the cases relied upon are distinguishable. For example, *Durfee v. Durfee*, 323 Mass. 187 (1948) involved a stockholder dispute where "material" information, such as the corporate books, was not provided. *Fergus v. Ross*, 477 Mass. 563 (2017) involved ratification in the context of an agency relationship. The court held that no agency relationship existed and, in any event, the principal could not ratify the purported agent's conduct after the fact without knowledge of his actions. *Kidder v. Greenman*, 283 Mass. 601 (1933) involved a lessor wrongfully and fraudulently filling out a lease in an unauthorized manner, with different terms to those which the lessee agreed. Here, Plaintiff was presented with, understood and signed off on the expense itemization, which expenses were then charged to Wahlstrom in the authorized manner. Plaintiff effectively concedes *Puritan Medical Ctr., Inc. v. Cashman*, 413 Mass. 167 (1992) is inapplicable as it is a case dealing with corporate ratification. Finally, *Berman v. Coakley*, 243 Mass. 348 (1923) does not have to do with ratification but instead with an attorney who knowingly conspired to defraud the client by lying to him about pending criminal charges against him so that he would retain the attorney's services.

[15] Plaintiff also claims, without identifying any legal or factual basis, that there was a potential conflict which the Defendants failed to advise her about. Attorney Kazarian testified that there was no conflict of interest. *See* Maher Aff., Ex. C, Dep. of Charles Kazarian, p. 129. In fact, there is no indication that DeJuneas or Cordy, who both represented plaintiff, saw a conflict either.

Hoey and Keenan. *See* Dk. 96.28, Hoey Emails to Vail, p. 3. Throughout the appellate process, Hoey reviewed and commented on the briefs and was in frequent contact with DeJuneas' concerning the appeal. *See* Liberty Aff., Ex. O, Dep. of DeJuneas; *see also* Ex. Y, Emails with DeJuneas. Contrary to Plaintiff's assertions, Hoey contributed to and fortified the eventual argument made regarding the miscarriage of justice standard that should have been, and eventually was, applied. Dk. 96.28, Ex. 28, p. 8. The fact that Hoey's and Keenan's names were left off Plaintiff's brief was nothing more than a strategic decision *by DeJuneas*. *See* Liberty Aff., Ex. AA, July 25, 2016 Email Chain; Ex. O, Dep. of DeJuneas, 50:18-21. Plaintiff's own expert testified that she had no opinion on whether the act of filing of the brief alone was significant. *See* Liberty Aff., Ex. VV, Dep. of Higgins, 197.[16]

Moreover, the argument that the trial judge had used the wrong standard necessarily required an analysis of whether there was a miscarriage of justice, with careful consideration of "a survey of the whole case." *Wahlstrom v. JPA IV Mgmt. Co., Inc.*, 96 Mass. App. Ct. 1108 (2019). Who better than Plaintiff's counsel – Hoey – to provide information helpful to the appeal, whether DeJuneas admits it or not, against this backdrop. Issues of fact, including Plaintiff's argument that she was "induced"[17] to sign off on the fees and expenses, warrant denial of her summary judgment.

- **Plaintiff understood, agreed and approved of the Advocate Capital financing charges and cannot establish that such charges are not appropriate:**

Plaintiff alleges that the provision concerning litigation financing did not give Hoey authorization to borrow funds through any arrangement whatsoever and then charge interest and

---

[16] Plaintiff relies on Attorney Hoey's deposition testimony. *See* Dk. 93, KW MSJ, p. 6. The argument is a red herring as it ignores Attorney Hoey's testimony immediately prior thereto, and the testimony is contrary to the language in the agreement in any event. She also took Hoey's deposition for seven (7) hours.

[17] There is simply no evidence of inducement as outlined above – the actual evidence shows the opposite. In fact, at her deposition, Wahlstrom testified as follows: "Q: You've used the word induced a lot in your papers. What do you mean by that? A: I can't answer that. I don't know." *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 181:2-5.

related expenses to her without explaining the costs to her. Dk. 93, KW MSJ, p. 22. She so claims without any legal (or factual) basis. Further, this mischaracterization leaves aside the fact that litigation funding was necessary as Plaintiff could not afford to advance funds to prosecute the underlying case. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 31:11-32:5. The fee agreement specifically stated as follows:

> (5) [] Client acknowledges and agrees that the attorney may borrow funds from time to time to pay certain costs associated with pursuing and litigating the case and agrees that, in addition to reimbursing the attorney for the amount of such costs, the client also will reimburse the attorney for any interest charges and related expenses the attorney incurs in connection with such borrowings.

*See* Liberty Aff., Ex. J, 2015 CFA, ¶ 5.

Irrespective, Plaintiff was aware that the Hoey Defendants were advancing funds, including their own money and through financing, on her behalf for the case and the appeal. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 31:11-32:5. She also understood that if there was a favorable disposition of the case that she would be responsible for reasonable expenses and disbursements, that her attorney could finance the case and borrow funds to finance the case, and that she would be responsible for reimbursement of interest charges and related expenses incurred in related to financing the case.[18] *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 16-17. Plaintiff could not afford to advance any costs or absorb any risk. She so admitted, including that she did not concern herself with how her case was being funded. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 31-32. The

---

[18] Plaintiff's apparent new argument that no one explained to her that she would be charged expenses incurred by Hoey under the Keenan 2015 CFA (Dk. 93, KW MSJ, p. 4) is disingenuous at best. Plaintiff testified under oath that she knew and understood that she would be charged reasonable expenses, knew that from the inception of the case, and did not concern herself with how the case was being financed. *See* Liberty Aff., Ex. D, p. 15-16, 31-32. She is not seeking recovery of the other expenses Hoey advanced. *See* Liberty Aff., Ex. V., Executed Fee Breakdown. The argument also misses the mark where Plaintiff seeks to somehow claim that the 2015 CFA is now apparently void. Irrespective, she unambiguously approved of the fees and expenses. *Id.*

defendants absorbed all the risk if they lost.[19]  To the extent Plaintiff now claims that the expenses and disbursements are not reasonable, such is reserved for the fact finder – not summary judgment.

The Hoey Defendants' expert, Charles Kazarian, has testified that the litigation funding was within all bounds. *See* Maher Aff., Ex. C, Dep. of Charles Kazarian, p. 114-116. Plaintiff nonetheless seeks to rely on her vague, conclusory assertions that she did not have "a full understanding" of the fees and costs when they were incurred, her knowledge of the language of the 2015 CFA (and 2010) notwithstanding. This does not carry the day. Her own testimony contradicts her claims; an affidavit drafted by her lawyer should not and cannot replace her own words. *See* Maher Aff., Ex. A, 09/12/23 Dep. of KW, p. 210. At a minimum, her allegations, including of unreasonableness, create an issue of fact. [20]

- **The charges for Bolan, Goren, Goganian, Lewis, Vail and Giardano were necessary for the successful outcome of Wahlstrom's case and properly charged to her with her agreement:**

The Hoey Defendants worked tirelessly over nine (9) years, risking their own resources to secure the best possible result for Wahlstrom.  Wahlstrom agreed that her lawyers needed to do what was required to win. *See* Maher Aff., Ex. A, 09/12/23 Dep. of KW, p. 129-130. Attorney Goganian *appeared* for Kira Wahlstrom[21] – Ms. Wahlstrom's position today notwithstanding. The

---

[19] In fact, Hoey had to secure the Advocate Capital funding with a life insurance policy, his wife was required to co-sign for Advocate Capital, and a UCC financing statement was filed by Advocate Capital against Hoey and his wife. *See* Dk. 96.4, Dep. of Hoey (Wahlstrom), p. 320; Dk. 96.14, Dep. of Hoey (O'Toole), p. 104-106.

[20] The *Benalcazar* and *Beatty* cases, cited by Plaintiff, are inapposite. *Benalcazar v. Goldsmith*, 400 Mass. 111 (1987) involved the denial of an attorney's motion for lien, while *Beatty v. NP Corp.*, 31 Mass.App.Ct. 606 (1991) involved an appeal from a decision granting summary judgment for the law firm where there was no explicit fee agreement. Setting aside whether it is proper reference for summary judgment, Plaintiff's reliance on Rule of Prof. Conduct 1.4(a) in support of her claim that the CFA provision on borrowing funds was insufficient is a red herring.  Rule 1.4 relates to reasonable communications with the client for purposes of making informed decisions regarding the representation.

[21] Sobczak and O'Toole asserted claims against Wahlstrom. Hoey Defendants cannot control the actions of other attorneys, and cannot be found liable as a matter of law to Wahlstrom for the legal fees she incurred in defending against these claims – frivolous or not. *See* Dk. 88, Hoey MSJ, p. 17.

expenses for Goran, Bolan, Vail and Giardano were incurred for the benefit of Ms. Wahlstrom, including with the goal of winning the case and upholding the judgment.

For example, Attorney Hoey testified that James Bolan helped with and reviewed the opposition to JPA's motion for new trial, provided assistance with the media regarding the motion for new trial, helped dismiss the lien filed by Sobczak against Plaintiff, and advised how to protect the attorney-client privilege between Hoey Law and Plaintiff from Sobczak's intrusion. *See* Dk. 96.4, Ex. 4, Dep. of David Hoey (Wahlstrom Matter), p. 126:24-127:14; 154:19-24, 228-229, 256-257; Ex. 14, Dep. of David Hoey (O'Toole Matter), 90:6-10, 92:8-14.[22] Attorney Hoey testified that Richard Goren was engaged to prevent the JPA defendants from attempting to poison the Court's opinion of Hoey Law and the Keenan Law Firm and thereby attack Plaintiff's case and unduly influence the judge. *See* Dk. 96.4, Ex. 4, Dep. of David Hoey (Wahlstrom Matter), p. 108:3-16, 126:9-12; Ex. 62, Hoey Response to 93A Demand Letter, p. 62. The motion papers filed by Richard Goren make clear that his function was to assist in opposing the motion for new trial, in part by staving off the attack on the Plaintiff and upholding verdict that was won, which was in Plaintiff's best interest. Dk. 96.17, Ex. 17, Attorney Goren Documents.

John Vail provided necessary consultation on the appellate briefs and the framing of the issues as he was an experienced national appellate and constitutional law lawyer. *See* Dk. 96.4, Ex. 4, Dep. of David Hoey, p. 177:13-23, 186-193. DeJuneas welcomed his input. In fact, they were scheduled to meet and have dinner. *Id.*, p 195.

---

[22] Wahlstrom claims that she was unaware of Bolan's involvement, but Bolan's affidavit submitted on Wahlstrom's behalf suggests otherwise. *See* Maher Aff., Ex. E, Affidavit of James Bolan.

The costs were to be charged to Wahlstrom, separately from the fee,[23] which is exactly what happened here – and Plaintiff explicitly and unambiguously approved. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, 16-17; Ex. V, Executed Fee Breakdown.

**III.     Plaintiff is not entitled, as a matter of law, to multiple damages pursuant to Chapter 93A:**

This Court cannot decide willful or knowing conduct at the summary judgment stage. Plaintiff does not cite to a single case which supports her proposition that she is entitled to judgment as a matter of law on her request for multiple damages. None of the cases cited by Plaintiff actually involve the allowance of summary judgment in favor of a plaintiff with respect to double or treble damages pursuant to Chapter 93A. In fact, Plaintiff concedes in her motion at fn. 1, that she cannot move for summary judgment on her fraud claim because the allegations involve state of mind – the same is true vis-à-vis willful or knowing allegations pursuant to c. 93A.

Plaintiff's argument that she is entitled, as a matter of law, to double or treble damages because Hoey and Keenan "knowingly induced" her to sign the 2015 CFA or "knowingly failed to disclose" to her what she claims should have been disclosed (Dk. 93, KW MSJ, p. 26, 28-29) is

---

[23] The 2015 CFA specifically sets out that the only "Referring/Associated Counsel" is Hoey Law, as follows:
> Referring/Associated Counsel:
> The Client understands that a portion of the compensation payment to the Attorney pursuant to the paragraph above shall be paid to: the Law Offices of David J. Hoey, P.C. and consents to this division of fees. Client understands that the Client will not be charged any additional legal fees.

*See* Liberty Aff., Ex. J, 2015 CFA. The 2015 CFA does not refer to any other counsel as referring and/or associated counsel. Work by other lawyers is plainly not within the above provision of the 2015 CFA. This is further evidenced by the fact that DeJuneas' firm had its own agreement with Wahlstrom. *See* Liberty Aff., Ex. R, Agreement between Plaintiff and DeJuneas. These other attorney expenses/charges were necessary for the successful outcome of the case. Much like the *20 Atl. Ave. Corp.* case cited by Plaintiff, this "was a difficult and complicated case which was defended to the extreme." It involved voluminous documents, and required a "great deal of work," including at the appellate level. "The result received was remarkable." *20 Atl. Ave. Corp.*, 2009 U.S. Dist. LEXIS 145601, at *37. It would have been impossible to achieve the degree of success in the underlying litigation without help – high quality help. It follows that such could not have been done without incurring the associated costs. As noted above, in a contingency fee case, the costs are assessed against the client, but not charged to the client until the client approves them. In this case, all costs, expenses and fees were accounted for and disclosed. Notwithstanding her conclusory assertions regarding what she would have done differently, Wahlstrom did not concern herself with the day to day activity on her case, including how her case was being financed. *See* Liberty Aff., Ex. D, Dep. of Wahlstrom, p. 15-16, 31-32.

without merit. Any such ruling requires the Court to weigh evidence and credibility, therefore defeating summary judgment. Plaintiff cites no case where the Court made a finding in favor of a plaintiff who offensively sought summary judgment as to double or treble damages pursuant to c. 93A. Plaintiff's reliance on *Brandt, Datacomm Interface* and *Shaw* misses the mark and in fact supports Defendants' position that Plaintiff is not entitled to summary judgment. *Brandt* and *Shaw* involved findings in favor of the plaintiffs on their Chapter 93A claims following full adjudication by the trial judge (including before a jury in the *Shaw* case, with the Judge reserving for himself the issue of 93A and double/treble damages).[24] *Datacomm Interface* involved a bench trial before a Master on Unfair Competition claims, which trial took place over more than *fifty* days, where the evidence was heard, including in support of the Chapter 93A, §11 count. The trial judge / Master ruled that the conduct at issue did not constitute a violation of c 93A, which was reversed by the SJC – again, hardly applicable or supportive to plaintiff's position here that somehow she is entitled to a ruling as a matter of law, without a trial or presentation of evidence.

Likewise, Plaintiff's argument that she is entitled, as a matter of law, to double or treble damages because the 7% appeal upcharge was a "willful breach of contract" (Dk. 93, KW MSJ, p. 27) forgets that Plaintiff has not asserted a breach of contract count here (*see* Dk. 11, Amended Complaint). Plaintiff is precluded from seeking double or treble damages based upon an alleged willful breach of contract, where she did not assert a breach of contract claim. In that regard, her reliance on the *City of Revere* case is inapposite. That case involved an easement dispute and declaratory judgment action. The defendant (Boston Logan) asserted counterclaims for breach of contract and violation of Chapter 93A, §11. The case does not involve allowance of double/treble damages at summary judgment, but in fact the denial of Boston Logan's summary judgment

---

[24] The same is true for *Karasavas v. Gargano*, MICV201001419 (Mass.Super.Ct. 2014), a Superior Court decision following a trial.

motion and allowance of the City's summary judgment motion as to Boston Logan's c. 93A claim against it – hardly dispositive of the issues presented here. *City of Revere v. Bos./Logan Airport Assocs., LLC*, 443 F.Supp.2d 121 (D.Mass. 2006).

## IV.    Plaintiff is not entitled to a statutory penalty pursuant to M.G.L. c. 221, §51:

Plaintiff did not assert a count pursuant to M.G.L. c. 221, §51, nor did she reference the provision in her Complaint. She cannot now seek recovery pursuant to Section 51. Importantly, M.G.L. c. 221, §51, like c. 93A or breach of fiduciary duty, requires weighing of evidence. It requires a finding of unreasonableness and is a claim for a jury, not a judge. *See* M.G.L. c. 221, Section 51 (an attorney "who unreasonably neglects to pay over money ..."); *Guenard*, 387 Mass. at 810-11 (holding the claim is "one for a jury and not for a judge alone, assuming that there is evidence that the attorney acted unreasonably," further stating that an "attorney who acted in good faith where there was an honest controversy between the parties would not be liable for an interest penalty under §51.").[25]

## CONCLUSION

Based on the foregoing, the Hoey Defendants submit that Plaintiff's Motion for Summary Judgment must be denied in full, while they respectfully request that this Honorable Court enter summary judgment in their favor. Wahlstrom's case is premised on material facts in dispute. In

---

[25] Plaintiff cites to *Guenard* in support of her arguments that the 2015 CFA is void and that reliance on an "illegal" fee agreement violates c. 93A – a case clearly distinguishable as those 2 points are not applicable here. Plaintiff fails to point out the *Guenard* holding as it concerns Section 51 in her argument in support of penalties. Instead, she again relies on inapposite cases, *Auburn v. Tarvezian* and *Doucette v. Kwiat*. *Doucette* involved a finding pursuant to c. 93A and §51 *following a bench trial*. *Auburn*, a non-authoritative decision issued pursuant to Rule 1:28, did not involve summary judgment, but instead involved a full bench trial on a dispute between a lawyer and a client concerning fees owed to the attorney where there was no written fee agreement and the attorney's failure to release funds due to the client pursuant to the sale of the property at issue. Following a bench trial, the judge determined that the refusal to release funds from the sale of a property to his client was not in good faith pursuant to Section 51. *Auburn*, 2014 Mass.App.Unpub.LEXIS 332, *2, 4-5. The Appeals Court affirmed. The decision did not involve the failure to return expenses or fees allegedly improperly charged to the client.

the event this Court does not agree that summary judgment should enter in favor of the Defendants, the Defendants are entitled to present their arguments and defenses to a trier of fact.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), the Defendants request oral argument.

Respectfully submitted,

Defendants, David J. Hoey and
Law Offices of David J. Hoey, P.C.,
By their attorneys,

*/s/ Christine A. Knipper*
Christine A. Knipper, BBO # 652638
Christine.Knipper@wilsonelser.com
Dennis M. Maher, BBO # 703655
Dennis.Maher@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker
260 Franklin Street, 14th Fl.
Boston, MA 02110
Tel: 617.422.5300

## CERTIFICATE OF SERVICE

I, Christine A. Knipper, hereby certify that on September 22, 2023 the foregoing document was served on all counsel of record via ECF.

/s/ *Christine A. Knipper*
Christine A. Knipper