UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIRA WAHLSTROM,

    *Plaintiff*

v.

DAVID J. HOEY, LAW OFFICES OF
DAVID J. HOEY, P.C., DON C. KEENAN,
AND D.C. KEENAN & ASSOCIATES, P.C.
D/B/A THE KEENAN LAW FIRM, P.C.

1:22-cv-10792-RGS

    *Defendant*

## DEFENDANTS DAVID J. HOEY AND LAW OFFICES OF DAVID J. HOEY, P.C.'S RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

The Defendants, David J. Hoey and Law Offices of David J. Hoey, P.C., (collectively

"Hoey") submit this response to Plaintiff's Statement of Material Facts.

### The Premises Liability Case

1. On May 1, 2009, Plaintiff Kira Wahlstrom was brutally raped by Jose Rivera III in a parking garage attached to the Radisson hotel, located in downtown Boston just twelve days after Rivera raped another woman in the same garage before he returned to the garage and raped Ms. Wahlstrom. Dkt. 11, First Amended Complaint ("FAC"), ¶11; Dkt. 16, Answer of David J. Hoey and Law Offices of David J. Hoey ("Hoey Answer"), ¶11; Dkt. 24, Answer of Don C. Keenan and the Keenan Law Firm ("Keenan Answer"), ¶11; Dkt. 30, Answer of Keenan's Kids Foundation ("KKF Answer"), ¶11.

### HOEY'S RESPONSE NO. 1

For purposes of summary judgment motion only, not disputed; but, not material or relevant as drafted.

2. The garage was owned by JPA IV Management Company, Inc. and managed/operated by JPA I Management Company, Inc. (collectively "JPA"). Dkt. 11, FAC, ¶12; Dkt. 16, Hoey Answer, ¶12; Dkt. 24, Keenan Answer, ¶12; Dkt. 30, KKF Answer, ¶12.

**HOEY'S RESPONSE NO. 2**

For purposes of summary judgment motion only, not disputed; but, not material or relevant.

3. After the attack and rape of the first victim by Rivera, JPA failed to take measures to warn and failed to put in place increased security measures to protect other garage customers, like Ms. Wahlstrom, from the risk of a future rape. Dkt. 11, FAC, ¶12; Dkt. 16, Hoey Answer, ¶12; Dkt. 24, Keenan Answer, ¶12; Dkt. 30, KKF Answer, ¶12.

**HOEY'S RESPONSE NO. 3**

For purposes of summary judgment motion only, not disputed; but, not material or relevant.

4. Just hours after Ms. Wahlstrom was attacked and brutalized, the Boston police finally arrested Rivera at nearby Tufts Medical Center when he came to the facility at the same time Ms. Wahlstrom was there in the emergency room for treatment for her injuries. Dkt. 11, FAC, ¶14; Dkt. 16, Hoey Answer, ¶14; Dkt. 24, Keenan Answer, ¶14; Dkt. 30, KKF Answer, ¶14.

**HOEY'S RESPONSE NO. 4**

For purposes of summary judgment motion only, not disputed; but, not material or relevant.

5. When Ms. Wahlstrom was subpoenaed to testify against Rivera before the grand jury, she contacted one of the few attorneys she knew, her then-friend, Austin O'Toole, for assistance. Dkt. 11, FAC, ¶15; Dkt, 16, Hoey Answer, ¶15; Dkt. 24, Keenan Answer, ¶15; Dkt. 30, KKF Answer, ¶15.

**HOEY'S RESPONSE NO. 5**

For purposes of summary judgment motion only, not disputed; but, not material or relevant.

6. Thereafter, O'Toole referred Ms. Wahlstrom to attorney Defendant David Hoey to handle her civil claims because O'Toole was not qualified to handle the premises liability case against the garage owners. Dkt. 11, FAC, ¶15; Dkt. 16, Hoey Answer, ¶15; Dkt. 24, Keenan Answer, ¶15; Dkt. 30, KKF Answer, ¶15.

**HOEY'S RESPONSE NO. 6**

For purposes of summary judgment motion only, not disputed.

**The 2010 Fee Agreement**

7. On or about February 2, 2010, Ms. Wahlstrom entered a Contingent Fee Agreement with Defendant Law Offices of David J. Hoey, P.C. for Defendant David J. Hoey and his firm

to a premises liability case against the garage owners. Exhibit 1, 2010 Contingent Fee Agreement.

## HOEY'S RESPONSE NO. 7

Not disputed.

8. Ms. Wahlstrom agreed with Defendant Hoey to a contingent fee arrangement whereby he would receive payment of 33.3% of the gross amount recovered from fees recovered (referred to herein as the "2010 CFA"). Exhibit 1, 2010 Contingent Fee Agreement; Exhibit 2, Deposition of Kira Wahlstrom ("Wahlstrom Dep."), p. 13 line 6 to 12.

## HOEY'S RESPONSE NO. 8

Not disputed.

9. The 2010 CFA provided in part:

(1) The claim, controversy, and other matters with reference to which the services are to be performed are: *premises liability and injuries received on or about May 1, 2009 in the Radisson parking garage*

(2) The fee is to be paid upon recovery.

(3) The Client is not to be liable to pay compensation otherwise than from amounts collected for (him) / (her) by the Attorney except as follows: none.

(4) Reasonable compensation on the foregoing contingency is to be paid by the Client to the Attorney, but such compensation including that of any associate counsel shall be the following percentage of the gross amount collected for the client.

33.3% of the gross amount recovered;

(5) The Client is to be liable to the attorney for his reasonable expenses and disbursements only if there is a favorable disposition of the legal matter. In the event of a favorable disposition, expenses and disbursements will be deducted after the contingent fee is calculated. The Client acknowledges and agrees that the attorney may borrow funds from time to time to pay certain of the costs associated with pursuing and litigating the case and agree that, in addition to reimbursing the attorney for the amount of such costs, the client also will reimburse the attorney for any interest charges and related expenses the attorney incurs in connection with such borrowings.

The client acknowledges the following with respect to (his) (her) legal representation by the Attorney:

a) It is understood and agreed by the Client that the Client has been referred to and that any fee to be paid pursuant to a matter referred to in Paragraph (1), above, is to be divided in part with AUSTIN S. O'TOOLE, ESQUIRE, pursuant to the applicable provisions of the Code of Professional Responsibility as the same is in force in Massachusetts as Rule 3:08 of the Supreme Judicial Court.

b) AUSTIN S. O'TOOLE, ESQUIRE will receive periodic reports from the Attorney concerning the progress and disposition of the matter referred to in Paragraph (1) above. However, representation of the Client is to be undertaken by the Attorney and not the firm of AUSTIN S. O'TOOLE, ESQUIRE, personally. All questions, comments, inquiries and correspondence and the like concerning the legal matter which is the subject of this Agreement is to be directed to the Attorney and not to AUSTIN S. O'TOOLE, ESQUIRE, personally.

\* \* \*

(7) This fee agreement applies to all services rendered in pursuing the above referenced claim, but not to matters ancillary to the above claims, such as probate court proceedings, guardianships and trusts or estate services, resolutions of Medicare liens and Medicaid claims.

Exhibit 1, 2010 Contingent Fee Agreement.

### HOEY'S RESPONSE NO. 9

The quoted document speaks for itself and does not include all portions of the document. Otherwise, not disputed.

10. With the consent of Ms. Wahlstrom, Hoey and O'Toole agreed that O'Toole would receive "33% of my [Hoey's] fee from the sum recovered." Exhibit 3, Referral Agreement.

### HOEY'S RESPONSE NO. 10

The quoted document speaks for itself and does not include all portions of the document. Otherwise, not disputed.

11. On March 12, 2010, Hoey filed suit on behalf of Ms. Wahlstrom against the owner and operator of the hotel garage, JPA, and others, for negligence in Suffolk Superior Court titled *Wahlstrom v. JPA IV Management Company, Inc. et al*. No. 1084CV01022 (the "premises liability case." Dkt. 11, FAC, ¶20; Dkt. 16, Hoey Answer, ¶20; Dkt. 24, Keenan Answer, ¶20; Dkt. 30, KKF Answer, ¶20.

### HOEY'S RESPONSE NO. 11

Not disputed.

### Hoey and Keenan's Collaboration

12. David Hoey and Defendant Don Keenan of Defendant D.C. Keenan & Associates P.C. d/b/a The Keenan Law Firm P.C. (herein, "Keenan Law") met and started a professional relationship in 2010. Exhibit 4, Deposition of David Hoey ("Hoey Dep."), p. 12, line 23 to p. 15, line 16.

### HOEY'S RESPONSE NO. 12

Disputed and not material. Also the cited exhibit does not support the statement. Ex. 4, Hoey Depo., 12:23-15:24 ("Q. And how long after that did you actually work together on cases? A. So that would have been 2010. We didn't really work together on cases yet, but he was -- we took a liking to each other. He felt that my passion which he didn't see much in trial lawyers anymore was still present and we started -- we didn't work on cases.")

13. In June 2012, Keenan began assisting Hoey with the Wahlstrom case and incurring expenses but this was not disclosed to Ms. Wahlstrom. Exhibit 5, Don C. Keenan's Response to Plaintiff's Questions in Lieu of Appearing for a Deposition ("Keenan Response in Lieu of Deposition"), No. 1 and No. 4; Exhibit 4, Hoey Dep., p 82, line 6 to 9; Exhibit 6, Letter from Keenan Law, 7/3/2012; Exhibit 2, Wahlstrom Dep. p.17, line 8 to p. 19, line 9; Exhibit 7, Keenan Law Litigation Expenses, 12/9/2019; Declaration of Kira Wahlstrom ("Wahlstrom Declaration"), ¶5.

### HOEY'S RESPONSE NO. 13

Hoey does not dispute the first part of the statement ("In June 2012, Keenan began assisting Hoey with the Wahlstrom case and incurring expenses"). Hoey disputes the remaining portion of the sentence to the extent that it implies that Plaintiff did not know before 2015 of Keenan's involvement in the case. Ex. 4, Hoey Depo., p. 89, lines 9-17 ("Q. All right. So when you signed this Kira didn't know anything about this? A. That's correct. … Oh, I shouldn't say that. She might have but I don't have a specific memory that she did or didn't. She knew prior to February of 2015 that I was working with Mr. Keenan on stuff for her."); Ex. 2, Wahlstrom Deposition, p. 23, line 20 - p. 34, line 2; Affidavit of Dennis Maher and Defendants David J. Hoey and The Law Offices of David J. Hoey, P.C.'s Appendix ("Maher Aff."), Ex. A, Deposition of Plaintiff on September 12, 2023 in *Austin O'Toole et al. v. David Hoey, et al.*, Massachusetts Suffolk Superior Court, 2184CV00741) (hereinafter "Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition"), 33:20-34:2, 166:3-168:18.[1] Further, this portion of the statement is misleading in that it presumes an obligation. Maher Aff., Ex. B, Deposition of Robert Michael (hereinafter "Maher Aff., Ex. B, Michael Deposition"), 72:6-73:8 ("Q. Are you aware that Mr. Keenan started working with Mr. Hoey on this case as of 2012, some three years before he got a fee agreement with Ms. Wahlstrom? A. As a consulting attorney. I think you have to understand Mr. Keenan's role in that regard. Any lawyer can bring to Mr. Keenan a case. Mr. Keenan and his firm evaluates that case to determine whether they're interested enough in it to participate. At that point it's called a referring lawyer agreement. That can convert -- and this is something

---

[1] These additional exhibits are attached to the Declaration of Dennis Maher, Esq. filed concurrently.

that the expert for the plaintiff didn't understand in her submission. That agreement can be converted into what's called a lead attorney, but that lead attorney arrangement is between Mr. Hoey and Mr. Keenan. It doesn't involve the client yet. So after that agreement and after a decision then is subsequently made that Mr. Keenan was going to come in and be the lead trial counsel in the case is what led to the Keenan contingency fee agreement and that was absolutely required under the ethics rules, that he have a separate agreement with her with respect to his involvement in this case and what his fee was going to be.")

14. On July 3, 2012, in a letter to Hoey regarding "Wahlstrom v. Radisson Hotel, et al." Keenan identified himself as "lead counsel on this case" of which Ms. Wahlstrom was unaware at the time. Exhibit 6, Keenan Letter 7/3/2012; Wahlstrom Declaration, ¶5.

**HOEY'S RESPONSE NO. 14**

The quoted document speaks for itself and does not include all portions of the document and is not disputed, but the statement is misleading, irrelevant and not material. Plaintiff expressly approved of Keenan's representation of her and engaged him as her trial counsel. Ex. A, Wahlstrom Deposition, 19; see also Plaintiff's Statement of Material Fact, No. 19.

15. On February 24, 2013, Hoey and Keenan executed a Contract for Legal Representation which provided terms on how they would divide any attorney fee recovered including that Keenan would be entitled to 30% of all attorney's fees for consulting services through trial and that Keenan would be entitled to 40% of all attorney's fees if Keenan entered the case as attorney of record. Exhibit 8, Contract for Legal Representation, 2/24/2013; Exhibit 4, Hoey Dep, p. 83, line 3 to p. 84, line 13; Exhibit 5, Keenan Response in Lieu of Deposition, No. 3.

**HOEY'S RESPONSE NO. 15**

The document speaks for itself, but not disputed. However, not material.

16. Hoey and Keenan did not inform Ms. Wahlstrom of this arrangement and she did not know that Keenan was working on her case in 2013. Exhibit 4, Hoey Dep., p. 86, line 15 to p. 89, line 3 (…So this was the agreement between us prior to him entering into a contingency fee agreement with Kira Wahlstrom. . . . Kira Wahlstrom never approved this and she had to so because she didn't that makes it invalid"); Exhibit 5, Keenan Response in Lieu of Deposition, No. 4; Wahlstrom Declaration, ¶4 and 5.

**HOEY'S RESPONSE NO. 16**

The first segment is not disputed, but it is not relevant or material and is misleading as Keenan's Response in Lieu of Deposition No. 4 does not supported the above assertion. The second segment is disputed. *See* response to No. 13 above. The statement as a whole is misleading as the arrangement is not required to be disclosed under the Rules of Professional Conduct. Massachusetts Rules of Professional Conduct, Rule 1.5; Maher

Aff., Ex. B, Michael Deposition, 107:7-109:7 ("[] This goes back to Mr. Keenan's model of handling referral cases. When you sign up with him and ask him to be a part of your case, it's done in a two-step process. The first of them is called a referral attorney. That has one percent in it. The next is called trial counsel which is where he becomes not responsible to the plaintiff because that came later, as you know, but to Mr. Hoey for making decisions with regard to the trial of the case. It's a different layer of involvement by Mr. Keenan. It involves focus groups, studies. It involves a lot of internal work done within his law firm to try to present this case in the light most favorable to the plaintiff. This is not something that would be required to disclosed to Ms. Wahlstrom because they're not – this is not addressing the – well, this is not something that was required to be conveyed to Ms. Wahlstrom because it's between the two attorneys on a consulting basis."); Maher Aff. Ex. C, Deposition of Charles Kazarian (hereinafter "Maher Aff., Ex. C, Kazarian's Deposition"), 48-49 ("Well, it's – it's -- I suppose one could look at this as sort of an expert engagement. You know, if it's akin to an expert engagement, then it's within my prior answer about lack of obligation to inform the client. With a fee splitting situation, possibly it may be different because of the expert that's being hired. But clearly what I see is here is Mr. Hoey soliciting the expert advice and counsel of another attorney").

17. Keenan and his partner launched the Keenan Ball Trial College in November 2013 and then Hoey became the Dean of Students. It is now called the Keenan Law Institute and Hoey remains the Dean today. Exhibit 4, Hoey Dep., pp. 16-19.

## HOEY'S RESPONSE NO. 17

Not disputed to the extent that Attorney Hoey testified as reflected in the pages noted; but disputed that the statement accurately reflects the testimony. Further, irrelevant and not material. Also, it is now called "Keenan Trial Institute".

18. In 2020, Hoey joined the Keenan Law Firm as a partner and was advanced $1 million on fees. Exhibit 5, Keenan Response in Lieu of Deposition, No. 9.

## HOEY'S RESPONSE NO. 18

Not disputed, but irrelevant and not material. It is misleading as it seeks to imply without basis that the advance on fees was somehow improper or related to Plaintiff, neither of which is accurate.

19. Kira Wahlstrom met Keenan for the first time in February 2015 and agreed to him assisting with her premises liability case at the recommendation of Hoey at that time. Wahlstrom Declaration, ¶4; Exhibit 4, Hoey Dep., p. 54, lines 3-24; Exhibit 5, Keenan Response in Lieu of Deposition, No. 4.

## HOEY'S RESPONSE NO. 19

Not disputed, however, the statement is misleading as drafted. Ex. 4, Hoey Depo., 89:9-17 ("All right. So when you signed this Kira didn't know anything about this? A. That's

correct … Oh, I shouldn't say that. She might have but I don't have a specific memory that she did or didn't. She knew prior to February of 2015 that I was working with Mr. Keenan on stuff for her."); Ex. 2, Wahlstrom Deposition, 23:20-24:2; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 33:20-34:2, 166:3-168:18.

20. On March 13, 2015, just months before the trial date in the premises liability case, Keenan sought *pro hac vice* admission to appear which was allowed on March 27, 2015. Exhibit 9, Docket in Premises Liability Case, p. 15, Dkt. 150.

**HOEY'S RESPONSE NO. 20**

Not disputed.

21. Hoey was the attorney that handled most communications with Ms. Wahlstrom throughout the 10-year litigation of her premises liability case. Wahlstrom Declaration, ¶3.

**HOEY'S RESPONSE NO. 21**

Not disputed.

22. Ms. Wahlstrom and Hoey formed a close working relationship over the years during which Ms. Wahlstrom was coping with the trauma and difficulties in recovery from the attack and rape and she had come to particularly rely on Hoey for support and placed substantial trust in him in his role as her advocate and protector. Wahlstrom Declaration, ¶3; Exhibit 4, Hoey Dep. p. 42, line 11 to p. 43, line 19.

**HOEY'S RESPONSE NO. 22**

Not disputed, but it is not material, and is misleading. Ex. 2, Wahlstrom Deposition, 204-206.

**The 2015 Fee Agreement**

23. On April 8, 2015, Hoey emailed attorney Andrew Gould of Keenan Law stating "We need a new fee agreement with the client" and attaching a draft Massachusetts contingency fee agreement with Don Keenan and the Keenan Law Firm replacing Hoey as the "Attorney" to receive the contingent fee. Exhibit 10, Email from Hoey to Andrew Gould, 4/8/2015.

**HOEY'S RESPONSE NO. 23**

The quoted document speaks for itself. Otherwise, not disputed, but it is misleading as Sobczak drafted the 2015 CFA and sent it to Hoey. Ex. 10, Email from Hoey to Andrew Gould, 4/8/2015; Ex. 13, Deposition of Sobczak, 39:10-40:2:1-2, 117:19-118:4, 187:5-12 ("I don't know if the draft I made for Mr. Hoey was sent to Mr. Keenan or Mr. Hoey."); Maher Aff., Ex. L, Deposition of Sobczak on September 12, 2023 in *Austin O'Toole et al. v. David Hoey, et al.*, Massachusetts Suffolk Superior Court, 2184CV00741, 181:15-182:9.

24. On June 1, 2015, Keenan executed the contingency fee agreement sent to his firm by Hoey. Exhibit 11, 2015 Contingency Fee Agreement ("2015 CFA").

**HOEY'S RESPONSE NO. 24**

Not disputed, but it is misleading as Sobczak drafted the 2015 CFA and sent it to Hoey. Ex. 10, Email from Hoey to Andrew Gould, 4/8/2015; Ex. 13, Deposition of Sobczak, 39:10-40:2:1-2, 117:19-118:4, 187:5-12 ("I don't know if the draft I made for Mr. Hoey was sent to Mr. Keenan or Mr. Hoey."); Maher Aff., Ex. L, Deposition of Sobczak on September 12, 2023 in *Austin O'Toole et al. v. David Hoey, et al.*, Massachusetts Suffolk Superior Court, 2184CV00741, 181:15-182:9.

25. On June 11, 2015, Hoey contacted Ms. Wahlstrom stating that he needed her to sign a new fee agreement with Don Keenan and when Ms. Wahlstrom asked "What is the new fee agreement?", Hoey replied "I mentioned it to you one of the last couple of visits. It's the same fee agreement as before but with Don's [Keenan] name since he is also trying the case with me on July 13th. It doesn't change your percentage or cost you more money. I'll show it you next time I see you." Exhibit 12, Email Exchange Between Hoey and Wahlstrom, 6/11/2015.

**HOEY'S RESPONSE NO. 25**

Not disputed; however, it is misleading as Hoey testified he was referring to the underlying recovery not the appeal. Ex. 4, Hoey Depo., 55:15-56:1.

26. In the same email chain between Wahlstrom and Hoey on June 11, 2015, Ms. Wahlstrom stated "I didn't go back to Bridgewater because I failed math, and school was very hard for me I am dislexic." [sic]. Exhibit 12, Email Exchange Between Hoey and Wahlstrom, 6/11/15.

**HOEY'S RESPONSE NO. 26**

Not disputed; however, it is irrelevant, not material and is misleading as Plaintiff testified that her alleged dyslexia did not prevent her from reviewing or understanding any documents. Ex. 2, Wahlstrom Deposition, 147:5-6, 149:19-21.

27. On June 16, 2015, just a month before her trial, Ms. Wahlstrom went to David Hoey's office and was presented the 2015 Contingent Fee Agreement that provided that Ms. Wahlstrom retains as "Attorney" Don C. Keenan and The Keenan Law Firm P.C. to perform legal services for her "Premises liability claims and injuries received as a result of assault on or about May 1, 2009, in the Raddison Hotel Boston parking lot." Exhibit 11, 2015 CFA.

<u>HOEY'S RESPONSE NO. 27</u>

The document speaks for itself, but not disputed.

28. Keenan did not review the terms of the new agreement with Kira Wahlstrom, he did not explain the differences between the prior agreement and the new one, and he did not advise Kira to seek independent counsel before signing the agreement. Exhibit 5, Keenan Response in Lieu of Deposition, No. 4.

<u>HOEY'S RESPONSE NO. 28</u>

Not disputed; however, either Sobczak or Hoey reviewed the document with Plaintiff. <u>Ex. 4</u>, Hoey Depo., 59; <u>Ex. 2</u>, Wahlstrom Deposition, 21-24.

29. Hoey did not explain the differences between the prior agreement and the new one and he did not advise Kira to seek independent counsel before signing the agreement. Exhibit 4, Hoey Dep., p. 56, line 10 to p. 61, line 20; Wahlstrom Declaration, ¶ 12 to 13.

<u>HOEY'S RESPONSE NO. 29</u>

Not disputed but misleading and incomplete. Plaintiff testified that Hoey did explain the agreement with her. <u>Ex. 2</u>, Wahlstrom Deposition, 23:11-24:2 ("Okay. And did you ask him any questions when you met at the office with whoever you met with about the fee agreement? A. I don't remember if I did. I know that I asked him here, but I -- I don't know if we talked about it when I signed it at the office. Q. And, as you sit here today, is it your memory that it was David Hoey, not Kris Sobczak that you met with? A. I -- I believe it was David to my memory. Can you say that with certainty? ... A. From what I remember, I thought it was David that I met with."); Liberty Aff., Ex. C, Plaintiff Kira Wahlstrom's Response to the First Set of Interrogatories by Defendant D.C. Keenan & Associates, P.C. (hereinafter Wahlstrom's Responses to Keenan's Interrogatories"), Nos. 5 ("I *discussed* the terms of the 2015 Contingent Fee Agreement with David Hoey before I signed it.") (Emphasis added). Hoey understood that Krzysztof Sobczak reviewed the agreement with Plaintiff. <u>Ex. 4</u>, Hoey Depo., 57:8-60:7 ("So on that occasion did you meet with Kira and show her this agreement? A. ... when she came in she met with Mr. Sobczak in the conference room -- best that I can recall, when she came in she met with Mr. Sobczak into the conference room and they went through this and then she came into my office after she executed it... Q. How do you know Sobczak did? A. Because it was represented to me that he went through the fee agreement with Kira and she signed off on it at the X. Q. Did you and Mr. Sobczak specifically discuss that paragraph? A. We discussed the agreement as a whole. Q. Okay. So you understanding was that Mr. Sobczak went through everything with her? A. And she acknowledged each paragraph that she either read or understood").

This statement is misleading as Plaintiff testified that she went over each item as well, <u>Ex. 2</u>, Wahlstrom Deposition, 16:10-17:7, 19:17-22:14, and Hoey had no obligation to advise

Plaintiff to seek independent counsel. Maher Aff., Ex. C, Kazarian's Deposition, 91:23-92:18.

30. While Hoey testified that Krzysztof Sobczak, an attorney working at his office at the time, reviewed the fee agreement with Kira, Hoey does not know what Sobczak advised Kira. Exhibit 4, Hoey Dep., p. 56, line 10 to p. 61, line 20; Exhibit 14, Hoey Dep. in O'Toole Case, p. 55, line 4 to p. 56, line 20.

## HOEY'S RESPONSE NO. 30

Not disputed but misleading and incomplete. Hoey testified that Krzysztof Sobczak reviewed the agreement with Plaintiff and that Sobczak told Hoey that he went over everything with Plaintiff. Ex. 4, Hoey Depo., 57:8-60:7 ("Q. So on that occasion did you meet with Kira and show her this agreement? A. The way it happened was once this was completed and hat to go to signature I think it came to us already signed by Mr. Keenan and then Kira came in and signed it, and when she came in she met with Mr. Sobczak in the conference room -- the best I can recall, when she came in she went with Mr. Sobczak into the conference room and they went through this and then she came into my office after she executed it and we chatted for a while. I actually think we walked across the street to get that day. Q. Okay. So to your recall [sic] while she was in the conference room with Sobczak you didn't go in and join the conversation? A. No. I said hello to her when she first walked in and then Kris came around the corner. I did say, oh, you'll meet with Kris and then come see me when you're done. ... Q. Did you discuss the actual terms with her at that point? A. No. I said all set and she said all set ... Q. How do you know Sobczak did? A. Because it was represented to me that he went through the fee agreement with Kira and she signed off on it at the X. Q. Did you and Mr. Sobczak specifically discuss that paragraph? A. We discussed the agreement as a whole. Q. Okay. So you understanding was that Mr. Sobczak went through everything with her? A. And she acknowledged each paragraph that she either read or understood")

31. Sobczak does not recall that he reviewed the 2015 CFA agreement with Kira Wahlstrom and believes Hoey did so and Kira has no memory of Sobczak explaining the 2015 CFA. Exhibit 13, Deposition of Attorney Krzysztof Sobczak ("Sobczak Dep.") p. 39, line 14 to p. 42, line 9 ("...I believe Mr. Hoey is the one that went over with her this. ... I understand that was another one of those discussions that when it came to money, Mr. Hoey wanted to talk to the clients himself because it was his money."); Wahlstrom Declaration, ¶7.

## HOEY'S RESPONSE NO. 31

Undisputed; however, it is misleading. First, Plaintiff, while she previously testified that David Hoey explained the agreement to her, Plaintiff now claims in her Declaration and her most recent deposition that no one explained the agreement to her. Ex. 2, Wahlstrom Deposition, 23:11-16; Wahlstrom's Responses to Keenan's Interrogatories, Nos. 5 ("I discussed the terms of the 2015 Contingent Fee Agreement with David Hoey before I signed it."); Plaintiff's Declaration, ¶¶ 12-13; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 42:21-44:3 ("Did you speak to David Hoey about this contingent fee

agreement? A. Only in the email that we just looked at. Q. … Do you have any recollection of Mr. Hoey explaining to you what any of the terms in this contract meant? A. Well, he explained to me that none of it had changed from the previous contract. So when I went in to sign it, I signed it."). Second, Hoey testified that Krzysztof Sobczak reviewed the agreement with Plaintiff and that Sobczak told Hoey that he went over everything with Plaintiff. Ex. 4, Hoey Depo., 57:8-60:7 (see above quoted language, response 29) (see also "Q. So on that occasion did you meet with Kira and show her this agreement? A. The way it happened was once this was completed and hat to go to signature I think it came to us already signed by Mr. Keenan and then Kira came in and signed it, and when she came in she met with Mr. Sobczak in the conference room -- the best I can recall, when she came in she went with Mr. Sobczak into the conference room and they went through this and then she came into my office after she executed it and we chatted for a while. I actually think we walked across the street to get that day. Q. Okay. So to your recall [sic] while she was in the conference room with Sobczak you didn't go in and join the conversation? A. No. I said hello to her when she first walked in and then Kris came around the corner. I did say, oh, you'll meet with Kris and then come see me when you're done. … )

32. The 2015 Contingent Fee Agreement (herein, "2015 CFA") provided for compensation as follows at paragraphs 4 and 5:

> (4) Reasonable compensation (including that of any referring and/or associated counsel) on the forgoing contingency is to be paid by the Client to the Attorney [Don C. Keenan and The Keenan Law Firm PC], but such compensation including that of any associated counsel shall be the following percentage of the gross amount collected for the client:
>
> > 33 and 1/3 (thirty-three and one-third percent) of gross amount recovered
>
> The above stated percentage shall be increased by an additional Two Percent (2%) of gross recovery if the matter is concluded/settled after an appellate brief is filed in an applicable appellate court or body by the Attorney [Don C. Keenan and The Keenan Law Firm P.C.] on behalf of the Client, and an additional Five Percent (5%) of gross recovery if matter is retired/concluded/settled following an appellate decision.
>
> The percentage shall be applied to the amount of recovery not including an attorney's fees awarded by a court or included in a settlement. The lawyer's compensation shall be such attorney's fees or the amount determined by the percentage calculation described above, whichever is greater. The compensation determined is separate and independent from costs and expenses of litigation, detailed in paragraph 5.
>
> Referring/Associated Counsel:
>
> The Client understands that a portion of the compensation payable to the Attorney pursuant to the paragraph above shall be paid to: the Law Offices of David

J. Hoey, P.C. and consents to this division of fees. Client understands that the client will not be charges any additional legal fees.

(5) The Client is to be liable to the attorney for his reasonable expenses and disbursements if there is a favorable disposition of the legal matter. In the event of a favorable disposition, expenses, and disbursements will be deducted after the contingent fee is deducted. The Client acknowledges and agrees that the attorney may borrow funds from time to time to pay certain costs associated with pursing and litigating the case and agrees that, in addition to reimbursing the attorney for the amount of such costs, the client also will reimburse the attorney for any interest charges and related expenses the attorney incurs in connection with such borrowings.

The Attorney agrees to advance, on behalf of Client, all reasonably necessary out-of-pocket costs and expenses of litigation at the discretion of the Attorney. However, this agreement in no way obligates the Attorney to advance/lend any funds on this case. The Attorney may chose to do so, and may choose to cease doing so for any reason, whatsoever, with notice to the Client.

Exhibit 11, 2015 CFA.

## HOEY'S RESPONSE NO. 32

The quoted document speaks for itself but the above does not include all portions of the document. Otherwise, not disputed. However, there is a typo where "choose" is misspelled as "chose".

33. The 2015 CFA did not state the specific fee splitting arrangement between Keenan and Hoey nor did Hoey or Keenan otherwise disclose the arrangement to Ms. Wahlstrom. Exhibit 4, Hoey Dep., p. 60 line 11 to p. 62, line 18; Exhibit 5, Keenan Response in Lieu of Deposition, No. 4.

## HOEY'S RESPONSE NO. 33

The document speaks for itself; however, not disputed that the 2015 CFA did not state the specific fee splitting arrangement between Keenan and Hoey; disputed to the extent the above implied Hoey never disclosed the arrangement. Ex. 4, Hoey Depo., 61:10-22 ("And did you discuss this paragraph with Kira before she signed? A. I personally did not, but she was aware that Mr. Keenan and I were going to share in a fee. Q. Okay. And did you discuss with her the particulars of the division? No, because I don't have to. Q. All I asked is did you discuss it with her? A. No, not at that time. I do later." Q. Okay. When do you mean by later? A. December -- I think December, 2019."); Ex. 54, March 2020 Final Fee and Expense Itemization Signed by Kira Wahlstrom. Further, the statement is misleading as they were not required to disclose the specific fee splitting arrangement. Maher Aff., Ex. B, Michael's Deposition, 77:8-14 ("And your position -- your understanding is that the extent of that – the details of that sharing agreement do not need to be disclosed to her? A.

The details of the sharing agreement in terms of the numbers or percentages are not required to be disclosed."); Maher Aff., Ex. C, Kazarian's Deposition, 49:18-24 (In your experience does a fee splitting situation need to be disclosed to the client? A. Yeah, the typical scenario is like it was done with Mr. O'Toole, the client needs to be informed that there will be a split of fee, but the client does not have to be informed as to the amount.")

34. While the new 2015 CFA put in place only required Ms. Wahlstrom to pay the reasonable expenses of Keenan, Hoey continued to advance expenses that he was going to charge to Ms. Wahlstrom because "This is what we've been doing since 2010. We just stayed the course." Exhibit 14, Deposition of Hoey in O'Toole Case ("O'Toole Hoey Dep.") p. 82, line 8 to p. 84, line 8.

## HOEY'S RESPONSE NO. 34

Disputed. Further, this statement is misleading and a legal conclusion and an incomplete statement of Hoey's testimony. The 2015 CFA speaks for itself and further does not include a prohibition of Hoey advancing the expenses. The contract states that "The Attorney agrees to advance, on behalf of Client, all reasonably necessary out-of-pocket costs and expenses of litigation at the discretion of the Attorney". Further, Plaintiff read the agreement, signed and initialed it and also thereafter approved all of the expenses. Ex. 2, Wahlstrom Deposition, 40:20-41:6, 49:21-24, 201:1-5 (""And at some point in time, you sat down with David, correct, and went over the expenses? A. Yes. ... I want to say it was mid-December") ("And when he sat down with you, he explained to you each one of these categories; is that correct? A. I don't recall if he explained them all in detail, but I'm sure we went over it.") ("Q. Okay. And you had an opportunity to ask or dispute any of these charges at the time; correct? A. I did, correct. Q. Okay. And you did not. A. No, I did not"); Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 212:5-213:1 ("But you understood that you were responsible for reasonable expenses on you case. Correct? ... Yes. ... Q. Okay. And whether the expenses being incurred by Hoey Law or Mr. Keenan, if they were reasonable expenses, you understood that you would be responsible for them. Correct? A. Yes."); Ex. 54: March 2020 Final Fee and Expense Itemization Signed by Kira Wahlstrom.

35. Hoey and Keenan did not explain that despite the language of the 2015 CFA, she would still have to pay all of Hoey's expenses as well as Keenan's expenses. Wahlstrom Declaration, ¶10.

## HOEY'S RESPONSE NO. 35

Disputed. The statement is misleading. The 2015 CFA speaks for itself. The contract states that "The Attorney agrees to advance, on behalf of Client, all reasonably necessary out-of-pocket costs and expenses of litigation at the discretion of the Attorney". Further, Plaintiff read the agreement, signed and initialed it and also thereafter approved all of the expenses. Ex. 2, Wahlstrom Deposition, 40:20-41:6, 49:21-24, 201:1-5 (""And at some point in time, you sat down with David, correct, and went over the expenses? A. Yes. ... I want to say it was mid-December") ("And when he sat down with you, he explained to

you each one of these categories; is that correct? A. I don't recall if he explained them all in detail, but I'm sure we went over it.") ("Q. Okay. And you had an opportunity to ask or dispute any of these charges at the time; correct? A. I did, correct. Q. Okay. And you did not. A. No, I did not"); Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 212:5-213:1 ("But you understood that you were responsible for reasonable expenses on you case. Correct? ... Yes. ... Q. Okay. And whether the expenses being incurred by Hoey Law or Mr. Keenan, if they were reasonable expenses, you understood that you would be responsible for them. Correct? A. Yes.") Ex. 54: March 2020 Final Fee and Expense Itemization Signed by Kira Wahlstrom. Further, Hoey had no obligation to explain as Plaintiff already read, signed and initialed each paragraph of the 2015 CFA. Maher Aff., Ex. C, Kazarian's Deposition, 74:7-75:4, 78:7-79:3 (stating in part "So at that point in time was there any obligation of Hoey to explain to Kira you're going to be paying Patricia Dejuneas for this appeal and if we win, you also have to pay 7 percent to Keenan? A. No, because she already knew that. She had signed the Keenan fee agreement ... that unambiguously sets forth the 7 percent up-charge ... I also note that she knew, in the event of certain contingencies, she would be paying 7 percent to Keenan.")

**The Trial and Post-Trial Motions**

36. David Hoey, with his law associate Krysztof Sobczak, and Don Keenan, with his associate Andrew Gould, tried the case that began with jury selection on July 14, 2015, and ended with a verdict on August 11, 2015. Dkt. 11, FAC, ¶28; Dkt. 16, Hoey Answer, ¶28; Dkt. 24, Keenan Answers, ¶28; Dkt. 30, KKF Answer, ¶28.

**HOEY'S RESPONSE NO. 36**

Not disputed except that Krysztof Sobczak was not Hoey's associate but was "of counsel" and therefore that portion is disputed. Ex. 4, Hoey's Depo., 29:20-30:4 ("He came over to me as an 'of counsel' role by his choice because he wanted to maintain his own practice out of Newton.")

37. Defendants obtained a jury verdict of $4 million against the garage owners and operators (JPA) that, with prejudgment interest and costs, resulted in a total judgment of $6,650,829.58 in 2015. Dkt. 11, FAC, ¶29; Dkt. 16, Hoey Answer, ¶29; Dkt. 24, Keenan Answer, ¶29; Dkt. 30, KKF Answer, ¶29.

**HOEY'S RESPONSE NO. 37**

Not disputed.

38. On September 24, 2015, the garage managers/owners (JPA) filed a motion for new trial arguing they should be granted a new trial based on attorney misconduct by Ms. Wahlstrom's trial attorneys. Exhibit 15, JPA's Memorandum of Law in Support of Their Motion for New Trial, 9/24/2015.

**HOEY'S RESPONSE NO. 38**

Not disputed.

39. JPA attached as exhibits to their new trial motion excerpts from Keenan's book *The Keenan Edge* and from Keenan's book *Reptile: The 2009 Manual of the Plaintiff's Revolution.* Exhibit 15, JPA's Memorandum of Law in Support of Their Motion for New Trial, pp. 7, 16 (citing to the exhibits).

**HOEY'S RESPONSE NO. 39**

Not disputed.

40. Defendant Keenan's Kids Foundation is the owner of the intellectual property rights in *The Keenan Edge* and *Reptile* books which are offered for sale. Exhibit 16, KKF's Answers to Plaintiff Kira Wahlstrom's First Set of Interrogatories, No. 4; Exhibit 17, pp. 19-22, Supplemental Affidavit of Don C. Keenan.

**HOEY'S RESPONSE NO. 40**

Not disputed.

41. Keenan and Hoey engaged Attorney Richard Goren to file and litigate a motion for impoundment of *The Keenan Edge* and *Reptile* book materials. Exhibit 17, Engagement Letter, p 1 to 6; Exhibit 5, Keenan Response in Lieu of Deposition, No. 4; Exhibit 18, Deposition of Attorney Richard Goren ("Goren Dep."), p. 17 line 18 to p. 19, line 18, and p. 24, line 10 to 21; Exhibit 17, pp. 1-6, Engagement Agreement; Exhibit 17, pp. 8-18, Motion for Impoundment.

**HOEY'S RESPONSE NO. 41**

Not disputed; however, it is misleading, and incomplete. Attorney Richard Goren's work was necessary to oppose the motion for new trial. Ex. 4; Hoey Depo., 108:3-16, 126:9-12 ("That this was during the trial and during the motion for new trial the defense was trying to put a wedge between Kira and Don and the court by attaching a lot of Mr. Keenan's book and trial blog articles and we felt it was necessary and in her best interest at that time to fight it and she agreed.") ("So if you go to page six, that first bullet point on Richard Goren, if you could just read it to yourself? A. Okay. Q. Is that paragraph accurate to your perspective? A. It is."); Ex. 62, Hoey Response to 93A Demand Letter, p. 62; Ex. 18 Goren Dep., 27-28; Maher Aff., Ex. B, Michael's Deposition, 48:19-51:14 ("Do you have any understanding of whether or not Ms. Wahlstrom has any interest in any of the things just mentioned? A. Yes. She has a lot of interest. These were all -- these fees were incurred as part of the attack on the verdict that she got. These are all intertwined with protecting that verdict and the subsequent motions in trial and at the appellate level of trying to reverse it. These are tools by which this case was won... Q. How was what Mr. Goran did in any way protective of the verdict? A. Because the verdict was intertwined

with whether these materials would have been or were improperly used in obtaining the very verdict that we're talking about, the $4,000,000 verdict. In order to protect that verdict, it was necessary to protect these interests in both the, you know, the materials that we're talking about as well as the manner in which this case was tried."); Maher Aff., Ex. C, Kazarian's Deposition, 98. Further, Attorney Goren provided both procedural advice and assistance on opposing the motion for new trial. Ex. 18, Goren Dep., 27; Maher Aff., Ex. E, Email from Richard Goren to David Hoey dated 10/18/2015 (hereinafter "Maher Aff., Ex. E, Email from Richard Goren to David Hoey dated 10/18/2015").

42. The motion for impoundment sought to put the book materials under seal because "the owners of the proprietary material believed that it would harm their economic interests or their copyrights." Exhibit 18, Goren Dep., p. 29, lines 13-21; Exhibit 17, pp. 8-18, Motion for Impoundment (The filing in the public records of the Foundation's works will create a substantial risk of harm that cannot be remedied by an action at law. And because the market for these two works is compromised solely of trail lawyers, the availability of these works in the Clerk's Office for reading and copying will tend to interfere with the marketability of both works." Exhibit 17, p. 9)

**HOEY'S RESPONSE NO. 42**

Not disputed, except that there is a typo "trial"/"trail." Further, this statement is misleading and incomplete. Attorney Richard Goren's work was necessary to oppose the motion for new trial as the Defendants were relying on those materials to prove the alleged misconduct. Ex. 15, Motion for New Trial, Pgs. 7-23; Ex. 4; Hoey Depo., 108:3-16; Ex. 18, Goren Dep., 27-28; Maher Aff., Ex. B, Michael's Deposition, 48:17-51:14.

43. Attorney Goren filed an appearance only on behalf of the Keenan's Kids Foundation. Exhibit 17, Notice of Appearance, p. 7.

**HOEY'S RESPONSE NO. 43**

Not disputed.

44. Attorney Goren never met Kira Wahlstrom, had no fee agreement with Wahlstrom, and directed his invoices to Hoey, not Wahlstrom. Exhibit 18, Goren Dep., p. 17, line 1 to 23.

**HOEY'S RESPONSE NO. 44**

Not disputed; however, it is irrelevant and not material.

45. Attorney Goren required a release from Hoey (and his firm), Keenan (and his firm) and the Keenan's Kids Foundation before he would produce any documents from his files to Kira Wahlstrom concerning the impoundment motion in the instant case. Exhibit 18, Goren Dep., p. 8, line 22 to p. 11, line 16.

**HOEY'S RESPONSE NO. 45**

Not disputed, but irrelevant and not material. Efforts by all parties to get these documents to Plaintiff cannot be used here to support the allegations; also the citation does not support the statement.

46. The motion for impoundment filed in the premises liability case on behalf of the Keenan's Kids Foundation was denied. Exhibit 17, Motion for Impoundment, p. 8 to 18.

**HOEY'S RESPONSE NO. 46**

Not disputed, but it is irrelevant and not material.

47. On May 19, 2016, the JPA defendants' new trial motion in the premises liability case was granted by the trial judge (Associate Justice Paul D. Wilson) ruling that Attorneys Hoey and Sobczak engaged in misconduct. *See, Wahlstrom v. LAZ Parking Ltd. LLC.* No. SUCV20101022, 2016 WL 3919503 (Mass. Super. May 19, 2016); Exhibit 64, pp. 1 to 9.

**HOEY'S RESPONSE NO. 46**

Not disputed.

48. On May 30, 2016, Hoey emailed Sobczak:

I'm gonna put the burden on you to stay in contact with Kira every day.
Reason is threefold:
  1) Her health and well-being
  2) She could authorize us NOT to litigate anymore and drop the case
  3) She could find another attorney.
Two and three I'm out a lot of money.

Exhibit 19, Email from Hoey to Sobczak, 5/30/2016.

**HOEY'S RESPONSE NO. 48**

The quoted document speaks for itself. Otherwise not disputed; however it is irrelevant, not material and misleading. Plaintiff fired Sobczak at the request of Patricia DeJuneas. Liberty Aff., Ex. S, February 28, 2017 Letter to Sobczak; Ex. 25, DeJuneas Depo., 50-53.

49. Hoey did not advise Ms. Wahlstrom that there was any potential conflict of interest between her and her trial attorneys after her verdict was taken away on the grounds that Hoey and Sobczak committed misconduct during trial. Wahlstrom Declaration, ¶15.

**HOEY'S RESPONSE NO. 49**

Not disputed; however, it is misleading as it assumes there was a conflict when there was not. Maher Aff., Ex. C., Kazarian's Deposition, 62:22-65:7, 68:3-14 ("I don't think there was a conflict of interest at that point. I don't think there was a conflict of interest that required the matter to be handled any differently than it was handled.") ("[I']m asking you do you have a view of whether or not he was required to explain to Kira there was a potential conflict of interest in this circumstance so that she could be fully advised on it and decide herself if she wanted to continue with him as her attorney? A. I don't think on this case the standard of care required that.")

50. Attorney James Bolan has represented Hoey and has been referred to as Hoey's "ethics counsel." Exhibit 20, Deposition of Attorney James Bolan ("Bolan Dep.") p. 20, line 18 to p. 22, line 19; Exhibit 4, Hoey Dep., p. 108, line 23 to p. 109, line 5.

**HOEY'S RESPONSE NO. 50**

Disputed as the cited materials do not support the statement that Bolan was "Hoey's 'ethics counsel.'" Undisputed that James Bolan has represented Hoey in the past; however, it is misleading as Bolan was retained for the benefit of the Plaintiff and the charges at issue were not for representing Hoey. Maher Aff., Ex. E, Affidavit of James Bolan (hereinafter "Maher Aff., Ex. E., Bolan Affidavit"), ¶ 3 (""I was consulted on behalf of the Law Offices of David J. Hoey for the benefit of Ms. Kira Wahlstrom, due to Mr. Sobczak's allegations relating to certain conduct by my client David Hoey, who represents Kira Wahlstrom."); Ex. 4, Hoey Depo., 154:19-24, 256:18-257:5 ("And then there's some correspondence back and forth with the – well, there's Mr. Bolan giving his advice on how you deal with the press in this situation with the pending case? A. That's right.") ("To the best of my recollection, Mr. Sobczak in this lien fight was breaching the attorney-client privileged information that related to Kira and adding things into his affidavits and attaching things to his papers that were about me, about Kira, about Patty, about the court, anybody, and everybody that he can find something wrong about.")

51. During his deposition taken in the instant case, when Attorney Bolan was asked if he provided any legal services to Hoey related to Judge Wilson's finding of misconduct, Attorney Bolan was instructed not to answer the question by Hoey's counsel. Exhibit 20, Bolan Dep. p. 85, line 8 to p. 87, line 10.

**HOEY'S RESPONSE NO. 51**

Not disputed; however, it is not relevant and not material.

52. Attorney Bolan's invoices reflect that after the JPA defendants files their motion for new trial on September 24, 2015 arguing that Hoey and others committed misconduct during trial, Bolan was consulted by Sobczak and Hoey on the motion and a later entry, after Judge Wilson issued his new trial order, reflects the following time entry by Bolan on June 2, 2017:

Board of Bar Overseers: Attention to e-mails from and to D. Hoey and P. DeJuneas regarding Wahlstrom appeal. Review of comments of J. Wilson (clearly focused on KS not DJH)

Exhibit 21, Attorney James Bolan Invoices

## HOEY'S RESPONSE NO. 52

Not disputed; however, it is not complete and is misleading. Attorney James Bolan helped with and reviewed the opposition to JPA's motion for new trial, provided assistance with the media regarding the motion for new trial, helped dismiss the lien filed by Attorney Sobczak against Plaintiff, and advised how to protect the attorney client privilege between Hoey Law and Plaintiff from Sobczak's intrusion. Ex. 4, Hoey Depo., 126:24-127:14; 154:19-24, 228:10-229:5, 256:18-257:5; Ex. 14, Hoey Dep. In O'Toole Case, 90: 6-10, 92:8-14; Ex. 62, Hoey Response to 93A Demand Letter, p. 62; Maher Aff., Ex. E, Bolan Affidavit, ¶ 3 ("I was consulted on behalf of the Law Offices of David J. Hoey for the benefit of Ms. Kira Wahlstrom, due to Mr. Sobczak's allegations relating to certain conduct by my client David Hoey, who represents Kira Wahlstrom.").

53. On July 31, 2017, Lewis Brisbois Bisgaard & Smith LLP issued an invoice to the Law Office of David J. Hoey, PC regarding "Krzysztof Sobczak Disciplinary Matter" which was received by Hoey but Ms. Wahlstrom was not informed of this firm's work nor informed that she would have to pay for them. Exhibit 22, Lewis Brisbois Bisgaard & Smith LLP Invoices; Exhibit 4, Hoey Dep., p. 141, line 13 to p. 142 line 23; Wahlstrom Declaration, ¶¶ 15, 20, 38.

## HOEY'S RESPONSE NO. 53

Not disputed that the invoice states what it states; otherwise disputed as Plaintiff reviewed and approved the distribution and expenses. Ex. 2, Wahlstrom Deposition, 44, 201. *See also* Maher Aff., Ex. B, Michael's Deposition, 93:8-17, Maher Aff., Ex. C, Kazarian's Deposition, 33-37.

54. The Lewis Brisbois firm represented Sobczak concerning a complaint to the Board of Bar Overseers for his conduct during the Wahlstrom trial. Exhibit 13, Sobczak Dep., p. 64, line 1 to 11 ("that was the counsel that was hired by the [Hoey Law] firm's insurer dealing with the decision, Judge Wilson decision. My understanding is that was the counsel that was personally assigned to me, Mr. Hoey had a different counsel assigned"); p. 64, line 24 to p. 66, line 5.

## HOEY'S RESPONSE NO. 54

Not disputed.

55. Kris Sobczak did not discuss the Lewis Brisbois invoice with Ms. Wahlstrom nor tell her she would be charged for their work. Exhibit 13, Sobczak Dep., p. 67, lines 4-24; Wahlstrom Declaration, ¶ 20 and 38.

### HOEY'S RESPONSE NO. 55

Not disputed; however it is irrelevant and not material. Further, it is misleading as Hoey did discuss the invoice with Plaintiff. Ex. 4, Hoey Depo., 115-117 (including: Q. And did you explain this charge to Kira? A. At this time I did here and then again when she met with me in March."). Further, Plaintiff reviewed and approved paying the fees and had no questions. Ex. 2, Wahlstrom Deposition, 40:20-41:6, 49:21-24, 201:1-5 ("And at some point in time, you sat down with David, correct, and went over the expenses? A. Yes. ... I want to say it was mid-December") ("And when he sat down with you, he explained to you each one of these categories; is that correct? A. I don't recall if he explained them all in detail, but I'm sure we went over it.") ("Q. Okay. And you had an opportunity to ask or dispute any of these charges at the time; correct? A. I did, correct. Q. Okay. And you did not. A. No, I did not"); Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 212:5-213:1 ("But you understood that you were responsible for reasonable expenses on you case. Correct? ... Yes. ... Q. Okay. And whether the expenses being incurred by Hoey Law or Mr. Keenan, if they were reasonable expenses, you understood that you would be responsible for them. Correct? A. Yes.") Ex. 54: March 2020 Final Fee and Expense Itemization Signed by Kira Wahlstrom.

### The Appeal

56. Ms. Wahlstrom, through Attorney Patricia DeJuneas, filed a petition for interlocutory review with a Single Justice of the Appeals Court, who allowed an immediate interlocutory appeal. Exhibit 23, Plaintiff's Notice of Interlocutory Appeal.

### HOEY'S RESPONSE NO. 56

Disputed to the extent that it implies Hoey was not involved in the appeal. Ex. 4, Hoey Depo., 150:19-153:23 ("No. I was the local guy so easier for me to participate more. Q. So did you participate more? A. I did"); Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18 ("Now, throughout the appellate process, you had multiple e-mails with David; is that correct? A. Yes") ("But for sure, hundreds of emails and many, many phone calls; correct? A. Definitely more e-mails than phone calls, but yea, we were in pretty frequent contact.") ("David reviewed and commented on the briefs? A. Yes. Q. And some of the arguments you accepted. A. The arguments, I don't believe so. Q. Or changes I should say or comments? A. Yea, I think so."); Liberty Aff., Ex. Y, Emails between Hoey and DeJuneas (LDH 0024160; 0022547; 0022022; 0021966; 0021911; 0021903; 0021846; and 00217561) (hereinafter "Liberty Aff., Ex. Y Hoey and DeJuneas' Emails").

57. On February 28, 2017, Ms. Wahlstrom entered a fee agreement directly with Attorney DeJuneas to litigate the appeal. Exhibit 24, Attorney Patricia DeJuneas Fee Agreement.

Not disputed.

58. When Ms. Wahlstrom met with Attorney DeJuneas to review and sign the agreement, Hoey was also present but did not inform Ms. Wahlstrom that she would have to pay both Attorney DeJuneas and pay the appeal contingency to Keenan under the 2015 CFA. Exhibit 4, Hoey Dep., p. 152, line 16 to p. 154, line 4; Exhibit 4, Hoey Dep., ("Not at that time, no. We were focusing on winning the appeal"), p.153 line 8 to 9.

**HOEY'S RESPONSE NO. 58**

Disputed and it is misleading. Plaintiff testified that she read the 2015 CFA and initialed each paragraph. Ex. 2, Wahlstrom Deposition, 44, 64:15-65:13, 201. Further, Hoey had no obligation to explain as Plaintiff had already read and signed the 2015 CFA. Maher Aff., Ex. C, Kazarian's Deposition, 74:7-75:4, 78:7-79:20.

59. Attorney DeJuneas with assistance from Robert J. Cordy, drafted and filed the appellate briefs for Ms. Wahlstrom and Attorney DeJuneas argued the case before the Massachusetts Appeals Court which Hoey and Ms. Wahlstrom attended together to watch. Exhibit 25, Attorney Patricia DeJuneas Deposition ("DeJuneas Dep.) p. 15, line 24 to p. 16 line, 19; Exhibit 2, Wahlstrom Dep., p. 74, line 19 to p. 76, line 4.

**HOEY'S RESPONSE NO. 59**

Disputed as it implies that Hoey and others (including Keenan) were not involved in the appeal. Ex. 4, Hoey Depo., 150:19-153:23 ("No. I was the local guy so easier for me to participate more. Q. So did you participate more? A. I did"); Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18 (see above); Liberty Aff., Ex. Y Hoey and DeJuneas' Emails; Ex. 5, Keenan's Response in Lieu of Deposition, No. 8.

60. Keenan did not file an appearance in the Appeals Court nor did he seek permission to do so via a motion for *pro hac vice* admission nor did he draft the appellate briefs. Dkt. 11, FAC, ¶35; Dkt. 24, Keenan Answer, ¶35; Exhibit 5, Keenan Response in Lieu of Deposition, No. 8.

**HOEY'S RESPONSE NO. 60**

Disputed as it implies that Hoey and others (including Keenan) were not involved in the appeal. Ex. 4, Hoey Depo., 150:19-153:23 ("No. I was the local guy so easier for me to participate more. Q. So did you participate more? A. I did"); Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18; Liberty Aff., Ex. Y Hoey and DeJuneas' Emails; Ex. 5, Keenan's Response in Lieu of Deposition, No. 8.

61. Keenan stated to Attorney DeJuneas, Hoey, and others that he is not an appellate lawyer, nor does he pretend to be. Exhibit 26, Keenan Email 4/15/2016 ("Y'all know me so my

first reaction is to attack and hit 'em hard. However I'm not an appellate lawyer, don't pretend to be, don't see the work through the POV of an appellate lawyer. So since we've got a very good appellate lawyer, one who has impressed me, I would suggest we listen to her and do what she says.")

**HOEY'S RESPONSE NO. 61**

The quoted document speaks for itself. Otherwise not disputed; however it is not material.

62. Hoey is not an appellate attorney. Exhibit 4, Hoey Dep., p. 155, line 5 to line 9; Exhibit 27, Email from Hoey to Sobczak, 6/2/2016 ("We are trial attorneys. Not appealant [sic] attorneys or media attorneys")

**HOEY'S RESPONSE NO. 62**

Not disputed; however it is not material and is misleading as Hoey did assist with the appeal. Ex. 4, Hoey Depo., 150-153; Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18; Liberty Aff., Ex. Y Hoey and DeJuneas' Emails.

63. During her drafting process, DeJuneas sent working drafts to Hoey and Keenan. Exhibit 28, Hoey Emails to Vail, p. 3.

**HOEY'S RESPONSE NO. 63**

Not disputed.

64. Hoey contacted Attorney John Vail and asked Vail "This is a favor to me" to review Attorney DeJuneas' draft appellate brief and "read it and make suggestions as if they were my suggestions" and "Bill me directly for your time." Exhibit 4, Hoey Dep., p. 192, line 9 to p. 193, line 4; Exhibit 28, Hoey Emails with Vail, p. 3.

**HOEY'S RESPONSE NO. 64**

Disputed to the extent that it implies Plaintiff did not approve of the reimbursement for Vail; however, it is not relevant and is misleading as John Vail was assisting on the appeal. Ex. 2, Hoey Depo., 177:13-23, 185:21-193:4; Maher Aff., Ex. B, Michael's Deposition, 51:15-21; Ex. 54, March 2020 Final Fee and Expense Itemization Signed by Kira Wahlstrom.

65. Hoey did not inform Ms. Wahlstrom that he was enlisting Vail's help and would be charging her for Vail's work with the approval of Patty DeJuneas. Exhibit 4, Hoey Dep., p. 194, line 19 to p. 195, line 20.

## HOEY'S RESPONSE NO. 65

Disputed. Hoey testified that he did inform Plaintiff that he was having someone help him on the brief, but did not tell Plaintiff his specific name. Ex. 4, Hoey Depo., 195:2-20 ("She would know that I had somebody looking at the brief and Patty was incorporating that advice and that's the type of updates that Kira would get. Q. You explicitly told Kira you had someone else looking at the brief in addition to you and that Patty was incorporating their work into her brief? A. At one of the weekly meetings, yea, that would have been discussed... Do you have a specific memory of discussing Mr. Vail's work with Kira? A. I think so, not by name. I do remember telling Kira that Patty, me and Mr. Vail were going to have dinner in the North End and she was invited."). Further, it is misleading as it presumes an obligation where none exists. Maher Aff., Ex. B, Michael's Deposition, 93:8-17 ("I don't believe there's any requirement under the ethics rules that a client preapprove any level of expenses with respect to prior to their being incurred so long as those expenses consistent with the contract are reasonably and necessary for the litigation."); Maher Aff., Ex. C, Kazarian's Deposition, 34:14-37:17 ("But in real time as the case proceeds, if there's an expense that comes up, and particularly, if the attorney is borrowing the money to pay that expense at his own personal exposure, I don't think there's any need to inform the client in real time about it, at least it's not in any ethical rules an d I don't think the standard of care requires it.")

66. Hoey received comments on the draft brief from Attorney Vail and then he cut and pasted Vail's comments in emails to Attorney DeJuneas as though they were his own comments. Exhibit 4, Hoey Dep., p. 186, line 8 to p. 189, line 3; Exhibit 28, Hoey Emails with Vail, p. 2 and 5.

## HOEY'S RESPONSE NO. 66

Disputed. Not material or relevant. Ex. 28, Hoey Emails with Vail, p. 2 and 5.

67. Attorney DeJuneas did not view Hoey's comments on her appellate work as "participating on the appeal" but rather as "interfering" including because Hoey repeatedly urged her to defend his conduct at trial on the appeal which Attorney DeJuneas refused to do. Exhibit 25, DeJuneas Dep., p. 46, line 7 to p. 47, line 1; Exhibit 28, Hoey Emails with Vail, p. 7 to 10; Exhibit 29, 11/24/2016 DeJuneas Email to her associate ("Hoey is driving me nuts. Now he wants me to argue that they didn't engage in misconduct. Ummmm...yeah, you did. It just doesn't warrant a new trial.")

## HOEY'S RESPONSE NO. 67

Disputed. DeJuneas testified that she accepted Hoey's comments and revisions to the appellate briefs. Ex. 25, DeJuneas Dep, 47:17-22 ("David reviewed and commented on the briefs? A. Yes. Q. And some of the arguments you accepted. A. The arguments, I don't believe so. Q. Or changes I should say or comments? A. Yea, I think so.").

68. Hoey engaged more with Attorney DeJuneas about the appeal than Keenan but claims he personally received no part of the appeal contingency. Exhibit 4, Hoey Dep., p. 153, line 10 to line 23; Exhibit 25, DeJuneas Dep., p. 96, lines 11-22 (DeJuneas: "I don't think I ever had any discussions with Don about the appeal other than the petition for interlocutory appeal…").

**HOEY'S RESPONSE NO. 68**

Not disputed.

69. Attorney DeJuneas filed the opening appellant brief on March 9, 2018 arguing that the trial judge had applied the wrong standard in grating a new trial. Exhibit 30, Appellant Brief.

**HOEY'S RESPONSE NO. 69**

Not disputed, the quoted document speaks for itself.

70. Hoey and Keenan always planned to take the 7% appeal contingency even though Ms. Wahlstrom engaged separate appellate counsel to draft and file the appellate briefs and not Keenan. Exhibit 31, Emails between Hoey and Keenan, 5/9-5/10/2018; Exhibit 4, Hoey Dep., p. 153, line 5 to 9.

**HOEY'S RESPONSE NO. 70**

Disputed. The citation does not support the statement. Hoey did not receive the 7%, but Hoey and Keenan both worked on the appeal and the appellate process and any appellate fee was earned. Ex. 4, Hoey Depo., 150:19-153:23 ("No. I was the local guy so easier for me to participate more. Q. So did you participate more? A. I did"); Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18; Liberty Aff., Ex. Y Hoey and DeJuneas' Emails; Ex. 5, Keenan's Response in Lieu of Deposition, No. 8.

71. On June 6, 2018, after the JPA defendants filed their appellee brief, Hoey emailed Cordy and DeJuneas stating "I am too emotionally attached to the client and the case to read the Brief. I hope that you and Patty can put your heads together and come up with a solid Reply Brief." Exhibit 28, p.12, Email from Hoey, 6/6/2018.

**HOEY'S RESPONSE NO. 71**

Disputed to the extent it implies Hoey did not work on the appeal. Ex. 4, Hoey Depo., 150-153; Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18; Liberty Aff., Ex. Y Hoey and DeJuneas' Emails. Otherwise, the document speaks for itself.

72. Attorney DeJuneas filed the reply brief and argued the appeal on November 9, 2018, and Hoey attended with Ms. Wahlstrom to watch. Exhibit 4, Hoey Dep., p. 167, line 10 to 17; Exhibit 25, DeJuneas Dep., p. 15, line 24 to p. 16, line 10; Exhibit 2, Wahlstrom Dep., p. 74, line 21 to p. 75, line 3; Exhibit 28, p.12 Email from Hoey, 6/6/2018.

**HOEY'S RESPONSE NO. 72**

Disputed to the extent it implies Hoey did not work on the appeal. Ex. 4, Hoey Depo., 150-153; Ex. 25, DeJuneas Dep., 45:17-19, 46:3-6, 47:17-18; Liberty Aff., Ex. Y Hoey and DeJuneas' Emails. However, it is irrelevant and also misleading.

73. On June 10, 2019, the Appeals Court issued its opinion that the trial judge applied the wrong legal standard in allowing a new trial and observed that "the purpose of an order granting a new trial motion is not to punish attorney misconduct" and that "egregiousness of misconduct absent an effect upon the jury is not a basis for finding the type of miscarriage of justice that warrants nullifying the jury's verdict" and stayed the case pending a ruling on the pending motion to disqualify the trial judge. *Wahlstrom v. JPA IV Mgmt. Co., Inc.,* 95 Mass. App. Ct. 445, 449-50, 453, 127 N.E.3d 274, 279, 282 (2019); Exhibit 64, pp. 10 to 17.

**HOEY'S RESPONSE NO. 73**

Not disputed. The decision speaks for itself.

74. On July 31, 2019, Judge Wilson recused himself from the case in response to a motion to disqualify filed by Attorney DeJuneas based on public statements the judge had made about the case and the attorneys who appeared before him at the trial. Exhibit 33, Order of Recusal.

**HOEY'S RESPONSE NO. 74**

Not disputed. The decision speaks for itself. However, it is misleading and incomplete as it was a strategic decision to withdraw Hoey's notice of appearance from the case. Liberty Aff., Ex. AA, July 25, 2016 Email Chain (Wahlstrom Ex. 11 -- LDH 0071282-0071291); Ex. 25, DeJuneas Dep., 50:18-21.

75. On November 6, 2019, the Appeals Court issued a memorandum and order holding that, even though Hoey and his associate engaged in misconduct during trial, a review of the record as whole showed "that the cumulative effect of the attorneys' misconduct does not meet the 'relatively high' burden necessary to warrant a new trial." *See, Wahlstrom v. JPA IV Mgmt. Co., Inc.,* 96 Mass.App.Ct. 1108, 138 N.E.3d 1045 (Mass. App. 2019); Exhibit 64, pp. 18 to 21.

**HOEY'S RESPONSE NO. 75**

The decision speaks for itself but not disputed.

**Sobczak v. Hoey**

76. Sobczak began working for Hoey in 2014 and thereafter became the Director of Litigation at Hoey Law. Exhibit 4, Hoey Dep. p. 28, line 22 to p. 30, line 5; Exhibit 13, Sobczak Dep., p. 12, line 10 to 16.

**HOEY'S RESPONSE NO. 76**

Disputed. Sobczak was of counsel and therefore was identified as "Director of Litigation". Ex 4, Hoey Depo., 34-36.

77. During the pendency of the appeal, a dispute arose between Hoey and his associate Krzysztof Sobczak, over Sobczak's payment for his work on Ms. Wahlstrom's case. Exhibit 4, Hoey Dep., p. 95, line 17 to p. 96, line 12; Exhibit 13, Sobczak Dep, p. 24, line 10 to p. 25, line 10; Exhibit 34, Wahlstrom Email Regarding Massachusetts Lawyers Weekly Article.

**HOEY'S RESPONSE NO. 77**

Disputed to the extent that it states Sobczak was Hoey's associate, when he was in fact "of counsel". Ex. 4, Hoey Depo., 34. Further, it is misleading as it was Sobczak who started the dispute. Ex. 4, Hoey Depo., 203:3-8.

78. Sobczak and Hoey litigated their disputes in Suffolk and Middlesex County Superior Courts in which Hoey was represented by attorney James Bolan. Exhibit 4, Hoey Dep., p. 201, line 16 to p. 202, line 16; Exhibit 13, Sobczak Dep., p. 24 line 10 to p. 27 line 2.

**HOEY'S RESPONSE NO. 78**

Disputed, as the citations do not support the proposition.

79. On June 11, 2019, Sobczak filed a notice of lien for attorney's fees pursuant to Mass. G. L. ch. 221 §50 in Ms. Wahlstrom's premises liability case. Exhibit 35, Notice of Lien.

**HOEY'S RESPONSE NO. 79**

Not disputed.

80. Sobczak filed the lien to give notice of his dispute with Hoey over payment he claimed was owed to him by Hoey for his work on the Wahlstrom trial. Exhibit 13, Sobczak Dep., p. 70, line 4 to p. 71, line 22 ("…it seemed that Mr. Hoey was doing everything humanly possible to not pay any of the attorneys. . . . My understanding of a contingency fee agreement is that the client only pays one fee. You only pay a single fee and other lawyers get paid out of it. So the notice was not for Miss Wahlstrom, it was more for the insurers to let them know that when they're divvying out the checks, there are other people that may be entitled to it."); Exhibit 4, Hoey Dep., p. 201, line 19 to p. 203, line 23; ("We also felt

that he was doing this because he already lost his pursuit against me where he was seeking a piece of the Wahlstrom fee from me in Middlesex."); Exhibit 4, Hoey Dep., p. 203, line 3 to 6.

## HOEY'S RESPONSE NO. 80

Disputed and misleading. The lien applied to Plaintiff and not Hoey. Ex. 4, Hoey Depo., 261:21-264:5. At the time, he had been terminated by Kira, on advice of DeJuneas, he had previously sued Hoey twice which lawsuits were dismissed, he appealed and lost and only after filed the lien against Kira. Defendants' Statement of Material Facts (Dkt. 90), #50, 56-63 (and accompanying exhibits), incorporated herein. Further, Hoey testified that he felt that Sobczak filed this lawsuit against Plaintiff because Sobczak felt "wrongfully discharged by Kira" and Sobczak could not recover anything from Hoey on *res judicata* grounds. Ex. 4, Hoey Depo., 203; Defendants' Statement of Material Facts (Dkt. 90), #50, 56-63. The lien filed by Sobczak against Plaintiff was frivolous and dismissed by the court. Ex. 40, Motion to Dismiss; Ex. 51, Email attaching order granting Motion to Dismiss.

81. After Sobczak filed his lien notice, Attorney Bolan contacted Amy Goganian of Goganian & Associates P.C. to appear and respond to the attorney's lien and on or around June 18, 2019, Hoey engaged Goganian and executed a fee agreement which identifies Hoey as the client and the one responsible for paying Goganian's fees. Exhibit 37, Attorney Amy Goganian Deposition ("Goganian Dep.") p.13, line 12 to 20; Exhibit 36, Attorney Amy Goganian Fee Agreement.

## HOEY'S RESPONSE NO. 81

Not disputed but misleading. Maher Aff., Ex. E, Bolan Affidavit, ¶ 3 ("I was consulted on behalf of the Law Offices of David J. Hoey for the benefit of Ms. Kira Wahlstrom, due to Mr. Sobczak's allegations relating to certain conduct by my client David Hoey, who represents Kira Wahlstrom."). Further, Hoey testified that it was in Plaintiff's interest to have another attorney involved in the lien dispute. Ex. 4, Hoey Depo., 204:4-305:9.

82. Ms. Wahlstrom was not shown the fee agreement that Hoey entered with Goganian concerning the Sobczak lien before Hoey signed it, Hoey did not tell Ms. Wahlstrom that Goganian was being retained to represent Hoey and his law firm with respect to the Sobczak lien, Hoey did not inform Ms. Wahlstrom of Goganian's rates and terms of engagement and did not give Ms. Wahlstrom the choice to hire anyone else. Exhibit 2, Wahlstrom Dep., p. 102, line 9 to p. 103, line 1; Exhibit 4, Hoey Dep., p. 207, line 21 to p. 209, line 9.

## HOEY'S RESPONSE NO. 82

Disputed, including to the extent that it claims that Amy Goganian was retained to represent David Hoey and his law firm only. Ex. 9, Docket in Premises Case; Ex. 4, Hoey Depo., 107:11-14, 205:2-17. Further, it is disputed as to the characterization that Plaintiff did not approve of Attorney Goganian representing her interests in the Sobczak lien case and did

not have a choice. Plaintiff knew Attorney Goganian was "handling" the Sobczak lien and she hired Attorney Goganian separately to represent her in the O'Toole case. Ex. 2, Wahlstrom Deposition, 101-106; Maher Aff., Ex. B, Michael's Deposition, 93:8-17; Maher Aff., Ex. C, Kazarian's Deposition, 34:14-37:17. Goganian filed a successful motion to dismiss on behalf of Wahlstrom. Liberty Aff., Ex. N, Wahlstrom, Civil Action No. 1084CV01022, Docket No. 287; see also, Ex. EE, November 8, 2017 Order.

83. Ms. Wahlstrom did not enter any fee agreement with Goganian concerning the Sobczak lien and did not authorize Amy Goganian to file an appearance on her behalf. Exhibit 2, Wahlstrom Dep., p. 101, line 15 to p. 103, line 1; Exhibit 2, Wahlstrom Dep., p. 105, line 21 to p. 106, line 5; Exhibit 37, Goganian Dep., p. 17, line 3 to p. 18, line 3; Exhibit 37, Goganian Dep., p. 20, line 8 to 20.

**HOEY'S RESPONSE NO. 83**

Not disputed that Plaintiff did not have a separate fee agreement with Amy Goganian regarding Sobczak's lien; however, disputed that Plaintiff did not approve of Amy Goganian representing her interests in the Sobczak lien case. Plaintiff knew Attorney Goganian was "handling" the Sobczak lien and even hired Attorney Goganian separately to represent her in the O'Toole case. Ex. 2, Wahlstrom Deposition, 101-106. Otherwise, undisputed; however, it is irrelevant. Maher Aff., Ex. B, Michael's Deposition, 93:8-17; Maher Aff., Ex. C, Kazarian's Deposition, 34:14-37:17. Ms. Wahlstrom attended a hearing in which Goganian argued on her behalf, and filed two affidavits in the Sobczak lien matter. Liberty Aff., Ex. D, Dep. of Wahlstrom, 84:12-21; Maher Aff., Exs. H and I, Affidavits of Wahlstrom. Wahlstrom understood that money set aside from the Underlying Trial Verdict was being applied towards the Sobczak lien. Liberty Aff., Ex. GG, February 25, 2020 Email Chain; see also Ex. D, Dep. of Wahlstrom, 111:18-23.

84. Ms. Wahlstrom did not even meet or speak to Attorney Goganian who handled these matters until over a year later in or around October 2020. Exhibit 2, Wahlstrom Dep., p. 105, line 21 to p. 106, line 5; Exhibit 37, Goganian Dep., p. 40, line 1 to p. 42, line 7.

**HOEY'S RESPONSE NO. 84**

Disputed. The citations do not support the statement. Further, Plaintiff testified that she could not remember the first time she spoke with Amy Goganian, and didn't think she spoke with her "alone" until in 2020. Ex. 2, Wahlstrom Deposition, 105-106. Attorney Goganian does not specify when she first spoke with Plaintiff, and acknowledged that there was no prohibition on her speaking directly with Plaintiff. Ex. 37, Goganian Dep., 40.

85. Neither Attorney Goganian nor Attorney Hoey contacted Attorney Sobczak to discuss whether he was seeking fees directly from Kira Wahlstrom. Exhibit 13, Sobczak Dep., p. 73, line 23 to p. 74, line 8 ("No, nobody contacted me directly. I believe the next notice I got was some kind of a notice of an emergency motion being filed by Mr. Hoey or one of his attorneys trying to allegedly dismiss the lien on behalf of Kira."); Exhibit 4, Hoey Dep. p. 261, line 21 to p. 264, line 5.

**HOEY'S RESPONSE NO. 85**

Not disputed; however, it is misleading as Sobczak's own beliefs as to who the lien was against is irrelevant and directly contradictory with the law. Ex. 4, Hoey Depo., 261:21-264:5. Further, Sobczak filed a frivolous lien against Plaintiff, which was dismissed by the court. Ex. 40, Motion to Dismiss; Ex. 51, Email attaching order granting Motion to Dismiss.

86. Hoey well understood at the time Sobczak filed the lien that Sobczak was still seeking money from Hoey. *See*, e.g., Motion to Impound of August 12, 2019 arguing that "The Lien is Sobczak's thinly veiled attempt to seek compensation from Hoey Law..."; Exhibit 38, Hoey Email 9/5/2019 ("His affidavit is in furtherance of his bogus claims against me and do not support a lien against Kira Wahlstrom. His delay in filing a lien dictates his motives...He is targeting this case as a last resort to shake me down for money and he's putting pressure on Kira Wahlstrom. Discovery only allows him to continue his pursuit against me and has nothing to do with proving a lien.").

**HOEY'S RESPONSE NO. 86**

Disputed, the citation to the Motion to Impound of August 12, 2019 is not attached. Further, it is misleading as Sobczak's lien was directly against Plaintiff not Hoey. Ex. 35, Notice of Attorney's Lien of Krysztof Sobczak. Further, Sobczak filed a frivolous lien against Plaintiff, which was dismissed by the court. Ex. 40, Motion to Dismiss; Ex. 51, Email attaching order granting Motion to Dismiss. The decision was affirmed after subsequent motion practice and appellate proceedings. Liberty Aff., Ex. N, Wahlstrom, Civil Action No. 1084CV01022, Docket No. 373.

87. Hoey and Keenan did not advise Ms. Wahlstrom of any conflict of interest between her and Hoey with respect to the Sobczak lien. Wahlstrom Declaration, ¶28.

**HOEY'S RESPONSE NO. 87**

Not disputed; however, it is irrelevant, misleading and not material, as it presumes a conflict where none exists. Maher Aff., Ex. C, Kazarian's Deposition, 129:6-20.

88. Hoey represented to Ms. Wahlstrom that Sobczak had filed the lien "against" her and was trying to get money from her directly. Exhibit 39, Hoey email to Wahlstrom 10/24/2020 ("The Court gave Mr. Sobczak a pass ... I am very upset about this and cannot understand why the courts of Massachusetts will not protect you"); Exhibit 2, Wahlstrom Dep., p. 43 line 6 to 8 ("Q: You understood, as of then certainly, that Mr. Sobczak was asserting a lien against you. A: That's what I was told, yes."); Wahlstrom Declaration, ¶28 and 29.

**HOEY'S RESPONSE NO. 88**

Disputed. The statement is not supported by the citations. Further, Sobczak did assert a lien against Plaintiff. Ex. 35, Notice of Attorney's Lien of Krzysztof Sobczak.

89. The filings by Goganian against Sobczak included filings on behalf of Hoey and his firm alone and not Ms. Wahlstrom and made arguments that only applied to Hoey. *See*, e.g., Exhibit 19, Attorney Goren Work on Impoundment, (arguing the "disclosure of information related to the Wahlstrom matter, including any potential fee or other economic value, will be highly prejudicial to Hoey Law and will cause immediate and irreparable harm."); Exhibit 40, Motion to Dismiss Notice of Attorney's Lien and Request for Sanctions with a memorandum (arguing res judicata based on prior litigation between Sobczak and Hoey arguing that any claim by Sobczak "would be against Hoey Law as to any fee Hoey Law may realize in the his case."); Exhibit 37, Goganian Dep, p. 15 line 1 to p. 16, line 4 (motion to impound included proprietary business information of Hoey Law)

**HOEY'S RESPONSE NO. 89**

Disputed. The statement is not supported by the citations. Arguments were made on behalf of Plaintiff. Ex. 40, Motion to Dismiss Notice of Attorney's Lien and Request for Sanctions, p. 5-6. Further, the arguments that applied to Hoey were also beneficial to Plaintiff in dismissing the attorney lien. Id. at 7-10; Maher Aff., H Affidavit of Kira Wahlstrom (8/12/2019); Maher Aff., I, Affidavit of Kira Wahlstrom, (LDH0015163). Further, Goganian testified that Sobczak's filings contained the disclosure of attorney-client privilege for communications between Plaintiff and Sobczak. Ex. 37, Goganian Dep., 15:20-16:20.

90. Hoey participated in the drafting of the motions and responses filed by Goganian on behalf of Wahlstrom and Hoey Law against Sobczak and pressed Goganian to make arguments on his behalf. Exhibit 4, Hoey Dep., p. 276, line 22 to p. 227, line 6; Exhibit 32, Hoey Email 7/20/2019 ("it will need to be Impounded. I cannot let the media or other law firms see this dispute.")

**HOEY'S RESPONSE NO. 90**

Disputed, including that it implies that Amy Goganian's work was not on behalf of Plaintiff. Ex. 37, Goganian's Dep., 14, 17, 40-41. The statement is not supported by the citations. Further, Sobczak did assert a lien against Plaintiff. Ex. 35, Notice of Attorney's Lien of Krzysztof Sobczak. Ex. 4, Hoey Depo., 203. Further, Hoey testified that he felt that Sobczak filed this lawsuit against Plaintiff because he felt "wrongfully discharged by Kira." Ex. 4, Hoey Depo., 203.

91. It was never Sobczak's intent to obtain an additional fee from Ms. Wahlstrom and he expressed that to Goganian and Bolan. Exhibit 13, Sobczak Dep., p. 71, line 2 to 10. ("So the notice was not Miss Wahlstrom, it was more for the insures to let them know that when they're divvying out checks, there are other people that may be entitled to it. But as far as

my understanding and my knowledge at the time I filed notice is that I am entitled to some portion of the fee that would be on contingency, if there is a contingency."); Exhibit 41, Email from Sobczak 11/3/2020 ("Presuming that you all have Ms. Wahlstrom's best interest in mind, I assume someone has long ago explained to her that the notice of lien I filed does not affect the amount of the attorneys' fees she is responsible for on her case, as the percentage amount stays the same regardless of how many attorneys are splitting it, and all these alleged cost and fees that attorney Hoey is racking up is all just part of his ongoing personal vendetta against me.")

## HOEY'S RESPONSE NO. 91

Disputed. Also, improper reference to state of mind. The statement is not supported by the citations. Further, the lien by Sobczak was against Plaintiff, notwithstanding his claims to the contrary. Ex. 35, Notice of Attorney's Lien of Krzysztof Sobczak. Ex. 4, Hoey Depo., 203. Sobczak continued to appeal against Plaintiff. Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 157-158. Further, Hoey testified that he felt that Sobczak filed this lawsuit against Plaintiff because he felt "wrongfully discharged by Kira." Ex. 4, Hoey Depo., 203. Sobczak's testimony comes after he and Plaintiff entered into an agreement and she agreed to help him. Maher Aff., Ex. J, General Release Agreement between Wahlstrom and Sobczak.

92. Attorney Goganian's invoices for handling the Sobczak lien were directed to Hoey and she received payment from Hoey. Exhibit 42, Attorney Amy Goganian Invoices; Exhibit 37, Goganian Dep., p. 18, line 4 to 17 ("I remember a conversation or conversations with Attorney Hoey that I was to send my bills to him and that he would pay them. I don't recall there being any discussion about any kind of arrangement between him and Ms. Wahlstrom with respect to my fees."); Exhibit 4, Hoey Dep., p. 211, line 12 to p. 212, line 2.

## HOEY'S RESPONSE NO. 92

Not disputed. However, this statement is misleading as Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

93. Attorney James Bolan represented Hoey against Sobczak in the Suffolk and Middlesex County litigation. Exhibit 20, Bolan Dep., p. 18, line 18 to 2; Exhibit 20, Bolan Dep., p. 62, line 15 to p. 63, line 5.

**HOEY'S RESPONSE NO. 93**

Not disputed; however, it is irrelevant and not material.

94. Attorney Bolan worked on behalf of Hoey with Attorney Goganian on seeking dismissal of Sobczak's notice of lien filed in Ms. Wahlstrom's premises liability case. Exhibit 20, Bolan Dep., p. 37, lines 2-10; Exhibit 37, Goganian Dep., p. 15, line 1 to p. 16, line 4.

**HOEY'S RESPONSE NO. 94**

Disputed. It implies that Bolan did not work for the benefit of Plaintiff for which Plaintiff and Amy Goganian sought reimbursement from Sobczak via a motion for sanctions. Maher Aff., Ex. E Affidavit of James Bolan.

95. Attorney Bolan never met Kira Wahlstrom, never had any fee agreement with Kira Wahlstrom, and did not direct any invoices for his work related to the Sobczak lien to Kira Wahlstrom. Exhibit 20, Bolan Dep., p. 26, line 23 to p. 24, line 6; Exhibit 20, Bolan Dep., p. 45, line 8 to line 18.

**HOEY'S RESPONSE NO. 95**

Not disputed; however, it is misleading as Attorney Bolan worked for the benefit of Plaintiff. Maher Aff., Ex. E, Bolan Affidavit, ¶3 ("I was consulted on behalf of the Law Offices of David J. Hoey for the benefit of Ms. Kira Wahlstrom, due to Mr. Sobczak's allegations relating to certain conduct by my client David Hoey, who represents Kira Wahlstrom." ¶ 3).

96. Ms. Wahlstrom was never the client of James Bolan. Exhibit 20, Bolan Dep., p. 27, lines 5-6.

**HOEY'S RESPONSE NO. 96**

Not disputed; however, it is misleading as Attorney Bolan worked for the benefit of Plaintiff. Maher Aff., Ex. E, Bolan Affidavit, ¶3 ("I was consulted on behalf of the Law Offices of David J. Hoey for the benefit of Ms. Kira Wahlstrom, due to Mr. Sobczak's allegations relating to certain conduct by my client David Hoey, who represents Kira Wahlstrom." ¶ 3).

97. Ms. Wahlstrom did not agree to engage Bolan on her behalf and was not told in advance of Hoey incurring the Bolan fees that she would be charged for any of his work. Wahlstrom Declaration, ¶ 20; Exhibit 4, Hoey Dep., p. 114, line 14 to p. 115, line 4; Exhibit 13, Sobczak Dep., p. 56, lines 3-7.

**HOEY'S RESPONSE NO. 97**

Disputed. Plaintiff reviewed and approved the fees, and had no questions. Ex. 2, Wahlstrom Deposition, 44, 201. Moreover, she did not inform Hoey of these concerns. Ex. 2, Wahlstrom Deposition, 175-176.

98. Attorney Bolan cannot explain how any of the time he billed to Hoey on his invoices benefited Kira Wahlstrom. Exhibit 20, Bolan Dep., p. 50, line 18 to p. 53, line 7.

**HOEY'S RESPONSE NO. 98**

Disputed. The citation does not support the statement. Attorney Bolan testified that he could not remember the basis for his affidavit. Ex. 20, Bolan's Deposition, 51, 65-70, 81, 83, 89, 94-95. However, this statement is misleading as Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

**The Recovery in the Premises Liability Case**

99. After the Appeal Court decision was issued on November 6, 2019, reversing the order granting a new trial in the underlying Wahlstrom case, the insurance companies for JPA ultimately did not pursue a further appeal. Dkt. 11, FAC, ¶46; Dkt 16, Hoey Answer, ¶46; Dkt. 24, Keenan Answer, ¶46; Dkt. 30, KKF Answer, ¶46.

**HOEY'S RESPONSE NO. 99**

Not disputed.

100. On November 18, 2019, One Beacon (the primary insurer for JPA) wired $1,670.336.42 to Don Keenan's account. Exhibit 43, Emails to Insurance Companies.

**HOEY'S RESPONSE NO. 100**

Not disputed that on November 18, 2019, $1,670,336.42 was wired to Don Keenan's account. Otherwise disputed to the extent that the citation does not support the statement.

101. On November 19, 2019, Zurich American Insurance Company (JPA's excess insurer) wired $8,317,347.38 to Keenan's account. Judgement was thereby paid in full with interest totaling $9,987,683.80. Exhibit 43, Emails to Insurance Companies.

**HOEY'S RESPONSE NO. 101**

Not disputed.

102. Prior to receipt of these funds, on November 15, 2019, Hoey represented to the excess insurer, Zurich, that Defendants assumed responsibility for the Sobczak attorney's lien that had been filed. ("We stand ready to receive our funds. And will sign any assumption of lien [sic] you draft"). Exhibit 43, Emails to Insurance Companies.

**HOEY'S RESPONSE NO. 102**

Not disputed, but it is irrelevant and not material.

103. On November 22, 2019, Keenan emailed Hoey concerning when the funds could be disbursed in light of the Sobczak lien litigation and specifically stating in part:

...The other matter is disbursement. Each one of us has a decision to make as to when to take the money. You're free take all of your money now. That's fine if you want to do that. As for me with this pending lien of Sobczak my people are telling me to wait until there is final resolution as there is with Kira ... there's nothing to do right now unless you want to get your money which just say the word and I'll get it to you.

Exhibit 44, Keenan and Hoey Email Regarding Wire.

**HOEY'S RESPONSE NO. 103**

The quoted document speaks for itself, but the above does not include all portions of the document. Otherwise, not disputed.

104. On November 22, 2019, Hoey replied to Keenan's email stating:

Fee stays to be disbursed later after the 29th of November.
All that is needed today is $973,000 to cover expenses and Kira's loan.

Exhibit 44, Keenan and Hoey Email Regarding Wire.

**HOEY'S RESPONSE NO. 104**

The quoted document speaks for itself and does not include all portions of the document. Otherwise, not disputed, but it is irrelevant and not material

105. On November 22, 2019, Hoey re-sent to Keenan a November 20, 2019 email requesting $973,000 be wired to Hoey's account along with his account information for the wire. Exhibit 44, Keenan and Hoey Email Regarding Wire.

**HOEY'S RESPONSE NO. 105**

Not disputed, but it is not material.

106. On November 26, 2019, Keenan wired $973,000 to Hoey's account. Exhibit 44, Keenan and Hoey Email Regarding Wire

**HOEY'S RESPONSE NO. 106**

Not disputed.

107. On or around December 17, 2019, Hoey arranged to wire $4,850,000.00 from Keenan's account to Ms. Wahlstrom and he emailed Ms. Wahlstrom's financial representative, copying Ms. Wahlstrom, and stated: "I just authorized a wire in the amount of $4.85 million. (More to come later)." Exhibit 45, Hoey Email, 12/17/2019.

**HOEY'S RESPONSE NO. 107**

Not disputed that the email is correctly quoted. Otherwise, disputed as the citation does not support the statement.

108. No additional funds were sent to Ms. Wahlstrom from her premises liability recovery. Wahlstrom Declaration, ¶18.

**HOEY'S RESPONSE NO. 108**

Disputed and misleading. Money was set aside as agreed to by Plaintiff, including for her bad faith case, which Plaintiff agreed and signed off on. Ex. 54, March 2020 Final Fee and Expense Itemization Signed by Wahlstrom; Ex. 2, KW Deposition, p. 111, 234-235.

109. On December 21, 2019, Keenan emailed Hoey about "Walstrom funds" that included a request that Hoey send a "signed settlement statement" and Hoey responded with an unsigned Excel spreadsheet itemizing the fee total, expenses and other items along with a request to send Hoey additional money for expenses. Exhibit 46, Email Exchange Between Keenan and Hoey, 12/21/2019.

**HOEY'S RESPONSE NO. 109**

Not disputed.

110. On January 24, 2020, in an email to Hoey, Wahlstrom stated "We still need to go over the bill and the last of the money." Exhibit 47, Wahlstrom Email to Hoey, 1/24/2020.

**HOEY'S RESPONSE NO. 110**

Not disputed.

111. On February 20, 2020, Hoey informed Ms. Wahlstrom that Sobczak's lien was dismissed. Exhibit 48, Hoey Email to Wahlstrom 2/20/2020.

### HOEY'S RESPONSE NO. 111

Not disputed.

112. On February 25, 2020, Hoey emailed Ms. Wahlstrom that Sobczak had cost her $35,000 to fight the lien he filed and asking me Ms. Wahlstrom if she wanted to pursue Sobczak for fees and costs and that Hoey would "hate to do nothing." Exhibit 49, Hoey Email Exchange with Wahlstrom.

### HOEY'S RESPONSE NO. 112

Not disputed.

113. On March 2, 2020, Hoey emailed Keenan concerning fee and expense amounts in Wahlstrom's case and Keenan responded that he needed an "itemization" and "statement of why we can release now." Exhibit 50, Hoey and Keenan Email Exchange, 3/2/2020.

### HOEY'S RESPONSE NO. 113

Not disputed.

114. On March 7, 2020, Hoey emailed an unsigned Excel spreadsheet, formally addressing "Mr. Keenan" and stating the attached spreadsheet "contains the breakdown of Kira Wahlstrom Judgment proceeds." Exhibit 51, Email from Hoey to Keenan, 3/7/2020 with attachment.

### HOEY'S RESPONSE NO. 114

Not disputed.

115. On March 29, 2020, Hoey emailed Ms. Wahlstrom stating "here is Excel accounting sheet" which provided the case expense itemization along with some explanations next to some of the expenses and no other supporting documentation for these expenses was provided to Ms. Wahlstrom at this time. Exhibit 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Wahlstrom Declaration, ¶¶ 21 to 22, 37 to 38, 40, and 45 to 50.

### HOEY'S RESPONSE NO. 115

Not disputed; however, it is misleading. Hoey's email explicitly states: "If you have any questions or dispute any of the expenses please let me know. If you approve of the expenses and distribution please indicate so by signing at the bottom of the excel sheet."

Plaintiff responded "I don't think I have any questions about this." Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. It also preserves presumes an obligation where none exists.

116. The March 2020 final expense itemization listed "Amy Goganian, Esq. $41,231.72" with the comment "This is who we hired to fight the Sobczak lien." Exhibit 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

### HOEY'S RESPONSE NO. 116

Not disputed.

117. Though confused about some of the expenses, Ms. Wahlstrom did not feel she could challenge her attorneys that she long trusted (nor did she double-check their math not realizing that the fee calculated included an extra 7% for the appeal in addition to paying appellate counsel separately), and so Ms. Wahlstrom signed the final expense itemization on around March 29, 2020. Exhibit 2, Wahlstrom Dep., p. 43, line 18 to p. 48, line 14; Exhibit 4, Hoey Dep., p. 105, line 21 to p. 106, line 16; Wahlstrom Declaration ¶¶ 23 to 24, and 43 to 44.

### HOEY'S RESPONSE NO. 117

Disputed. Plaintiff testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Both Plaintiff and Hoey testified that in December 2019 they discussed expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the disbursements. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Ex. 2, Wahlstrom Deposition, 44, 201.

118. Keenan's expenses were presented to Ms. Wahlstrom for the first time around March 29, 2020, and she signed off on them at the same time as Hoey's expense itemization. Wahlstrom Declaration, ¶21.

### HOEY'S RESPONSE NO. 118

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet

afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

119. Keenan's recent sworn statement that "Once Mr. Hoey provided me with the documents showing that Ms. Wahlstrom approved in writing the costs, I paid said costs from my trust account to Hoey Law" is contradicted by the undisputed record – Keenan transferred to Hoey all the money Hoey requested for expenses months before Keenan was provided any written approval by Ms. Wahlstrom. Exhibit 5, Don C. Keenan Response to Plaintiff's Questions in Lieu of Appearing for a Deposition, No. 7; Exhibit 44, Keenan and Hoey Email Regarding Wire.

**HOEY'S RESPONSE NO. 119**

Not disputed that Exhibit 5 is accurately quoted. Otherwise, disputed. Further, it is irrelevant and not material as it is undisputed that the Plaintiff reviewed and approved all fees and expenses, and because a transfer between co-counsel is consistent with the standard of care and all fiduciary obligations, and it caused the Plaintiff no harm.

120. Before the Wahlstrom case and after, on other occasions Hoey would charge other clients for the fees of additional attorneys as expenses. Exhibit 4, Hoey Dep., p. 119, line 17 to p. 121, line 24.

**HOEY'S RESPONSE NO. 120**

Disputed as to the characterization. Hoey testified that no expense was incurred by the client "until the client approves of it and acknowledges it and signs off on it after I educate the client as to what is needed and necessity was…" Ex. 4, Hoey Depo., 120. Otherwise, undisputed; however, it is irrelevant, misleading and not material.

121. The $83,387.54 identified on the final itemization as "remaining" was to be held and used for the expenses for pursuing Ms. Wahlstrom's claims against the insurance companies involved in the premises liability case for unfair and bad faith settlement practices and for expenses in her children's loss of consortium claims against the garage owners for what her children suffered after she was raped. Exhibit 2, Wahlstrom Dep., p. 162, line 18 to p. 163, line 15 and p. 234, line 24 to p. 235, line 12.

**HOEY'S RESPONSE NO. 121**

Not disputed.

122. On May 19, 2020, Keenan emailed Hoey re "Walstrom funds" [sic] stating:

This is will [sic] confirm receipt of your total fees of $750,000 and at your direction you will pay the referring attorney anything owed. It's obviously your judgement as to how much, if any, to pay your referring attorney, since I have no understanding of your relationship and frankly haven't ever met the man and he sure contributed notion to the outcome.

We are beginning the early state of working up the children's' [sic] cases and as yet have not incurred any expense but if we do then we will request funds from the $80,000 which the client, I understand, authorized to be held for expenses on the case.

Don

Exhibit 53, Email from Keenan to Hoey, 5/19/2020

### HOEY'S RESPONSE NO. 122

Not disputed.

### Fees and Expenses At Issue Here

123. When Hoey presented Ms. Wahlstrom the final itemization for her premises liability case he was still representing her and pursuing her claims for bad faith and unfair settlement practices against the insurance companies and her children's loss of consortium claims. Wahlstrom Declaration, ¶19; *Wahlstrom v. Zurich American Ins. Co, et al.*, D.Mass. Civil No. 1:19-cv-12208-LTS; *Helmeke et al v, JPA Management Co., et a*l (Mass. Superior Court - Lawrence, Civ. No. 2077CV00542)

### HOEY'S RESPONSE NO. 123

Disputed that Plaintiff was a plaintiff in the children's loss of consortium claims. *See Helmeke et al v, JPA Management Co., et a*l (Mass. Superior Court - Lawrence, Civ. No. 2077CV00542). Otherwise, not disputed.

124. Hoey and Keenan took $4,025,036.50 of the $9.987,683.80 recovery as an attorney fee, or 40.33% of the total recovery which included $695,808.57 for the appeal contingency while Ms. Wahlstrom was also charged separately $197,091.52 for DeJuneas' fee and $16,000.00 for Cordy's fee from her part of the recovery. Dkt. 11, FAC, ¶50(a); Dkt. 16, Hoey Answer, ¶50(a); Dkt. 30, KKF Answer, ¶50; Exhibit 54, March 2020 Expense Spreadsheet signed by Kira Wahlstrom.

### HOEY'S RESPONSE NO. 124

Not disputed except that it was the Keenan Law Firm, not Hoey that received into his IOLTA account and the fee to Hoey was $750,000 (not 4,025,036.50). Ex. 14, Hoey Dep. in O'Toole Case, 69:11-70:4.

125. During his deposition, when Hoey reviewed the language of the 2015 CFA appeal contingency provision, and was asked about his understanding of when the appeal contingency applied, he testified:

> Q. And to be more specific here, it says, "after an appellate brief is filed in an applicable appellate court or body by the attorney." What's your understanding of that?

> A. Well, the way it reads is that he [Keenan] would have to file the brief is the way it reads, but that's not how it happened.

Exhibit 4, Hoey Dep., p 173, lines 5-11

**HOEY'S RESPONSE NO. 125**

Not disputed as the document speaks for itself; however, it is misleading. Immediately before, Hoey testified that "If I understand that correctly, for that paragraph to trigger he'd have to participate in the appeal process." Ex. 4, Hoey Depo., 173. Further, it is irrelevant and not material as it is not accurate reflection of the language of the 2015 CFA Agreement.

126. Hoey and Keenan charged Ms. Wahlstrom $20,824.00 for attorney Richard Goren to appear for Keenan's Kids Foundation, Inc. (that does business as the Keenan Trial Institute) and file a motion to impound book materials to protect the Foundation's proprietary and economic interest. Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Exhibit 55, Attorney Richard Goren Invoices ("Goren Invoices").

**HOEY'S RESPONSE NO. 126**

Not disputed as to the amount of the charges; otherwise disputed and misleading. Attorney Richard Goren was engaged to prevent the JPA defendants attempting to poison the Court's opinion of Hoey Law and the Keenan Law Firm and thereby attack Plaintiff's case and unduly influence the judge. Ex. 4, Hoey Depo., 108: 3-16, 126:9-12; Ex. 62, Hoey Response to 93A Demand Letter, p. 62. Further, Attorney Goren provided both procedural advice and assistance on opposing the motion for new trial. Ex. 18, Goren Dep., 27; Maher Aff., Ex. D, Email from Richard Goren to David Hoey dated 10/18/2015; Maher Aff., Ex. B, Michael's Deposition, 48:17-50:16.

127. Hoey and Keenan charged Ms. Wahlstrom $8,432.39 for fees for work performed by Hoey's personal attorney James Bolan. Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Exhibit 21, Bolan Invoices.

**HOEY'S RESPONSE NO. 127**

Not disputed as to the amount of the charge; otherwise disputed. Attorney James Bolan helped with and reviewed the opposition to JPA's motion for new trial, provided assistance with the media regarding the motion for new trial, helped dismiss the lien filed by Attorney Sobczak against Plaintiff, and advised how to protect the attorney client privilege between Hoey Law and Plaintiff from Sobczak's intrusion. Ex. 4, Hoey Depo., 126: 24-127: 14; 154:19-24, 228:10-229:5, 256:18-257:5; Ex. 14, Hoey Dep. In O'Toole Case, 90: 6-10, 92:8-14; Ex. 62, Hoey Response to 93A Demand Letter, p. 62; Maher Aff., Ex. E, Bolan Affidavit, ¶ 3 (""I was consulted on behalf of the Law Offices of David J. Hoey for the benefit of Ms. Kira Wahlstrom, due to Mr. Sobczak's allegations relating to certain conduct by my client David Hoey, who represents Kira Wahlstrom.").

128. Hoey and Keenan charged Ms. Wahlstrom $41,231.72 for attorney Amy Goganian's fees to litigate the Sobczak lien. Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with attachment; Exhibit 42, Goganian Invoices.

**HOEY'S RESPONSE NO. 128**

Not disputed.

129. Hoey and Keenan charged Ms. Wahlstrom $2,655.00 for "constitutional law attorney" John Vail. Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Exhibit 56, Attorney John Vail Invoices ("Vail Invoices").

**HOEY'S RESPONSE NO. 129**

Disputed to the extent that it implies Attorney Vail only worked on constitutional issues as Attorney Vail provided necessary consultation on the appellate briefs and the framing of the issues as he was an experienced national appellate lawyer. Ex. 4, Hoey Depo., 177:13-23, 186-:21-193:4; Maher Aff., Ex. B, Michael's Deposition, 51:15-21.

130. Hoey and Keenan charged Ms. Wahlstrom $1,316.00 for attorney Catherine Giordano for "research and writing." Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

**HOEY'S RESPONSE NO. 130**

Not disputed.

131. Hoey and Keenan charged Ms. Wahlstrom $561.24 billed by Lewis Brisbois Bisgaard & Smith LLP concerning a disciplinary case against Sobczak. Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with attachment; Exhibit 23, Lewis Brisbois Bisgaard & Smith Invoices.

**HOEY'S RESPONSE NO. 131**

Not disputed.

132. Hoey and Keenan charged to Ms. Wahlstrom $238,829.29 for fees incurred on Hoey's litigation funding from Advocate Capital who had advanced a total of $415,761.58 to Hoey in increments over time. Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Exhibit 57, Advocate Capital Case Balance Detail; Exhibit 58, Advocate Capital Funding Records

**HOEY'S RESPONSE NO. 132**

Disputed. The number listed in the referenced document is $238,839.29 not $238,829.29.

133. While during the litigation Hoey had told Ms. Wahlstrom that he had taken a loan to cover costs in her case, Hoey never showed to Ms. Wahlstrom his contracts with Advocate Capital and did not inform her the interest rate, origination fees, finance charges or administrative fees before they were incurred and did not advise her other options for litigation financing. Exhibit 4, Hoey Dep., p. 316, line 17 to p. 318, line 12; Wahlstrom Declaration, ¶¶ 26 to 27.

**HOEY'S RESPONSE NO. 133**

Not disputed; however, it is misleading, including because it presumes an obligation where none exists. Maher Aff., Ex. C, Kazarian's Deposition, 114:10-116:5. Further, Plaintiff agreed that her counsel could obtain litigation financing to help finance the case and she specifically knew and approved that she would be responsible. Ex. 1, 2010 Contingent Fee Agreement; Ex. 11, 2015 Contingency Fee Agreement; Ex. 2, Wahlstrom Deposition, 55:2-56:13.

134. Keenan had expressed to Hoey that Keenan does not believe in engaging lending companies for clients because "they charge high interest rates" and "they are not fair to the client" and that Keenan does not use financing from companies like Advocate Capital but they did not tell this to Ms. Wahlstrom. Exhibit 14, Hoey Dep. in O'Toole Case, 3/17/2023, p. 102, line 14 to p. 104, line 5; Wahlstrom Declaration, ¶27.

**HOEY'S RESPONSE NO. 134**

Not disputed that Attorney Hoey testified as reflected in the pages noted. However, the statement is disputed and misleading, as the testimony did not concern Advocate Capital, but the personal loan which Ms. Wahlstrom took out for herself and did not concerning Advocate Capital. Ex. 14, O'Toole Hoey Dep., p. 96-104.

135. Hoey stated on his itemization that Advocate Capital was "the lender for the majority, but not all, of the litigation expenses" and Ms. Wahlstrom did not think she had any choice but to pay this as represented by her attorneys. Exhibit 52, Hoey Email to

Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Wahlstrom Declaration, ¶26.

## HOEY'S RESPONSE NO. 135

Not disputed as to the first part, "Hoey stated on his itemization that Advocate Capital was 'the lender for the majority, but not all, of the litigation expenses'". Otherwise, disputed. Plaintiff testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105. Further, Plaintiff agreed to litigation funding. Ex. 1, 2010 Contingent Fee Agreement; Ex. 11, 2015 Contingency Fee Agreement; Plaintiff's Deposition (Wahlstrom Matter), 55:2-56:13.

136. After Ms. Wahlstrom made a demand for an accounting through her present counsel, Hoey provided to her an Advocate Capital Case Balance Detail showing the dates and amounts advanced by Advocate Capital along with the fees for those advances. Wahlstrom Declaration, ¶50.

## HOEY'S RESPONSE NO. 136

Not disputed.

137. None of the particular advances on the Advocate Capital Balance Detail match any particular expense on the final expense itemization even though when Hoey made requests from Advocate Capital it was to be for expenses already incurred. Exhibit 4, Hoey Dep., p. 314, lines 16-20; Exhibit 52, Hoey Email to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization; Exhibit 57, Advocate Capital Case Balance Detail; Exhibit 58, Advocate Capital Funding Records.

## HOEY'S RESPONSE NO. 137

Disputed and misleading, including because it makes an improper presumption, without legal or factual basis, as to how information on Advocate Capital records should appear. Further, Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff

signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff was provided with materials from Advocate Capital, which were requested by Attorney Hoey and produced in discovery. Ex. 4, Hoey Depo, 300-302.

138. Hoey used Advocate Capital for several of his cases at the same time and would make a request for a total sum of money that would cover more than one client rather than making a request for an advance for a single client at a time. Exhibit 4, Hoey Dep., p. 303, line 16 to p. 306, line 6; Exhibit 58, Advocate Capital Funding Records.

**HOEY'S RESPONSE NO. 138**

Disputed, as misleading as each request was per client. Ex. 4, Hoey Depo., 303-304.

139. When Hoey made a request to Advocate Capital to advance funds for his cases, he was not required to provide documentation of all the actual case expenses to Advocate Capital. Exhibit 4, Hoey Dep., p. 305, lines 15-20 ("Q. Okay. And did Advocate Capital require you to give the actual invoice or other documentation of exactly what the expense was for each client? A. No. What they would do is – that part was kind of on the honor system…")

**HOEY'S RESPONSE NO. 139**

Disputed. Further, the quotation is not complete. Hoey was audited twice a year to verify case expenses. Ex. 4, Hoey Depo., 305-306. This is also misleading, as Hoey has provided a full ledger generated by Advocate Capital. Ex. 57, Advocate Capital Case Balance Details; Ex. 58, Advocate Capital Funding Records.

140. Hoey has not provided an accounting to show how each amount advanced by Advocate Capital was actually used to pay an expense in Ms. Wahlstrom's case and cannot track each advance to any particular case expense. Exhibit 4, Hoey Dep., p. 309, lines 6-12 (Q. And as you look at this detail here on Exhibit 58 [Advocate Capital Case Balance Detail], as you sit here are you able to identify any of these advances going to any particular, specific expense in Kira Wahlstrom's case? A. No. That would be -- from memory and just looking at these numbers, no."); p. 315, line 18 to p. 316, line 3 (Q. …Are you able to track what exactly was paid for in Kira's case with Advocate Capital advance money? A. Probably not. It would take hundreds of hundreds of hours. I mean, at some point I had 70, plus, cases running at any given time, a tremendous amount of manpower."); Exhibit 57, Advocate Capital Case Balance Detail

**HOEY'S RESPONSE NO. 140**

Disputed and misleading, including as it implies a duty or obligation where none exists. Further, it is disputed that Hoey has not provided an accounting as he did so, including in March 2020. [Ex. 54, March 2020 Final Fee and Expense Itemization Signed by Kira Wahlstrom. He also provided records he obtained from Advocate Capital. Ex. 4, Hoey

Depo., 300-303, 315-316; Ex. 57, Advocate Capital Case Balance Details; Ex. 58, Advocate Capital Funding Records. He also provided hundreds of pages invoices and documentation for the expenses. Ex. 62, Hoey Response to 93A Demand Letter, March 2, 2022.

## Demand for Payment and Refusal

141. On March 30, 2021, Austin O'Toole filed a lawsuit against David Hoey, his law firm, and Kira Wahlstrom alleging he was underpaid the referral fee he was to receive from Hoey in the premises liability case and Hoey arranged for Attorney Amy Goganian to represent Ms. Wahlstrom in this suit. Wahlstrom Declaration, ¶42; *O'Toole v. Hoey, et al.*, 2184CV00741, Suffolk Superior Court. Exhibit 37, Goganian Dep., p. 46, line 7 to p. 47, line 5.

### HOEY'S RESPONSE NO. 141

Not disputed.

142. In the summer of 2021, Ms. Wahlstrom started questioning why she was involved in and had to pay for the O'Toole case as well as the ongoing Sobczak lien dispute that was going to an appeal. Wahlstrom Declaration, ¶¶ 42 to 43; Exhibit 59, Kira Wahlstrom Emails, 2021.

### HOEY'S RESPONSE NO. 142

Not disputed that Plaintiff so claims; however it is a conclusory statement of mind. Further, Plaintiff admitted at her deposition that she did not raise any of her purported concerns. Ex. 2, Wahlstrom Deposition, 175-176. Further she approved of the expenses and was fully aware that Sobczak filed an improper lien. Ex. 2, Wahlstrom Deposition, 44, 201.

143. Ms. Wahlstrom no longer felt she could confide in David Hoey as he was involved in these fee disputes with O'Toole and Sobczak and she was confused about her involvement and why she had to pay for these attorney fights. Wahlstrom Declaration, ¶42.

### HOEY'S RESPONSE NO. 143

Disputed. No time frame is referenced in the cited document. Further, it is a conclusory statement of mind. Plaintiff testified that she trusted Hoey and could always ask him any questions. Ex. 2, Wahlstrom Deposition, 205-206

144. After consulting with Attorney Goganian and then with Attorney DeJuneas, and after going back over what she was charged in her premises liability case, Ms. Wahlstrom realized that she had been overcharged in fees and improper expenses by Hoey and

Keenan and thereafter hired Markham Read Zerner and terminated Hoey from her other cases. Wahlstrom Declaration, ¶43 to 46.

## HOEY'S RESPONSE NO. 144

Disputed that Plaintiff was "overcharged in fees and improper expenses by Hoey and Keenan". Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Otherwise, the statement is a conclusory allegation as to Plaintiff's purported state of mind.

145. Ms. Wahlstrom would not have signed as approving the final fee itemization in March 2020 if she had been fully informed and properly advised on all the fees and expenses included. Wahlstrom Declaration, ¶24-41.

## HOEY'S RESPONSE NO. 145

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

146. Ms. Wahlstrom did not and would not have agreed to paying the appeal upcharge to Keenan if she had been fully informed that Keenan and Hoey were charging her an extra 7% as an appeal contingency when Ms. Wahlstrom had hired and paid separate counsel to litigate the appeal. Wahlstrom Declaration, ¶41.

## HOEY'S RESPONSE NO. 146

Disputed. The citation does not support the statement. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in

response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Also, Plaintiff signed a Contingent Fee Agreement and Power of Attorney with Austin O'Toole in 2009 that contained an appeal upcharge of 7%. Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 116:5-117:18, 124; Maher Aff., Ex. G, O'Toole and Kira Wahlstrom Fee Agreement.

147. Ms. Wahlstrom would not have agreed to paying the Advocate Capital litigation finance fees if she had been fully advised on the unfair and exorbitant cost of such financing and that Hoey could not actually track the Advocate Capital money to her case expenses. Wahlstrom Declaration, ¶27.

**HOEY'S RESPONSE NO. 147**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

148. Ms. Wahlstrom would not have agreed to pay the Amy Goganian fees incurred on the Sobczak lien dispute if she had been fully informed of all the facts and circumstances involved in handing the lien, including the conflicts of interests involved. Wahlstrom Declaration, ¶33.

**HOEY'S RESPONSE NO. 148**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

149. Ms. Wahlstrom would not have agreed to pay for the fees incurred for Richard Goren if she had been fully informed of all the facts and circumstances involved in his engagement and the work he performed. Wahlstrom Declaration, ¶36.

**HOEY'S RESPONSE NO. 149**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

150. Ms. Wahlstrom would not have agreed to pay for Hoey's attorney, James Bolan, if she had been fully informed of all the facts and circumstances concerning his fees. Wahlstrom Declaration, ¶37.

**HOEY'S RESPONSE NO. 150**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

151. Ms. Wahlstrom would not have agreed to pay for the fees incurred by John Vail if she had been fully informed of all the facts and circumstances concerning his fees. Wahlstrom Declaration, ¶39.

**HOEY'S RESPONSE NO. 151**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute

the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

152. Ms. Wahlstrom did not have a fee agreement with Catherine Giordano, had not met Giordano, was not informed in advance of these fees being incurred, and would not have agreed to pay the fees of Catherine Giordano if she had been fully informed of all the facts and circumstances concerning her fees. Wahlstrom Declaration, ¶¶ 40.

**HOEY'S RESPONSE NO. 152**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

153. Ms. Wahlstrom would not have agreed to pay the fees for the Lewis Brisbois firm if she had been fully informed of all the facts and circumstances concerning their fees. Wahlstrom Declaration, ¶38.

**HOEY'S RESPONSE NO. 153**

Disputed. Plaintiff and Hoey testified that in December 2019 they discussed these expenses. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4. Hoey sent an excel sheet afterwards and elaborated further on expenses in response to inquiries by Plaintiff. Ex. 4, Hoey Depo., 105; Plaintiff also testified that she had an opportunity to ask or dispute the charges and she did not. Ex. 2, Wahlstrom Deposition, 49:21-24, Ex. 4, Hoey Depo., 105; Maher Aff., Ex. A, Wahlstrom's O'Toole Deposition, 191:5-192:4; Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization. Plaintiff signed the excel sheet and authorized the expenses. Ex. 52, Email from Hoey to Wahlstrom, 3/29/2020 with Final Fee and Expense Itemization.

154. On February 24, 2022 and March 2, 2022, Ms. Wahlstrom made demand on Hoey and Keenan, respectively, for return of: the appeal overcharge ($695,808.57), Goganian's

fees for the Sobczak lien ($41,231.72), Goren's fees ($20,824.00), Bolan's fees ($8,432.39), Vail's fees ($2,655.00), Giordano's fees ($1,316.00), and Lewis Brisbois Bisgaard's fees ($561.25) which all total $770,828.93 and making demand for an accounting including for the Advocate Capital charge. Exhibit 60, 93A Demand Letter to Hoey; Exhibit 61, 93A Demand Letter to Keenan.

### HOEY'S RESPONSE NO. 154

The demands speak for themselves. Disputed to the extent that the outline of what was requested in the letter is not complete.

155. On March 28, 2022, Hoey served a response to the demand through counsel in which he refused to pay anything back to Ms. Wahlstrom and provided some but not all documentation of the expenses incurred. Exhibit 62, Hoey Response to 93A Demand Letter.

### HOEY'S RESPONSE NO. 155

The response speaks for itself, but disputed and misleading, including because over fifty-nine pages of documentation was provided. Ex. 62, Hoey Response to 93A Demand Letter.

156. On April 1, 2022, Keenan served a response to the demand through in which he offered $25,000 "as nuisance value." Exhibit 63, Keenan Response to 93A Demand Letter.

### HOEY'S RESPONSE NO. 156

The response speaks for itself, but not disputed.

157. Ms. Wahlstrom made demand for full accounting and documentation of the above expenses and other expenses and about the disposition of all the monies held in trust for her by Hoey and Keenan. Exhibit 62, 93A Demand Letter to Hoey; Exhibit 63, 93A Demand Letter to Keenan.

### HOEY'S RESPONSE NO. 157

The quoted documents speak for themselves. Moreover, the exhibit numbers are incorrect.

158. In response to Ms. Wahlstrom's accounting demand, Keenan stated:

> With respect to your request for an accounting concerning a loan from Advocate Capital the costs of an exhibit produced by Win Interactive, an expert witness from Atlas Safety and trial transcripts, and other expenses, we respectfully refer you to Mr. Hoey for that information because his office was

in charge of tracking and documenting these costs, expenses and disbursements.

Exhibit 63, Keenan Response to 93A Demand Letter.

## HOEY'S RESPONSE NO. 158

The quoted document speaks for itself and does not include all portions of the document. Otherwise, not disputed.

Respectfully submitted,

Defendants,
David J. Hoey and
Law Offices of David J. Hoey, P.C.,

By their attorneys,

*/s/ Christine A. Knipper*
Christine A. Knipper, BBO # 652638
Christine.Knipper@wilsonelser.com
Dennis M. Maher, BBO # 703655
Dennis.Maher@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker
260 Franklin Street, 14th Fl.
Boston, MA 02110
Tel: 617.422.5300

## CERTIFICATE OF SERVICE

I, Christine A. Knipper, hereby certify that on September 22, 2023 the foregoing document was served on all counsel of record via ECF.

*/s/ Christine A. Knipper*
Christine A. Knipper