UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-cv-10792-RGS

KIRA WAHLSTROM

v.

DAVID J. HOEY, LAW OFFICES OF DAVID J. HOEY, P.C., DON C.
KEENAN, D.C. KEENAN & ASSOCIATES, P.C. d/b/a THE KEENAN LAW
FIRM, P.C., and KEENAN'S KIDS FOUNDATION, INC.

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

October 10, 2023

STEARNS, D.J.

David Hoey and Don Keenan represented Kira Wahlstrom in premises liability litigation arising from her rape in the parking garage of a Boston hotel. The protracted lawsuit took ten years to resolve. Judgment was eventually entered in Wahlstrom's favor for nearly $10 million. Hoey, the Law Offices of David J. Hoey, P.C. (together, Hoey Defendants), Keenan, and D.C. Keenan & Associates, P.C. d/b/a the Keenan Law Firm (together, Keenan Defendants) billed Wahlstrom $4,025,036.50 in fees and $1,022,259.77 in expenses – 50.5% of the total judgment that Wahlstrom received.

Wahlstrom brought this lawsuit against the Hoey and Keenan Defendants and Keenan's Kids Foundation, Inc. (KKF), alleging that her lawyers overcharged her by more than $1 million. Wahlstrom seeks damages, an accounting, disgorgement, and attorneys' fees and costs in this litigation. Specifically, Wahlstrom alleges violations of the Massachusetts Unfair Business Practices Act, Mass. Gen. Laws ch. 93A (Count I), breach of fiduciary duty (Count II), fraud (Count III), and conversion (Count IV). She also demands an accounting (Count V).[1] After the close of discovery, the Hoey and Keenan Defendants each moved for summary judgment on all counts against them. Wahlstrom, for her part, moved for partial summary judgment on Counts I, II, and IV. The court will allow in part and deny in part Wahlstrom's motion, deny the Hoey Defendants' motion, and allow in part and deny in part the Keenan Defendants' motion.

## BACKGROUND

The following facts are undisputed unless otherwise noted. The case dates back to the brutal rape of Wahlstrom in May of 2009 in a hotel parking garage in downtown Boston. Wahlstrom Statement of Undisputed Facts

---

[1] Count IV is alleged against all defendants. Counts I, II, III, and V are alleged only against the Hoey and Keenan Defendants. *See* First Am. Compl. (FAC) (Dkt. # 11). Wahlstrom previously alleged a claim of money had and received against KKF, but she withdrew the claim. *See* Wahlstrom Opp'n to Keenan Mot. for Summ. J. (WOKMSJ) (Dkt. # 105) at 18.

(WSF) (Dkt. # 94) ¶ 1; Hoey Defs.' Opp'n to WSF (HOWSF) (Dkt. # 112) ¶ 1; Keenan Defs.' Opp'n to WSF (KOWSF) (Dkt. # 104) ¶ 1.  Wahlstrom decided to sue the parking garage owners, and, after consulting with attorney Austin O'Toole, O'Toole referred her to Hoey, who she hired.  WSF ¶ 6; HOWSF ¶ 6; KOWSF ¶ 6.

**Fee Arrangements**

On February 2, 2010, Wahlstrom and Hoey entered into a written contingency fee agreement (2010 CFA) under which Hoey would receive one-third of the gross amount of any recovery for his legal work related to the "premises liability and injuries received on or about May 1, 2009 in the Raddison parking garage."  Aff. of Bridget Zerner (Zerner MSJ Aff.) (Dkt. # 96) Ex. 1 (emphasis omitted).  Wahlstrom read the 2010 CFA and discussed it with Hoey before she signed it.  Hoey Defs.' Statement of Undisputed Facts (HSF) (Dkt. # 90) ¶ 6; Wahlstrom Opp'n to HSF (WOHSF) (Dkt. # 108) ¶ 6.  The Keenan Defendants were not parties to the 2010 CFA. Zerner MSJ Aff. Ex. 1.  Hoey and O'Toole also agreed, with Wahlstrom's assent, that Hoey would pay O'Toole a referral fee of one-third of any fee that Wahlstrom paid Hoey.  WSF ¶ 10; HOWSF ¶ 10; KOWSF ¶ 10.  The 2010 CFA lacked a provision for a potential appeal of the premises liability case.  Zerner MSJ Aff. Ex. 1.  One month after Wahlstrom executed the 2010 CFA, Hoey

filed the premises liability case in the Suffolk Superior Court.  WSF ¶ 11; HOWSF ¶ 11; KOWSF ¶ 11.

In June of 2012, Keenan began assisting Hoey on the premises liability case.  WSF ¶ 13; HOWSF ¶ 13; KOWSF ¶ 13.  In February of 2013, Hoey and Keenan agreed on a division of any eventual attorneys' fees: Keenan would receive 30% of all fees for consulting through trial and 40% of all fees if he appeared as counsel.  WSF ¶ 15; HOWSF ¶ 15; KOWSF ¶ 15.  Wahlstrom did not agree to have Keenan work on her case until two years later, in February of 2015.  WSF ¶¶ 16, 19; HOWSF ¶¶ 16, 19; KOWSF ¶¶ 16, 19.

On June 1, 2015, Keenan executed a new fee arrangement (2015 CFA) that Hoey asked Wahlstrom to sign.   WSF ¶¶ 24-25;  HOWSF ¶¶ 24-25; KOWSF ¶¶ 24-25.  Hoey assured Wahlstrom that the 2015 CFA was "the same fee agreement as before but with Don[ Keenan's] name since he is also trying the case with me . . . . It doesn't change your percentage or cost you more money."[2]  Zerner MSJ Aff. Ex. 12; WSF ¶ 25; HOWSF ¶ 25; KOWSF ¶ 25.  This statement was not literally true; the 2015 CFA contained an additional provision that stated, on top of the one-third of the gross amount recovered (to be shared with Hoey), Keenan would receive

---

[2] The Hoey Defendants claim that this email referred to "the underlying recovery not the appeal."  HOWSF ¶ 25.  Wahlstrom "understood Hoey to be referring to the entire agreement."  WOHSF ¶ 19.

an additional Two Percent (2%) of gross recovery if the matter is concluded/settled after an appellate brief is filed in an applicable appellate court or body by the Attorney on behalf of the Client, and an additional Five Percent (5%) of gross recovery if [the] matter is retried/concluded/settled following an appellate decision.

Zerner MSJ Aff. Ex. 11 ¶ 4.  Further, the 2015 CFA made Wahlstrom responsible for Keenan's "reasonable expenses and disbursements if there is a favorable disposition of the" premises liability case.  *Id.* ¶ 5.

The parties dispute whether any of the lawyers reviewed the terms of the 2015 CFA with Wahlstrom, although they agree that Keenan did not discuss the 2015 CFA with Wahlstrom.  WSF ¶ 28; HOWSF ¶ 28; KOWSF ¶ 28.  Wahlstrom testified that she had discussed the terms of the 2015 CFA with Hoey before signing it, *see* Aff. of Christine Knipper (Knipper MSJ Aff.) (Dkt. # 91) Ex. D at 23:11-16, and stated that she had exchanged emails with Hoey regarding the 2015 CFA on June 11, 2015, *see* Knipper MSJ Aff. Ex. C at Resp. 6.  Hoey believes that another attorney at his firm, Krzysztof Sobczak, reviewed the 2015 CFA with Wahlstrom.  Zerner MSJ Aff. Ex. 4 at 56:10-61:20; HSF ¶ 23 n.2.  Neither Sobczak nor Wahlstrom, however, recall reviewing together the 2015 CFA.  Zerner MSJ Aff. Ex. 13 at 39:14-40:9; WSF ¶ 31; HOWSF ¶ 31; KOWSF ¶ 31.  Wahlstrom testified that she "believe[s]" she "read every paragraph of the 2015 CFA."  Zerner MSJ Aff. Ex. 2 at 22:8-14; WOHSF ¶ 26.  The record establishes that Wahlstrom initialed all of the

paragraphs of the 2015 CFA, including the appeal contingency provision. Zerner MSJ Aff. Ex. 11.

**Trial and Post-Trial Motions**

The premises liability case was tried in July of 2015, and the jury awarded Wahlstrom a $4 million verdict. WSF ¶ 37; HOWSF ¶ 37; KOWSF ¶ 37. With interest, the total judgment against the premises liability defendants amounted to $6,650,829.58. WSF ¶ 37; HOWSF ¶ 37; KOWSF ¶ 37.

After trial, some of the premises liability defendants successfully moved for a new trial, alleging attorney misconduct by Hoey and Sobczak. WSF ¶ 38; HOWSF ¶ 38; KOWSF ¶ 38. In their motion for a new trial, the defendants attached as exhibits excerpts of two of Keenan's books,[3] the intellectual property rights of which are owned by KKF. WSF ¶¶ 39-40;

---

[3] In addition to being a trial attorney, Keenan is the author of several books on trial tactics, including *The Keenan Edge* and *Reptile: The 2009 Manual of the Plaintiff's Revolution*. WSF ¶ 39; HOWSF ¶ 39; KOWSF ¶ 39. These books provide a guide on Keenan's "reptile" litigation strategy, which emphasizes "persistence. If you can't get in through the front door, knock on the back door. If you can't get in through the back door then try one of the windows. If that doesn't work try coming down the chimney. If the place ain't got a chimney then dig underground." Zerner MSJ Aff. Ex. 15 at 8 (quoting Don Keenan, *The Keenan Edge* at 352-353). The premises liability defendants argued in their motion for a new trial that Keenan's reptile method was employed consistently at trial and that such conduct was attorney misconduct.

HOWSF ¶¶ 39-40; KOWSF ¶¶ 39-40; KKF Opp'n to Wahlstrom Statement of Facts (KKFOWSF) (Dkt. # 113) ¶¶ 39-40.   Hoey and Keenan engaged attorney Richard Goren to litigate a motion for impoundment of the excerpts. WSF ¶ 41; HOWSF ¶ 41; KOWSF ¶ 41; KKFOWSF ¶ 41.   Goren – who appeared only on behalf of KKF – never met Wahlstrom, had no fee arrangement with Wahlstrom, and never directly billed Wahlstrom.   WSF ¶¶ 43-44; HOWSF ¶¶ 43-44; KOWSF ¶¶ 43-44.   Hoey, however, charged Wahlstrom $20,824 for Goren's work.

Hoey and Sobczak also consulted with attorney James Bolan regarding the post-trial motion.   He provided comments on the post-trial brief "from the hip after an hour or two [of] reading."   Aff. of Dennis Maher (Maher Opp'n Aff.) (Dkt. # 111) Ex. D.   Hoey's counsel contended that Bolan also "provided services to assist in the cross-examination of JPA defense expert Norman Bates."   Zerner MSJ Aff. Ex. 62.   Bolan billed Hoey directly, and Wahlstrom never met Bolan.   WSF ¶ 95; HOWSF ¶ 95; KOWSF ¶ 95.

A related complaint was filed with the Massachusetts Board of Bar Overseers against Hoey and Sobczak for their conduct during the trial.   WSF ¶ 54; HOWSF ¶ 54; KOWSF ¶ 54.   Lewis Brisbois Bisgaard & Smith LLP (Lewis Brisbois) represented Sobczak in this proceeding.   WSF ¶ 54; HOWSF ¶ 54; KOWSF ¶ 54.   Lewis Brisbois billed Hoey directly for its work.   WSF

¶ 53; HOWSF ¶ 53; KOWSF ¶ 53.  Hoey charged Wahlstrom $561.24 for Lewis Brisbois's time on the BBO complaint.  Zerner MSJ Affs. Exs. 22, 52. The parties dispute whether Bolan represented Hoey in this proceeding. Wahlstrom Mot. For Partial Summ. J. (WMSJ) (Dkt. # 93) at 5-6; Hoey Defs.' Opp'n to WMSJ (HOWMSJ) (Dkt. # 109) at 16.

**The Appeal**

After the court allowed the motion for a new trial, Wahlstrom retained attorney Patricia DeJuneas to appeal the court's decision.  WSF ¶ 56; HOWSF ¶ 56; KOWSF ¶ 56.  Wahlstrom hired separate appellate counsel because, by their own admission, Hoey and Keenan had little to no appellate experience.  *See* Zerner MSJ Aff. Ex. 27 (email from Hoey stating, "We are trial attorneys.  Not appella[te] attorneys or media attorneys"); Zerner MSJ Aff. Ex. 26 (email from Keenan stating, "I'm not an appellate lawyer, don't pretend to be, don't see the work through the POV of an appellate lawyer"). DeJuneas and Wahlstrom executed a separate fee arrangement for the appeal.  WSF ¶ 57; HOWSF ¶ 57; KOWSF ¶ 57.  Hoey was present when Wahlstrom met with DeJuneas to discuss the fee arrangement, but Keenan was not.  WSF ¶ 58; HOWSF ¶ 58; KOWSF ¶ 58.  No one at the meeting indicated that Wahlstrom would still be responsible for the appeal

contingency payment to Keenan under the 2015 CFA.  WSF ¶ 58; HOWSF ¶ 58; KOWSF ¶ 58.

DeJuneas drafted the appellate briefs in consultation with retired Justice Robert Cordy and Hoey,[4] and DeJuneas argued the appeal.  WSF ¶ 59; HOWSF ¶ 59; KOWSF ¶ 59.  Cordy's fees were billed to Hoey.  HSF ¶ 51; WOHSF ¶ 51.  Hoey also consulted attorney John Vail on the draft appellate brief and instructed Vail to bill him directly.  WSF ¶ 64; HOWSF ¶ 64; KOWSF ¶ 64.  Vail commented on the draft, and Hoey copied directly some of Vail's comments and sent them to DeJuneas.  *See* Zerner MSJ Aff. Ex. 28.  The parties dispute whether Hoey told Wahlstrom that he was consulting with Vail.  *Compare* WSF ¶ 65, *with* HOWSF ¶ 65, *and* KOWSF ¶ 65.  Hoey charged Wahlstrom $2,655 for Vail's work.  Zerner MSJ Aff. Exs. 52, 56.

Keenan claims that he "communicated regularly with Mr. Hoey regarding appeal strategy and filings," KSF ¶ 24, but he cites to nothing in the record to support this claim, and there is evidence that suggests that his participation in the appeal was at most marginal, *see, e.g.*, Zerner MSJ Aff. Ex. 25 at 96:11-22 (DeJuneas testified "I don't think I ever had any discussions with Don about the appeal other than the petition for

---

[4] The parties dispute whether Hoey's involvement in the appeal was productive.  Whether his involvement was helpful or not, the record is clear that Hoey involved himself in the appeal.

interlocutory appeal").[5]  Keenan did not file an appearance in the appeal or move for admission *pro hac vice*.  WSF ¶ 60; HOWSF ¶ 60; KOWSF ¶ 60. Indeed, there is no evidence that Keenan ever spoke with Wahlstrom regarding the appeal.  Hoey's and Keenan's names did not appear on the appellate briefs.  WSF ¶ 60; HSF ¶ 55; KOWSF ¶ 60.

Wahlstrom won her appeal in November of 2019.

**Sobczak's Lien**

While the appeal was pending, Sobczak left Hoey's law firm.  HSF ¶ 50; WOHSF ¶ 50.  After his departure, Sobczak and Hoey litigated a dispute over the fee, if any, that Sobczak was owed for his work on Wahlstrom's case.  HSF ¶ 56; WOHSF ¶ 56.  Bolan represented the Hoey Defendants in this dispute. Maher Opp'n Aff. Ex. E ¶ 2.  Hoey charged Wahlstrom $8,432.39 for Bolan's work.  *Id.*

On June 11, 2019, Sobczak filed a Notice of Attorney's Lien, alleging that he had a right to a portion of Wahlstrom's recovery.  Zerner MSJ Aff. Ex. 35.  Hoey retained attorney Amy Goganian to defend against the lien and executed a fee arrangement with her.  WSF ¶ 81; HOWSF ¶ 81; KOWSF ¶ 81; Zerner MSJ Aff. Ex. 36 at 1.  Wahlstrom knew that Goganian was involved in

---

[5] The Hoey Defendants also claim that Keenan participated in the appeal.  *See, e.g.*, HSF ¶ 53; HOWSF ¶ 59.

defending against the lien, but she never saw the fee arrangement and was unaware how much Goganian charged.  WSF ¶¶ 82-83; HOSWF ¶¶ 82-83; KOWSF ¶¶ 82-83.   Hoey billed Wahlstrom $41,231.72 for Goganian's defense against the lien.  Zerner MSJ Aff. Ex. 52.

The court dismissed Sobczak's lien, and Wahlstrom moved for her fees and costs.   HSF ¶¶ 60-62; WOHSF ¶¶ 60-62.   Wahlstrom's motion was denied, and she unsuccessfully appealed the denial.  HSF ¶ 62; WOHSF ¶ 62. On February 22, 2022, Sobczak and Wahlstrom signed a general release agreement pursuant to which Sobczak withdrew his lien against Wahlstrom and Wahlstrom withdrew her appeal.  Knipper MSJ Aff. Ex. JJ.

**Disbursement of the Judgment and Attorneys' Fees and Expenses**

On November 18 and 19, 2019, the premises liability defendants' insurers wired $9,987,683.80 to Keenan's IOLTA account.   HSF ¶ 68; WOHSF ¶ 68.   On November 26, 2019, Keenan wired – without seeking Wahlstrom's approval – $973,000 to Hoey "to cover expenses and Kira's loan."  WSF ¶¶ 104-106; HOWSF ¶¶ 104-106; KOWSF ¶¶ 104-106; Zerner MSJ Aff. Ex. 44.  In December of 2019, Hoey met with Wahlstrom to review the expenses from the case.  HSF ¶ 68; WOHSF ¶ 68.  On December 17, 2019, Hoey told Keenan to wire Wahlstrom $4,850,000, and he told Wahlstrom that there was "[m]ore to come later."  WSF ¶ 107; HOWSF ¶ 107; KOWSF

11

¶ 107.   Wahlstrom never received any additional money.   WSF ¶ 108; HOWSF ¶ 108; KOWSF ¶ 108.

In late March of 2020, Hoey emailed Wahlstrom a list of expenses from the litigation.   Zerner MSJ Aff. Ex. 52.   The expense report listed the totals for each expense category (*e.g.*, for each consulting attorney) but did not itemize the expenses any further.   *Id.*   Hoey provided no supporting documentation for any of the expenses.   *Id.*; WSF ¶ 115; HOWSF ¶ 115; KOWSF ¶ 115.   Wahlstrom signed the expense report the same day she received it and did not challenge any of the expenses at the time.   WSF ¶¶ 117-118.

## DISCUSSION

Summary judgment is appropriate where the movant demonstrates that, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A dispute is "'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"   *Poulis-Minott v. Smith*, 388 F.3d 354, 363 (1st Cir. 2004), quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993).   If the movant shows that there is no genuine dispute of material fact, "the burden shifts to the nonmoving party, who must, with respect to each

issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016), quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010) (alterations in original).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). While each motion stands or falls on its own merits, "this does not mean that 'each motion must be considered in a vacuum.'" *Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 51 (1st Cir. 2010), quoting *Puerto Rico Am. Ins. Co. v. Rivera-Vázquez*, 603 F.3d 125, 133 (1st Cir. 2010).

As each of Wahlstrom's counts relies on essentially the same theories, the court will lay out the parties' arguments here. First, Wahlstrom claims that she agreed to the 2015 CFA because she trusted Hoey's email that it would not "change [her] percentage or cost [her] more money." This was not true, she argues, because the 2015 CFA made her responsible for both Hoey's and Keenan's expenses and contained an appeal contingency that permitted

Keenan to collect an additional 7% in fees if he appealed the case and won. The Hoey and Keenan Defendants dispute this, claiming that Hoey's email referred to the trial, not the appeal, and that at any rate the email is irrelevant because Wahlstrom ratified the expenses in March of 2020 by signing the expense report.

Second, Wahlstrom argues that she was charged third-party fees without her permission.  She was charged for consulting attorneys' fees despite not engaging the attorneys, often never meeting the attorneys, and sometimes not even being aware that they were working on her case.  She also claims that at least some of the attorneys' fees were improperly billed to her because they actually related to fees for litigation between Hoey and Sobczak.  And she alleges that although she knew that Hoey and Keenan might borrow funds to pay certain costs associated with the case and that she would be responsible for reimbursing those costs, the costs were not made known to her as they were incurred.  She also claims that the Hoey and Keenan Defendants are unable to show that the advances from Advocate Capital funded any expenses in her case.  The Hoey and Keenan Defendants argue that they had no obligation to tell Wahlstrom about the fees and that she ratified the expenses, and they dispute Wahlstrom's claim regarding the Advocate Capital advances.

Third, she claims that she was charged the additional appeal contingency despite Keenan's failure to satisfy the preconditions for charging the fee. The 2015 CFA permitted Keenan to charge an additional 2% of the gross recovery "if the matter is concluded/settled after an appellate brief is filed in an applicable appellate court or body *by the Attorney* on behalf of the Client." Zerner MSJ Aff. Ex. 11 ¶ 4 (emphasis added). It also permitted Keenan to charge an additional 5% "if [the] matter is retried/concluded/settled following an appellate decision." *Id.* The Hoey and Keenan Defendants agree that is the language of the 2015 CFA but claim that Keenan is entitled to the entire appeal fee.

## Count I: Violations of Chapter 93A

Section 2 of the Massachusetts Unfair Business Practices Act makes it unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. "Chapter 93A applies to attorneys, and unlawful billing or other unethical conduct can constitute a Chapter 93A violation." *Sears, Roebuck & Co. v. Goldstone & Sudalter, P.C.*, 128 F.3d 10, 19 (1st Cir. 1997). A violation of the Massachusetts Rules of Professional Conduct is evidence of a Chapter 93A violation. *Id.*

To prevail on her Chapter 93A claim, Wahlstrom must show "1) that the defendant . . . committed an unfair or deceptive act or practice; . . . 2) a

loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014) (footnote omitted).   Conduct is deceptive if it "could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 57 (1st Cir. 2007), quoting *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 396 (2004).   "[T]he definition of an actionable 'unfair or deceptive act or practice'" for purposes of Chapter 93A "goes far beyond the scope of the common law action for fraud and deceit." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975).   And if the deceptive conduct is willful or knowing, Wahlstrom is entitled to double or treble damages.   Mass. Gen. Laws ch. 93A, § 9.[6]

The Hoey and Keenan Defendants argue that they entered into valid contracts with Wahlstrom that she ratified so their conduct could not be deemed deceptive.   There are two problems with this argument.   First, in the performance of contracts between attorneys and clients, attorneys "owe their

---

[6] Wahlstrom did not plead and does not now argue that the Hoey and Keenan Defendants were partners, so she has not pursued a vicarious liability theory.   The court will thus individually determine the Hoey and Keenan Defendants' liability.

clients greater duties than are owed under the general law of contracts."
*Malonis v. Harrington*, 442 Mass. 692, 702 (2004), quoting *Beatty v. NP
Corp.*, 31 Mass. App. Ct. 606, 612 (1991); *BourgeoisWhite, LLP v. Sterling
Lion, LLC*, 91 Mass. App. Ct. 114, 121 ("[L]awyers owe fiduciary duties to their
clients that exceed their contractual obligations.").  Unlike in a commercial
contract, an attorney "owes his client a duty of full and fair disclosure of facts
material to the client's interests," *Hendrickson v. Sears*, 365 Mass. 83, 90
(1974), and must show that the contract "was in all respects fairly and
equitably conducted," *Hill v. Hall*, 191 Mass. 253, 262 (1906).  Massachusetts
Rule of Professional Conduct 1.5(f) provides two model contingency fee
arrangements.  Lawyers are permitted to negotiate different contingency fee
arrangements with clients but are "required to explain specifically the
meaning of any terms that differ from the model" and "obtain the client's
written consent to these provisions." *In re Discipline of Att'y*, 451 Mass. 131,
141 (2008).  Second, for client ratification to be valid, it must "be based upon
full knowledge of all material facts." *Kidder v. Greenman*, 283 Mass. 601,
615 (1933).

The court finds that the undisputed material facts warrant partial
summary judgment on liability in favor of Wahlstrom on Count I.  Before
Wahlstrom saw the 2015 CFA, Hoey told Wahlstrom that the 2015 CFA

"doesn't change your percentage or cost you more money."  Zerner MSJ Aff. Ex. 12 ¶ 4.  This was not true.  When Wahlstrom signed the 2015 CFA, Hoey and Keenan failed to disclose the new appeal fee provision as required. Zerner MSJ Aff. Ex. 4 at 153:8-9; WSF ¶ 35; HOWSF ¶ 35; KOWSF ¶ 35; *In re Discipline*, 451 Mass. at 141.[7]  When Hoey showed Wahlstrom the Hoey and Keenan Defendants' fees, he did not explain that Keenan's fee included the 7% appellate contingency.  WMSJ at 11; Zerner MSJ Aff. Ex. 52.  Further, a reading of the 2015 CFA shows that part of the appeal contingency was not reimbursable because it required an appeal brief to be filed "*by the Attorney on behalf of the Client.*"  Zerner MSJ Aff. Ex. 12 ¶ 4 (emphasis added). Keenan's name was not on any appellate brief, yet Keenan charged Wahlstrom this 2% upcharge – a total of $199,764.90.[8]  The entire appeal upcharge was $695,808.57.  WSF ¶ 154; HOWSF ¶ 154; KOWSF ¶ 154.

---

[7] The Hoey and Keenan Defendants claim that they told Wahlstrom that the 2015 CFA would make her responsible for both of their expenses because Hoey went over the expenses for the case with Wahlstrom in December of 2019 and March of 2020.  The record is clear, however, that no one ever explained the 7% appeal contingency to Wahlstrom.

[8] The Hoey and Keenan Defendants correctly note that a breach of contract, standing alone, does not give rise to a claim for relief under Chapter 93A.  *See* HOWMSJ at 18-19; Keenan Defs.' Opp'n to WMSJ (KOWMSJ) (Dkt. # 102) at 11; *see also Massachusetts Emps. Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 43 (1995).  But "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's*

Wahlstrom came "to particularly rely on Hoey for support and placed substantial trust in him in his role as her advocate and protector." WSF ¶ 22; HOWSF ¶ 22; KOWSF ¶ 22. The Hoey and Keenan Defendants' failure to disclose the appeal provision of the 2015 CFA at any point reasonably caused Wahlstrom to sign the 2015 CFA and approve Keenan's fees, and thus was deceptive within the meaning of Chapter 93A. *See Incase*, 488 F.3d at 57. Her signatures on the 2015 CFA and final expense report did not ratify the agreements because she did not have full knowledge of the appeal contingency. *See Kidder*, 283 Mass. at 615. As a result, she incurred charges of $695,808.57 in unauthorized fees.

Wahlstrom has two additional theories of Chapter 93A liability as to which there are genuine disputes of material fact that preclude summary judgment. First, she claims that the Hoey and Keenan Defendants deceptively charged her the consulting attorneys' fees and the loan repayment to Advocate Capital. Even when Hoey showed Wahlstrom the list of fees for the consulting attorneys, the explanations for the necessity of their

---

*Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991), quoting *Wang Lab'ys, Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 857 (1986); *see also Whitman & Co. v. Longview Partners (Guernsey) Ltd.*, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015) ("[C]ourts have found Chapter 93A violations arising out of a breach of contract [where] additional . . . advantages were wrestled from the aggrieved party through false promises.").

work were thin.  *See* Zerner MSJ Aff. Ex. 52 (referring to Vail as a "Constitutional Law attorney," Goren as "who we hired to fight Intellectual Property, Patent, Trademark [infringement], and confidentiality," and Lewis Brisbois as "[r]elated to Sobczak and complaint to Board").  The Hoey and Keenan Defendants did not show Wahlstrom written fee arrangements or invoices from any of the consulting attorneys when Hoey received them or when she approved the expense report in March of 2020.  WSF ¶ 115; HOWSF ¶ 115; KOWSF ¶ 115.  These expenses too were arguably not reimbursable under the 2015 CFA, which states that "a portion of the compensation payable to [Keenan] . . . shall be paid to: the Law Offices of David J. Hoey, P.C. . . . Client *will not be charged any additional legal fees*." Zerner MSJ Aff. Ex. 11  ¶ 4 (emphasis added).    That assurance notwithstanding, Hoey charged Wahlstrom $75,020.36 for the consulting attorneys.

However, the Hoey and Keenan Defendants contend that Wahlstrom was aware that they were consulting with additional attorneys who would be reimbursed under the 2015 CFA, and thus she should have reasonably expected to be responsible for their fees.  *E.g.*, HOWMSJ at 15-17; KOWSF ¶¶ 82.  The parties also dispute whether all of the fees incurred by the consulting attorneys were for Wahlstrom's benefit.  Wahlstrom Opp'n to

Hoey Defs.' Mot. for Summ. J. (WOHMSJ) (Dkt. # 107) at 7-8; HOWMSJ at 15-16. The record is insufficiently developed on this point to grant summary judgment.

Regarding the Advocate Capital repayment, Wahlstrom argues, and the Hoey and Keenan Defendants dispute, that the Hoey and Keenan Defendants cannot show that the advances from Advocate Capital were used for expenses in Wahlstrom's case. WMSJ at 12 n.5; HOWSF ¶ 137; KOWSF ¶ 137. If the evidence supports Wahlstrom's theory, she may have a viable claim for reimbursement of the Advocate Capital costs. But the jury must resolve these disputed issues of fact.

The second theory that Wahlstrom advances on which summary judgment will not be granted relates to O'Toole's referral fee. She claims that Hoey and Keenan intentionally reduced O'Toole's referral fee, which led to a lawsuit by O'Toole in which Wahlstrom was a named defendant and for which she incurred additional attorneys' fees. FAC ¶¶ 56-68, 74, 93; WOHMSJ at 14-15. The parties point to little in the record supporting or contradicting this theory, so summary judgment is inappropriate.

Finally, summary judgment cannot be granted on whether the Hoey and Keenan Defendants' violation of Chapter 93A was willful or knowing such that the presumptive award of $695,808.57 should be doubled or

tripled.  Their state of mind is a disputed factual question that will require an evidentiary hearing to resolve.  *See Rossy v. Roche Prods., Inc.*, 880 F.2d 621, 624 (1st Cir. 1989) (questions of intent are best reserved for a factfinder because "proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun'"); *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 86 (1984) (summary judgment on state of mind is "disfavored").

## Count II:  Breach of Fiduciary Duty

A claim for breach of fiduciary duty has four elements: (1) existence of a fiduciary duty, (2) breach of that duty, (3) harm, and (4) a causal relationship between the breach and the harm.  *See Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 164 (1999).  "The attorney-client relationship is 'highly fiduciary' in Massachusetts."  *Sears*, 128 F.3d at 15, quoting *Hendrickson*, 365 Mass. at 90.  At trial, the burden will be on the Hoey and Keenan Defendants to show that the transaction was fair in all respects, and that they discharged their duties to Wahlstrom "by active diligence to see that [their] client was fully informed of the nature and effect of the transaction

proposed." *Cleary v. Cleary*, 427 Mass. 286, 290-291 (1998), quoting *Webster v. Kelly*, 274 Mass. 564, 571 (1931).

The analysis for Wahlstrom's breach of fiduciary duty claim largely tracks that of the Chapter 93A claim. The Hoey and Keenan Defendants owed Wahlstrom a fiduciary duty as her attorneys. They breached this duty by failing to advise her of the appeal contingency at any point. It is a closer call whether the Hoey and Keenan Defendants breached their fiduciary duties by not practicing "active diligence" in informing Wahlstrom of the consulting attorneys' fees and the Advocate Capital repayment. *See id.* Nevertheless, considering the disputed facts regarding these charges, "a reasonable jury could return a verdict for" the Hoey and Keenan Defendants, so "summary judgment will not lie." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Count III: Fraud

To prove her claim of fraud, Wahlstrom must show that the Hoey and Keenan Defendants "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [Wahlstrom] to act thereon, and that [Wahlstrom] relied upon the representation as true and acted upon it to [her] damage." *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007), quoting *Kilroy v. Barron*, 326 Mass. 464, 465 (1950) (third

alteration in original).  To prove reliance, Wahlstrom must "do more than introduce evidence that falsehoods were in the air . . . [she] must establish causation by proving that [she herself] relied on those falsehoods." *Greene v. Philip Morris USA Inc.*, 491 Mass. 866, 873 (2023).

The deceptive conduct need not be direct to be fraudulent; rather, "[f]ragmentary information" and "half-truths may be as actionable as whole lies." *Kannavos v. Annino*, 356 Mass. 42, 48 (1969), quoting Harper & James, *Torts*, § 7.14.  Further, Wahlstrom will not be barred from recovery "merely because [she] 'did not use due diligence . . . [when she] could readily have ascertained from . . . records' what the true facts were." *Sullivan v. Five Acres Realty Tr.*, 487 Mass. 64, 74 (2021), quoting *Kannavos*, 356 Mass. at 50 (second and fourth alterations in original).  However, to be liable for fraud, a defendant must have made a representation to the plaintiff.  *See Pitman v. Lynn Gas & Elec. Co.*, 241 Mass. 322, 324 (1922) (no fraud where "defendant made no false or fraudulent representations, and it made no representations of any kind to the plaintiff").

The Hoey and Keenan Defendants both claim that Wahlstrom's fraud claim fails as a matter of law because it was insufficiently pleaded in her First Amended Complaint (FAC).  Hoey Defs.' Mot. for Summ. J. (HMSJ) (Dkt. # 89) at 8, 12-14; Keenan Defs.' Mot. for Summ. J. (KMSJ) (Dkt. # 85) at 13.

Although arguments regarding pleading deficiencies are not properly before the court on a motion for summary judgment, the court will treat the Hoey and Keenan Defendants' arguments regarding pleading deficiencies as motions for judgments on the pleadings because a party may move to dismiss a complaint for failure to state a claim at any point during the litigation.  *See* Fed. R. Civ. P. 12(h)(2).

The standard for a motion for judgment on the pleadings is largely the same as a motion to dismiss under Rule 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006). The court will view "the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). Judgment on the pleadings is appropriate only if the FAC as a whole fails "to state a claim to relief that is plausible on its face," meaning it does not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Wahlstrom's fraud allegations are subject to Rule 9(b)'s heightened pleading standard.  Rule 9(b) requires plaintiffs alleging fraud to "state with

particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To survive, the FAC must "specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

### *(a)   Hoey Defendants*

The FAC adequately alleges a fraud claim against the Hoey Defendants. Wahlstrom alleges that Hoey knowingly made false representations to her about the 2015 CFA, consulting attorneys' fees, and the Advocate Capital repayment and that she relied on these representations to her financial detriment. FAC ¶¶ 90-92, 94-96. The FAC specifies the "who, what, where, and when of the allegedly false or fraudulent representation." *Alt. Sys. Concepts*, 374 F.3d at 29. The Hoey Defendants' motion for judgment on the pleadings is thus denied.

The Hoey Defendants' motion for summary judgment on the fraud claim is equally unavailing. Their core argument is that Wahlstrom cannot have reasonably relied on Hoey's statement that the 2015 CFA "doesn't change your percentage or cost you more money" because it was contradicted by the terms of the 2015 CFA, which Wahlstrom ratified. HMSJ at 9-11. The ratification argument fails for the same two reasons that it fails in Counts I and II.

### (b)   Keenan Defendants

The FAC, taken as a whole, fails to adequately allege that the Keenan Defendants committed fraud.  The sole allegation related to the Keenan Defendants is that the Hoey Defendants, "with the approval and agreement of" the Keenan Defendants, represented to Wahlstrom that she owed the 7% appeal fee and attorneys' fees for the various attorneys consulted by Hoey. FAC ¶¶ 94-95.  The FAC does not plead with particularity the circumstances of this alleged approval and agreement, nor does the FAC contain any allegations that the Keenan Defendants ever actually made any misrepresentations to Wahlstrom at all.  This is insufficient under Rule 9(b). *See Pitman*, 241 Mass. at 324.  Count III will be dismissed as against the Keenan Defendants.

## Count IV:  Conversion

Conversion is the "exercise of dominion or control over the personal property of another." *Third Nat'l Bank of Hampden Cnty. v. Cont'l Ins. Co.*, 388 Mass. 240, 244 (1983).  Under Massachusetts law, a claim for conversion has four elements:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately

acquired possession of the property under a good faith claim of right, then plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).

Wahlstrom claims that the Hoey and Keenan Defendants and KKF wrongfully took possession of $1,099,658.22 – the appeal contingency, fees for consulting attorneys, and the Advocate Capital repayment – and that she has a possessory interest in this money. WMSJ at 18-19, 30. The Hoey and Keenan Defendants both argue that her conversion claim fails because (1) they merely exercised their contractual rights to reimburse themselves their fees and expenses pursuant to the 2015 CFA, (2) she has other adequate remedies at law, and (3) the voluntary payment doctrine bars her claims. HMSJ at 19; KMSJ at 18-19. KKF argues that the conversion claim fails because there is no evidence that KKF ever had possession of any of Wahlstrom's money. KKF Opp'n to WMSJ (Dkt. # 114) at 7-8.

The court has already disposed of the Hoey and Keenan Defendants' contractual defense. Regarding their adequate remedy argument, it is correct as a general principle that a party is not entitled to equitable relief when it has an adequate remedy at law. *See, e.g.*, *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). But conversion is a theory of liability, not an equitable remedy; any relief she may be awarded for her conversion claim

would thus itself be the adequate remedy at law.  *See Orkin v. Albert*, 2023 WL 1452055, at *13 (D. Mass. Feb. 1, 2023) (referring to conversion as a "potential remedy at law").  Finally, the voluntary payment doctrine bars recovery where the plaintiff paid "voluntarily . . . under a claim of right, with full knowledge of the facts." *Carey v. FitzPatrick*, 301 Mass. 525, 527 (1938). The court need not decide "whether to resuscitate the antiquated voluntary payment doctrine" because it has concluded that the Hoey and Keenan Defendants acted deceptively regarding the appeal contingency such that Wahlstrom did not have full knowledge of the facts and that there are genuine disputes of material facts regarding Wahlstrom's knowledge of the consulting attorneys' fees and the Advocate Capital repayment. *See Blay v. Zipcar*, 716 F. Supp. 2d 115, 124 (D. Mass. 2010).

As with Wahlstrom's other claims, the court grants summary judgment regarding the appeal fee (although Wahlstrom cannot recover multiple times for the same wrongful charge) and denies summary judgment regarding the consulting attorneys' fees and the Advocate Capital repayment because there are genuine disputes of material fact.  As to KKF, the FAC alleges that KKF converted Goren's fees, FAC ¶ 100, but Wahlstrom does not argue in the instant motion that KKF converted any funds, nor does she point to anything

in the record showing that KKF ever even had possession of this money. Summary judgment is thus inappropriate.

**Count V:  Demand for Accounting**

Wahlstrom also seeks a "full accounting" explaining the "disposition of all the monies [the Hoey and Keenan Defendants] received and held in trust for her from the recovery in the . . . premises liability case." FAC ¶¶ 104-105. The court interprets the FAC as requesting an order requiring the Hoey and Keenan Defendants to produce "complete records of the receipt, maintenance, and disposition of their client funds." *Id.* ¶ 106.[9]

The Hoey and Keenan Defendants claim that they have already given Wahlstrom a full accounting and thus move for summary judgment on Count V. HMSJ at 20; KOWSMJ at 11. Wahlstrom briefly argues that the Hoey and Keenan Defendants have "failed to account for all expenses in the case." WOHMSJ at 20; WOKMSJ at 17-18. As noted, the expense report that the Hoey and Keenan Defendants provided Wahlstrom is very thin and does not

---

[9] The equitable remedy of accounting is designed to "deprive[] wrongdoers of their net profits from unlawful activity" and is often referred to as disgorgement or restitution. *Liu v. SEC*, 140 S. Ct. 1936, 1942-1943 (2020). The remedy requires a wrongdoer to disgorge any ill-gotten gains. *Id.* Because the court does not understand Wahlstrom to be making such a request, it need not address the Hoey and Keenan Defendants' arguments that she is precluded from seeking an accounting because she has other adequate remedies at law.

include any of the underlying bills or charges.  *See* Zerner MSJ Aff. Ex. 52. Wahlstrom has received additional invoices from the consulting attorneys through discovery; however, the parties still dispute the validity of some of these charges – in particular the Advocate Capital repayment – and thus summary judgment is inappropriate.

## ORDER

For the foregoing reasons, Wahlstrom's motion for summary judgment is <u>ALLOWED IN PART AND DENIED IN PART</u> as to Counts I, II, and IV. The Hoey Defendants' motion for summary judgment is <u>DENIED</u>.  The Keenan Defendants' motion for summary judgment is <u>ALLOWED IN PART AND DENIED IN PART</u>.  The court hereby <u>DISMISSES WITH PREJUDICE</u> Count III against the Keenan Defendants and Count VI against KKF.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE